IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS COMPUTER RESEARCH, LLC., ) | |
| ) | |
| Plaintiff, ) | Case No. 07 C. 5081 |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| GOOGLE INC. and FISH & RICHARDSON ) | Honorable Rebecca R. Pallmeyer |
| P.C. ) | Mag. Judge Maria Valdez |
| Defendants. ) | |

### AMENDED COMPLAINT

Plaintiff Illinois Computer Research, LLC ("ICR") complains of defendants, Google Inc. ("Google") and Fish & Richardson P.C. ("Fish") as follows:

### NATURE OF CLAIMS

1. This is a claim for patent infringement against Google arising under the patent laws of the United States, Title 35 of the United States Code. ICR also asserts related claims for tortious interference with prospective economic advantage and declaratory judgment against Fish, arising out of Fish's: (1) unlawful and false claims of ownership of the patent-in-suit and other patents owned by ICR; (2) threats and conduct designed to intimidate the inventor of the patent-in-suit and key witness in this case, Scott Harris; and (3) other misconduct, including intentionally and unlawfully accessing privileged communications between Mr. Harris and his counsel, the Niro, Scavone, Haller & Niro law firm, which represents ICR in this case.

## **THE PARTIES**

2. Illinois Computer Research, LLC ("ICR") is an Illinois limited liability company that has its principal place of business at 125 South Wacker Drive, Suite 300, Chicago, Illinois 60606. ICR owns United States Patent No. 7,111,252 ("the '252 Patent"), entitled "Enhancing Touch And Feel On The Internet," which issued on September 19, 2006 (Exhibit A), and, thus, has the exclusive right to license and enforce the '252 Patent and to collect all damages for infringement of the '252 Patent. ICR also has standing to sue for infringement of the '252 Patent. A copy of the recorded assignment of the '252 Patent is attached as Exhibit B.

3. Google Inc. ("Google") is a Delaware corporation having engineering, technical and business offices in this judicial district at 20 West Kinzie Street, Chicago, Illinois 60610. Google is registered to do business in the State of Illinois as Google Inc.-IL.

4. Google transacts substantial business in this judicial district and has committed acts of infringement in this judicial district by soliciting and accepting advertising from Illinois companies and by operating websites and conducting business over those websites that are used by and are accessible to residents of Illinois, including the book search feature which infringes the '252 Patent.

5. Fish is a professional corporation headquartered at 225 Franklin Street, Boston, Massachusetts 02110-2804 but with offices throughout the United States. Fish conducts substantial business in this judicial district, has represented its clients in this judicial district, including clients in lawsuits brought before this Court. The complained-

of conduct by Fish is specifically directed to ICR's prosecution of its claim against Google which has taken place in this judicial district.

## JURISDICTION AND VENUE

6. Jurisdiction exists under 28 U.S.C. §§ 1331, 1332, 1335(a) 1367 and 2201.

7. Venue is proper under this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

## BACKGROUND

8. Until September 14, 2007, the inventor of the '252 Patent, Scott Harris, was a partner at Fish; before his forced resignation, he had been associated with Fish for 14 years. Mr. Harris is a prolific inventor in his own right; he made his first invention at the age of 12. He first attended Duke University and then George Washington University where he received a degree in electrical engineering. Mr. Harris later worked as an electrical engineer in the communications and software fields and thereafter attended George Washington University Law School where he graduated and became a patent attorney.

9. Mr. Harris has been involved with teaching patent law to attorneys and technologists. He has taught basic patent law for the Patent Resources Group and has presented a primer class on software patenting to more than 30 companies. He has been invited to present a class on patent cost reduction via outsourcing and teaches a one-hour class called "Patents for Kids" (a program designed to teach young people about intellectual property); both presentations take place throughout the country. Mr. Harris has been extensively quoted in national and local publications concerning issues

involved with patent law and was named the top patent prosecuting attorney in the *IP Law & Business* "Patent Hall of Fame" in 2003.

10. Mr. Harris has 27 patents and has pending approximately 80 patent applications covering many different fields of technology. Most have been sold to different companies that license and enforce the patents. At all times, Fish was aware of Mr. Harris's personal inventorship activities. Indeed, the co-inventor of one of his patents is the wife of the former managing partner of Fish. Plaques identifying some of Mr. Harris's patents were on display in his office at Fish.

11. In 2007, Dell Computer complained to Fish that it had been sued for infringement of a patent on which Mr. Harris was a named inventor. Thereafter, Fish conducted an investigation, headed by John Steele, Fish's Ethics and Conflicts Director and Special Counsel. As a result of that investigation, Fish concluded that Mr. Harris had done nothing unethical or inappropriate and so informed Mr. Harris in April 2007. At first, Fish told Mr. Harris that Dell was an existing Fish client. When Mr. Harris made further inquiry of Fish, he was informed that Fish partner Kathy Lutton (wife of the patent counsel for Apple Computer, a Fish client) wanted to get Dell as a client. In May 2007, Ms. Lutton told Mr. Harris that he might have to leave Fish.

12. Instead of demanding that he leave Fish, in May 2007, Fish demanded that Mr. Harris divest himself of any ownership interest in the '252 Patent and other patents now owned by ICR to maintain his position at Fish.

13. At the instruction and demand that Harris sell his patents, Harris entered into a Patent Sale Agreement (the "Agreement") with ICR in which he sold ICR the '252 Patent and U.S. Patent Nos. 7,231,050 B1, 7,194,624 B1, 7,069,315 B2, as well as U.S.

Patent Application Nos. 09/569,816, 09/669,959, and any continuations from and reissues or reexamination of such patents. Fish knew of the sale of Mr. Harris's patents and, on information and belief, may have improperly obtained a copy of it. The Agreement expressly requires Mr. Harris to cooperate with ICR in the enforcement of such patents and Fish knows that, absent Mr. Harris' cooperation and testimony, enforcement of the patents by ICR would be impractical or greatly difficult. The Agreement also expressly provides that ICR possesses the sole and exclusive right to license and enforce the patents identified above.

14. On August 29, 2007, ICR sent a letter to Google notifying it of ICR's belief that Google was infringing the '252 Patent. Google is a client of Fish and, on information and belief, Google immediately complained to Fish and sought its help in having the infringement claim withdrawn.

15. In response, Fish immediately attempted to pressure, punish and intimidate Mr. Harris and thwart the entire purpose of Agreement. First, on September 12, 2007, Fish's Managing Partner, Peter Devlin, demanded the resignation of Mr. Harris within 24 hours. Mr. Harris complied with that demand.

16. Then, on September 13, 2007, Fish, through its "Ethics Director" Steele, telephoned the employment lawyer for Mr. Harris, Ms. Lynne Lasry, and made a number of claims and demands, all designed to undermine and thwart the purpose of the Agreement. In that conversation, Fish claimed that it – and not ICR – owned the relevant patents. Fish asserted that "the patents are being held in constructive trust for the firm." Fish demanded that Mr. Harris "get these patents back" from ICR and insisted on seeing all of Mr. Harris's communications with the Niro law firm, which had

represented Mr. Harris at all relevant times. Fish, through Steele, also stated that, if ICR pursued patent infringement litigation, Mr. Harris would face inequitable conduct claims and his life could be made "miserable," a clear effort to unlawfully intimidate a key witness.

17. Fish knew that its ownership and other claims were baseless. Among other things, Mr. Harris had already been cleared of any wrongdoing in Fish's internal ethics investigation. Also, Mr. Harris had sold the patents to ICR at Fish's insistence. Fish also sought to pressure and intimidate Mr. Harris by refusing to even discuss the funds which Fish owes Mr. Harris for his capital contribution and other matters until Mr. Harris accedes to Fish's demands.

18. Thereafter, Fish continued to exert pressure on Harris and assert its fabricated claims of ownership, this time through several conversations between Mr. Harris's employment counsel, Ms. Lasry, and Fish counsel, Jenner & Block, in September and early October 2007. During those conversations, Fish: (1) continued to assert that it owns the patents and all of its clients are entitled to "paid-up licenses"; (2) demanded that this lawsuit be dismissed; (3) demanded that Mr. Harris "renegotiate" his Agreement with ICR and (4) refused to discuss the sums due Mr. Harris (likely in violation of California law). Even more disturbing, comments made during discussions with Ms. Lasry suggested that Fish had accessed Mr. Harris's personal email account for the purpose of retrieving and reviewing emails between Mr. Harris and the Niro firm (communications which Fish and Jenner & Block knew were protected by the attorney-client privilege), all for the purpose of undermining ICR's claim against Google and other potential infringers. When specifically asked if Fish had sought and retrieved such

privileged communications, Fish counsel, Jenner & Block, refused to answer. Fish, through Jenner & Block, pointedly requested that Ms. Lasry convey Fish's position to counsel for ICR.

## COUNT I

## PATENT INFRINGEMENT AGAINST GOOGLE

1-18. ICR restates Paragraphs 1-18 as Paragraphs 1-18 of Count I.

19. Google has infringed, and is now directly infringing, at least claim 1 of the '252 Patent and indirectly infringing at least claims 7, 8, 11 and 13 of the '252 Patent through, among other activities, the manufacture, use, sale and/or offer for sale of Google's Book Search product or service which allows or facilitates online viewing of a limited number of pages from a book. Google has also infringed the '252 Patent by knowingly and actively inducing others to infringe, and by contributing to the infringement of others by the manufacture, use, sale and/or offer for sale of Google's Book Search product or service, and by intentionally aiding, assisting and encouraging the infringement of others through the manufacture, use, sale and/or offer for sale of the Google Book Search product or service.

20. Google's infringement, contributory infringement and inducement to infringe has injured plaintiff ICR and ICR is entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty.

21. Google received actual notice of the '252 Patent by at least August 30, 2007.

## COUNT II

## TORTIOUS INERFERENCE WITH
## PROSPECTIVE ECONOMIC ADVANTAGE AGAINST FISH

1-21. ICR restates Paragraphs 1-21 of Count I as Paragraphs 1-21 of Count II.

22. ICR has a reasonable expectation of entering into valid business relationships with others, by among other things, offering and entering into patent license agreements with Google and other infringers of the '252 Patent owned by ICR.

23. Fish has knowledge of that expectation.

24. Fish has purposefully and wrongfully interfered with ICR's legitimate expectation by among other things,

    a. Wrongfully asserting ownership claims in the ICR patents, which claims Fish knows to be false.

    b. Seeking to intimidate a material witness (Mr. Harris) necessary to the enforcement of ICR's patent rights;

    c. Insisting that Mr. Harris "undo" the valid and binding Agreement with ICR;

    d. Attempting on behalf of its various clients (like Google) to force ICR to abandon its claims for infringement by conveying rights to Fish to pass on to its clients; and

    e. Invading the attorney-client privilege between Mr. Harris and the Niro firm for the purpose of undermining ICR's claim against Google and others.

25. ICR has been damaged by Fish's actions. Among other things, ICR's negotiating position for a possible license of the '252 Patent has been undermined. Indeed, a purpose of Fish's conduct was to minimize, if not eliminate, Google's downside exposure to ICR's infringement claim. ICR also has had to postpone further enforcement of its patent portfolio in order to defend itself against Fish's interference.

ICR has already lost and is threatened with the future and permanent loss of substantial revenues in the loss of millions of dollars.

## COUNT III

## DECLARATORY JUDGMENT AGAINST FISH

1-25.   ICR restates Paragraphs 1-25 of Paragraph 1-25 of Count II as Paragraphs 1-25 of Count III.

26.   An actual controversy exists between ICR and Fish regarding Fish's claims of an ownership interest in the patents acquired and owned by ICR under the Agreement. Such claims have thwarted ICR's legitimate enforcement of patent rights under the Agreement.

27.   ICR, therefore, seeks a declaration that: (1) ICR is the rightful owner of U.S. Patent Nos. 7,111,252 B1, 7,231,050 B1, 7,194,624 B1, 7,069,315 B1, and U.S. Patent Applications Nos. 09/569,816 and 09/669,959, together with any continuations, continuations-in-part, divisionals and patent applications claiming priority (in whole or in part) from or through the above-referenced patents, and (2) Fish's claims to the contrary are invalid.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff ICR respectfully requests this Court to enter judgment against defendant Google Inc., and against its subsidiaries, successors, parents, affiliates, officers, directors, agents, servants, employees, and all persons in active concert or participation with them, granting the following relief:

A.   The entry of judgment in favor of ICR, and against the defendant;

B. An award of damages adequate to compensate ICR for the infringement that has occurred, together with prejudgment interest from the date the infringement began, but in no event less than a reasonable royalty as permitted by 35 U.S.C. § 284;

C. Increased damages as permitted under 35 U.S.C. § 284;

D. A finding that this case is exceptional and an award to ICR of its attorneys' fees and costs as provided by 35 U.S.C. § 285;

E. A permanent injunction prohibiting further infringement, inducement and/or contributory infringement of the '252 Patent; and,

F. Such other relief that ICR is entitled to under law and any other and further relief that this Court or a jury may deem just and proper.

Plaintiff ICR also respectfully requests this Court to enter judgment against Fish & Richardson, P.C., granting the following relief:

A   A declaration and judgment that (1) ICR is the rightful owner of U.S. Patent Nos. 7,111,252 B1, 7,231,050 B1, 7,194,624 B1, 7,069,315 B1, and U.S. Patent Applications Nos. 09/569,816, and 09/669,959, together with any continuations, continuations-in-part, divisionals and patent applications claiming priority (in whole or in part) from or through the above-referenced patents, and (2) Fish's claims to the contrary are invalid;

B. Compensatory damages in an amount in excess of the jurisdictional limit sufficient to redress the harm caused ICR from Fish's conduct;

C. Punitive damages;

D. Costs of suit; and

E.  Any other relief deemed appropriate by the Court.

## Jury Demand

Plaintiff demands a trial by jury on all issues presented in this Complaint.

/s/ Paul K. Vickrey
Raymond P. Niro
Paul K. Vickrey
Richard B. Megley, Jr.
Karen L. Blouin
Niro, Scavone, Haller & Niro
181 West Madison, Suite 4600
Chicago, Illinois 60602
(312) 236-0733
Fax: (312) 236-3137

Attorneys for Illinois Computer Research, LLC