## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| **ILLINOIS COMPUTER RESEARCH, LLC,** | ) ) | |
| *Plaintiff and Counterclaim Defendant* | ) ) ) | |
| *v.* | ) ) | No. 07 C 5081 |
| **GOOGLE, INC.,** | ) ) | Judge Pallmeyer |
| *Defendant, and* | ) ) | Magistrate Judge Valdez |
| **FISH & RICHARDSON P.C.,** | ) ) | |
| *Defendant, Counterclaimant and Third-Party Plaintiff,* | ) ) ) | |
| *v.* | ) ) | |
| **SCOTT C. HARRIS**, | ) | |
| *Third-Party Defendant.* | | |

### FISH & RICHARDSON P.C.'S COUNTERCLAIM AGAINST ICR
### AND THIRD-PARTY COMPLAINT AGAINST SCOTT C. HARRIS

Fish & Richardson P.C. ("Fish & Richardson" or the "Firm") counterclaims against Illinois Computer Research, LLC ("ICR") and states its third-party complaint against Mr. Scott C. Harris as follows:

### Nature Of Claims

1.     This case concerns a lawyer's grave breach of his duties to his law firm. Mr. Harris, the attorney, obtained a "portfolio" of patents while a principal of Fish & Richardson by misusing firm resources and engaging in unauthorized legal work. The patent at issue in this case ("the '252 Patent" or "Patent") is one such patent. Mr. Harris then sought to cash in on his patents, including the '252 Patent, by offering them for sale to parties that Mr. Harris knew would file infringement actions against defendants that included his own firm's clients. The

instant lawsuit by ICR against Google, Inc. ("Google") is one such action against a Fish & Richardson client for alleged infringement of a patent Harris sold.

2.       In touting his patents for sale, Mr. Harris sought to identify prospective "targets" that purchasers could sue for alleged infringement.  Those targets included Fish & Richardson clients, *i.e.*, current clients of Mr. Harris's own firm of which he was a principal.

3.       Nonetheless, knowing full well that the purchasers would sue Fish & Richardson clients, Mr. Harris arranged to sell rights in the patents to various companies represented by Mr. Raymond Niro and his law firm, well-known patent plaintiffs' attorneys.  The plaintiff in this action, ICR, is one such Niro-represented company, created on the very same day that Mr. Harris purported to assign it the '252 Patent.

4.       Further, and according to ICR, Mr. Harris promised *to assist* with the prosecution of infringement actions arising on transferred patents, lawsuits that Mr. Harris knew would include claims against Fish & Richardson clients like Google.  On information and belief, Mr. Harris stood and may still stand to benefit financially from these suits against Firm clients.

5.       Less than two months after Mr. Harris purportedly assigned the '252 Patent, ICR (represented by Mr. Niro), turned around and sued Google in this action for alleged infringement. Similarly, other Niro-represented companies have sued other Fish & Richardson clients for alleged infringement of patents obtained and assigned by Mr. Harris.

6.       Mr. Harris kept his misconduct secret from Fish & Richardson, concealing from the Firm key facts about his patent dealings and misrepresenting or omitting other facts when confronted by Firm personnel.  As the facts have emerged, however, the breadth of Mr. Harris's betrayal is stunning.  While a principal of Fish & Richardson, Mr. Harris: (a) obtained and prosecuted numerous patents for his own benefit with misappropriated Firm resources and in

violation of his duties to the Firm; (b) specifically targeted Firm clients for lawsuits on the patents; (c) purported to sell the patents for his own personal gain to parties that he knew would sue Firm clients; and (d) pledged to assist in those lawsuits against Firm clients and likely retained a financial interest in the proceeds of those suits.

7.     At each step, Mr. Harris's breaches of his fiduciary and contractual obligations were numerous and severe.  At a minimum, Mr. Harris violated multiple provisions of his contract with Fish & Richardson and his duties of care and loyalty.  Fish & Richardson brings the third-party claims stated herein against Mr. Harris to remedy those breaches and to stop the continuing breaches of duty and ongoing damage caused by Mr. Harris.

8.     Fish & Richardson additionally asserts counterclaims against ICR, the initial plaintiff in this action, for a determination of the parties' rights in respect of the '252 Patent and all other patents that Mr. Harris assigned to ICR.  Both under the agreement between Fish & Richardson and Mr. Harris, and as a result of the misconduct described herein, Fish & Richardson possesses legal and/or equitable ownership rights in those patents that are inconsistent with and superior to those claimed by ICR.  The patents, including the '252 Patent, are also subject to a covenant not to sue companies who were clients of Fish & Richardson when Mr. Harris obtained the patents as a principal of the Firm.  Fish & Richardson, as owner or co-owner of the patents, does not consent to this lawsuit against Google.  The Court should declare Fish & Richardson's rights in the patents, including the '252 Patent, and should hold that ICR has no standing to sue Google for infringement of the Patent.  To the extent that Mr. Harris did possess any rights in the '252 Patent and transferred those rights to ICR, the Court should impose a constructive trust upon those rights for the benefit of Fish & Richardson and/or its clients.

## The Parties And Others Involved

### Fish & Richardson

9.      Fish & Richardson is a Massachusetts professional corporation with its principal place of business in Boston, Massachusetts.  Fish & Richardson has over 400 lawyers in offices across the country practicing in all areas of the law.  In the intellectual property field, Fish & Richardson is among the nation's oldest and most highly regarded firms.  The Firm has helped its clients protect their intellectual property and bring inventions to market for over 125 years.

### Scott C. Harris

10.     Scott C. Harris is a resident of San Diego, California and was a principal at Fish & Richardson from 1994 until his resignation on September 14, 2007.  At the time of Mr. Harris's resignation, he was one of the ten most highly paid principals at Fish & Richardson.  Mr. Harris also held leadership positions at the Firm.  Mr. Harris concentrated his practice in the intellectual property arena, namely the prosecution of patent applications before the United States Patent & Trademark Office ("USPTO").  Mr. Harris is admitted to practice before the USPTO and in Pennsylvania, California, and the District of Columbia.

### Illinois Computer Research, LLC

11.     ICR is an Illinois corporation that has its principal place of business at 125 South Wacker Drive, Suite 300, Chicago, Illinois, 60606.  ICR was formed on July 30, 2007.  On its application with the Illinois Secretary of State, ICR lists James B. Parker as its manager.  Mr. Parker is similarly listed as the manager or owner of at least three other entities that are plaintiffs and represented by Mr. Niro in other infringement suits involving patents transferred by Mr. Harris.

**Raymond P. Niro**

12.     Mr. Raymond Niro is a resident of Illinois and an attorney licensed to practice law in that state.  Mr. Niro is the senior partner of the Chicago law firm Niro, Scavone, Haller, & Niro, which specializes in filing patent infringement actions.  Mr. Niro and his firm represent ICR in this action.

**Jurisdiction And Venue**

13.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because of the diversity of citizenship of the parties and because the amount in controversy in this matter exceeds $75,000, exclusive of fees and costs.  The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a) because Fish & Richardson seeks a declaration of its rights arising under the patent laws of the United States.  The Court also has supplemental jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1367.

14.     Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events and omissions giving rise to Fish & Richardson's claims occurred in this district and a substantial part of the property that is the subject of this action is situated in this district.

**Factual Allegations**

**Harris Joins Fish & Richardson**

15.     Mr. Harris joined Fish & Richardson as a principal in 1994 and began work in the Firm's Washington, D.C. office.  Harris's status as a principal made him a shareholder in the Firm, and he was vested with voting power.  His practice centered around intellectual property, with a focus on patent prosecution.  Mr. Harris later moved to the Firm's San Diego, California office.  From 1994 through 2007, Mr. Harris used the resources of the Firm and the Firm's clients to develop a national reputation as a patent prosecution attorney.

16.    On December 30, 1994, Harris entered into a contract with Fish & Richardson (the "Law Firm Agreement").  (A copy of the Law Firm Agreement is attached as Exhibit A.) Because Mr. Harris breached the Law Firm Agreement in so many different ways, multiple provisions are relevant to this lawsuit and are set out below.

17.    Mr. Harris promised in the Law Firm Agreement to devote his full legal and business time to Fish & Richardson, promised not to work on matters detrimental to the interests of the Firm, and promised to obey applicable rules of ethics:

[§ 4]  The Employee's Covenants.

(a)    Extent of Service.  The Employee covenants and agrees to **devote his or her full business time, best efforts and skill to his or her employment with the [Firm]**, and to perform his or her services capably, faithfully and to the best of his or her ability.  The Employee shall abide by all policies, guidelines and procedures of the [Firm].

(b)    Outside Activities.  **The acceptance or performance by the Employee of offices, duties or assignments, other than the practice of law with the [Firm]**, which may impinge substantially on time or energy normally required for business of the [Firm] or that may be deemed by the Board of Directors to be detrimental to the best interests of the [Firm] . . . **must be approved in advance by the Board of Directors** . . . .   The ownership, purchase or sale of equity or other interest in, or other business dealings with, or the participation in the business of clients of the [Firm], including, without limitation, participation as an officer, director, trustee, manager or employee, by the Employee may be further limited and may be subject to prior approval of the Board of Directors . . . .

(c)    Professional Responsibility.  . . . **The Employee agrees to follow and abide by the ethics of the legal profession** and all regulations, rules, laws and ordinances relating thereto or regulating the practice of law.

(emphasis added.)

18.    Mr. Harris also promised to contribute to Fish & Richardson all income he generated by providing legal services and from activities related thereto:

[§ 6]  Accounting.  All income generated by the Employee for his services as a lawyer and all activities related thereto, such as writing of treatises and articles, shall belong to the [Firm], whether paid directly to the [Firm] or to the Employee.

19.     Mr. Harris also promised not to use the confidential information of Fish & Richardson or its clients for his own personal benefit:

> [§ 7]  Confidentiality.  The Employee will not at any time disclose to any other person, association or entity . . . **or use for his or her own benefit or gain, any confidential information of the [Firm]** obtained by him or her incident to employment with the [Firm] . . . .

(emphasis added.)

20.     Mr. Harris further promised not to take property from the Firm:

> [§ 8]  Firm Property.  No property of the [Firm] shall be transferred from the [Firm] without prior approval of the Board of Directors.

21.     And, Mr. Harris promised not to accept any legal engagements except those that were on behalf of Fish & Richardson:

> [§ 9]  Practice Engagements.  All engagements by the Employee to render legal services to clients and others, except as approved by the Board of Directors, shall be engagements on behalf of the [Firm] **and all fees or other compensation received on account of such services shall belong to the [Firm].  The Employee shall not practice law, except on behalf of the [Firm], without the prior approval of the Board of Directors.**  All clients shall be clients of the [Firm] and all files and other documents **and things relating to clients shall be property of the [Firm].**

(emphasis added.)

## Harris Begins Building a Patent "Portfolio"

22.     At least as early as September 1999, Mr. Harris began building a patent "portfolio" by filing for patent applications as an "inventor."  While a principal at Fish & Richardson, Mr. Harris obtained at least 25 patents for which he is listed as an inventor.

23.     Mr. Harris filed and prosecuted his patent applications using Fish & Richardson's resources, including but not limited to the time and assistance of Fish & Richardson secretarial and paralegal personnel, docketing and filing systems, letterhead and forms, and office equipment.

24.     Mr. Harris's efforts to prosecute his various patent applications also included his own legal services, which he had promised to devote exclusively to Firm clients.  For example, Mr. Harris provided legal services by drafting patent applications, including claims covering the inventions, submitting information disclosure statements, responding to "Office Actions" from the USPTO, and otherwise corresponding with the USPTO using his skills as an attorney.  In communicating with the USPTO, Harris identified himself as the "attorney of record" on his patent applications and correspondence.

25.     Among the patents that Mr. Harris obtained through the misuse of Firm resources and with his own legal services as described above is the '252 Patent.

26.     Mr. Harris has obtained more than 20 other patents on which he is identified as an inventor on the patent.  Harris obtained those patents by practicing law and prosecuting those patents on his own behalf and otherwise using Firm resources while a principal of Fish & Richardson.

**Harris Seeks To Profit From His Patent Applications**

27.     As his patent application portfolio began to grow, and notwithstanding his receipt of millions of dollars of compensation as a principal of Fish & Richardson, Mr. Harris began to seek opportunities to personally enrich himself through exploitation of the patents without regard to his obligations to Fish & Richardson or the Firm's clients.

28.     For example, at least as early as November 1999, Mr. Harris approached a Fish & Richardson client ("Client A") to inquire whether the client had an interest in licensing rights in certain technologies covered by at least one of Mr. Harris's patent applications.  Mr. Harris did not disclose to Fish & Richardson that he was proposing a self-interested transaction with a Firm client.  Mr. Harris also did not disclose that, under the Law Firm Agreement, the interests he proposed to license were the property of Fish & Richardson because, among other reasons, they

were the product of Mr. Harris's practice of law on behalf of the Firm and of Mr. Harris's use of Firm resources.

29.     As a result of his discussions with Client A, Mr. Harris and Client A entered into a license agreement regarding the technology later covered by Harris's '252 Patent.  Under the agreement, Mr. Harris granted the client an exclusive worldwide license to the "Touch and Feel Technology."  In return, the client granted Mr. Harris stock options and a royalty to be applied to sales of products incorporating the technology.  The agreement also required the client to pay $1 million to Harris within three years.  Mr. Harris did not disclose this agreement to Fish & Richardson.

30.     At times, Mr. Harris used Client A's name in Firm recordkeeping systems as the client for which he was supposedly prosecuting the '252 Patent.  However, it does not appear that Mr. Harris billed Client A for all of his work on the '252 Patent.  Rather, as described, Mr. Harris bartered his provision of legal services while practicing at Fish & Richardson in exchange for consideration from the client to Mr. Harris personally.

31.     By 2003, Mr. Harris's undisclosed dealings with Client A had not delivered the economic windfall that he was seeking.  On March 14, 2003, Harris sent an e-mail to Client A's executives stating that Client A had breached its agreement with Mr. Harris for failure to pay $1 million within three years.

32.     Rather than paying the $1 million, Client A returned the license to Mr. Harris.  Once again, Mr. Harris did not disclose this transaction to Fish & Richardson.  Because the license was the product of a valuable transaction concerning a Firm client, was tendered in consideration for Firm services, and was obtained with the use of Firm resources, it was the

property of Fish & Richardson under the Law Firm Agreement and the corporate opportunity doctrine.

33.     Mr. Harris, however, misled the Firm about the status of his prosecution efforts and the patent license.  When Firm personnel asked him the status of the '252 prosecution, Mr. Harris instructed that the Patent would "go abandoned" — *i.e.*, no further action was expected. In fact, however, Mr. Harris continued prosecuting the '252 Patent with the intent of enforcing that patent and his other patents against various parties, including clients of Fish & Richardson.

**Harris Seeks The Assistance of Mr. Niro, Knowing Lawsuits**
**Against Fish & Richardson Clients Will Result**

34.     Having deceived his colleagues and entered into undisclosed financial arrangements with at least one Firm client, Mr. Harris sought a new way to capitalize upon his patent portfolio.

35.     In 2006, Mr. Harris began operating a website with the address "imapatenttroll.com."  A "patent troll" is a pejorative term for someone who acquires rights in patents for the purpose of aggressively asserting the patents against alleged infringers.

36.     On March 21, 2006, Harris introduced himself to Mr. Niro, a well known patent plaintiffs' attorney.  Mr. Niro has described himself in published accounts as the first person ever to be referred to as a "patent troll."  Mr. Niro's firm states on its website that Mr. Niro has "recovered more than $800 million for his clients through trials or settlements" in the past eight years.

37.     Mr. Niro and his firm were no strangers to Fish & Richardson and its clients.  Mr. Niro's firm has represented plaintiffs in lawsuits and settlement negotiations against multiple clients of Fish & Richardson.  Mr. Niro's firm has also filed a complaint against Fish & Richardson itself, as a party, for alleged antitrust violations.  That case was eventually dismissed.

38.     On information and belief, while a principal at Fish & Richardson, Mr. Harris was aware of the Firm's adversarial relationships with Mr. Niro's clients and Mr. Niro's litigation against the Firm.

39.     Nonetheless, on March 21, 2006, Mr. Harris sought out Mr. Niro's assistance. As Mr. Harris explained in an e-mail he sent to Mr. Niro using the Fish & Richardson e-mail system and server, Harris "was a patentee on a number of patents, covering a number of things, some of which are being infringed by others."   Notwithstanding his fiduciary obligations to Fish & Richardson's clients and his contractual obligations to the Firm, Mr. Harris inquired of Mr. Niro, "I was wondering if this was something you could help me with."

40.     On March 22, 2006, Mr. Harris followed up his inquiry to Mr. Niro by sending an e-mail to Mr. Niro (again, using his Fish & Richardson e-mail account and using the Fish & Richardson e-mail server) attaching a report with Mr. Harris's descriptions of some of his patents.   In his report, Mr. Harris attempted to identify target companies or industries for infringement lawsuits.   At least one of the target companies identified by Mr. Harris in his report to Mr. Niro was a Fish & Richardson client.   In addition, other Fish & Richardson clients are well-known participants in some of the target industries that Mr. Harris identified.

41.     As a result of his secret discussions with Mr. Niro, which Mr. Harris did not disclose to any of his fellow principals or firm management at Fish & Richardson, Harris soon after entered into agreements transferring licenses and/or other rights in certain of his patents to a series of entities represented by or otherwise affiliated with Mr. Niro.   Mr. Harris used the Firm's resources to facilitate these secret transactions.

**Fish & Richardson Clients Are Sued On Harris's Patents**

42.    The first Niro-represented entity that Mr. Harris dealt with was Memory Control Enterprise ("MCE"), an Illinois corporation.  Mr. Harris purported to transfer rights in U.S. Patent No. 6,704,791 ("the '791 Patent") to MCE in 2006.

43.    Before purportedly transferring rights in the '791 Patent, Mr. Harris knew or should have known from his prior "targeting" activity and his knowledge of the Firm's clients that Fish & Richardson clients would be targets for infringement lawsuits filed by MCE.

44.    After the purported transfer, in March 2007, MCE sued a Fish & Richardson client ("Client B") alleging infringement of the '791 Patent.  In addition to MCE, Mr. Harris was a named plaintiff in this action against Client B.  MCE was represented by Mr. Niro's firm in this action.

45.    On August 30, 2007, MCE sued two other Fish & Richardson clients ("Clients C and D") for purported infringement of the '791 Patent.  MCE was again represented by Mr. Niro's firm.

46.    After Fish & Richardson learned of Mr. Harris's transfer of the '791 Patent to MCE, Fish & Richardson demanded an explanation from Mr. Harris for his actions.  Mr. Harris, however, deceived Fish & Richardson with misrepresentations and omissions about the extent of his patent holdings, the resources that he used to obtain the patents, the compensation that he had received for prosecuting the patents, and the fact that he had secretly targeted Firm clients for enforcing the patents.

**Harris Purportedly Assigns The '252 Patent To ICR, Which
Promptly Sues Another Fish & Richardson Client**

47.    On July 2007, Mr. Harris purported to sell and/or assign rights in the '252 Patent to ICR, another entity that Mr. Niro represents or with which he is otherwise affiliated.

48.     On information and belief, as part of the purported sale and/or assignment, Mr. Harris pledged, in a written agreement drawn up by Mr. Niro or his firm, that Harris would assist ICR with the prosecution of lawsuits against purported infringers of the '252 Patent.  Further, upon information and belief, the arrangement between Mr. Harris and ICR related to the '252 Patent provides Mr. Harris with a financial interest in the proceeds of litigation or settlements involving alleged infringement of the '252 Patent.  Fish & Richardson has asked for a copy of this agreement but Mr. Harris and Mr. Niro have refused to provide it.

49.     At the time Mr. Harris entered into the above arrangements with ICR regarding the '252 Patent, Harris knew that ICR would likely sue Fish & Richardson's clients for purported infringement of the Patent, including its client Google.

50.     In 2006, for example, Mr. Harris had corresponded with another patent attorney (again using the Fish & Richardson e-mail system) regarding potential targets for infringement actions based on the '252 Patent.  That attorney suggested to Mr. Harris that Google could be a target of such an action.

51.     Mr. Harris also knew that Google was a Firm client.  Fish & Richardson began representing Google in 2003 and has represented Google by prosecuting over one hundred patent applications, advising Google on intellectual property matters, and representing Google in patent infringement litigation.  Mr. Harris received multiple "conflict checks" during his time as a principal at Fish & Richardson, alerting him to various matters the Firm was handling on behalf of Google.  Further, Harris personally acted as a neutral "referee" on a Google conflict resolution inquiry within the Firm.

52.    Mr. Niro also knew that Google was a client of Fish & Richardson.  Mr. Niro had represented at least one plaintiff making patent infringement claims against Google in a matter in which Fish & Richardson represented Google.

53.    Nevertheless, and despite his duties to his law firm and its clients, Mr. Harris, with Mr. Niro's assistance, purported to assign the '252 Patent to ICR on July 30, 2007 and agreed to assist in litigation concerning the Patent — including litigation against Firm clients.

54.    ICR soon after filed the instant suit against Google on September 10, 2007, claiming infringement of the '252 Patent.  Mr. Niro and his firm represent ICR in this lawsuit. Upon information and belief, Mr. Niro and his firm possess a substantial contingent interest in any recovery made by ICR in this lawsuit.

55.    After ICR sued Google, Fish & Richardson again confronted Mr. Harris.  Harris again equivocated and was not truthful and candid about his activities, misrepresenting some facts and omitting others.  In light of his breach of fiduciary duties, breach of his contractual obligations, and his deception of the other shareholders at Fish & Richardson, Harris was asked to resign, which he did effective September 14, 2007.

## COUNT I
## (BREACH OF CONTRACT AGAINST MR. HARRIS)

56.    Paragraphs 1 to 55, above, are incorporated by reference as if fully set out here.

57.    The Law Firm Agreement was a valid and binding contract between Fish & Richardson and Scott Harris.

58.    Fish & Richardson performed all of its obligations under the Law Firm Agreement.

59. Mr. Harris, through the conduct set out in detail above, committed material breaches of the Law Firm Agreement and the implied covenant of good faith and fair dealing, including:

    a.     misusing Firm resources and confidential information to pursue personal gain at the expense of the Firm, in violation of his covenant to devote all of his services to the Firm, his covenant not to perform unauthorized outside activities, and his covenant to obey the rules of professional responsibility (Ex. A, Law Firm Agreement §§ 4(a)-(c));

    b.     misappropriating confidential information to pursue personal gain, in violation of express restrictions on using such confidential information (*e.g.*, *id.* § 7);

    c.     diverting from the Firm compensation for legal services he performed, including by bartering for personal benefits in lieu of billing the client for legal services and by failing to tender compensation received for such services (whether paid in cash or otherwise) to the Firm, in violation of terms requiring appropriate billing and the tendering of all compensation received for services to the Firm (*e.g.*, *id.* §§ 6, 9); and

    d.     transferring or purporting to transfer to himself or others Firm property, including rights associated with the '252 Patent and other patents, without authorization, in violation of provisions forbidding such transfers (*e.g.*, *id.* § 8).

60. The foregoing breaches of contract have caused and are causing Fish & Richardson substantial damages, including the loss of Firm resources and property, lost compensation for services performed by Firm personnel, and harm to the Firm's reputation and relations with its clients.

61. The Court should find that Mr. Harris has materially breached his contract with Fish & Richardson, that these breaches have directly injured Fish & Richardson, and should award Fish & Richardson damages and other relief consistent with the prayer for relief below.

## COUNT II
## (BREACH OF FIDUCIARY DUTIES AGAINST MR. HARRIS)

62.     Paragraphs 1 to 55, above, are incorporated by reference as if fully set out here.

63.     Mr. Harris was a fiduciary of Fish & Richardson by virtue of his position as a principal in the professional corporation and by virtue of the relationship of trust and confidence shared by Harris, Fish & Richardson, and the other principals of Fish & Richardson.

64.     Mr. Harris, through the conduct set out in detail above, breached his fiduciary duties to Fish & Richardson, including the duty of loyalty, including by:

    a.     diverting corporate resources and corporate opportunities to himself for his personal gain;

    b.     transferring or purporting to transfer corporate opportunities, property, or rights to others;

    c.     accepting substantial compensation from the Firm while acting as a "faithless fiduciary";

    d.     conducting business with Firm clients for his own personal gain;

    e.     arranging for, cooperating with, and facilitating lawsuits against Firm clients; and

    f.     agreeing to assist in lawsuits against Fish & Richardson clients.

65.     Mr. Harris's breaches of his fiduciary duties have caused and are causing Fish & Richardson substantial damages, including the loss of Firm resources and property, lost compensation for services performed by Firm personnel, substantial compensation paid to Harris while acting as a "faithless fiduciary," and harm to the Firm's reputation and relations with its clients.

66.     Mr. Harris's breaches of his fiduciary duties were marked by deception, bad faith, malice, and oppressive conduct, warranting the imposition of punitive damages.

67.     The Court should hold that Mr. Harris has breached his fiduciary duties to Fish & Richardson, enjoin Mr. Harris from further breaches, and otherwise award Fish & Richardson relief consistent with the prayer for relief below.

## COUNT III
## (DECLARATORY JUDGMENT AGAINST ICR AND MR. HARRIS)

68.     Paragraphs 1 to 67, above, are incorporated by reference as if fully set out here.

69.     There exists an actual, ripe, and justiciable controversy between Fish & Richardson, ICR, and Mr. Harris regarding each party's rights and interests in connection with the '252 Patent and any other U.S. or foreign patents or patent applications that Mr. Harris prosecuted and obtained through the misuse of Fish & Richardson resources and in breach of his contractual and fiduciary duties (the "Disputed Patents").

70.     As a result of the conduct and events described in detail above, Fish & Richardson possesses legal ownership, and/or equitable ownership, and/or other interests in the '252 Patent and the other Disputed Patents inconsistent with and superior to any interest claimed by ICR or Mr. Harris.  Fish & Richardson's ownership and related interests include:  (a) legal ownership of the '252 Patent and the other Disputed Patents by operation of law including by virtue of the Law Firm Agreement, Mr. Harris's misuse of Firm resources, and Mr. Harris's breach of his fiduciary duties; (b) alternatively, equitable ownership of the '252 Patent and the other Disputed Patents including by virtue of Mr. Harris's breaches and the above-detailed inequitable scheme; and (c) a restrictive covenant not to sue Fish & Richardson's clients applicable to the '252 Patents and the other Disputed Patents.  The Court should so declare pursuant to 28 U.S.C. § 2201.

71.     The Court should resolve the parties' dispute by declaring that Fish & Richardson has a legal or equitable ownership or other interest in the '252 Patent and other Disputed Patents

inconsistent with and superior to the interests asserted by Mr. Harris and ICR, that Fish & Richardson, not ICR, controls the right to sue upon those patents, and otherwise awarding relief to Fish & Richardson consistent with the below prayer for relief.

**COUNT IV**
**(CONSTRUCTIVE TRUST AGAINST ICR AND MR. HARRIS)**

72.     Paragraphs 1 to 55 and 61-67, above, are incorporated by reference as if fully set out here.

73.     This Count IV is pleaded in the alternative to Fish & Richardson's assertion of legal ownership of the '252 Patent and the other Disputed Patents.

74.     Mr. Harris and ICR have obtained or purported to obtain property and/or rights in property through the inequitable and wrongful acts set out in detail above, including breaches of fiduciary duties and the misuse of Fish & Richardson resources and confidential information.

75.     The property and/or rights in property that Mr. Harris and ICR obtained or purported to obtain includes the '252 Patent and all of the other Disputed Patents.

76.     The Court should impose a constructive trust upon any rights arising on the '252 Patent and the other Disputed Patents and upon any consideration that Mr. Harris has received for purportedly conveying the patents or any rights arising upon it.   The Court should additionally award Fish & Richardson relief consistent with the prayer for relief below.

**JURY DEMAND**

Fish & Richardson demands a jury for all claims so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Fish & Richardson respectfully requests that the Court enter judgment in its favor and against Scott Harris, including (and alternatively, as appropriate):

(a)     declaring that Fish & Richardson possesses legal or equitable ownership or another interest in the Disputed Patents inconsistent with and/or

superior to any interest asserted by Harris or purportedly conveyed by Harris;

(b)      awarding Fish & Richardson damages against Mr. Harris for the loss, misuse, or diversion of Firm resources, Firm opportunities, and compensation owed to the Firm;

(c)      awarding Fish & Richardson damages against Mr. Harris for injury he caused to its goodwill and relations with clients and to its reputation;

(d)      awarding Fish & Richardson punitive damages based on Mr. Harris's deceitful and malicious conduct;

(e)      awarding Fish & Richardson its attorneys fees in connection with this litigation as a direct and foreseeable injury caused by Mr. Harris's breaches of contract and his fiduciary obligations;

(f)      imposing a constructive trust upon the '252 Patent and the other Disputed Patents and/or any rights in those patents possessed or purportedly conveyed by Mr. Harris;

(g)      imposing a constructive trust in favor of Fish & Richardson upon any recovery for claimed infringement of the '252 Patent and the other Disputed Patents;

(h)      enjoining Mr. Harris from any further breach of his fiduciary duties, including restraining Mr. Harris from assisting with the prosecution of any lawsuit against Fish & Richardson clients;

(i)      awarding interest on all amounts owed;

(j)      awarding fees and expenses as allowed by law; and

(k)      awarding all other relief the Court deems necessary and appropriate.

Dated:  October 16, 2007            Respectfully submitted,

                                      FISH & RICHARDSON P.C.


By:    s/David J. Bradford
            dbradford@jenner.com
            One of Its Attorneys


David J. Bradford
Terrence J. Truax
Eric A. Sacks
Daniel J. Weiss
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, Illinois  60611
Telephone No:  312 222-9350
Facsimile No:  312 527-0484

<u>**CERTIFICATE OF SERVICE**</u>

I, Daniel J. Weiss, an attorney, caused the foregoing Fish & Richardson's Counterclaim and Third-Party Complaint to be filed with the Court by means of the Court's CM/ECF system, which will send notification of such filing to the following counsel at their e-mail addresses on file with the Court:

> Raymond P. Niro
> Paul K. Vickrey
> Richard B. Megley, Jr.
> Karen L. Blouin
> Niro, Scavone, Haller & Niro
> 181 W. Madison, Suite 4600
> Chicago, Illinois  60602

> *Counsel for Illinois Computer Research, LLC*

In addition, counsel will secure a waiver of summons from or will issue a summons to third-party defendant Scott C. Harris and will file the same with the Court.

> s/Daniel J. Weiss
> dweiss@jenner.com
> JENNER & BLOCK LLP
> 330 North Wabash Avenue
> Chicago, Illinois  60611
> Telephone No:  312 222-9350
> Facsimile No:  312 527-0484