# FISH & RICHARDSON P.C.

# EMPLOYMENT AGREEMENT

This AGREEMENT made as of this 30th day of December, 1994 by and between Fish & Richardson P.C., a Massachusetts professional corporation (the "Corporation"), and Scott C. Harris (the "Employee").

WHEREAS, the Employee seeks to be employed by the Corporation; and

WHEREAS, the Corporation seeks to employ the Employee, subject to the terms and conditions hereof.

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the sufficiency and receipt of which is hereby acknowledged, the parties hereto agree as follows:

1.    <u>Employment</u>. The Corporation hereby employs the Employee, and the Employee accepts such employment, upon the terms and conditions hereinafter set forth.

2.    <u>Capacity</u>. The Employee, except for temporary absence due to illness or accident, time spent in the Armed Services of the United States, vacations, and leaves of absence not to exceed two years, shall be actively engaged in the practice of law on behalf of the Corporation.

3.    <u>Term</u>. The Employee's employment shall commence on the 1st day of January, 1995 and shall continue until terminated in accordance with the provisions of Section 14 of this Agreement.

4.    <u>The Employee's Covenants</u>.

      (a)    <u>Extent of Service</u>. The Employee covenants and agrees to devote his or her full business time, best efforts and skill to his or her employment with the Corporation, and to perform his or her services capably, faithfully and to the best of his or her ability. The Employee shall abide by all policies, guidelines and procedures of the Corporation.

      (b)    <u>Outside Activities</u>. The acceptance or performance by the Employee of offices, duties or assignments, other than the practice of law with the Corporation, which may impinge substantially on time or energy normally required for business of the Corporation or that may be deemed by the Board of Directors to be detrimental to the best interests of the Corporation, such as, but not limited to, seeking or holding public office, extensive charitable work, or serving as an officer or director of another corporation, must be approved in advance by the Board of Directors. The ownership, purchase or sale of equity or other interests in, or other business dealings with, or the participation in the business of clients of the Corporation, including, without limitation, participation as an

officer, director, trustee, manager or employee, by the Employee may be further limited and may be subject to prior approval of the Board of Directors.

(c) <u>Professional Responsibility</u>. The power to direct, control and supervise the duties to be performed by the Employee shall be exercised by the Board of Directors, provided, however, that the Board shall not impose employment duties or constraints which would require the Employee to violate applicable rules of ethics. The Employee agrees to follow and abide by the ethics of the legal profession and all regulations, rules, laws and ordinances relating thereto or regulating the practice of law.

(d) <u>Guarantee of Leases and Other Agreements of the Corporation</u>. The Employee covenants and agrees to be bound by, and to assume the performance of, all of the terms, covenants, and conditions of all leases and other agreements of the Corporation, to the extent required by such leases and agreements, and, further, agrees to execute and deliver any agreement requested to evidence his or her obligations under such leases and other agreements.

(e) <u>Duty to Indemnify</u>. The Employee covenants and agrees that he or she will, to the extent of his or her individual liability under the Corporation's leases and other agreements pursuant to Section 4(d) above after apportionment of such liabilities among all Employees who have guaranteed such leases and other agreements, including former Employees who remain liable under the leases and other agreements at the date any liabilities arise thereunder (individually, an "Employee-Guarantor," and collectively, the "Employee-Guarantors"), in proportion to their relative salaries as of the date on which such liability arises, indemnify and hold harmless any other Employee-Guarantor for any amount over and above such Employee-Guarantor's apportioned share that such Employee-Guarantor has paid pursuant to his or her guarantee. If any Employee-Guarantor is unable to pay or fails to pay the full amount of his or her apportioned liability, the amount of his or her default on his or her apportioned liability shall be apportioned among the remaining Employee-Guarantors who were originally liable on such liability, in proportion to their original liability, and the Employee covenants and agrees that he or she will pay such additional apportioned liability, subject to the duty and obligation of the defaulting Employee-Guarantor to indemnify the Employee.

5. <u>Compensation and Benefits</u>. The compensation and benefits payable to the Employee under this Agreement shall be as follows:

(a) <u>Salary</u>. The Employee shall be paid a salary in such amount as shall be determined by the Compensation Committee appointed by the Board of Directors (the "Compensation Committee"). In addition to such salary, the Employee may receive an annual bonus, the amount and payment date or dates of which shall be determined by the Compensation Committee.

(b) <u>Regular Benefits</u>. The Employee shall also be entitled to participate in those medical insurance plans, life insurance plans, disability income plans, retirement plans,

bonus incentive plans and other benefit plans from time to time in effect generally for employees of the Corporation. Such participation shall be subject to (i) the terms of the applicable plan documents, (ii) generally applicable policies of the Corporation and (iii) the discretion of the Board of Directors or any administrative or other committee provided for in or contemplated by such plan.

(c)   Business Expenses. The Corporation encourages the Employee to develop and maintain contacts and relationships with clients, associate attorneys and other contacts in the United States and abroad, to attend professional meetings and conventions, and to travel when necessary or desirable for these purposes. The Employee may be reimbursed for his or her meeting, education, travel, professional and club membership and related expenses, or his or her entertainment and other business expenses in accordance with guidelines approved by the Board of Directors. Otherwise, such expenses shall be borne by the Employee.

(d)   Disability. If the Employee suffers a physical or mental disability that substantially interferes with the Employee's ability to meet his or her performance goal for the year, the Compensation Committee, after so determining, shall have the authority, after six months from the onset of the disability, to adjust the Employee's compensation from time to time prospectively on a basis prorated to actual performance after such six month period until the end of the disability. Upon the Employee's return to full activity after a period of disability, the Compensation Committee shall determine compensation to the Employee consistent with the Employee's anticipated level of activity and other compensation criteria and without regard to reduced performance during disability.

(e)   Relationship of Employee and Corporation. The Employee and the Corporation understand that the Board of Directors, in accordance with Massachusetts General Laws Chapter 156A, as amended, shall manage the business affairs of the Corporation. The relationship between the Corporation and the Employee is that of an employer and an employee.

6.   Accounting. All income generated by the Employee for his services as a lawyer and all activities related thereto, such as the writing of treatises and articles, shall belong to the Corporation, whether paid directly to the Corporation or to the Employee.

7.   Confidentiality. The Employee will not at any time disclose to any other person, association or entity (except as required by applicable law or in connection with the performance of his or her duties and responsibilities hereunder), or use for his or her own benefit or gain, any confidential information of the Corporation obtained by him or her incident to employment with the Corporation. The term "confidential information" includes, without limitation, information pertaining to any client or prospective client of the Corporation, financial information, business plans, business practices, client lists, and prospects and opportunities which have been implemented, discussed or considered by the Corporation, but does not include any information which has become part of the public domain by means other than the Employee's non-observance of his or her obligations

hereunder. The Employee agrees that the Corporation shall be entitled to injunctive relief for any breach by him or her of the covenants contained in this Section 8.

8. **Firm Property**. No property of the Corporation shall be transferred from the Corporation without prior approval of the Board of Directors.

9. **Practice Engagements**. All engagements by the Employee to render legal services to clients and others, except as approved by the Board of Directors, shall be engagements on behalf of the Corporation and all fees or other compensation received on account of such services shall belong to the Corporation. The Employee shall not practice law, except on behalf of the Corporation, without the prior approval of the Board of Directors. All clients shall be clients of the Corporation and all files and other documents and things relating to clients shall be property of the Corporation.

10. **Firm Policy Regarding Offices**. The Employee understands that the Corporation's offices in all locations are operated and managed as an integrated whole for the benefit of the entire Corporation. This policy applies to all financial, business, professional and administrative activities of the Corporation.

11. **Withholding**. All payments made by the Corporation under this Agreement shall be net of any tax or other amounts required to be withheld by the Corporation under applicable law.

12. **Furniture**. The Corporation shall, on request of the Employee, provide a loan in the amount of $10,000 to the Employee to be used for the purpose of purchasing furniture for the Employee's office. The loan shall be payable upon demand and shall bear interest at the prime rate in effect for the First National Bank of Boston, N.A., payable annually.

13. **Termination**. The Employee's employment hereunder shall terminate under the following circumstances:

    (a) **Death**. In the event of the Employee's death, the Employee's employment shall terminate on the date of his or her death.

    (b) **By Corporation, With or Without Cause**. Upon the vote of the holders of two-thirds of the shares of Voting Common Stock at a meeting of the stockholders, the Corporation may, at any time with cause, or upon 30 days' notice without cause, terminate the employment of the Employee. The Employee's employment shall be deemed to have terminated with the Corporation as of the date of such vote. Without limiting the preceding sentence, one or more of the following grounds may be considered cause:

        (i) Defalcation, theft, embezzlement, fraud, breach of trust, misrepresentation, or other conduct involving moral turpitude;

      (ii)    Any act or omission constituting grounds for discipline under any applicable code of professional responsibility or ethics;

      (iii)    An act or omission which impairs the trust and confidence of the stockholders in the Employee or the Employee's judgment;

      (iv)    The acceptance or performance of offices, duties or assignments disapproved by the Board of Directors pursuant to Section 9 hereof.

      (v)    Repeated failure by the Employee to discharge adequately such Employee's duties and responsibilities;

      (vi)    Failure to purchase stock or Notes from or sell stock or Notes to the Corporation when required pursuant to the By-laws;

      (vii)    Breach by the Employee of any term of this Agreement; and

      (viii)    Inability or unwillingness to perform the Employee's duties as an employee.

    (c)    <u>By Employee, Without Cause</u>.  The Employee's employment hereunder may be terminated without cause by the Employee effective on the last day of a month by giving forty-five days' notice or such shorter notice as may be accepted by the Board of Directors.

14.    <u>Consequences of Voluntary or Involuntary Termination</u>.

    (a)    <u>Cooperation after Termination</u>.  Following termination for any reason, the Employee shall continue to cooperate with the Corporation and to comply with reasonable requests of the Corporation concerning activities of the Corporation and of the Employee prior to termination.  After termination, the Employee shall be reasonably compensated in connection with any services requested by the Corporation and the Corporation shall provide coverage for the Employee under its professional liability insurance in connection with such requested services.

    (b)    <u>Settlement Upon Termination</u>.  The Corporation's financial settlement with the Employee if the employment of the Employee has been terminated for any reason shall be as follows:

      (i)    There shall be due from the Corporation to the Employee:

          (A)    any payments for stock owned or notes held by the Employee which are due pursuant to the terms of the Stock and Note Purchase Agreement dated as of the date hereof between the parties hereto;

     (B) the portion of the Employee's salary and bonus, if any, payable with respect to the portion of the year that the Employee was employed with the Corporation;

     (C) any other amounts held by the Corporation for the account of the Employee.

  (ii) There shall be due from the Employee to the Corporation any loans, debts or obligations of the Employee to the Corporation.

  (iii) The Corporation shall settle with the Employee by netting paragraphs (i) and (ii) above on a date within 10 days after completion of the audit of the Corporation's accounts for the year of termination (the "Settlement Date"). The net amount due the Corporation or the Employee shall be paid on the Settlement Date, except that:

     (A) if in the view of the Board of Directors the security and financial well being of the Corporation permit, the amount due to the Employee, minus any debts due to the Corporation from the Employee, may be paid within 30 days of the effective date of termination;

     (B) if in the view of the Board of Directors the security or financial well being of the Corporation so require, payment of the amount due to the Employee may be delayed for up to one year after the effective date of termination, with payment of interest for such period at a rate of 1% greater than the rate which the Corporation would pay on a revolving credit loan.

 (c) <u>Liability After Termination</u>. If the Employee's employment has been terminated, the Employee shall remain liable to the Corporation after such termination for any debts owed to the Corporation by the Employee, for any guarantees due the Corporation from the Employee, and for any other liability owed to the Corporation by the Employee prior to withdrawal, except as and to the extent discharged in writing by the Board of Directors. In the discretion of the Board of Directors, the Corporation may withhold from payments to the Employee an amount estimated to be required to meet the Employee's liabilities to the Corporation.

 (d) <u>Liability for Leases and Other Agreements</u>.

  (i) Following termination due to disability, retirement or death of the Employee, the Corporation shall notify its landlords and other contract obligees, as applicable, to seek the immediate release of the Employee or his or her estate from any future liability under and to the extent provided in the

Corporation's leases and other agreements. This provision shall not release the Employee from any liability accrued prior to termination.

(ii)  Following termination for any other reason, the Corporation shall seek consent of its landlords and other contract obligees, as applicable, in sufficient time to release the Employee from future liability under and to the extent provided in the Corporation's leases and other agreements as of the fifth anniversary of termination or at such earlier time as the Corporation shall in its sole discretion determine.

15. <u>Assignment</u>. This Agreement shall not be assigned by the Employee. The Corporation may assign its rights under this Agreement without the consent of the Employee in the event that the Corporation shall hereafter effect a reorganization, consolidate with or merge into any other party, or transfer all or substantially all of its properties or assets to any other party.

16. <u>Conflicting Agreements</u>. The Employee hereby represents and warrants that the execution of this Agreement and the performance of his or her obligations hereunder will not breach or be in conflict with any other agreement to which he is a party or is bound, and that he is not now subject to any covenants against competition or similar covenants which would affect the performance of his or her obligations hereunder.

17. <u>Entire Agreement</u>. This Agreement contains the entire agreement of the parties with respect to its subject matter and no waiver, modification or change of any of its provisions shall be valid unless in writing and signed by the party against whom such claimed waiver, modification or change is sought to be enforced.

18. <u>Waiver of Breach</u>. The waiver of any breach of any term or condition of this Agreement shall not be deemed to constitute a waiver of any other term or condition of this Agreement.

19. <u>Notices</u>. Every notice given by one party to the other pursuant to this Agreement shall be in writing and shall be given by registered or certified mail, return receipt requested, addressed to such other party at the address set forth below, or to such other address as may hereafter be specified by notice in writing given in the same manner:

A.  To the Corporation:

Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804

    B.  To the Employee:

      Scott C. Harris
      7988 Foxmoor Drive
      Vienna, VA 22027

  20.  Severability. If any term or provision of this Agreement or the application thereof to any person or circumstances shall to any extent be invalid or unenforceable, the remainder of this Agreement and the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

  21.  Applicable Law. This Agreement shall be governed, construed and enforced in accordance with the laws of the Commonwealth of Massachusetts.

  22.  Amendments. The terms of this Agreement may be amended in writing agreed to by the mutual consent of the Employee and the Corporation acting by majority vote of its Board of Directors.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year first above written.

FISH & RICHARDSON P.C.

By: _____
Robert E. Hillman
President


EMPLOYEE:

_____
Scott C. Harris

136167.c1