IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS COMPUTER RESEARCH, LLC., ) | |
| ) | |
| Plaintiff and Counterclaim ) | |
| Defendant, ) | |
| ) | |
| v. ) | Case No.  07 C 5081 |
| ) | |
| GOOGLE INC., ) | Judge Rebecca R. Pallmeyer |
| Defendant, and ) | Mag. Judge Maria Valdez |
| ) | |
| FISH & RICHARDSON P.C., ) | |
| Defendant, Counterclaimant and ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| SCOTT C. HARRIS, ) | |
| Third-Party Defendant. ) | |

**ILLINOIS COMPUTER RESEARCH, LLC'S REPLY TO
FISH & RICHARDSON P.C.'S COUNTERCLAIM AND
SCOTT C. HARRIS' ANSWER TO THIRD-PARTY COMPLAINT**

Plaintiff and Counterclaim Defendant, Illinois Computer Research, LLC ("ICR")

replies to Fish & Richardson P.C.'s ("Fish") counterclaim and Third-Party Defendant,

Scott C. Harris ("Harris) answers Fish's third-party complaint as follows:

**Reply to Counterclaims And Answer To Third-Party Complaint**

**Nature of Claims**

1.     This case concerns a lawyer's grave breach of his duties to his law firm.
Mr. Harris, the attorney, obtained a "portfolio" of patents while a principal of Fish &
Richardson by misusing firm resources and engaging in unauthorized legal work.  The
patent at issue in this case ("the '252 Patent" or "Patent") is one such patent.  Mr. Harris
then sought to cash in on his patents, including the '252 Patent, by offering them for
sale to parties that Mr. Harris knew would file infringement actions against defendants
that included his own firm's clients.  The instant lawsuit by ICR against Google, Inc.
("Google") is one such action against a Fish & Richardson client for alleged infringement
of a patent Harris sold.

1

Dockets.Justia.com

**Response**:

First Sentence: The first sentence is not a statement of fact or allegation, but is an argument. ICR and Harris deny the arguments contained in the first sentence.

Second Sentence: ICR and Harris admit that Mr. Harris is an attorney, and that Mr. Harris is the inventor of a portfolio of patents that he lawfully obtained while an employee of Fish and Richardson. ICR and Harris deny the remaining allegations of the second sentence of Paragraph 1, including without limitation, that: (1). Mr. Harris was a principal of Fish & Richardson; (2). Mr. Harris misused firm resources; and (3). Mr. Harris engaged in unauthorized legal work.

Third Sentence: ICR and Harris admit that Mr. Harris is the inventor of the claimed inventions of the '252 Patent, but deny any allegation that Mr. Harris obtained that patent by misusing firm resources or engaging in unauthorized legal work.

Fourth Sentence: ICR and Harris deny the allegations contained in the fourth sentence of Paragraph 1.

Fifth Sentence: ICR and Harris admit that pursuant to Fish & Richardson's instruction to Mr. Harris, Mr. Harris sold the '252 Patent to ICR. ICR and Harris admit that ICR has brought this patent infringement lawsuit against Google, Inc. ICR and Harris deny the remaining allegations of sentence five of Paragraph 1.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 1.

2.      In touting his patents for sale, Mr. Harris sought to identify prospective "targets" that purchasers could sue for alleged infringement. Those targets included Fish & Richardson clients, *i.e.,* current clients of Mr. Harris's own firm of which he was a principal.

**Response**:

First Sentence:  This allegation appears to be made on the basis of a privileged attorney-client communication Fish & Richardson and its lawyer improperly obtained. ICR and Harris admit that pursuant to Fish & Richardson's instruction to Mr. Harris that he sell his patents in order to keep his job, Mr. Harris sold certain of his patents and in response to a request from prospective purchasers, identified entities that were believed in good faith to infringe those patents.  ICR and Harris deny the remaining allegations of the first sentence of Paragraph 2.

Second Sentence:  ICR and Harris deny the allegations contained in the second sentence of Paragraph 2.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 2.

3.    Nonetheless, knowing full well that the purchasers would sue Fish & Richardson clients, Mr. Harris arranged to sell rights in the patents to various companies represented by Mr. Raymond Niro and his law firm, well-known patent plaintiffs' attorneys.  The plaintiff in this action, ICR, is one such Niro-represented company, created on the very same day that Mr. Harris purported to assign it the '252 Patent.

**Response**:

First Sentence:      ICR and Harris deny the allegations contained in the first sentence of Paragraph 3.

Second Sentence:  ICR and Harris admit that ICR is represented by the law firm Niro, Scavone, Haller & Niro in this case.  ICR and Harris admit that pursuant to Fish & Richardson's instruction to Mr. Harris to sell his patents, Mr. Harris sold his '252 Patent to ICR, and in connection with that sale, assigned his '252 Patent to ICR.  ICR and Harris admit that ICR registered with the Illinois Secretary of State's office on the same

day that Harris assigned the '252 Patent to ICR.  ICR and Harris deny any remaining

allegations of Paragraph 3.

Except where expressly admitted, ICR and Harris deny the allegations of

Paragraph 3.

4.     Further, and according to ICR, Mr. Harris promised *to assist* with the prosecution of infringement actions arising on transferred patents, lawsuits that Mr. Harris knew would include claims against Fish & Richardson clients like Google.  On information and belief, Mr. Harris stood and may still stand to benefit financially from these suits against Firm clients.

**Response:**

First Sentence:     ICR and Harris deny the allegations contained in the first

sentence of Paragraph 4.

Second Sentence:  ICR and Harris admit that a confidential agreement exists

under which Mr. Harris sold his '252 Patent to ICR (at the instruction of Fish &

Richardson), and there is a provision whereby ICR agreed to pay Mr. Harris for the sale

and assignment of his patents.

Except where expressly admitted, ICR and Harris deny the allegations contained

in Paragraph 4.

5.     Less than two months after Mr. Harris purportedly assigned the '252 Patent, ICR (represented by Mr. Niro), turned around and sued Google in this action for alleged infringement.  Similarly, other Niro-represented companies have sued other Fish & Richardson clients for alleged infringement of patents obtained and assigned by Mr. Harris.

**Response:**

First Sentence:     ICR and Harris admit that less than two months after Mr.

Harris assigned the '252 Patent to ICR, again based on Fish & Richardson's instruction

to Mr. Harris that he sell his patents in order to keep his job at Fish & Richardson, ICR

sued Google for infringement of the '252 Patent.  ICR and Harris admit that Niro,

Scavone, Haller & Niro represent ICR in this lawsuit.  ICR and Harris deny any

remaining allegations contained in the first sentence of Paragraph 5.

Second Sentence:  ICR and Harris lack sufficient information to either admit or

deny the allegations contained in the second sentence of Paragraph 5 and, thus, ICR

and Harris deny the allegations contained in Paragraph 5.

Except where expressly admitted, ICR and Harris deny the allegations of

Paragraph 5.

6.    Mr. Harris kept his misconduct secret from Fish & Richardson, concealing from the Firm key facts about his patent dealings and misrepresenting or omitting other facts when confronted by Firm personnel.  As the facts have emerged, however, the breadth of Mr. Harris's betrayal is stunning.  While a principal of Fish & Richardson, Mr. Harris:  (a) obtained and prosecuted numerous patents for his own benefit with misappropriated Firm resources and in violation of his duties to the Firm; (b) specifically targeted Firm clients for lawsuits on the patents; (c) purported to sell the patents for his own personal gain to parties that he knew would sue Firm clients; and (d) pledged to assist in those lawsuits against Firm clients and likely retained a financial interest in the proceeds of those suits.

**Response**:

First Sentence:    ICR and Harris deny the allegations contained in the first

sentence of Paragraph 6.

Second Sentence:  The second sentence of Paragraph 6 is an argument which

is neither a statement of fact or allegation and, thus, ICR and Harris deny the argument

contained in the second sentence of Paragraph 6.

Third Sentence:    ICR and Harris deny the allegations contained in the third

sentence of Paragraph 6.

Except where expressly admitted, ICR and Harris deny the allegations of

Paragraph 6.

7.     At each step, Mr. Harris's breaches of his fiduciary and contractual obligations were numerous and severe.  At a minimum, Mr. Harris violated multiple provisions of his contract with Fish & Richardson and his duties of care and loyalty. Fish & Richardson brings the third-party claims stated herein against Mr. Harris to remedy those breaches and to stop the continuing breaches of duty and ongoing damage caused by Mr. Harris.

**Response:**

First Sentence:     ICR and Harris deny the allegations contained in the first sentence of Paragraph 7.

Second Sentence:  ICR and Harris deny the allegations contained in the second sentence of Paragraph 7.

Third Sentence:     ICR and Harris deny the allegations contained in the third sentence of Paragraph 7.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 7.

8.     Fish & Richardson additionally asserts counterclaims against ICR, the initial plaintiff in this action, for a determination of the parties' rights in respect of the '252 Patent and all other patents that Mr. Harris assigned to ICR.  Both under the agreement between Fish & Richardson and Mr. Harris, and as a result of the misconduct described herein, Fish & Richardson possesses legal and/or equitable ownership rights in those patents that are inconsistent with and superior to those claimed by ICR.  The patents, including the '252 Patent, are also subject to a covenant not to sue companies who were clients of Fish & Richardson when Mr. Harris obtained the patents as a principal of the Firm.  Fish & Richardson, as owner or co-owner of the patents, does not consent to this lawsuit against Google.  The Court should declare Fish & Richardson's rights in the patents, including the '252 Patent, and should hold that ICR has no standing to sue Google for infringement of the Patent.  To the extent that Mr. Harris did possess any rights in the '252 Patent and transferred those rights to ICR, the Court should impose a constructive trust upon those rights for the benefit of Fish & Richardson and/or its clients.

**Response:**

First Sentence:     ICR and Harris admit that Fish & Richardson is asserting counterclaims against ICR for a determination of the parties' rights in respect of the '252

Patent and all other patents that Mr. Harris assigned to ICR, but ICR and Harris deny that Fish & Richardson's counterclaims have any merit.   ICR and Harris deny the allegations contained in the first sentence of Paragraph 8.

Second Sentence:   ICR and Harris deny the allegations contained in the second sentence of Paragraph 8.

Third Sentence:     ICR and Harris deny the allegations contained in the third sentence of Paragraph 8.

Fourth Sentence:     ICR and Harris deny the allegations contained in the fourth sentence of Paragraph 8.

Fifth Sentence:     ICR and Harris deny the allegations contained in the fifth sentence of Paragraph 8.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 8.

### The Parties And Others Involved

#### Fish & Richardson

9.     Fish & Richardson is a Massachusetts professional corporation with its principal place of business in Boston, Massachusetts.  Fish & Richardson has over 400 lawyers in offices across the country practicing in all areas of the law.  In the intellectual property field, Fish & Richardson is among the nation's oldest and most highly regarded firms.   The Firm has helped its clients protect their intellectual property and bring inventions to market for over 125 years.

**Response:**

First Sentence:     ICR and Harris lack sufficient knowledge or information to either admit or deny the allegation contained in the first sentence of Paragraph 9 and, therefore, deny same.

Second Sentence:  ICR and Harris lack sufficient information to either admit or deny the allegations contained in the second sentence of Paragraph 9 and, thus, ICR and Harris deny the allegations contained in the second sentence of Paragraph 9.

Third Sentence:  ICR and Harris have insufficient information to compare Fish's age or standing with other law firms and thus deny the allegations contained in the third sentence of Paragraph 9.

Fourth Sentence:  ICR and Harris lack sufficient information to either admit or deny the allegations contained in the fourth sentence of Paragraph 9 and, thus, ICR and Harris deny the allegations contained in the fourth sentence of Paragraph 9.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 9.

### Scott C. Harris

10.    Scott C. Harris is a resident of San Diego, California and was a principal at Fish & Richardson from 1994 until his resignation on September 14, 2007.  At the time of Mr. Harris's resignation, he was one of the ten most highly paid principals at Fish & Richardson.  Mr. Harris also held leadership positions at the Firm.  Mr. Harris concentrated his practice in the intellectual property arena, namely the prosecution of patent applications before the United States Patent & Trademark Office ("USPTO").  Mr. Harris is admitted to practice before the USPTO and in Pennsylvania, California, and the District of Columbia.

**Response:**

First Sentence:  ICR and Harris admit that Mr. Harris was an employee at Fish & Richardson from 1994 until his forced resignation on September 14, 2007.  ICR and Harris deny any remaining allegations of the first sentence of Paragraph 10, including without limitation, that Mr. Harris was a principal at Fish & Richardson.  In the alleged "Employment Agreement" filed by Fish & Richardson in this case, Fish &

Richardson deemed Mr. Harris to be a mere "employee" of the firm whom Fish & Richardson could fire at any time for any reason.

Second Sentence:   ICR and Harris deny the allegations contained in the second sentence of Paragraph 10.

Third Sentence:   ICR and Harris deny the allegations contained in the third sentence of Paragraph 10.

Fourth Sentence:   ICR and Harris admit that allegations contained in the fourth sentence of Paragraph 10.

Fifth Sentence:   ICR and Harris admit that allegations contained in the fifth sentence of Paragraph 10.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 10.

### Illinois Computer Research, LLC

11.     ICR is an Illinois corporation that has its principal place of business at 125 South Wacker Drive, Suite 300, Chicago, Illinois 60606.  ICR was formed on July 30, 2007.  On its application with the Illinois Secretary of State, ICR lists James B. Parker as its manager.  Mr. Parker is similarly listed as the manager or owner of at least three other entities that are plaintiffs and represented by Mr. Niro in other infringement suits involving patents transferred by Mr. Harris.

**Response:**

First Sentence:   ICR and Harris admit the allegations contained in the first sentence of Paragraph 11.

Second Sentence:  ICR and Harris admit that ICR registered with the Illinois Secretary of State office on July 30, 2007.  ICR and Harris deny any remaining allegations contained in the second sentence of Paragraph 11.

Third Sentence:     ICR and Harris admit the allegations contained in the third sentence of Paragraph 11.

Fourth Sentence:     ICR and Harris deny the allegations contained in the fourth sentence of Paragraph 11.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 11.

### Raymond P. Niro

12.     Mr. Raymond Niro is a resident of Illinois and an attorney licensed to practice law in that state.  Mr. Niro is the senior partner of the Chicago law firm Niro, Scavone, Haller & Niro, which specializes in filing patent infringement actions.  Mr. Niro and his firm represent ICR in this action.

**Response:**

First Sentence:     ICR and Harris deny Mr. Niro is a resident of Illinois but admit he is licensed to practice law in Illinois, Florida and Colorado.  It is admitted that Mr. Niro and other Niro, Scavone lawyers represent ICR; otherwise denied.

Second Sentence:  ICR and Harris admit that Mr. Niro is the senior partner of the Chicago law firm Niro, Scavone, Haller & Niro.  ICR and Harris admit that Niro, Scavone, Haller & Niro is one of the most highly regarded intellectual property law firms in the United States, and that from time-to-time, the Niro law firm files patent infringement actions on behalf of its clients.  ICR and Harris deny any remaining allegations contained in the second sentence of Paragraph 12.

Third Sentence:     ICR and Harris admit the allegation contained in the third sentence of Paragraph 12.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 12.

**Jurisdiction and Venue**

13.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 because of the diversity of citizenship of the parties and because the amount in controversy in this matter exceeds $75,000, exclusive of fees and costs.  The Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1338(a) because Fish & Richardson seeks a declaration of its rights arising under the patent laws of the United States.  The Court also has supplemental jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §1367.

**Response**:

First Sentence:     ICR and Harris admit that there is diversity of citizenship but lack sufficient knowledge and information in order to either admit or deny that the amount in controversy exceeds $75,000, exclusive of fees and costs, and, thus, ICR and Harris deny that the amount of controversy exceeds that jurisdictional threshold.

Second Sentence:  ICR and Harris admit that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338 (a), but deny that Fish & Richardson has any right to any of the patents at issue in this case.  ICR and Harris deny any remaining allegations contained in the second sentence of Paragraph 13.

Third Sentence:     ICR and Harris deny the allegations contained in the third sentence of Paragraph 13.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 13.

14.     Venue is appropriate in this judicial district pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the events and omissions giving rise to Fish & Richardson's claims occurred in this district and a substantial part of the property that is the subject of this action is situated in this district.

**Response**:

Admitted that venue is appropriate in this judicial district, but deny that venue is appropriate under 28 U.S.C. § 1391 (a)(2) .

11

## Factual Allegations

### Harris Joins Fish & Richardson

15.     Mr. Harris joined Fish & Richardson as a principal in 1994 and began work in the Firm's Washington, D.C. office.  Harris's status as a principal made him a shareholder in the Firm, and he was vested with voting power.  His practice centered around intellectual property, with a focus on patent prosecution.  Mr. Harris later moved to the Firm's San Diego, California office.  From 1994 through 2007, Mr. Harris used the resources of the Firm and the Firm's clients to develop a national reputation as a patent prosecution attorney.

### Response:

First Sentence:     ICR and Harris admit that Mr. Harris joined Fish & Richardson as an employee in 1994 and began work in the Firm's Washington, D.C. office.  ICR and Harris deny the remaining allegations contained in the first sentence of Paragraph 15, including without limitation, denying that Mr. Harris was a principal of the Firm.

Second Sentence:  ICR and Harris deny the allegations contained in the second sentence of Paragraph 15, including without limitation, that Mr. Harris was a principal at Fish & Richardson.

Third Sentence:     ICR and Harris admit the allegations contained in the third sentence of Paragraph 15.

Fourth Sentence:     ICR and Harris admit the allegations contained in the fourth sentence of Paragraph 15.

Fifth Sentence:     ICR and Harris deny the allegations contained in the fifth sentence of Paragraph 15.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 15.

16.    On December 30, 1994, Harris entered into a contract with Fish & Richardson (the "Law Firm Agreement").    (A copy of the Law Firm Agreement is attached as Exhibit A).   Because Mr. Harris breached the Law Firm Agreement in so many different ways, multiple provisions are relevant to this lawsuit and are set out below.

**Response:**

First Sentence:    ICR and Harris admit the allegations contained in the first sentence of Paragraph 16, except that there was no Exhibit A attached to Fish & Richardson's counterclaim and third-party complaint.

Second Sentence:   ICR and Harris deny the allegations contained in the second sentence of Paragraph 16.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 16.

17.    Mr. Harris promised in the Law Firm Agreement to devote his full legal and business time to Fish & Richardson, promised not to work on matters detrimental to the interests of the Firm, and promised to obey applicable rules of ethics:

[§ 4]    The Employee's Covenants.

(a)    Extent of Service.  The Employee covenants and agrees to **devote his or her full business time, best efforts and skill to his or her employment with the [Firm]**, and to perform his or her services capably, faithfully and to the best of his or her ability.  The Employee shall abide by all policies, guidelines and procedures of the [Firm].

(b)    Outside Activities.  **The acceptance of performance by the Employee of offices, duties or assignments, other than the practice of law with the [Firm]**, which may impinge substantially on time or energy normally required for business of the [Firm] or that may be deemed by the Board of Directors to be detrimental to the best interests of the [Firm] … **must be approved in advance by the Board of Directors** ….   The ownership, purchase or sale of equity or other interest in, or other business dealings with, or the participation in the business of clients of the [Firm], including, without limitation, participation as an officer, director, trustee, manager or employee, by the Employee may be further limited and may be subject to prior approval of the Board of Directors ….

13

(c)    <u>Professional Responsibility</u>. … ***The Employee agrees to follow and abide by the ethics of the legal profession*** and all regulations, rules, laws and ordinances relating thereto or regulating the practice of law.

(emphasis added).

**<u>Response</u>:**

ICR and Harris admit that Paragraph 4, sub-paragraphs (a)-(c) of the Law Firm

Agreement read as follows:

4.    <u>The Employee's Covenants</u>.

(a)    <u>Extent of Service</u>.  The Employee covenants and agrees to devote his or her full business time, best efforts and skill to his or her employment with the Corporation, and to perform his or her services capably, faithfully and to the best of his or her ability.  The Employee shall abide by all policies, guidelines and procedures of the Corporation.

(b).    <u>Outside Activities</u>.  The acceptance or performance by the Employee of offices, duties or assignments, other than the practice of law with the Corporation, which may impinge substantially on time or energy normally required for business of the Corporation or that may be deemed by the Board of Directors to be detrimental to the best interests of the Corporation, such as, but not limited to, seeking or holding public office, extensive charitable work, or serving as an officer or director of another corporation, must be approved in advance by the Board of Directors.  The ownership, purchase or sale of equity or other interests in, or other business dealings with, or the participation in the business of clients of the Corporation, including, without limitation, participation as an officer, director, trustee, manager or employee, by the Employee may be further limited and may be subject to prior approval of the Board of Directors.

(c).    <u>Professional Responsibility</u>.  The power to direct, control and supervise the duties to be performed by the Employee shall be exercised by the Board of Directors, provided, however, that the Board shall not impose employment duties or constraints which would require the Employee to violate applicable rules of ethics.  The Employee agrees to follow and abide by the ethics of the legal profession and all regulations, rules, laws and ordinances relating thereto or regulating the practice of law.

ICR and Harris admit that Mr. Harris signed the Law Firm Agreement.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 17.

18.     Mr. Harris also promised to contribute to Fish & Richardson all income he generated by providing legal services and from activities related thereto:

[§ 6]    Accounting.  All income generated by the Employee for his services as a lawyer and all activities related thereto, such as writing of treatises and articles, shall belong to the [Firm], whether paid directly to the [Firm] or to the Employee.

**Response:**

ICR and Harris admit that Paragraph 6 of the Law Firm Agreement reads as follows:

6.     Accounting.  All income generated by the Employee for his services as a lawyer and all activities related thereto, such as the writing of treatises and articles, shall belong to the Corporation, whether paid directly to the Corporation or to the Employee.

ICR and Harris admit that Mr. Harris signed the Law Firm Agreement.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 18.

19.     Mr. Harris also promised not to use the confidential information of Fish & Richardson or its clients for his own personal benefit:

[§ 7]    Confidentiality.  The Employee will not at any time disclose to any other person, association or entity … ***or use for his or her own benefit or gain, any confidential information of the [Firm]*** obtained by him or her incident to employment with the [Firm] ….

**Response:**

ICR and Harris admit that Paragraph 7 of the Law Firm Agreement reads as follows:

7.     Confidentiality.  The Employee will not at any time disclose to any other person, association or entity (except as required by applicable law or in connection with the performance of his or her duties and responsibilities

hereunder), or use for his or her own benefit or gain, any confidential information of the Corporation obtained by him or her incident to employment with the Corporation.  The term "confidential information" includes, without limitation, information pertaining to any client or prospective client of the Corporation, financial information, business plans, business practices, client lists, and prospects and opportunities which have been implemented, discussed or considered by the Corporation, but does not include any information which has become part of the public domain by means other than the Employee's non-observance of his or her obligations hereunder.  The Employee agrees that the Corporation shall be entitled to injunctive relief for any breach by him or her of the covenants contained in this Section 8.

ICR and Harris admit that Mr. Harris signed the Law Firm Agreement.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 19.

20.    Mr. Harris further promised not to take property from the Firm:

[§ 8]   Firm Property.  No property of the [Firm] shall be transferred from the [Firm] without prior approval of the Board of Directors.

**Response:**

ICR and Harris admit that Paragraph 8 of the Law Firm Agreement reads as follows:

8.    Firm Property.  No property of the Corporation shall be transferred from the Corporation without prior approval of the Board of Directors.

ICR and Harris admit that Mr. Harris signed the Law Firm Agreement.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 20.

21.    And, Mr. Harris promised not to accept any legal engagements except those that were on behalf of Fish & Richardson:

[§ 9]   Practice Engagements.  All engagements by the Employee to render legal services to clients and others, except as approved by the Board of Directors, shall be engagements on behalf of the [Firm] ***and all fees or other compensation received on account of such services***

**shall belong to the [Firm].  The Employee shall not practice law, except on behalf of the [Firm], without the prior approval of the Board of Directors.**  All clients shall be clients of the [Firm] and all files and other documents **and things relating to clients shall be property of the [Firm]**.

(emphasis added).

**<u>Response</u>:**

ICR and Harris admit that Paragraph 9 of the Law Firm Agreement reads as follows:

9.    <u>Practice Engagements</u>.    All engagements by the Employee to render legal services to clients and others, except as approved by the Board of Directors, shall be engagements on behalf of the Corporation and all fees or other compensation received on account of such services shall belong to the Corporation.  The Employee shall not practice law, except on behalf of the Corporation, without the prior approval of the Board of Directors.  All clients shall be clients of the Corporation and all files and other documents and things relating to clients shall be property of the Corporation.

ICR and Harris admit that Mr. Harris signed the Law Firm Agreement.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 21.

**<u>Harris Begins Building a Patent "Portfolio"</u>**

22.    At least as early as September 1999, Mr. Harris began building a patent "portfolio" by filing for patent applications as an "inventor."  While a principal at Fish & Richardson, Mr. Harris obtained at least 25 patents for which he is listed as an inventor.

**<u>Response</u>:**

First Sentence:    ICR and Harris admit Mr. Harris filed patent applications in which he was named as an inventor.

Second Sentence:  ICR and Harris deny Mr. Harris was a principal of Fish & Richardson, but admit the other allegations contained in the second sentence of Paragraph 22.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 22.

23.    Mr. Harris filed and prosecuted his patent applications using Fish & Richardson's resources, including but not limited to the time and assistance of Fish & Richardson secretarial and paralegal personnel, docketing and filing systems, letterhead and forms, and office equipment.

**Response**:

ICR and Harris deny the allegation contained in Paragraph 23.

24.    Mr. Harris's efforts to prosecute his various patent applications also included his own legal services, which he had promised to devote exclusively to Firm clients.  For example, Mr. Harris provided legal services by drafting patent applications, including claims covering the inventions, submitting information disclosure statements, responding to "Office Actions" from the USPTO, and otherwise corresponding with the USPTO using his skills as an attorney.  In communicating with the USPTO, Harris identified himself as the "attorney of record" on his patent applications and correspondence.

**Response**:

First Sentence:  ICR and Harris deny the allegation contained in the first sentence of Paragraph 24.

Second Sentence:  ICR and Harris deny the allegation contained in the second sentence of Paragraph 24.

Third Sentence:    ICR and Harris admit the allegation contained in the third sentence of Paragraph 24.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 24.

25.     Among the patents that Mr. Harris obtained through the misuse of Firm resources and with his own legal services as described above is the '252 Patent.

**Response:**

ICR and Harris deny the allegation contained in Paragraph 25.

26.     Mr. Harris has obtained more than 20 other patents on which he is identified as an inventor on the patent.  Harris obtained those patents by practicing law and prosecuting those patents on his own behalf and otherwise using Firm resources while a principal of Fish & Richardson.

**Response:**

First Sentence:     ICR and Harris admit the allegation contained in the first sentence of Paragraph 26.

Second Sentence:  ICR and Harris deny the allegation contained in the second sentence of Paragraph 26.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 26.

**Harris Seeks To Profit From His Patent Applications**

27.     As his patent application portfolio began to grow, and notwithstanding his receipt of millions of dollars of compensation as a principal of Fish & Richardson, Mr. Harris began to seek opportunities to personally enrich himself through exploitation of the patents without regard to his obligations to Fish & Richardson or the Firm's clients.

**Response:**

ICR and Harris deny the allegations contained in Paragraph 27.

28.     For example, at least as early as November 1999, Mr. Harris approached a Fish & Richardson client ("Client A") to inquire whether the client had an interest in licensing rights in certain technologies covered by at least one of Mr. Harris's patent applications.  Mr. Harris did not disclose to Fish & Richardson that he was proposing a self-interested transaction with a Firm client.  Mr. Harris also did not disclose that, under the Law Firm Agreement, the interests he proposed to license were the property of Fish & Richardson because, among other reasons, they were the product of Mr. Harris's practice of law on behalf of the Firm and of Mr. Harris's use of Firm resources.

**Response**:

First Sentence:     ICR and Harris lack sufficient knowledge and information to either admit or deny the allegation contained in the first sentence of Paragraph 28 because "Client A" is not identified and, thus, it is not clear which alleged client Fish & Richardson is allegedly referring to.   Accordingly, ICR and Harris deny the allegation contained in the first sentence of Paragraph 28.   Also, because Fish & Richardson fails to identify "Client A" it is not clear that there has been a waiver by "Client A" of any applicable privilege.   Fish & Richardson has failed to plead and provide evidence of any privilege waiver with "Client A."   Harris is not waiving any potential privilege that may be applicable and, thus, ICR and Harris reserves the right to deny this allegation based on the additional reason of privilege assuming Fish & Richardson ever identifies "Client A."

Second Sentence:   Regardless of the identity of "Client A," ICR and Harris deny the allegation contained in the second sentence of Paragraph 28.

Third Sentence:     ICR and Harris deny the allegation contained in the third sentence of Paragraph 28.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 28.

29.     As a result of his discussions with Client A, Mr. Harris and Client A entered into a license agreement regarding the technology later covered by Harris's '252 Patent.  Under the agreement, Mr. Harris granted the client an exclusive worldwide license to the "Touch and Feel Technology."   In return, the client granted Mr. Harris stock options and a royalty to be applied to sales of products incorporating the technology.  The agreement also required the client to pay $1 million to Harris within three years.  Mr. Harris did not disclose this agreement to Fish & Richardson.

**Response**:

ICR and Harris lack sufficient knowledge and information to either admit or deny the allegations contained in Paragraph 29 because "Client A" is not identified and, thus, it is not clear which alleged client Fish & Richardson is allegedly referring to. Accordingly, ICR and Harris deny the allegations contained Paragraph 29.  Also, because Fish & Richardson fails to identify "Client A" it is not clear that there has been a waiver by "Client A" of any applicable privilege.  Fish & Richardson has failed to plead and provide evidence of any privilege waiver with "Client A."  Harris is not waiving any potential privilege that may be applicable and, thus, ICR and Harris reserves the right to deny this allegation based on the additional reason of privilege assuming Fish & Richardson ever identifies "Client A."

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 29.

30.    At times, Mr. Harris used Client A's name in Firm recordkeeping systems as the client for which he was supposedly prosecuting the '252 Patent.  However, it does not appear that Mr. Harris billed Client A for all of his work on the '252 Patent. Rather, as described, Mr. Harris bartered his provision of legal services while practicing at Fish & Richardson in exchange for consideration from the client to Mr. Harris personally.

**Response**:

ICR and Harris lack sufficient knowledge and information to either admit or deny the allegations contained in Paragraph 30 because "Client A" is not identified and, thus, it is not clear which alleged client Fish & Richardson is allegedly referring to. Accordingly, ICR and Harris deny the allegations contained Paragraph 30.  Also, because Fish & Richardson fails to identify "Client A" it is not clear that there has been a waiver by "Client A" of any applicable privilege.  Fish & Richardson has failed to plead

and provide evidence of any privilege waiver with "Client A."  Harris is not waiving any potential privilege that may be applicable and, thus, ICR and Harris reserves the right to deny this allegation based on the additional reason of privilege assuming Fish & Richardson ever identifies "Client A."

Regardless of the identity of "Client A," ICR and Harris deny the allegation contained in the third sentence of Paragraph 30.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 30.

31.     By 2003, Mr. Harris's undisclosed dealings with Client A had not delivered the economic windfall that he was seeking.  On March 14, 2003, Harris sent an e-mail to Client A's executives stating that Client A had breached its agreement with Mr. Harris for failure to pay $1 million within three years.

**Response:**

ICR and Harris lack sufficient knowledge and information to either admit or deny the allegations contained in Paragraph 31 because "Client A" is not identified and, thus, it is not clear which alleged client Fish & Richardson is allegedly referring to. Accordingly, ICR and Harris deny the allegations contained Paragraph 31.  Also, because Fish & Richardson fails to identify "Client A" it is not clear that there has been a waiver by "Client A" of any applicable privilege.  Fish & Richardson has failed to plead and provide evidence of any privilege waiver with "Client A."  Harris is not waiving any potential privilege that may be applicable and, thus, ICR and Harris reserves the right to deny this allegation based on the additional reason of privilege assuming Fish & Richardson ever identifies "Client A."

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 31.

32.     Rather than paying the $1 million, Client A returned the license to Mr. Harris.  Once again, Mr. Harris did not disclose this transaction to Fish & Richardson. Because the license was the product of a valuable transaction concerning a Firm client, was tendered in consideration for Firm services, and was obtained with the use of Firm resources, it was the property of Fish & Richardson under the Law Firm Agreement and the corporate opportunity doctrine.

**Response:**

ICR and Harris lack sufficient knowledge and information to either admit or deny

the allegations contained in Paragraph 32 because "Client A" is not identified and, thus,

it is not clear which alleged client Fish & Richardson is allegedly referring to.

Accordingly, ICR and Harris deny the allegations contained Paragraph 32.   Also,

because Fish & Richardson fails to identify "Client A" it is not clear that there has been a

waiver by "Client A" of any applicable privilege.   Fish & Richardson has failed to plead

and provide evidence of any privilege waiver with "Client A."   Harris is not waiving any

potential privilege that may be applicable and, thus, ICR and Harris reserves the right to

deny this allegation based on the additional reason of privilege assuming Fish &

Richardson ever identifies "Client A."

Except where expressly admitted, ICR and Harris deny the allegations of

Paragraph 32.

33.     Mr. Harris, however, misled the Firm about the status of his prosecution efforts and the patent license.  When Firm personnel asked him the status of the '252 prosecution, Mr. Harris instructed that the Patent would "go abandoned" – *i.e.,* no further action was expected.  In fact, however, Mr. Harris continued prosecuting the '252 Patent with the intent of enforcing that patent and his other patents against various parties, including clients of Fish & Richardson.

**Response:**

First Sentence:      ICR and Harris deny the allegation contained in the first

sentence of Paragraph 33.

Second Sentence:   ICR and Harris deny the allegation contained in the second sentence of Paragraph 33.

Third Sentence:     ICR and Harris deny the allegation contained in the third sentence of Paragraph 34, except that ICR and Harris admit that Mr. Harris continued prosecuting the '252 Patent.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 33.

**Harris Seeks The Assistance of Mr. Niro, Knowing Lawsuits
Against Fish & Richardson Clients Will Result**

34.     Having deceived his colleagues and entered into undisclosed financial arrangements with at least one Firm client, Mr. Harris sought a new way to capitalize upon his patent portfolio.

**Response:**

ICR and Harris deny the allegations contained in Paragraph 34.

35.     In 2006, Mr. Harris began operating a website with the address "imapatenttroll.com."  A "patent troll" is a pejorative term for someone who acquires rights in patents for the purpose of aggressively asserting the patents against alleged infringers.

**Response:**

First Sentence:  ICR and Harris admit that Mr. Harris at one time had a website address, entitled, "imapatenttroll.com."  ICR and Harris deny any remaining allegations contained in the first sentence of Paragraph 35.

Second Sentence:  ICR and Harris deny the allegations contained in the second sentence of Paragraph 35.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 35.

36.     On March 21, 2006, Harris introduced himself to Mr. Niro, a well known patent plaintiffs' attorney.  Mr. Niro has described himself in published accounts as the first person ever to be referred to as a "patent troll."  Mr. Niro's firm states on its website that Mr. Niro has "recovered more than $800 million for his clients through trials or settlements" in the past eight years.

**Response:**

First Sentence:     ICR and Harris admit that Mr. Harris introduced himself to Mr. Niro on or about March 21, 2006, and that Mr. Niro is a well known and well respected patent attorney who has represented both plaintiffs and defendants in patent infringement suits.  ICR and Harris deny any remaining allegations contained in the first sentence of Paragraph 36.

Second Sentence:  ICR and Harris deny the allegation contained in the second sentence of Paragraph 36.

Third Sentence:     ICR and Harris admit the allegation contained in the third sentence of Paragraph 36.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 36.

37.     Mr. Niro and his firm were no strangers to Fish & Richardson and its clients.  Mr. Niro's firm has represented plaintiffs in lawsuits and settlement negotiations against multiple clients of Fish & Richardson.  Mr. Niro's firm has also filed a complaint against Fish & Richardson itself, as a party, for alleged antitrust violations.  That was was eventually dismissed.

**Response:**

First Sentence:     ICR and Harris lack sufficient knowledge and information to either admit or deny the allegation (to the extent it is one) contained in the first sentence of Paragraph 37 because it is not clear what is meant by "strangers" to Fish &

Richardson and its clients and, thus, ICR and Harris deny the allegation contained in the first sentence of Paragraph 37.

Second Sentence:  ICR and Harris lack sufficient knowledge or information about the Niro firm's clients and settlement negotiations to either admit or deny the allegations contained in the second sentence of Paragraph 37 and, therefore, deny same.

Third Sentence:    ICR and Harris lack sufficient knowledge or information to either admit or deny the allegations contained in the third sentence of Paragraph 37 and, therefore, deny same.

Fourth Sentence:    ICR and Harris lack sufficient knowledge or information to either admit or deny the allegations contained in the fourth sentence of Paragraph 37 and, therefore, deny same.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 37.

38.    On information and belief, while a principal at Fish & Richardson, Mr. Harris was aware of the Firms' adversarial relationships with Mr. Niro's clients and Mr. Niro's litigation against the Firm.

**Response:**

ICR and Harris deny the allegations contained in Paragraph 38.

39.    Nonetheless, on March 21, 2006, Mr. Harris sought out Mr. Niro's assistance.  As Mr. Harris explained in an e-mail he sent to Mr. Niro using the Fish & Richardson e-mail system and server, Harris "was a patentee on a number of patents, covering a number of things, some of which are being infringed by others." Notwithstanding his fiduciary obligations to Fish & Richardson's clients and his contractual obligations to the Firm, Mr. Harris inquired of Mr. Niro, "I was wondering if this was something you could help me with."

**Response**:

The email referred to in Paragraph 39 is a privileged communication, and Mr. Harris has not waived the attorney-client privilege, and which Fish & Richardson and its lawyers improperly accessed and are publishing. Mr. Harris is maintaining in this case that the email improperly identified by Fish & Richardson in Paragraph 39 is a privileged communication that cannot be used for any purpose in this case. Mr. Harris has requested that Fish & Richardson and its attorneys immediately return the email and provide a log of all privileged communications between Mr. Harris and his counsel that Fish & Richardson or its attorneys have improperly invaded. Because this paragraph involves improper use of a privileged communication, ICR and Harris deny all allegations contained in Paragraph 39, and request that it cannot be used for any purpose in the litigation.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 39.

40.    On March 22, 2006, Mr. Harris followed up his inquiry to Mr. Niro by sending an e-mail to Mr. Niro (again, using his Fish & Richardson e-mail account and using the Fish & Richardson e-mail server) attaching a report with Mr. Harris's descriptions of some of his patents. In his report, Mr. Harris attempted to identify target companies or industries for infringement lawsuits. At least one of the target companies identified by Mr. Harris in his report to Mr. Niro was a Fish & Richardson client. In addition, other Fish & Richardson clients are well-known participants in some of the target industries that Mr. Harris identified.

**Response**:

The email referred to in Paragraph 40 is a privileged communication, and Mr. Harris has not waived the attorney-client privilege, and which Fish & Richardson and its lawyers improperly accessed and are publishing. Mr. Harris is maintaining in this case that the email improperly identified by Fish & Richardson in Paragraph 40 is a privileged

communication that cannot be used for any purpose in this case.   Mr. Harris has requested that Fish & Richardson and its attorneys immediately return the email and provide a log of all privileged communications between Mr. Harris and his counsel that Fish & Richardson or its attorneys have improperly invaded.   Because this paragraph involves improper use of a privileged communication, ICR and Harris deny all allegations contained in Paragraph 40, and request that it cannot be used for any purpose in the litigation.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 40.

41.    As a result of his secret discussions with Mr. Niro, which Mr. Harris did not disclose to any of his fellow principals or firm management at Fish & Richardson, Harris soon after entered into agreements transferring licenses and/or other rights in certain of his patents to a series of entities represented by or otherwise affiliated with Mr. Niro. Mr. Harris used the Firm's resources to facilitate these secret transactions.

**Response:**

First Sentence:    ICR and Harris deny the allegation contained in the first sentence of Paragraph 41.

Second Sentence:  ICR and Harris deny the allegation contained in the second sentence of Paragraph 41.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 41.

**Fish & Richardson Clients Are Sued On Harris's Patents**

42.    The first Niro-represented entity that Mr. Harris dealt with was Memory Control Enterprise ("MCE"), an Illinois corporation.   Mr. Harris purported to transfer rights in U.S. Patent No. 6,704,791 ("the '791 Patent") to MCE in 2006.

**Response**:

First Sentence:     ICR and Harris deny that MCE is an Illinois Corporation. ICR and Harris admit that MCE has been represented by the Niro, Scavone, Haller & Niro law firm.  ICR and Harris admit that Harris has "dealt with" MCE.  ICR and Harris deny any remaining allegations contained in the first sentence of Paragraph 42.

Second Sentence:   ICR and Harris admit that Mr. Harris transferred rights in the '791 Patent to MCE in 2006.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 42.

43.     Before purportedly transferring rights in the '791 Patent, Mr. Harris knew or should have known from his prior "targeting " activity and his knowledge of the Firm's clients that Fish & Richardson clients would be targets for infringement lawsuits filed by MCE.

**Response**:

ICR and Harris deny the allegation contained in Paragraph 43.

44.     After the purported transfer, in March 2007, MCE sued a Fish & Richardson client ("Client B") alleging infringement of the '791 Patent.  In addition to MCE, Mr. Harris was a named plaintiff in this action against Client B.  MCE was represented by Mr. Niro's firm in this action.

**Response**:

ICR and Harris lack sufficient knowledge or information to either admit or deny the allegations contained in Paragraph 44 because "Client B" is not identified and, thus, it is not clear which alleged client Fish & Richardson is allegedly referring to. Accordingly, ICR and Harris deny the allegations contained in Paragraph 44.

45.     On August 30, 2007, MCE sued two other Fish & Richardson clients ("Clients C and D") for purported infringement of the '791 Patent.  MCE was again represented by Mr. Niro's firm.

**Response**:

First Sentence:        ICR and Harris lack sufficient knowledge and information to admit or deny the allegation contained in the first sentence of Paragraph 45 because neither "Client C" nor "Client D" are identified and, therefore, ICR and Harris deny the allegations contained in first sentence of Paragraph 45.

Second Sentence:  ICR and Harris admit that MCE was represented by Mr. Niro's firm in the patent infringement lawsuit it filed or about August 30, 2007.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 45.

46.     After Fish & Richardson learned of Mr. Harris's transfer of the '791 Patent to MCE, Fish & Richardson demanded an explanation from Mr. Harris for his actions. Mr. Harris, however, deceived Fish & Richardson with misrepresentations and omissions about the extent of his patent holdings, the resources that he used to obtain the patents, the compensation that he had received for prosecuting the patents, and the fact that he had secretly targeted Firm clients for enforcing the patents.

**Response**:

First Sentence:        ICR and Harris admit that Fish & Richardson has been aware of the '791 Patent for quite some time as well as the transfer of the '791 Patent to MCE.  In fact, Mr. Harris assigned the '791 Patent to MCE at the express instruction of Fish & Richardson.  ICR and Harris admit that Mr. Harris answered whatever questions Fish & Richardson had concerning the transfer of the '791 Patent to MCE.

Second Sentence:  ICR and Harris deny the allegations contained in the second sentence of Paragraph 46.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 46.

**Harris Purportedly Assigns The '252 Patent To ICR, Which
Promptly Sues Another Fish & Richardson Client**

47.    On July 2007, Mr. Harris purported to sell and/or assign rights in the '252 Patent to ICR, another entity that Mr. Niro represents or with which he is otherwise affiliated.

**Response:**

ICR and Harris admit that pursuant to Fish & Richardson's instruction to Mr. Harris that he sell his patents, Mr. Harris assigned all of his right, title and interest in the '252 Patent to ICR.  ICR and Harris also admit that Mr. Niro represents ICR in this case.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 47.

48.    On information and belief, as part of the purported sale and/or assignment, Mr. Harris pledged, in a written agreement drawn up by Mr. Niro or his firm, that Harris would assist ICR with the prosecution of lawsuits against purported infringers of the '252 Patent.  Further, upon information and belief, the arrangement between Mr. Harris and ICR related to the '252 Patent provides Mr. Harris with a financial interest in the proceeds of litigation or settlements involving alleged infringement of the '252 Patent.  Fish & Richardson has asked for a copy of this agreement but Mr. Harris and Mr. Niro have refused to provide it.

**Response:**

First Sentence:    ICR and Harris admit that pursuant to Fish & Richardson's instruction to Mr. Harris that he sell his patents to a third party, Mr. Harris sold and assigned the '252 Patent to ICR.  ICR and Harris admit that because Mr. Harris is the inventor of the '252 Patent, ICR and Harris negotiated a provision whereby Mr. Harris agreed to cooperate with ICR in the event litigation was brought by ICR.  ICR and Harris admit that they both participated in the drafting of the agreement whereby Mr. Harris sold the '252 Patent to ICR.  ICR and Harris deny any remaining allegations contained in the first sentence of Paragraph 48.

Second Sentence:  ICR and Harris admit that a confidential agreement exists under which Mr. Harris sold his '252 Patent to ICR (again, at the instruction of Fish & Richardson) and there is a provision whereby ICR agreed to pay Mr. Harris for the sale and assignment of his patents.

Third Sentence:     ICR and Harris admit that because the agreement is a confidential document, Fish & Richardson has already improperly invaded Mr. Harris privileged communications with the Niro, Scavone, Haller & Niro law firm, and ICR and Harris are under no obligation to provide a copy to Fish & Richardson, ICR and Harris have not provided a copy of the agreement to Fish & Richardson.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 48.

49.    At the time Mr. Harris entered into the above arrangements with ICR regarding the '252 Patent, Harris knew that ICR would likely sue Fish & Richardson's clients for purported infringement of the Patent, including its client Google.

**Response:**

ICR and Harris deny the allegation contained in Paragraph 49.

50.    In 2006, for example, Mr. Harris had corresponded with another patent attorney (again using the Fish & Richardson e-mail system) regarding potential targets for infringement actions based on the '252 Patent.  That attorney suggested to Mr. Harris that Google could be a target of such an action.

**Response:**

This allegation appears to be based upon improper access to privileged attorney-client communications and is thus denied for that reason.

51.    Mr. Harris also knew that Google was a Firm client.  Fish & Richardson began representing Google in 2003 and has represented Google by prosecuting over one hundred patent applications, advising Google on intellectual property matters, and representing Google in patent infringement litigation.  Mr. Harris received multiple "conflict checks" during his time as a principal at Fish & Richardson, alerting him to

various matters the Firm was handling on behalf of Google.  Further, Harris personally acted as neutral "referee" on a Google conflict resolution inquiry within the Firm.

**Response:**

First Sentence:    Mr. Harris knew Fish & Richardson lawyers had represented Google; ICR did not.

Second Sentence:  ICR and Harris lack sufficient knowledge or information to either admit or deny the allegation contained in Paragraph 51 and, therefore, ICR and Harris deny the allegation contained in Paragraph 51.

Third Sentence:    ICR and Harris deny that Mr. Harris was a principal at Fish & Richardson.  ICR lacks sufficient knowledge or information to either admit or deny the allegation contained in the third sentence of Paragraph 51 and, thus, denies same.  Harris admits that while he was an employee at Fish & Richardson, he received conflict checks relating to Google, but deny the remaining allegations contained in the third sentence of Paragraph 51.

Fourth Sentence:    ICR and Harris admit the allegation contained in the fourth sentence of Paragraph 51.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 51.

52.    Mr. Niro also knew that Google was a client of Fish & Richardson.  Mr. Niro had represented at least one plaintiff making patent infringement claims against Google in a matter in which Fish & Richardson represented Google.

**Response:**

ICR and Harris do not know the state of Mr. Niro's knowledge and, thus, ICR and Harris lack sufficient knowledge or information to either admit or deny the allegations

contained in Paragraph 52.  Accordingly, ICR and Harris deny the allegations contained in Paragraph 52.

53.     Nevertheless, and despite his duties to his law firm and its clients, Mr. Harris, with Mr. Niro's assistance, purported to assign the '252 Patent to ICR on July 30, 2007 and agreed to assist in litigation concerning the Patent – including litigation against Firm clients.

**Response:**

ICR and Harris deny the allegation contained in Paragraph 53.

54.     ICR soon after filed the instant suit against Google on September 10, 2007, claiming infringement of the '252 Patent.  Mr. Niro and his firm represent ICR in this lawsuit.  Upon information and belief, Mr. Niro and his firm possess a substantial contingent interest in any recovery made by ICR in this lawsuit.

**Response:**

First Sentence:     ICR and Harris admit that ICR filed a patent infringement lawsuit against Google on September 10, 2007 because Google infringes ICR's '252 Patent.

Second Sentence:  ICR admits that lawyers from the law firm Niro, Scavone, Haller & Niro represents ICR in this lawsuit.

Third Sentence:     The information alleged is confidential and privileged and thus ICR and Harris deny the allegations made.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 54.

55.     After ICR sued Google, Fish & Richardson again confronted Mr. Harris. Harris again equivocated and was not truthful and candid about his activities, misrepresenting some facts and omitting others.  In light of his breach of fiduciary duties, breach of his contractual obligations, and his deception of the other shareholders at Fish & Richardson, Harris was asked to resign, which he did effective September 14, 2007.

**Response:**

First Sentence:     ICR and Harris deny the allegations contained in the first sentence of Paragraph 55.

Second Sentence:   ICR and Harris deny the allegations contained in the second sentence of Paragraph 55.

## COUNT I
## (BREACH OF CONTRACT AGAINST MR. HARRIS)

56.     Paragraphs 1 to 55, above, are incorporated by reference as if fully set out here.

**Response:**

ICR and Harris incorporate their responses to Paragraphs 1 to 55 above as if fully stated herein as their response to Paragraph 56.

57.     The Law Firm Agreement was a valid and binding contract between Fish & Richardson and Scott Harris.

**Response:**

Harris denies the allegation contained in Paragraph 57.  Because this allegation is not directed to ICR, ICR only responds that it lacks sufficient knowledge or information to either admit or deny this allegation and, thus, it denies the allegation contained in Paragraph 57.

58.     Fish & Richardson performed all of its obligations under the Law Firm Agreement.

**Response:**

Harris denies the allegation contained in Paragraph 58.  Because this allegation is not directed to ICR, ICR only responds that it lacks sufficient knowledge or

information to either admit or deny this allegation and, thus, it denies the allegation contained in Paragraph 58.

59.    Mr. Harris, through the conduct set out in detail above, committed material breaches of the Law Firm Agreement and the implied covenant of good faith and fair dealing, including:

a.    misusing Firm resources and confidential information to pursue personal gain at the expense of the Firm, in violation of his covenant to devote all of his services to the Firm, his covenant not to perform unauthorized outside activities, and his covenant to obey the rules of professional responsibility (Ex. A, Law Firm Agreement §§ 4(a)-(c));

b.    misappropriating confidential information to pursue personal gain, in violation of express restrictions on using such confidential information (*e.g., id.* § 7);

c.    diverting from the Firm compensation for legal services he performed, including by bartering for personal benefits in lieu of billing the client for legal services and by failing to tender compensation received for such services (whether paid in cash or otherwise) to the Firm, in violation of terms requiring appropriate billing and the tendering of all compensation received for services to the Firm (*e.g., id.* §§ 6, 9); and

d.    transferring or purporting to transfer to himself or others Firm property, including rights associated with the '252 Patent and other patents, without authorization, in violation of provisions forbidding such transfers (*e.g., id.* § 8).

**<u>Response</u>:**

Harris denies the allegations contained in Paragraph 59.  Because this allegation is not directed to ICR, ICR only responds that it lacks sufficient knowledge or information to either admit or deny this allegation and, thus, it denies the allegation contained in Paragraph 59.

60.    The foregoing breaches of contract have caused and are causing Fish & Richardson substantial damages, including the loss of Firm resources and property, lost compensation for services performed by Firm personnel, and harm to the Firm's reputation and relations with its clients.

**Response:**

Harris denies the allegations contained in Paragraph 60.  Because this allegation is not directed to ICR, ICR only responds that it lacks sufficient knowledge or information to either admit or deny this allegation and, thus, it denies the allegation contained in Paragraph 60.

61.     The Court should find that Mr. Harris has materially breached his contract with Fish & Richardson, that these breaches have directly injured Fish & Richardson, and should award Fish & Richardson damages and other relief consistent with the prayer for relief below.

**Response:**

Harris denies the allegations contained in Paragraph 61.  Because this allegation is not directed to ICR, ICR only responds that it lacks sufficient knowledge or information to either admit or deny this allegation and, thus, it denies the allegation contained in Paragraph 61.

**COUNT II**
**(BREACH OF FIDUCIARY DUTIES AGAINST MR. HARRIS)**

62.     Paragraphs 1 to 55, above, are incorporated by reference as if fully set out here.

**Response:**

ICR and Harris incorporate their responses to Paragraphs 1 to 55 above as if fully stated herein as their response to Paragraph 62.

63.     Mr. Harris was a fiduciary of Fish & Richardson by virtue of his position as a principal in the professional corporation and by virtue of the relationship of trust and confidence shared by Harris, Fish & Richardson, and the other principals of Fish & Richardson.

**Response**:

Harris denies the allegations contained in Paragraph 63.  Because this allegation is not directed to ICR, ICR only responds that it lacks sufficient knowledge or information to either admit or deny this allegation and, thus, it denies the allegation contained in Paragraph 63.

64.    Mr. Harris, through the conduct set out in detail above, breached his fiduciary duties to Fish & Richardson, including the duty of loyalty, including by:

    a.    diverting corporate resources and corporate opportunities to himself for his personal gain;

    b.    transferring or purporting to transfer corporate opportunities, property, or rights to others;

    c.    accepting substantial compensation from the Firm while acting as a "faithless fiduciary";

    d.    conducting business with Firm clients for his own personal gain;

    e.    arranging for, cooperating with, and facilitating lawsuits against Firm clients; and

    f.    agreeing to assist in lawsuits against Fish & Richardson clients.

**Response**:

Harris denies the allegations contained in Paragraph 64.  Because this allegation is not directed to ICR, ICR only responds that it lacks sufficient knowledge or information to either admit or deny this allegation and, thus, it denies the allegation contained in Paragraph 64.

65.    Mr. Harris's breaches of his fiduciary duties have caused and are causing Fish & Richardson substantial damages, including the loss of Firm resources and property, lost compensation for services performed by Firm personnel, substantial compensation paid to Harris while acting as a "faithless fiduciary," and harm to the Firm's reputation and relations with its clients.

**Response:**

Harris denies the allegations contained in Paragraph 65.  Because this allegation is not directed to ICR, ICR only responds that it lacks sufficient knowledge or information to either admit or deny this allegation and, thus, it denies the allegation contained in Paragraph 65.

66.     Mr. Harris's breaches of his fiduciary duties were marked by deception, bad faith, malice, and oppressive conduct, warranting the imposition of punitive damages.

**Response:**

Harris denies the allegations contained in Paragraph 66.  Because this allegation is not directed to ICR, ICR only responds that it lacks sufficient knowledge or information to either admit or deny this allegation and, thus, it denies the allegation contained in Paragraph 66.

67.     The Court should hold that Mr. Harris has beached his fiduciary duties to Fish & Richardson, enjoin Mr. Harris from further breaches, and otherwise award Fish & Richardson relief consistent with the prayer for relief below.

**Response:**

Harris denies the allegations contained in Paragraph 67.  Because this allegation is not directed to ICR, ICR only responds that it lacks sufficient knowledge or information to either admit or deny this allegation and, thus, it denies the allegation contained in Paragraph 67.

## COUNT III
## (DECLARATORY JUDGMENT AGAINST ICR AND MR. HARRIS)

68.     Paragraphs 1 to 67, above, are incorporated by reference as if fully set out here.

**Response**:

ICR and Harris incorporate their responses to Paragraphs 1 to 67 above as if fully stated herein as their response to Paragraph 68.

69.    There exists an actual, ripe, and justiciable controversy between Fish & Richardson, ICR, and Mr. Harris regarding each party's rights and interests in connection with the '252 Patent and any other U.S. or foreign patents or patent applications that Mr. Harris prosecuted and obtained through the misuse of Fish & Richardson resources and in breach of his contractual and fiduciary duties (the "Disputed Patents").

**Response**:

Harris and ICR deny that Mr. Harris misused Fish & Richardson resources and breached any contractual or fiduciary duty to Fish & Richardson or anyone else. Harris and ICR deny that Fish & Richardson has any right or interest in the '252 Patent or any other patent or patent application which was invented by Mr. Harris, nor can Fish & Richardson assert any such rights or interest in good faith. Harris and ICR admit that an actual controversy exists between ICR and Fish & Richardson regarding Fish & Richardson's claims of an ownership interest in the patents acquired and owned by ICR under the agreement whereby Mr. Harris sold the '252 Patent to ICR. ICR and Harris deny any remaining allegations contained in Paragraph 69.

Except where expressly admitted, ICR and Harris deny the allegations of Paragraph 69.

70.    As a result of the conduct and events described in detail above, Fish & Richardson possesses legal ownership, and/or equitable ownership, and/or other interests in the '252 Patent and the other Disputed Patents inconsistent with and superior to any interest claimed by ICR or Mr. Harris. Fish & Richardson's ownership and related interests include:  (a) legal ownership of the '252 Patent and the other Disputed Patents by operation of law including by virtue of the Law Firm Agreement, Mr. Harris's misuse of Firm resources, and Mr. Harris's breach of his fiduciary duties; (b) alternatively, equitable ownership of the '252 Patent and the other Disputed Patents including by virtue of Mr. Harris's breaches and the above-detailed inequitable scheme;

and (c) a restrict covenant not to sue Fish & Richardson's clients applicable to the '252 Patents and the other Disputed Patents.  The Court should so declare pursuant to 28 U.S.C. § 2201.

**Response:**

ICR and Harris deny all of the allegations contained in Paragraph 70.

71.    The Court should resolve the parties' dispute by declaring that Fish & Richardson has a legal or equitable ownership or other interest in the '252 Patent and other Disputed Patents inconsistent with and superior to the interests asserted by Mr. Harris and ICR, that Fish & Richardson, not ICR, controls the right to sue upon those patents, and otherwise awarding relief to Fish & Richardson consistent with the below prayer for relief.

**Response:**

ICR and Harris deny all of the allegations contained in Paragraph 71.

## COUNT IV
### (CONSTRUCTIVE TRUST AGAINST ICR AND MR. HARRIS)

72.    Paragraphs 1 to 55 and 61-67, above, are incorporated by reference as if fully set out here.

**Response:**

ICR and Harris incorporate by reference their responses to Paragraphs 1 to 55

and 61 to 67 as if fully stated herein as their response to Paragraph 72.

73.    This Count IV is pleaded in the alternative to Fish & Richardson's assertion of legal ownership of the '252 Patent and the other Disputed Patents.

**Response:**

ICR and Harris admit that Fish & Richardson attempts to plead Count IV in the

alternative to Count III.  ICR and Harris deny that either Count III or Count IV pleaded by

Fish & Richardson have any merit.

74.    Mr. Harris and ICR have obtained or purported to obtain property and/or rights in property through the inequitable and wrongful acts set out in detail above, including breaches of fiduciary duties and the misuse of Fish & Richardson resources and confidential information.

**Response**:

ICR and Harris deny the allegations contained in Paragraph 74.

75.    The property and/or rights in property that Mr. Harris and ICR obtained or purported to obtain includes the '252 Patent and all of the other Disputed Patents.

**Response**:

ICR and Harris deny the allegations contained in Paragraph 75.

76.    The Court should impose a constructive trust upon any rights arising on the '252 Patent and the other Disputed Patents and upon any consideration that Mr. Harris has received for purportedly conveying the patents or any rights arising upon it. The Court should additionally award Fish & Richardson relief consistent with the prayer for relief below.

**Response**:

ICR and Harris deny the allegations contained in Paragraph 76.

## PRAYER FOR RELIEF

ICR and Harris deny that Fish & Richardson is entitled to any of the relief it seeks.

## JURY DEMAND

ICR and Harris demand a trial by jury on all issues so triable.

## AFFIRMATIVE DEFENSES

ICR and Harris assert the following affirmative defenses:

1.    Failure to state a claim upon which relief can be granted;

2.    Waiver;

3.    Estoppel;

4.    Laches;

5.    Unclean hands;

6.    Accord and Satisfaction; and

7.    Lack of subject matter jurisdiction.

8.    Assuming a valid and enforceable contract exists between Fish & Richardson and Mr. Harris, Fish & Richardson's breach of fiduciary duty also fails to state a claim upon which relief can be granted.

WHEREFORE, ICR and Harris both request that judgment be entered in their favor and against Fish & Richardson on all counts of Fish & Richardson's counterclaims against ICR and third-party complaint against Harris.  In addition, ICR requests that it be granted all the relief requested in its Amended Complaint, and Harris requests that he be granted all the relief requested in his counterclaims against Fish & Richardson that are being filed concurrently with this pleading.

Respectfully submitted,


/s/ Paul K. Vickrey
Raymond P. Niro
Paul K. Vickrey
Richard B. Megley, Jr.
Karen L. Blouin
Niro, Scavone, Haller & Niro
181 West Madison, Suite 4600
Chicago, Illinois 60602-4515
(312) 236-0733
Fax:  (312) 236-3137

Steven L. Platt
Arnold and Kadjan
19 West Jackson Blvd., Suite 300
Chicago, Illinois  60604
(312) 236-0415

**Attorneys for Illinois Computer Research, LLC and Scott C. Harris**

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **ILLINOIS COMPUTER RESEARCH, LLC'S REPLY TO FISH & RICHARDSON P.C.'S COUNTERCLAIM AND SCOTT C. HARRIS' ANSWER TO THIRD-PARTY COMPLAINT** was electronically filed with the Clerk of Court using CM/ECF system, which will send notification by electronic mail to the following:

> David J. Bradford
> Eric A. Sacks
> Daniel J. Weiss
> Jenner & Block LLP
> 330 N. Wabash Avenue
> Chicago, IL  60611
> (312) 222-9350
> **Counsel for Fish & Richardson, P.C.**

Additionally, a copy of the foregoing was served on the following by First-Class U.S. Mail:

> Michael S. Kwun
> Google Inc.
> 1600 Amphitheatre Parkway
> Mountain View, CA  94043
> mkwun@google.com
> **Counsel for Google Inc.**

on this 31st day of October, 2007.

> /s/ Paul K. Vickrey
> Attorneys for Illinois Computer
> Research, LLC and Scott C. Harris