## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| **ILLINOIS COMPUTER RESEARCH, LLC,** | ) | |
| *Plaintiff and Counterclaim Defendant* | ) | |
| | ) | |
| *v.* | ) | No. 07 C 5081 |
| | ) | |
| **GOOGLE, INC.,** | ) | Judge Pallmeyer |
| *Defendant, and* | ) | |
| | ) | Magistrate Judge Valdez |
| **FISH & RICHARDSON P.C.,** | ) | |
| *Defendant, Counterclaimant and Third-Party Plaintiff,* | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| **SCOTT C. HARRIS**, | ) | |
| *Third-Party Defendant.* | ) | |

### FISH & RICHARDSON P.C.'S AMENDED
### ANSWER TO ICR'S AMENDED COMPLAINT

Fish & Richardson P.C. ("Fish & Richardson"), by its attorneys Jenner & Block LLP,

hereby files its Amended Answer to the Amended Complaint of plaintiff Illinois Computer

Research, LLC ("ICR"), and asserts its affirmative defenses thereto as follows:

### NATURE OF CLAIMS

1.      This is a claim for patent infringement against Google arising under the patent
laws of the United States, Title 35 of the United States Code.  ICR also asserts related claims for
tortious interference with prospective economic advantage and declaratory judgment against
Fish, arising out of Fish's: (1) unlawful and false claims of ownership of the patent-in-suit and
other patents owned by ICR; (2) threats and conduct designed to intimidate the inventor of the
patent-in-suit and key witness in this case, Scott Harris; and (3) other misconduct, including
intentionally and unlawfully accessing privileged communications between Mr. Harris and his
counsel, the Niro, Scavone, Haller & Niro law firm, which represents ICR in this case.

**RESPONSE:** Fish & Richardson states that paragraph 1 contains ICR's own

characterization of its purported claims and that no answer is therefore required.  To the extent

an answer is deemed required, Fish & Richardson denies the allegations of paragraph 1.

Dockets.Justia.com

**THE PARTIES**

2.      Illinois Computer Research, LLC ("ICR") is an Illinois limited liability company that has its principal place of business at 125 South Wacker Drive, Suite 300, Chicago, Illinois 60606.  ICR owns United States Patent No. 7,111,252 ("the '252 Patent"), entitled "Enhancing Touch And Feel On The Internet," which issued on September 19, 2006 (Exhibit A), and, thus, has the exclusive right to license and enforce the '252 Patent and to collect all damages for infringement of the '252 Patent.  ICR also has standing to sue for infringement of the '252 Patent.  A copy of the recorded assignment of the '252 Patent is attached as Exhibit B.

**RESPONSE:** Fish & Richardson admits that ICR is registered as an Illinois limited

liability company.  Fish & Richardson lacks sufficient information to form a belief as to ICR's

statement of its principal place of business and therefore denies that allegation.  Fish &

Richardson denies the remaining allegations contained in paragraph 2.

3.      Google Inc. ("Google") is a Delaware corporation having engineering, technical and business offices in this judicial district at 20 West Kinzie Street, Chicago, Illinois 60610. Google is registered to do business in the State of Illinois as Google Inc.-IL.

**RESPONSE:** Fish & Richardson admits that Google is incorporated in Delaware.  Fish

& Richardson lacks sufficient information to form a belief as to the truth of the remaining

allegations of paragraph 3 and therefore denies them.

4.      Google transacts substantial business in this judicial district and has committed acts of infringement in this judicial district by soliciting and accepting advertising from Illinois companies and by operating websites and conducting business over those websites that are used by and are accessible to residents of Illinois, including the book search feature which infringes the '252 Patent.

**RESPONSE:** Fish & Richardson admits that Google transacts business in this judicial

district but otherwise denies the allegations contained in paragraph 4.

5.      Fish is a professional corporation headquartered at 225 Franklin Street, Boston, Massachusetts 02110-2804 but with offices throughout the United States.  Fish conducts substantial business in this judicial district, has represented its clients in this judicial district, including clients in lawsuits brought before this Court.  The complained-of conduct by Fish is specifically directed to ICR's prosecution of its claim against Google which has taken place in this judicial district.

**RESPONSE:** Fish & Richardson admits the allegations contained in the first and second sentences of paragraph 5.  Fish & Richardson denies the allegations contained in the third sentence of paragraph 5.

## JURISDICTION AND VENUE

6.    Jurisdiction exists under 28 U.S.C. §§ 1331, 1332, 1335(a), 1367, and 2201.

**RESPONSE:** Fish & Richardson admits that this Court has subject matter jurisdiction over this matter.

7.    Venue is proper under this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

**RESPONSE:** Fish & Richardson admits that venue is appropriate in this judicial district.

## BACKGROUND

8.    Until September 14, 2007, the inventor of the '252 Patent, Scott Harris, was a partner at Fish; before his forced resignation, he had been associated with Fish for 14 years.  Mr. Harris is a prolific inventor in his own right; he made his first invention at the age of 12.  He first attended Duke University and then George Washington University where he received a degree in electrical engineering.  Mr. Harris later worked as an electrical engineer in the communications and software fields and thereafter attended George University Law School where he graduated and became a patent attorney.

**RESPONSE:** Fish & Richardson admits that Scott Harris joined Fish & Richardson as a principal in 1994 and resigned on or about September 14, 2007.  Fish & Richardson further admits Mr. Harris was a principal in Fish & Richardson's intellectual property practice at the time he left Fish & Richardson.  Fish & Richardson lacks sufficient information to form a belief as to the truth of the remaining allegations contained in paragraph 8 and therefore denies them.

9.    Mr. Harris has been involved with teaching patent law to attorneys and technologists.  He has taught basic patent law for the Patent Resources Group and has presented a primer class on software patenting to more than 30 companies.  He has been invited to present a class on patent cost reduction via outsourcing and teaches a one-hour class called "Patents for Kids" (a program designed to teach young people about intellectual property); both presentations take place throughout the country.  Mr. Harris has been extensively quoted in national and local publications concerning issues involved with patent law and was named the top patent prosecuting attorney in the *IP Law & Business* "Patent Hall of Fame" in 2003.

**RESPONSE:** Fish & Richardson lacks sufficient information to form a belief as to the truth of the allegations contained in paragraph 9, and therefore denies them.

10.     Mr. Harris has 27 patents and has pending approximately 80 patent applications covering many different fields of technology.  Most have been sold to different companies that license and enforce the patents.  At all times, Fish was aware of Mr. Harris's personal inventorship activities.  Indeed, the co-inventor of one of his patents is the wife of the former managing partner of Fish.  Plaques identifying some of Mr. Harris's patents were on display in his office at Fish.

**RESPONSE:** Fish & Richardson lacks sufficient information to form a belief as to the truth of the allegations contained in the first, second, and fifth sentences of paragraph 10, and therefore denies them.  Fish & Richardson denies that "[a]t all times" it "was aware of Mr. Harris's personal inventorship activities" and denies the remaining allegations of paragraph 10.

11.     In 2007, Dell Computer complained to Fish that it had been sued for infringement of a patent on which Mr. Harris was a named inventor.  Thereafter, Fish conducted an investigation, headed by John Steele, Fish's Ethics and Conflicts Director and Special Counsel.  As a result of that investigation, Fish concluded that Mr. Harris had done nothing unethical or inappropriate and so informed Mr. Harris in April 2007.  At first, Fish told Mr. Harris that Dell was an existing Fish client.  When Mr. Harris made further inquiry of Fish, he was informed that Fish partner Kathy Lutton (wife of the patent counsel for Apple Computer, a Fish client) wanted to get Dell as a client.  In May 2007, Ms. Lutton told Mr. Harris that he might have to leave Fish.

**RESPONSE:** Fish & Richardson admits that in 2007, a lawsuit was filed against a Fish & Richardson client, Dell Inc. ("Dell"), for purported infringement of a patent of which Mr. Harris was a named inventor, and that Mr. Harris was a named plaintiff in the lawsuit.  Fish & Richardson further admits that representatives of Dell complained to Fish & Richardson about the fact that a Fish & Richardson principal was a plaintiff in the lawsuit against it.  Fish & Richardson further admits that it investigated Mr. Harris's role in the lawsuit, and that in the course of this inquiry, Mr. Harris made misstatements and omissions that were materially false and misleading.  Fish & Richardson denies ICR's characterization of Fish & Richardson's investigation and its conclusions and denies that it informed Mr. Harris that he "had done nothing unethical or inappropriate."  As to Mr. Harris's conversations with Ms. Lutton, Fish &

Richardson admits that Ms. Lutton correctly informed Mr. Harris that Dell had been and was an existing firm client and that it would be a conflict for Mr. Harris to proceed or assist in the action against Dell while a principal of the firm.   Regarding the conversation alleged in the fifth sentence of paragraph 11 (for which no Fish & Richardson representative is identified), Fish & Richardson lacks sufficient information to admit or deny whether the conversation occurred, but states that Dell was a client of Fish & Richardson at the time.   Fish & Richardson denies all remaining allegations contained in paragraph 11.

12.     Instead of demanding that he leave Fish, in May 2007, Fish demanded that Mr. Harris divest himself of any ownership interest in the '252 Patent and other patents now owned by ICR to maintain his position at Fish.

**RESPONSE:** Fish & Richardson admits that in May 2007, it confronted Mr. Harris in an effort to understand the facts underlying his purported interest in the patent that Mr. Harris as a named plaintiff had asserted in a lawsuit against firm client Dell.   Fish & Richardson further admits that, based on the information Mr. Harris provided to Fish & Richardson representatives at that time — information that Fish & Richardson later learned was false and misleading in several material respects — Fish & Richardson encouraged Mr. Harris to remove himself from the lawsuit against Dell and to divest himself of his interest in the patent he had asserted against Dell.   Fish & Richardson denies that Mr. Harris ever disclosed to Fish & Richardson his interest in specifically the '252 patent, that he had used firm resources while prosecuting the '252 patent, or that he had targeted firm clients for enforcement of his patents.   Fish & Richardson further denies it had any knowledge of ICR prior to the filing of ICR's lawsuit against Google in September 2007, states that it lacks information as to what patents ICR purports to own, and thus denies any allegations purporting to attribute such knowledge to Fish & Richardson.   Fish & Richardson denies all other allegations contained in paragraph 12.

13.     At the instruction and demand that Harris sell his patents, Harris entered into a Patent Sale Agreement (the "Agreement") with ICR in which he sold ICR the '252 Patent and U.S. Patent Nos. 7,231,050 B1, 7,194,624 B1, 7,069,315 B2, as well as U.S. Patent Application Nos. 09/569,816, 09/669,959, and any continuations from reissues or reexamination of such patents.  Fish knew of the sale of Mr. Harris's patents and, on information and belief, may have improperly obtained a copy of it.  The Agreement expressly requires Mr. Harris to cooperate with ICR in the enforcement of such patents and Fish knows that, absent Mr. Harris' cooperation and testimony, enforcement of the patents by ICR would be impractical or greatly difficult.  The Agreement also expressly provides that ICR possesses the sole and exclusive right to license and enforce the patents identified above.

**RESPONSE:**  Fish & Richardson denies that Mr. Harris ever disclosed to Fish & Richardson his interest in specifically the '252 patent or the other patents listed in paragraph 14, or that he had used firm resources while prosecuting those patents and had targeted firm clients for enforcement of his patents.  Fish & Richardson further denies that Mr. Harris entered into the alleged "Patent Sale Agreement" described in paragraph 13 "at the instruction and demand" of Fish & Richardson.  Fish & Richardson states that the remaining allegations of paragraph 13 purport to characterize the "Patent Sale Agreement," that Fish & Richardson has not reviewed and does not possess that agreement, and that Fish & Richardson thus lacks sufficient information to form a belief as to the truth of the remaining allegations of paragraph 13 and therefore denies them.  Fish & Richardson denies any remaining allegations of paragraph 13.

14.     On August 29, 2007, ICR sent a letter to Google notifying it of ICR's belief that Google was infringing the '252 Patent.  Google is a client of Fish and, on information and belief, Google immediately complained to Fish and sought its help in having the infringement claim withdrawn.

**RESPONSE:**  Fish & Richardson admits that Google is a client of Fish & Richardson. Fish & Richardson further admits that in August or September 2007, someone sent a letter to Google alleging that Google was infringing the '252 patent, and that, on information and belief, the letter stated that Mr. Harris (then a principal at Fish & Richardson) was a named inventor of the '252 patent.  Fish & Richardson further admits that Google complained to Fish & Richardson

after receipt of the letter and the filing of ICR's lawsuit against Google.  Fish & Richardson

denies all remaining allegations contained in paragraph 14.

15.    In response, Fish immediately attempted to pressure, punish and intimidate Mr.
Harris and thwart the entire purpose of the Agreement.  First, on September 12, 2007, Fish's
Managing Partner, Peter Devlin, demanded the resignation of Mr. Harris within 24 hours.  Mr.
Harris complied with that demand.

**RESPONSE:** Fish & Richardson admits that as a result of its discovery of Mr. Harris's

deception, misconduct, and breaches of his duties, on or after September 6, 2007, Mr. Devlin

asked Mr. Harris for his resignation from Fish & Richardson and Mr. Harris resigned thereafter.

Fish & Richardson denies all remaining allegations contained in paragraph 15.

16.    Then, on September 13, 2007, Fish, through its "Ethics Director" Steele,
telephoned the employment lawyer for Mr. Harris, Ms. Lynne Lasry, and made a number of
claims and demands, all designed to undermine and thwart the purpose of the Agreement.  In that
conversation, Fish claimed that it – and not ICR – owned the relevant patents.  Fish asserted that
"the patents are being held in constructive trust for the firm."  Fish demanded that Mr. Harris
"get these patents back" from ICR and insisted on seeing all of Mr. Harris's communications
with the Niro law firm, which had represented Mr. Harris at all relevant times.  Fish, through
Steele, also stated that, if ICR pursued patent infringement litigation, Mr. Harris would face
inequitable conduct claims and his life could be made "miserable," a clear effort to unlawfully
intimidate a key witness.

**RESPONSE:** Fish & Richardson admits that Mr. Steele of Fish & Richardson had a

telephone conversation with Ms. Lasry regarding Mr. Harris on September 13, 2007 in the

context of settlement discussions governed by Fed. R. Evid. 408.  For all of the following

statements in this paragraph, Fish & Richardson expressly reserves all rights and privileges

associated with Fed. R. Evid. 408 and similar protections for settlement communications.  Fish &

Richardson admits that Mr. Steele and Ms. Lasry had a professional and courteous discussion

about issues relating to Mr. Harris's misconduct, potential resolutions of the issues between Fish

& Richardson and Mr. Harris, and each party's position and desired terms for a possible

resolution.  In the context of discussing those subjects, Fish & Richardson admits that it made

statements to Ms. Lasry, including:  (i) that Fish & Richardson asserts an ownership interest in

any patents that Mr. Harris prosecuted while at Fish & Richardson; (ii) that Fish & Richardson wished to know whether Mr. Harris had remaining rights in the patents or whether the patents had been irrevocably transferred to ICR and others; (iii) that to protect the interests of other firm clients, Fish & Richardson wished to see Mr. Harris's communications with Mr. Niro about what other Fish & Richardson clients were the target of enforcement of the Harris patents; and (iv) that it was not tenable for Mr. Harris to remain a principal at Fish & Richardson while at the same time his patent was being asserted against a firm client because, among other reasons, if any claims of inequitable conduct were asserted by the accused defendant against Mr. Harris as a named inventor, such claims would create yet another adversity between Mr. Harris and the Fish & Richardson client, which could develop into a difficult litigation situation that could be a miserable experience.  Fish & Richardson also admits that Mr. Steele and Ms. Lasry discussed the difficulties for all parties to any litigation.  Fish & Richardson denies all remaining allegations contained in paragraph 16.

17.     Fish knew that its ownership and other claims were baseless.  Among other things, Mr. Harris had already been cleared of any wrongdoing in Fish's internal ethics investigation.  Also, Mr. Harris had sold the patents to ICR at Fish's insistence.  Fish also sought to pressure and intimidate Mr. Harris by refusing to even discuss the funds which Fish owes Mr. Harris for his capital contribution and other matters until Mr. Harris accedes to Fish's demands.

**RESPONSE:** Fish & Richardson admits that it has claimed ownership and interests in patents that Mr. Harris prosecuted while he was a principal at Fish & Richardson and denies that those claims are "baseless."  Fish & Richardson further denies that Mr. Harris was "cleared of any wrongdoing in Fish's internal ethics investigation."  Fish & Richardson further denies that it had any knowledge of ICR before ICR filed suit against Fish & Richardson's client, Google.  Fish & Richardson denies all remaining allegations contained in paragraph 17.

18.     Thereafter, Fish continued to exert pressure on Harris and assert its fabricated claims of ownership, this time through several conversations between Mr. Harris's employment counsel, Ms. Lasry, and Fish counsel, Jenner & Block, in September and early October 2007.

During those conversations, Fish: (1) continued to assert that it owns the patents and all of its clients are entitled to "paid-up licenses"; (2) demanded that this lawsuit be dismissed; (3) demanded that Mr. Harris "renegotiate" his Agreement with ICR and (4) refused to discuss the sums due Mr. Harris (likely in violation of California law).  Even more disturbing, comments made during discussions with Ms. Lasry suggested that Fish had accessed Mr. Harris's personal email account for the purpose of retrieving and reviewing emails between Mr. Harris and the Niro firm (communications which Fish and Jenner & Block knew were protected by the attorney-client privilege), all for the purpose of undermining ICR's claim against Google and other potential infringers.  When specifically asked if Fish had sought and retrieved such privileged communications, Fish counsel, Jenner & Block, refused to answer.  Fish, through Jenner & Block, pointedly requested that Ms. Lasry convey Fish's position to counsel for ICR.

**RESPONSE:**  Fish & Richardson admits that, through its counsel, Jenner & Block LLP, it had telephone conversations with Mr. Harris's counsel, Ms. Lasry, regarding Mr. Harris.  Fish & Richardson states that these conversations were settlement discussions governed by Fed. R. Evid. 408.  For all of the following statements in this paragraph, Fish & Richardson expressly reserves all rights and privileges associated with Fed. R. Evid. 408 and similar protections for settlement communications.  Fish & Richardson admits that Ms. Lasry and representatives of Jenner & Block engaged in professional and courteous communications regarding the possibility of Fish & Richardson and Mr. Harris amicably resolving the disputes between them.  Fish & Richardson admits that, in the course of those settlement communications, Ms. Lasry asked for Fish & Richardson's desired terms for a potential resolution, and, in that context, Fish & Richardson discussed with Ms. Lasry, among other things:  (i) Fish & Richardson's ownership and other interests in patents prosecuted by Mr. Harris while a principal at Fish & Richardson, and possible options for resolving the disputes over conflicting claims of ownership, including discussions with ICR and a resolution of ICR's suit against Google; and (ii) Fish & Richardson's desire to understand the agreements that Mr. Harris had purported to enter transferring his alleged interests in the patents and Mr. Harris's unwillingness to provide such information.  Fish & Richardson further admits that in the course of this settlement discussion, Fish & Richardson's counsel politely declined to answer Ms. Lasry's questions about what e-mail Fish & Richardson

had reviewed in its investigation because Ms. Lasry had indicated that Mr. Harris was unwilling

to engage in a mutual exchange of information (including by withholding information about the

terms of his purported sale or other transfer of the patents).    Further answering, Fish &

Richardson states that its counsel instead correctly informed Ms. Lasry that its investigation was

being handled in an appropriate manner.    Fish & Richardson also admits that its counsel did

decline an invitation to discuss issues concerning Mr. Harris's capital contributions as a principal

of Fish & Richardson because such a discussion was premature.    Fish & Richardson denies all

remaining allegations contained in paragraph 18.

## COUNT I

## PATENT INFRINGEMENT AGAINST GOOGLE

19.    Google has infringed, and is now directly infringing, at least claim 1 of the '252
Patent and indirectly at least claims 7, 8, 11 and 13 of the '252 Patent through, among other
activities, the manufacture, use, sale and/or offer for sale of Google's Book Search product or
service which allows or facilitates online viewing of a limited number of pages from a book.
Google has also infringed the '252 Patent by knowingly and actively inducing others to infringe,
and by contributing to the infringement of others by the manufacture, use, sale and/or offer for
sale of Google's Book Search product or service, and by intentionally aiding, assisting and
encouraging the infringement of others through the manufacture, use, sale and/or offer for sale of
the Google Book Search product or service.

**RESPONSE:** Fish & Richardson states that the allegations of paragraph 19 are not

directed to it and thus does not respond to those allegations.    To the extent an answer is deemed

required, Fish & Richardson denies the allegations of paragraph 19.

20.    Google's infringement, contributory infringement and inducement to infringe has
injured plaintiff ICR and ICR is entitled to recover damages adequate to compensate it for such
infringement, but in no event less than a reasonable royalty.

**RESPONSE:** Fish & Richardson states that the allegations of paragraph 20 are not

directed to it and thus does not respond to those allegations.    To the extent an answer is deemed

required, Fish & Richardson denies the allegations of paragraph 20.

21.    Google received actual notice of the '252 Patent by at least August 30, 2007.

**RESPONSE:** Fish & Richardson states that the allegations of paragraph 21 are not directed to it and thus does not respond to those allegations. To the extent an answer is deemed required, Fish & Richardson denies the allegations of paragraph 21.

## COUNT II

### TORTIOUS INTERFERENCE WITH
### PROSPECTIVE ECONOMIC ADVANTAGE AGAINST FISH

22.    ICR has a reasonable expectation of entering into valid business relationships with others, by among other things, offering and entering into patent license agreements with Google and other infringers of the '252 Patent owned by ICR.

**RESPONSE:** Fish & Richardson denies the allegations contained in paragraph 22.

23.    Fish has knowledge of that expectation.

**RESPONSE:** Fish & Richardson denies the allegations contained in paragraph 23.

24.    Fish has purposefully and wrongfully interfered with ICR's legitimate expectation by among other things,

    a.    Wrongfully asserting ownership claims in the ICR patents, which claims Fish knows to be false.

    b.    Seeking to intimidate a material witness (Mr. Harris) necessary to the enforcement of ICR's patent rights;

    c.    Insisting that Mr. Harris "undo" the valid and binding Agreement with ICR;

    d.    Attempting on behalf of its various clients (like Google) to force ICR to abandon its claims for infringement by conveying rights to Fish to pass on to its clients; and

    e.    Invading the attorney-client privilege between Mr. Harris and the Niro firm for the purpose of undermining ICR's claim against Google and others.

**RESPONSE:** Fish & Richardson denies the allegations contained in paragraph 24, including each subpart (a) through (e).

25.    ICR has been damaged by Fish's actions. Among other things, ICR's negotiating position for a possible license of the '252 Patent has been undermined. Indeed, a purpose of Fish's conduct was to minimize, if not eliminate, Google's downside exposure to ICR's

infringement claim. ICR also has had to postpone further enforcement of its patent portfolio in order to defend itself against Fish's interference. ICR has already lost and is threatened with the future and permanent loss of substantial revenues in the loss of millions of dollars.

**RESPONSE:** Fish & Richardson denies the allegations contained in paragraph 25.

## COUNT III

## DECLARATORY JUDGMENT AGAINST FISH

26.     An actual controversy exists between ICR and Fish regarding Fish's claims of an ownership interest in the patents acquired and owned by ICR under the Agreement. Such claims have thwarted ICR's legitimate enforcement of patent rights under the Agreement.

**RESPONSE:** Fish & Richardson admits that a controversy exists between ICR and Fish & Richardson regarding ownership of the '252 Patent. Fish & Richardson denies the remaining allegations of paragraph 26.

27.     ICR, therefore, seeks a declaration that: (1) ICR is the rightful owner of U.S. Patent Nos. 7,111,252 B1, 7,231,050 B1, 7,194,624 B1, 7,069,315 B1, and U.S. Patent Application Nos. 09/569,816 and 09/669,959, together with any continuations, continuations-in-part, divisionals and patent applications claiming priority (in whole or in part) from or through the above-referenced patents, and (2) Fish's claims to the contrary are invalid.

**RESPONSE:** Fish & Richardson denies that ICR is entitled to the declaration it seeks.

## PRAYER FOR RELIEF

Fish & Richardson denies that ICR is entitled to any of the relief it seeks.

## JURY DEMAND

Fish & Richardson demands a trial by jury on all claims asserted against it so triable.

## AFFIRMATIVE DEFENSES

For its affirmative defenses against ICR, Fish & Richardson states as follows:

1.     ICR has failed to state a claim for which relief can be granted.

2.     As a result of Mr. Harris's breach of his contract with Fish & Richardson (the "Law Firm Agreement"), his breach of his fiduciary duties, and the other misconduct and circumstances alleged in detail in Fish & Richardson's counterclaim against ICR and third-party

complaint against Mr. Harris, Fish & Richardson possesses legal ownership, and/or equitable ownership, and/or other interests in the '252 Patent inconsistent with and superior to any interest claimed by ICR or Mr. Harris.

3.      ICR, by virtue of its own knowledge or the knowledge of its counsel, was on notice as to a dispute regarding the legal and equitable ownership of the '252 Patent before it acquired its purported interests in the Patent.

4.      The alleged prospective economic advantage that ICR has identified is too remote or speculative to be actionable.

5.      Fish & Richardson's conduct at all times was privileged and/or not wrongful or actionable.

6.      ICR's claims are barred by the doctrine of unclean hands.

WHEREFORE, Fish & Richardson requests that this Court enter judgment on its behalf and against ICR, and order such other relief as the Court may deem equitable, just, and proper.


Dated: November 5, 2007                         Respectfully submitted,

                                                FISH & RICHARDSON P.C.

                                                By:     s/David J. Bradford
                                                        dbradford@jenner.com
                                                        One of Its Attorneys

David J. Bradford
Terrence J. Truax
Eric A. Sacks
Daniel J. Weiss
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, Illinois  60611
Telephone No:  312 222-9350
Facsimile No:  312 527-0484

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel J. Weiss, an attorney, caused the foregoing Fish & Richardson's Amended Answer to ICR's Amended Complaint to be filed with the Court by means of the Court's CM/ECF system, which will send notification of such filing to the following counsel at their e-mail addresses on file with the Court:

Raymond P. Niro
Paul K. Vickrey
Richard B. Megley, Jr.
Karen L. Blouin
Niro, Scavone, Haller & Niro
181 W. Madison, Suite 4600
Chicago, Illinois  60602

*Counsel for Illinois Computer Research, LLC
and Mr. Scott C. Harris*

Steven L. Platt
Arnold and Kadjan
19 West Jackson Blvd., Suite 300
Chicago, IL 60604
(312) 236-0415

*Counsel for Mr. Scott C. Harris*

This the 5th day of November 2007,

s/Daniel J. Weiss
  dweiss@jenner.com
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, Illinois  60611
Telephone No:  312 222-9350
Facsimile No:  312 527-0484