# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **ILLINOIS COMPUTER RESEARCH, LLC,** *Plaintiff and Counterclaim Defendant* | )<br>)<br>)<br>) |
| v. | ) |
| **GOOGLE, INC.,** *Defendant, and* | )<br>)<br>) |
| **FISH & RICHARDSON P.C.,** *Defendant, Counterclaimant and Third-Party Plaintiff,* | )  No. 07 C 5081<br>)<br>)  Judge Pallmeyer<br>)<br>)  Magistrate Judge Valdez |
| v. | ) |
| **SCOTT C. HARRIS,** *Third-Party Defendant and Counterclaimant,* | )<br>)<br>)<br>) |
| v. | ) |
| **FISH & RICHARDSON P.C.,** *Defendant, Counterclaimant, Third-Party Plaintiff and Counterclaim Defendant.* | )<br>)<br>)<br>) |

## FISH & RICHARDSON P.C.'S MEMORANDUM
## IN SUPPORT OF ITS MOTION FOR LIMITED EXPEDITED DISCOVERY

Pursuant to Rules 16, 26, and 34 of the Federal Rules of Civil Procedure, Fish & Richardson P.C. ("Fish & Richardson"), by its attorneys Jenner & Block LLP, respectfully submits this memorandum of law in support of its Motion For Limited Expedited Discovery from Scott Harris and ICR. The motion seeks the immediate production of an alleged patent sale agreement between Mr. Harris and ICR and of any agreement by which Mr. Harris is entitled to participate financially in and/or obligated to cooperate with the assertion of claims based on the patents that he purportedly sold while a principal at Fish & Richardson (the "Agreements").

Fish & Richardson seek the immediate production of the Agreements in order to investigate promptly the grave question of whether plaintiff's counsel should be disqualified from this case and/or made a party to this case.

## **INTRODUCTION**

The Agreements were entered into while Mr. Harris was a principal in Fish & Richardson and apparently secured Mr. Harris' cooperation with and gave him a financial stake in lawsuits against, among others, clients of Fish & Richardson, including this lawsuit against Google. The Niro Firm apparently brokered the Agreements, drafted the Agreements, represented ICR and Mr. Harris in negotiating the Agreements, and may itself benefit financially from the Agreements through a contingent interest in any recovery from Google and others. On information and belief, Mr. Harris has financially benefited from the recent settlement between ICR and Google, notwithstanding that the suit was apparently filed with Mr. Harris' cooperation against a Fish & Richardson client while Mr. Harris was still a Fish & Richardson principal. ICR and Mr. Harris have not attached the Agreements to their pleadings and have refused to produce them, in response to repeated requests from counsel for Fish & Richardson.

Based on ICR's and Mr. Harris' own admissions, the Agreements raise very serious concerns about whether Mr. Harris' and ICR's counsel, Niro, Scavone, Haller & Niro (the "Niro Firm"), may prosecute this litigation and as to whether the Niro Firm should be a party to this case. ICR's and Mr. Harris' allegations in this matter suggest that the Agreements were entered into in violation of Mr. Harris' legal and ethical duties to Fish & Richardson and its clients and in violation of the Niro Firm's duties. In exchange for payments from ICR for rights in Mr. Harris' patents and for a financial interest in the outcome of this and other litigation, Mr. Harris apparently agreed to cooperate in and financially benefit from litigation against his

law firm's clients, among others. The Niro Firm apparently facilitated this apparent violation of Mr. Harris' ethical and fiduciary obligations not to take a pecuniary interest adverse to his clients and to act in the best interests of his clients and his fellow partners. The Niro Firm apparently represented both Mr. Harris and ICR, a shell company formed by the Niro Firm in the transaction, and apparently is benefiting from Mr. Harris' breach of fiduciary duty through a contingent fee arrangement.

Because of the gravity of these issues, Fish & Richardson will not file any motions or pleadings directed at the Niro Firm without further and fully investigating the facts. However, if it is appropriate that such a motion or pleadings be filed, it is in the interest of all concerned that it be done promptly. Fish & Richardson requests that the Court order ICR and Mr. Harris to produce immediately the Agreements that are at the heart of these issues.

## BACKGROUND

On September 10, 2007, plaintiff Illinois Computer Research, LLC ("ICR") filed a three page complaint against Google Inc. ("Google"). That complaint claimed that Google infringed a patent purportedly owned by ICR, United States Patent No. 7,111,252 ("the '252 Patent").

On October 5, 2007, ICR filed an eleven page amended complaint that added claims against Fish & Richardson as an additional defendant. ICR alleges that it is the "sole and exclusive owner" of certain patent rights supposedly conveyed by Mr. Harris under the Agreements.

According to ICR, in one Agreement, Mr. Harris sold ICR rights in the '252 Patent, three other patents, two patent applications, and any continuations from and reissues or reexamination of "such patents." (Am. Compl. ¶ 13.) According to ICR, the Agreement "expressly requires Mr. Harris to cooperate with ICR in the enforcement of such patents." (*Id.*) ICR's and

Mr. Harris' pleadings do not specify what or how Mr. Harris was paid under the Agreement or whether Mr. Harris was promised an interest in the outcome of litigation brought on the patents that were purportedly transferred to ICR. Facts made known to Fish & Richardson indicate that, notwithstanding Mr. Harris's representations to the contrary to his fellow Fish & Richardson principals, while Mr. Harris was a principal in Fish & Richardson, Mr. Harris agreed to participate financially in lawsuits against, among others, firm clients. Fish & Richardson seeks to confirm whether and to what extent Mr. Harris has had a financial interest in the outcome of this litigation and in other claims which may be asserted against firm clients. He has refused to provide a copy of the Agreements in response to repeated informal requests.

The Niro Firm incorporated ICR on July 30, 2007, and apparently arranged for the Harris patents to be transferred to ICR as of that date. The Niro Firm apparently drafted the Agreements for both of its "clients" to sign. At the time of the Agreements, Mr. Harris was a Fish & Richardson attorney and a principal of the firm. He thus had substantial fiduciary duties to the other Fish & Richardson principals and the firm's clients. The firm's clients included Google – a fact undeniably known to Mr. Harris, to ICR, and to the Niro Firm.

By the time he entered into the Agreements, Mr. Harris already understood that Google was a possible target of the '252 Patent. (He had engaged in e-mail correspondence using Fish & Richardson resources where the idea of filing suit against Google was considered.) It appears that ICR and the Niro Firm knew that Google was a target as well. Indeed, within a month after the Agreements' finalization, ICR, Mr. Harris, and the Niro Firm were threatening Google with an infringement suit – even as Mr. Harris remained a Fish & Richardson principal. In fact, Mr. Harris did not leave Fish & Richardson until after the Niro Firm, through ICR, sued Google.

Accordingly, if the circumstantial evidence surrounding the Agreements proves true, ICR, Mr. Harris, and the Niro Firm may have engaged in very serious misconduct, as follows:

- Mr. Harris may have breached his ethical duty to avoid conflicts of interest and his fiduciary duties to Fish & Richardson by suing a firm client, by taking a pecuniary interest in the outcome of litigation against a firm client, and by agreeing to cooperate in litigation against firm clients;[1]

- The Niro Firm and ICR may have aided a breach of fiduciary duty by arranging for Mr. Harris to be paid to cooperate in litigation against firm clients and by seeking and securing Mr. Harris' cooperation in claims against firm clients, all in a context where the Niro Firm may benefit financially through a contingent fee agreement;[2]

- The Niro Firm may have breached its ethical duty by obtaining evidence from Mr. Harris in violation of Fish & Richardson's rights;[3]

- The Niro Firm may have breached it own ethical duties by arranging for Mr. Harris to be paid to cooperate in litigation against Fish & Richardson clients.[4]

Mr. Harris has not freed himself of his fiduciary obligations to Fish & Richardson and its clients merely because he has now left the firm. Even a fiduciary's resignation does not sever

---

[1] As a lawyer admitted to the California bar, Mr. Harris is bound to abide by California's Rules of Professional Conduct. California lawyers, like Illinois lawyers, have an ethical obligation not to knowingly acquire "an ownership, possessory, security, or other pecuniary interest adverse to a client" absent the client's informed, written consent. Cal. Rules of Prof'l Conduct 3-300; *see also* N.D. Ill. Rules of Prof'l Conduct LR 83.51.8. Mr. Harris had a fiduciary duty of utmost good faith and loyalty to Fish & Richardson, a Massachusetts professional corporation, compelling him to consider the firm's welfare and refrain from acting for purely private gain. *Meehan v. Shaughnessy*, 404 Mass. 419, 433 (1989).

[2] The Niro Firm may be held liable for aiding and abetting a breach of fiduciary duties when it is aware of its role in the tortious activity and substantially assists in a breach of fiduciary duty. *See Thornwood v. Jenner & Block*, 344 Ill. App. 3d 15, 27 (1st Dist. 2003).

[3] The Niro Firm has an ethical obligation not to "use methods of obtaining evidence that violate the legal rights of [a third person.]" N.D. Ill. Rules of Prof'l Conduct LR 83.54.4. Fish & Richardson's substantive legal rights include the right to Mr. Harris' utmost good faith and loyalty. *Meehan v. Shaughnessy*, 404 Mass. 419, 433 (1989).

[4] The Niro Firm has an ethical obligation not to induce or assist another lawyer's conduct when it knows that conduct will violate the ethical rules. N.D. Ill. Rules of Prof'l Conduct LR 83.58.4(a)(2).

liability for completing disloyal transactions that began during the fiduciary relationship or were founded on information acquired during the relationship. *Veco Corp. v. Babcock*, 243 Ill. App. 3d 153, 161 (1st Dist. 1993). If the worst proves true, the Niro Firm may potentially be added as a defendant in this case and may be disqualified as counsel for ICR and Harris.[5]

There might be some innocent explanation for Mr. Harris and the Niro Firm's conduct. None is readily apparent. Because it is both a grave and unhappy matter for a professional firm to make allegations against another professional firm – and particularly against counsel of record in litigation – Fish & Richardson seeks to investigate this matter further before determining whether to seek relief based on alleged tortious, unethical, or disqualifying conduct on the part of the Niro Firm. Fish & Richardson believes that it has an obligation to investigate the concerns set forth in this motion in a prompt and thorough manner. The Agreements are a basic and important part of the relevant facts. There is no basis for delay in producing them.

Fish & Richardson has repeatedly asked Mr. Harris, ICR, and the Niro Firm to provide a copy of the Agreements:

- On October 4, 2007, counsel for Fish & Richardson sent a letter to employment counsel for Mr. Harris asking that: "Scott Harris immediately produce for our inspection all documents which relate or refer to any purported transfer of Mr. Harris' alleged rights or interests in any intellectual property rights, including issued patents or pending applications, that were acquired, conceived of or prosecuted before the United States Patent & Trademark Office during the period Mr. Harris was a principal at Fish & Richardson." Mr. Harris refused to produce the requested documents.

- On October 8, 2007, counsel for Fish & Richardson sent a letter to the Niro Firm requesting a copy of the Patent Sale Agreement referenced in paragraph 13 of

---

[5] When a lawyer has committed ethical violations related to the filing of a particular lawsuit, a court may disqualify the lawyer's firm to eliminate conflicts of interest, ensure the lawyer does not profit or benefit from the unethical conduct, and to preserve public confidence in the integrity of the legal process. *See Healy v. Axelrod Const.*, 155 F.R.D. 615, 618 (N.D. Ill. 1994).

- ICR's amended complaint. Mr. Niro refused to provide the requested agreement and information.

- On November 13, 2007, counsel for Fish & Richardson again wrote to the Niro Firm and renewed the request for a copy of the agreements purporting to transfer Mr. Harris' interests in the '252 Patent and any other patents and which expressly requires Mr. Harris to cooperate with ICR in the enforcement of ICR's patents. Counsel for Fish & Richardson requested that a copy of the agreement be provided before the Rule 26(f) conference, scheduled for November 16, so as to make it more productive. Counsel for Fish & Richardson also requested information identifying with whom Mr. Harris allegedly had an attorney client relationship and when any such engagements were commenced. The Niro Firm again refused.

- Finally, on November 16, 2007, at the Rule 26(f) conference, counsel for Fish & Richardson again requested a copy of the Patent Sale Agreement alleged in paragraph 13 of ICR's amended complaint. The Niro Firm again refused, although stated it would consider the matter only if Fish & Richardson would disclose documents reflecting unrelated legal advice Fish & Richardson received from outside counsel.

After these attempted consultations with the Niro Firm, Mr. Harris, ICR, and the Niro Firm have refused to produce the basic Agreements underlying their claims. For the following reasons, they should be compelled to do so immediately.

## ARGUMENT

Under Rules 16, 26, and 34 of the Federal Rules of Civil Procedure, this Court has broad authority to manage the discovery process. At a Rule 16 conference, the Court may "take appropriate action with respect to" "the formulation and simplification of the issues;" "the necessity or desirability of amendments to the pleadings;" "the possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof;" "the control and scheduling of discovery;" "the identification of witnesses and documents;" and "the need for adopting special procedures for managing . . . unusual proof problems." *See* Fed. R. Civ. P. 16(c)(1), (2), (3), (6), (7), (12). Under Rule 26(d), the Court may order the timing and sequence of discovery outside the order otherwise called-for under the Rules. *See* Fed. R. Civ. P. 26(d);

7

*see also* 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2046.1 (2d ed. 2007) (stating that "it may also be appropriate for the court to grant exceptions on a piecemeal basis, tailoring leave to the ground for the request"). And Rule 34(b) allows the Court discretion to order a shorter time to respond to discovery requests than the default 30-day period. *See* Fed. R. Civ. P. 34(b).

As explained below, expedited discovery may be allowed where there is "good cause." *See* 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2046.1 (2d ed. 2007). Given the significance of the Agreements to the landscape of this case, there is "good cause" for the expedited production of those documents.

## I.     EXPEDITED DISCOVERY MAY BE HAD FOR "GOOD CAUSE."

Requests for expedited discovery are assessed under "the flexible standard of reasonableness and good cause." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005) ("it makes sense to examine . . . the *reasonableness* of the request in light of all the surrounding circumstances"); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618 (N.D. Ill. 2000) (adopting a reasonableness standard and rejecting a four-factor test). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). Factors weighing in favor of finding good cause include that the requested documents will substantially contribute to moving a case forward, the discovery request is narrowly tailored to that benefit, the requested information would have been produced during the course of normal discovery, and that there is no real prejudice to defendants in advancing discovery by a modest amount of time. *Id.* at 276-77.

Each of those factors is present here.

## II.   THERE IS GOOD CAUSE FOR EXPEDITED DISCOVERY HERE.

Here, the Agreements should be produced on an expedited basis for each of the reasons suggested in *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276-77 (N.D. Cal. 2002).  Indeed, expedited discovery with respect to the Agreements not only would benefit the administration of justice, but is needed to prevent further harm to Fish & Richardson.

The production of the Agreements will substantially move this case forward.  With the production and review of those Agreements, Fish & Richardson will better be able to analyze the possibility that the Niro Firm should be disqualified and/or added as a defendant.  The request for expedited discovery is narrowly tailored to that end.

The Agreements will have to be produced at some point in this litigation regardless.  It is the basis of ICR's alleged ownership claims.  (*See* Am. Compl. ¶ 26.)  Indeed, ICR seeks a declaration that it is the rightful owner of patents and patent applications supposedly transferred under the Agreements.  (*See id.* ¶ 27.)  ICR's claim of tortious interference is similarly predicated on the Agreements.  ICR alleges an expectation of "entering into patent license agreements with Google and other infringers of the '252 Patent owned by ICR."  (*See id.* ¶ 22.)

And neither ICR, nor Mr. Harris, nor the Niro Firm could be prejudiced by the production of the Agreements.  Expediting production of these documents would only advance discovery by a modest amount.  Indeed, there can be no prejudice to ICR, Mr. Harris, or even the Niro Firm from the production of the Agreements so that the issues of disqualification and amendments to Fish & Richardson's pleadings may be promptly addressed.

There are additional grounds for expedited discovery here, in addition to those provided for in *Semitool*.  If, as is suggested by the circumstantial evidence, the Niro Firm has induced

ethical breaches by Mr. Harris, has used improper discovery methods, or has aided and abetted Mr. Harris' ethical breaches – then those violations may be continuing violations. With the production of the Agreements, this issue may be promptly investigated and Fish & Richardson's rights and the integrity of the judicial process and the profession protected.

In sum, the Agreements should be produced as soon as possible so that appropriate threshold issues may be brought before the Court in a prompt manner in connection with the Court's management of this case.

## CONCLUSION

For the foregoing reasons, the Court should enter an order compelling ICR to produce immediately the Agreements referenced in its amended complaint.

Dated:  November 19, 2007　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　FISH & RICHARDSON P.C.


　　　　　　　　　　　　　　　　　　　　　By:　  s/David J. Bradford  
　　　　　　　　　　　　　　　　　　　　　　　　dbradford@jenner.com  
　　　　　　　　　　　　　　　　　　　　　　　　One of Its Attorneys


David J. Bradford, Esq.  
Terrence J. Truax, Esq.  
Eric A. Sacks, Esq.  
Daniel J. Weiss, Esq.  
JENNER & BLOCK LLP  
330 North Wabash Avenue  
Chicago, IL  60611  
Telephone No:  312 222-9350  
Facsimile No:  312 527-0484

**CERTIFICATE OF SERVICE**

I, David J. Bradford, an attorney, caused the foregoing to be filed with the Court by means of the Court's CM/ECF system, which will send notification of such filing to the following counsel at their e-mail address on file with the Court:

Raymond P. Niro
Paul K. Vickrey
Richard B. Megley, Jr.
Karen L. Blouin
Niro, Scavone, Haller & Niro
181 W. Madison, Suite 4600
Chicago, Illinois  60602

*Counsel for Illinois Computer Research, LLC
and Mr. Scott C. Harris*

Steven L. Platt
Arnold and Kadjan
19 West Jackson Blvd., Suite 300
Chicago, IL 60604
(312) 236-0415

*Counsel for Mr. Scott C. Harris*

This the 19th day of November, 2007,

                                                s/David J. Bradford

                                                dbradford@jenner.com
                                                JENNER & BLOCK LLP
                                                330 North Wabash Avenue
                                                Chicago, Illinois  60611
                                                Telephone No:  312 222-9350
                                                Facsimile No:  312 527-0484