# EXHIBIT R



Not Reported in F.Supp.2d                                                                                             Page 1

Not Reported in F.Supp.2d, 2004 WL 737463 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Monroe's Estate v. Bottle Rock Power Corp.
E.D.La.,2004.
Only the Westlaw citation is currently available.
United States District Court,E.D. Louisiana.
ESTATE OF J. Edgar MONROE, et al
v.
BOTTLE ROCK POWER CORPORATION, et al
No. 03-2682.

April 2, 2004.

David F. Waguespack, Bailey Henderson Gomila, Lemle & Kelleher, LLP, New Orleans, LA, for Plaintiffs.
Walter C. Thompson, Jr., Jan K. Frankowski, Barkley & Thompson, LC, New Orleans, LA, Robert N. Habans, Jr., Habans & Carriere, Slidell, LA, Robert A. Mathis, Newman, Mathis, Brady, Wakefield & Spedale, Metairie, LA, Greg C. Noschese, William J. Moore, Munsch, Hardt, Kopf, Harr, P.C., Dallas, TX, for Defendants.

ORDER AND REASONS
KNOWLES, Magistrate J.
*1 On March 31, 2004, the matter of plaintiffs' Motion to Compel Defendants to Produce Certain Documents came on for hearing before the undersigned Magistrate Judge. Counsel for the defendants filed a formal memorandum in opposition, to which plaintiffs formally replied. For the following reasons, plaintiffs' motion to compel is GRANTED IN PART and DENIED IN PART, all as more specifically set forth below.

BACKGROUND

On September 25, 2003, plaintiffs, Estate of J. Edgar Monroe and Robert J. Monroe ("Monroe"), filed the captioned lawsuit against defendants, Bottle Rock Power Corporation ("Bottle Rock"), David N. Jones ("Jones"), Jimmy Winemiller (" Winemiller"), Monterrey Farms, Inc. ("Monterrey Farms") and A & B Farms, Inc. ("A & B Farms") (collectively referred to as the "Arkansas Defendants "), seeking to recover in excess of four million ($4,000,000.00) dollars, allegedly representing unpaid interest due on a note.

The driving force and urgency behind the plaintiffs' Motion to Compel are the imminent depositions of the Arkansas Defendants, Winemiller and Jones, and the defendants' pending Motion to Dismiss premised on alleged lack of personal jurisdiction and alternatively, transfer for *forum non conveniens.* The hearing on the defendants' motion to dismiss/transfer was continued by agreement and reset for oral hearing on April 28, 2004, so as to permit the opportunity for jurisdictional discovery. The depositions of the Arkansas Defendants are scheduled for Monday, April 5, 2004 in Little Rock, Arkansas and the deposition of James R. Hagan and the Hagan Law Firm is set for April 14, 2004 in Palo Alto, California. [Rec. Doc. Nos. 21-25]. The return date on plaintiffs' Request for Production was March 11, 2004 and the return date on the subpoena duces tecum was March 15, 2004. By agreement, the scope of the discovery requests was limited to matters relevant to the defendants' Motion to Dismiss. The background of the case and allegations relevant to the instant motion to compel are set forth below.

Plaintiffs' claims emanate from alleged financial representations, dealings and agreements which culminated in the multi-million dollar purchase of a geothermal power plant in California by the defendant, Bottle Rock, a California corporation. Sometime prior to 2001, Bottle Rock entered into a purchase agreement to acquire a power plant from the State of California, Department of Water Resources; the closing date was set for June 28, 2001.[FN1] To consummate the purchase, Bottle Rock was required to pay an amount of cash exceeding one million five hundred thousand ($1,500,000.00) dollars to the State of California

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 2
Not Reported in F.Supp.2d, 2004 WL 737463 (E.D.La.)
(Cite as: **Not Reported in F.Supp.2d**)

and to deliver a surety bond in the amount of five million ($5,000,000.00) dollars.[FN2] Plaintiffs aver, on information and belief, that on June 1, 2001, Winemiller and Jones, through their closely-held corporations, Monterrey Farms and A & B Farms, owned eighty-eight percent (88%) of the outstanding stock of Bottle Rock and that Jones owned a controlling interest in Monterrey Farms and Winemiller owned a controlling interest in A & B Farms.

FN1. Complaint at ¶ 11 [Rec. Doc. No. 1].

FN2. *Id.* at ¶ 12.

*2 In June of 2001, Winemiller and Jones requested that Louisiana plaintiff Monroe loan the funds ($1,500,000.00) necessary to acquire the California geothermal power plant.[FN3] Prior to making the loan, Monroe required the Arkansas defendants to submit financial statements. Winemiller provided Monroe a package of financial statements, to wit: (1) "Jimmy and/or Rebecca Winemiller Balance Sheet" detailing cash assets of $350,000.00, as well as the assets of operating companies and entities, including Delta Plantation, Inc. (100% owned), U.S. Investment Realty Co., Inc. (100% owned), Winemiller Farms (100% owned), Dahomey Plantation (50% owned), Tulip Farms, Inc. (100% owned), Conn Property-1601 Acres, Conn Property-401 Acres, Donnick, Inc. (50% owned) and JDW, Inc. (50% owned), *inter alia;* (2) U.S. Investment Realty Co., Inc. Balance Sheet dated February 15, 2001, listing assets including but not limited to Con Farm Louisiana 1280 acres valued at $1,150,000.00; (3) Tulip Farms, Inc. Balance Sheet dated February 15, 2001 listing assets including but not limited to Conn Property-3413 acres [in] Louisiana valued at $3,400,000.00; and JDW, Inc. Balance Sheet dated February 15, 2001, listing the asset of a "House, Concordia Parish, Louisiana" valued at $450,000.00.[FN4]

FN3. Complaint at ¶ 14.

FN4. *See* Plaintiffs' Motion to Compel at *in globo* Exhibit "D."

In support of their motion to compel, plaintiffs further highlight that the Secretary of State's records reflect that Winemiller is an officer of Rosedale Farms, Inc. and Nachitoches Land Co., Inc., both of which are registered to do business in Louisiana and whose principal offices are in Louisiana. Plaintiffs further note that Winemiller is listed as a partner in Ashland Industrial Park Partnership and a member of St. Martin Property, LLC, both of which are registered to do business in Louisiana and have principal offices in Louisiana. Rebecca Winemiller is listed as an officer of Angelina Grain Elevators, Inc., and Ophelia Land Co., Inc., which are registered to do business in Louisiana, with principal offices in this state.[FN5] Plaintiffs argue that all of the Arkansas Defendants' contacts with the forum may be relevant to the jurisdictional inquiry, since the plaintiffs contend that there is both specific personal jurisdiction and general personal jurisdiction over the defendants.

FN5. *See* Plaintiffs' Motion to Compel at *in globo* Exhibit "E."

Turning to the defendant Jones, plaintiffs highlight the fact that he also submitted financial statements allegedly for the purpose of inducing the plaintiff to loan the funds requested and to issue a $5,000,000.00 letter of credit to secure the $5,000,000 surety bond necessary to close the deal. For his part, Jones provided Monroe with a financial statement entitled "Statement of Financial Condition as of January 15, 2001, David J. Jones and Betty Jones, Jones Family Limited Partnership."[FN6] Additionally, the plaintiff directs the Court's attention to Louisiana Secretary of State's records reflecting that the Joneses are officers in the Sunflower Corporation, Inc., a Louisiana company with a principal place of business in Monterey, Louisiana and that David Jones, Rebecca Winemiller and Sunflower Corporation are partners in Angelina Farms, which is also domiciled in Monterey, Louisiana. The records further reflect that David Jones and Rebecca Winemiller are officers and directors of Angelina Grain Elevators, Inc., which is registered to do business in Louisiana and whose principal office is in Monterey, Louisiana.[FN7] Plaintiff further notes that there are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                       Page 3
Not Reported in F.Supp.2d, 2004 WL 737463 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

several Louisiana corporations in which David and/or Betty Jones are listed as officers.

> FN6. *See* Plaintiffs' Motion to Compel at *in globo* Exhibit "F."
>
> FN7. *See* Plaintiffs' Motion to Compel at *in globo* Exhibit "G".

*3 In addition to the cash borrowed, a five million dollar bond was necessary to close the deal. At Winemiller's and Jones' request, Monroe lent Bottlerock, Winemiller and Jones the funds to acquire the power plant and the defendants executed a Promissory Note dated June 27, 2001. On or about August 23, 2001, Bottle Rock acquired the power plant. Shortly after the loan, Jones and Winemiller requested that Monroe provide a $5,000,000.00 letter of credit to secure the $5,000,000.00 bond, advising that such a letter of credit was necessary to consummate the deal (*i.e.*, purchase of the power plant). According to the plaintiffs, Monterrey and A & B agreed to cause the surety on the bond to release the Monroe letter of credit upon the sale of their Bottle Rock stock; however, they allegedly failed to do so. Plaintiffs claim that, pursuant to the promissory note, the Arkansas Defendants' failure to secure release of the Monroe letter of credit constituted breach of their obligation under an Extension Agreement. Plaintiffs allegedly pledged $5,000,000.00 to secure the letter of credit and incurred costs in excess of $12,000.00, renewing the letter of credit in August of 2003. Plaintiffs further include claims for lost profit, and other damages resulting from plaintiffs' alleged loss of business and loss of investment and other opportunities for which the aforesaid pledged sum could have been used.

After the captioned lawsuit was filed, plaintiffs note that the defendants requested a delay to have time to have the Monroe Letter of Credit replaced and to resolve the amount due under the note. Thereafter, defendants obtained an additional extension of time to plead through January 31, 2004 in exchange for agreeing to accept service. The district judge has temporarily stayed the case through April 1, 2004, but only as to defendants, IPIC International, Bottle Rock Power Corporation, and Bottle Rock Holdings Corporation.FN8

> FN8. *See Agreed Order* [Rec. Doc. No. 16].

*CONTENTIONS OF THE PARTIES*

There are a number of broad areas of dispute discussed below. However, generally defendants contend that their objections to the discovery and the temporal scope of discovery are proper. Additionally, the Arkansas Defendants submit that they have already produced all relevant non-privileged discovery, as well as a privilege log identifying several responsive documents which were withheld, either on the basis of attorney-client privilege, the work-product privilege or both. Defendants contend that depositions should go forward in Arkansas and California, without any further production of documents, and that, if the deposition testimony establishes that other relevant documents may exist, the parties can address those matters after the fact of the Arkansas Defendants' depositions. Finally, the Arkansas Defendants contend that they have no control over documents in the possession of Bottle Rock's counsel, Hagan, and that, if additional documents in his possession are sought, Bottle Rock and/or Hagan are the best source.

*4 Additionally, the Arkansas Defendants contend that actions taken in Louisiana by themselves on behalf of various juridical entities referred to by the plaintiffs, as well as the business and non-business contacts of their respective wives, if any, are not properly the subject of discovery. More particularly the defendants argue that such contacts are irrelevant for purposes of establishing personal jurisdiction and urge this Court to apply the " fiduciary shield" doctrine, since the Arkansas defendants were sued individually. Similarly, defendants argue that the contacts of their respective wives are not imputable for purposes of the jurisdictional inquiry.

The plaintiffs counter that, pursuant to the case law governing the jurisdictional inquiry, the Arkansas defendants' business and non-business contacts are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 4
Not Reported in F.Supp.2d, 2004 WL 737463 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

clearly relevant to establish "general jurisdiction," which attaches when the defendant's contacts with the forum state are substantial, continuous and systematic. Moreover, plaintiffs submit that contacts of the defendants on behalf of other juridical entities and the contacts of the defendants' wives may be imputed to the defendants on the basis of alter-ego doctrine and that these contacts are fair grist for discovery, since it goes directly to the inquiry encompassing either or both general and specific personal jurisdiction.

Plaintiffs contend that their discovery requests are properly aimed at uncovering information which may well warrant the imputation of the corporate contacts to the individual defendants. They argue that denying the discovery in this regard will foreclose the opportunity to conduct reasonable discovery relevant to the issue of imputation of jurisdictional contacts. Plaintiff's highlight the facts that, in order to secure the instant loan plus bond/letter of credit, the defendants submitted (1) financial statements jointly with their wives, (2) in the case of David Jones, the financial statement included the assets of what was termed, the "Jones Family Limited Partnership" and (3) the balance sheets of a number of closely-held, fifty percent owned and one-hundred percent owned corporations and other entities with extensive assets in Louisiana were submitted for purposes of inducing Monroe to loan the purchase amount and to issue a five million dollar letter of credit to secure the five million dollar surety bond.

Plaintiffs contend that "the Arkansas Defendants' financial information and the records of the Louisiana Secretary of State stand in stark contrast to the contacts admitted by Jones and Winemiller in their affidavits."[FN9] Plaintiffs ennui is fueled by the affidavit testimony of Jones stating that he briefly visited a farm in Concordia Parish that was owned by a partnership which his family had an interest and further attests that: "I have not *personally* had any other *business* dealings in the State of Louisiana within the past 10 years."[FN10] Plaintiffs are equally concerned with the affidavit testimony of Winemiller, who claims that, other than the loans obtained from or guaranteed by banks in Louisiana and 70 acres of farmland owned in Concordia Parish for approximately three months, he has not " *personally* had any other *business* dealings in the State of Louisiana within the past 10 years."[FN11]

> FN9. Plaintiffs' Memorandum in Support of Motion to Compel at p. 12.
>
> FN10. *See id.* (quoting Jones's Affidavit ¶ 15) (italicized emphasis).
>
> FN11. *See* Plaintiffs' Memorandum in Support of the Motion to Compel at p. 12 (quoting Winemiller's Affidavit at ¶ 13) (italicized emphasis added).

*5 In light of what discovery has revealed to date, plaintiffs submit that the aforesaid representations by the Arkansas Defendants warrant a closer inspection to determine the true extent and nature of their Louisiana contacts. Moreover, plaintiffs submit that the defendants cannot avoid divulging contacts, which they, and no one else, have deemed to be not "personal" and thus not discoverable. Plaintiffs contend that it is apparent, based on the defendants' written submissions and what plaintiffs' investigation has revealed to date, that the Arkansas Defendants have not revealed all of their contacts with state of Louisiana and thereby have failed to afford the plaintiffs any opportunity to test the veracity of defendants' affidavit testimony. Plaintiffs contend that it is for the district judge to determine, on the basis of a full and complete discovery record, whether the defendants' contacts with this forum, business or non-business and in whatever capacity, are imputable to the defendants, individually.

The Court now turns to the applicable law and a discussion of the broad categories of discovery, which are disputed by the parties, including the temporal restriction sought by the defendants.

*ANALYSIS*

*Personal Jurisdiction-Imputability of Contacts*

Fed.R.Civ.P. 26(b)(1) defines the scope of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 5

Not Reported in F.Supp.2d, 2004 WL 737463 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

discovery in pertinent part as "any matter, not privileged, which is relevant to the subject matter involved in the pending action...."Fed.R.Civ.P. 26(b)(1). At this stage of the proceedings, discovery is limited by agreement to the jurisdictional issues inherent in the motion to dismiss and/or transfer.

In determining whether *in personam* jurisdiction can be exercised over a non-resident defendant, courts must look to the restrictions of the state long-arm statute and the Due Process Clause. Because the Louisiana Long-Arm Statute is coextensive with the confines of federal due process, questions of jurisdiction in Louisiana generally constitute a unitary inquiry within the framework of the Constitutional restraints of Due Process.[FN12] There are two means of establishing jurisdiction over a defendant's person under the Fourteenth Amendment-*i.e.*, specific and general jurisdiction-each are addressed in turn.

   FN12.*See Icee Distributors, Inc. v. J & J Snack Foods Corp.*, 325 F.3d 586, 591 (5th Cir.2003) (citing *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 652 (5th Cir.2002)).

Under either specific or general personal jurisdiction analysis, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts.'"[FN13] The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous or attenuated contacts ... or of the unilateral activity of another person."[FN14]

   FN13.*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

   FN14.*Burger King Corp.*, 471 U.S. at 474 (internal quotation marks omitted); *see also Dickson Marine, Inc. v. Palpina, Inc.*, 179 F.3d 331, 337 (5th Cir.1999).

Specific jurisdiction may be found when a foreign defendant "has 'purposefully' directed his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of *or relate to*' those activities."[FN15] A single act may support specific jurisdiction where the act is directed at residents of the forum, and the cause relates to the act.[FN16]

   FN15.*Burger King Corp.*, 471 U.S. at 472 (emphasis added); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

   FN16.*Burger King Corp.*, 471 U.S. at 476 n. 18 (citing *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)); *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 625 (5th Cir.), *reh'g denied*,199 F.3d 441 (5th Cir.1999); *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 547-48 (5th Cir.1985).

*6 In the context of specific jurisdiction, only those acts which relate to formation of the contract and the subsequent breach are relevant. It is well-established that "with respect to interstate contractual obligations ... parties who reach out beyond one state and create ... obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their activities...."[FN17] Nevertheless, the existence of a contract alone is insufficient to establish minimum contacts with the forum.[FN18] The district judge must examine prior negotiations and contemplated future consequences of the contract in addition to the parties actual course of dealings.[FN19] When a non-resident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating jurisdiction over the defendant.[FN20]

   FN17.*Burger King*, 471 U.S. at 473.

   FN18.*See United States v. Swiss American Bank, Ltd.*, 274 F.3d 610, 621 (1st

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 6
Not Reported in F.Supp.2d, 2004 WL 737463 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

Cir.2001) (*citing Burger King,* 471 U.S. at 479)).

FN19.*See Stuart v. Spademan,* 772 F.2d 1185, 1193 (5th Cir.1985); see also *Peyman v. The Johns Hopkins University,* 2000 WL 973665 ---- 2-4 (E.D.La.) (McNamara, J.) (finding both specific and general jurisdiction).

FN20.*Gardemal v. Westin Hotel Co.,* 186 F.3d 588, 592 (5th Cir.1999).

Turning to the issue of "general jurisdiction," such jurisdiction exists where a "defendant's contacts with the forum state are substantial, continuous and systematic, but unrelated to the instant cause of action."[FN21] The residency of a defendant in the forum state routinely creates such systematic and continuous contact. In evaluating whether general jurisdiction exists, the court examines (1) whether and to what extent the defendant conducts business within the state, (2) whether the defendant maintains offices in the state, (3) whether the defendant sends agents into the forum state to conduct business, (4) whether the defendant advertises or solicits business in the forum, and (5) whether the defendant has a designated agent for service of process in the forum state.[FN22]

FN21.*Central Freight Lines, Inc. v. APA Transport Corp.,* 322 F.3d 376, 381 (5th Cir.2003) (internal quotations omitted); *Helicopteros Nacionales,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Alpine View Co., Ltd. v. Atlas Copco AB,* 205 F.3d 208, 215 (5th Cir.2000).

FN22.*Helicopteros Nacionales,* 466 U.S. at 416.

Here, the Arkansas Defendants, while contracting on behalf of themselves, Bottle Rock and others, contacted the Louisiana plaintiff for the purpose of securing a loan and a five million dollar letter of credit issued by a bank in Louisiana to secure the bond necessary to consummate the real estate transaction involving a power plant in California. In so doing, the Winemillers jointly submitted a Financial Statement, together with the balance sheets of a number of juridical entities purportedly owned and/or controlled by the Winemillers, some of which had and may still have extensive land holdings in Louisiana. The Joneses likewise submitted a joint financial statement and further listed of assets under the aegis of the Jones Family Partnership. The statements submitted by the defendants are more specifically detailed above; however, together the financial statements listed assets in excess of $11 million dollars and were allegedly provided to induce and did in fact induce Monroe to extend the loan pursuant to the promissory note which is the subject of this case, and to provide the letter of credit securing the surety bond.

In the instant case, the Arkansas Defendants deny that they are residents of Louisiana and submit that they, *personally,* have insufficient business contacts with Louisiana. As discussed above, plaintiff has submitted records of the Louisiana Secretary of State, which indicate that both Winemiller and Jones and/or their respective spouses are officers and directors of various juridical entities with extensive land holdings in Louisiana and entities that are domiciled in Louisiana and authorized to do business in this state.

*7 The issue to be addressed by the district judge upon the jurisdictional inquiry is whether the contacts by the Arkansas Defendants on behalf of corporations referred to above are imputable to the individual defendants. In other words, the asserted basis of plaintiffs' argument is that all contacts by the Joneses and the Winemillers, whether individually or allegedly on behalf of another juridical entity, are properly the subject of discovery, and may be relevant to either or both the specific and general personal jurisdiction inquiries, and it is for the court determine whether certain contacts are properly imputed to the defendants individually.

In *Patin v. Thoroughbred Power Boats, Inc.,* 294 F.3d 640 (5th Cir.2002), the Fifth Circuit observed:
In support of their contention that personal jurisdiction cannot be "imputed" ..., the Defendants

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                               Page 7
Not Reported in F.Supp.2d, 2004 WL 737463 (E.D.La.)
(Cite as: Not **Reported** in F.Supp.2d)

rely on ...*Rush v. Savchuk,* 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980), suggesting that, while "the parties' relationships with each other may be significant in evaluating their ties to the forum," the due process requirements of *International Shoe*" must be met as to each defendant over whom a state court exercises jurisdiction."

This language in *Rush,* however, does not preclude us from imputing the jurisdictional contacts of predecessor corporation to its successor or corporation or individual alter ego. As the Plaintiffs correctly point out, federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to jurisdiction in that court *when the individual...is an alter ego...of a corporation* that would be subject to the courts jurisdiction.FN23

FN23.*Patin v. Thoroughbred Power Boats, Inc.,* 294 F.3d 640, 653 (5th Cir.2002)(bolding and underlining emphasis added).

The Arkansas Defendants cite *Quantel Corporation v. Niemuller,* 771 F.Supp. 1361 (S.D.N.Y.) in support of their argument that their respective wives' contact with this forum are "personal", irrelevant, not imputable, and thus not discoverable. Nevertheless, discoverability of contacts, "personal" or otherwise, was not addressed in *Quantel, supra.* Indeed, the information regarding various contacts of the husband and wife were known to both the plaintiff and the defendant. The husband/defendant did not challenge personal jurisdiction of the New York court over himself. The allegations of the complaint were that he allegedly traveled to New York and committed acts of fraud there in connection with the transaction at issue. The defendant's wife was a Canadian citizen and had never traveled to New York or committed any alleged acts of fraud there. Under the circumstances presented, the Court refused to impute the husband's contacts to the wife, for purposes of finding personal jurisdiction. *Quantel Corporation, supra,* is inapposite.

The Arkansas Defendants direct this Courts attention to *Soares v. Roberts,* 417 F.Supp. 304 (D.R.I.1976) and argue that, based on the reasoning of the Rhode Island district judge, this Court should find that any actions taken by the defendants on behalf of any corporation or other juridical entity in which they have an interest, direct, own or control are irrelevant and therefore not discoverable. The *Soares* court rejected the plaintiffs' assertion that personal jurisdiction over the employee defendant may rest simply upon his or her status as a non-resident agent of a principal, which had sufficient contacts with the forum state. It is most apparent that the plaintiffs in the case at bar do not intend to rest that argument merely upon the defendants' status of non-resident agents of the juridical entities previously discussed. Discovery is aimed at amassing the requisite information and documentary proof to support their argument regarding the imputability of contacts.

*8 Now turning to the Louisiana Fourth Circuit's decision, *Escoto v. U.S. Lending Corp.,* 675 So.2d 741 (La.App. 4th Cir.1996), that court rejected the defendant's assertion of the "fiduciary shield doctrine," finding that the contacts of a corporate president in his official capacity as such, were sufficient to subject the president to the jurisdiction of the Louisiana court, even though the corporate president had never physically entered Louisiana. The *Escoto* court did in fact note "that jurisdiction over individual officers and employees of a corporation may not be predicated *merely upon jurisdiction over the corporation itself.*"FN24 However, the circumstances presented in that case apparently warranted imputation of contacts and the determination that the fiduciary shield doctrine was not applicable.

FN24.*Escoto v. U.S. Lending Corp.,* 675 So.2d 741, 745 (La.App. 4 th Cir.1996) (emphasis added), *cert. denied,*679 So.2d 1343 (La.1996); *see also Briley Marine Service v. Toups,* 551 So.2d 755, 759-60 (La.App. 5th Cir.1989), *cert. denied,*553 So.2d 476 (La.1989).

Addressing the "fiduciary shield doctrine," the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 8
Not Reported in F.Supp.2d, 2004 WL 737463 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

court in *Bollinger Industries, L.P. v. May.* 2003 WL 21281634 (N.D.Tex.) recognized that the doctrine proscribes the imputation of contacts to an agent of the principal and that there are well-recognized exceptions to the application of the aforesaid doctrine. The *Bollinger Industries* court observed:
"This circuit has long held that when officers or agents direct purposeful, tortious activity towards a particular forum, they should anticipate being haled into court in that forum."*Intermed Labs. v. Perbadanan Geta Felda,* 898 F.Supp. 417, 420 (E.D.Tex.1995) (citing *D.J. Invs. v. Metzeler Motorcycle Tire,* 757 F.3d 542, 545 (5th Cir.1985) (defendant corporate officer accused of fraud had sufficient contacts as he engaged in correspondence with defendant's forum, phoned defendant and visited the forum to negotiate); *see Brown v. Flowers Indus., Inc.,* 688 F.2d 328, 333-34 (5th Cir.1982) (single defamatory phone call sufficient to create personal jurisdiction); *Union Carbide Corp. v. UGI Corp.,* 731 F.2d 1186, 1189-90 (5th Cir.1984); *Admiral Ins. Co. v. Briggs,* 2002 WL 1461911 * 6 (N.D.Tex. July 2, 2002) ("However removed the [defendant's] physical presence from Texas, his alleged direction to remove property gave rise to an intentional tort within the state that constitutes purposeful availment of the benefit and protection of Texas law").[FN25]

> FN25.*Bollinger Industries, L.P. v. May,* 2003 WL 21281634 * 2 (N.D.Tex.).

Additionally, the fiduciary shield doctrine will not protect the agent of the corporation if the individual defendant is the alter ego or if he perpetrated a fraud directed at the forum.[FN26] The fiduciary shield that cloaks corporate agents and officers *usually* prevents a court from attributing actions made on behalf of the corporation to the agents or officers who performed them.[FN27] In summary, it is clear that courts within the Fifth Circuit have recognized two exceptions: (1) the district court may disregard the corporate form and exercise of jurisdiction over an individual officer if the corporation is the "alter ego" of the corporation and, in the appropriate case, the exercise of jurisdiction is predicated on the practical identity of the officer and his corporate shell as one and the same person;[FN28] and (2) the court may exercise personal jurisdiction over an officer who allegedly committed an intentional tort or fraud directed at the forum state.[FN29]

> FN26.*See Spademan,* 772 F.2d at 1198 n. 12;*Bollinger,* 2003 WL 21281634 * 1; *Sefton v. Jew,* 201 F.Supp.2d 730 (W.D.Tex.2001); *Credit Cheque Corp. v. Zerman,* 1997 WL 786251 * 3 (N.D.Tex. Dec.11, 1997).
>
> FN27.*See Spademan,* 772 F.2d at 1197.
>
> FN28.*See Miller v. American General Financial Corp.,* 2002 WL 2022536 * 12 (E.D.La. September 4, 2002).
>
> FN29.*See Credit Cheque Corp.,* 1997 WL 786251 * 3.

*9 For all of the above and foregoing reasons and considering the applicable law, it is the opinion of this Court that information and documents evidencing the defendants' contacts with this forum, even if allegedly on behalf of one the entities discussed above, is fairly within the ambit of appropriate jurisdictional discovery. It is for the district judge to determine whether any such contacts may be imputed to the defendants and whether the Arkansas Defendants contacts with the forum are sufficient for purposes of either finding specific or general personal jurisdiction. As to documentary discovery pertaining to the wives' contacts with Louisiana, particularly in the case of Jones, who submitted a balance sheet entitled "Jones Family Partnership," the Court finds that the Arkansas Defendants' wives' contacts are also properly the subject of jurisdictional discovery. The undersigned reiterates that it will not issue an advisory opinion on the imputability of any such contacts, particularly in light of the fact that the extent of the wives' contacts is presently not known. As aforestated, it is for the district judge to determine the imputability of any contacts and the merits of the motion to dismiss.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                               Page 9

Not Reported in F.Supp.2d, 2004 WL 737463 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

*Temporal Scope of Discovery*

Plaintiffs point out that, in the defendants' affidavits filed in support of their Motion to Dismiss, the term "never" frequently arises in relation to their characterization of contact with the forum state. Monroe contends that the Arkansas defendants cannot claim that they "never" had contact with the forum state and then object to the plaintiffs' inquiry into the nature and extent of Arkansas Defendants' Louisiana contacts over a commensurate period of frame.

The defendant has the better argument that the temporal scope of a lifetime and/or thirty years is excessive. Unquestionably, the plaintiffs should be accorded the opportunity to conduct discovery over a sufficiently lengthy period of time so as to determine whether defendants contacts with Louisiana are sufficient for personal jurisdiction purposes. However, even under the general jurisdiction analytical framework, the contacts must be not only be systematic and substantial, they must be continuous. At this time, the Court is not convinced that thirty years is necessary. Ten years, while not generous, is sufficient and not reasonably subject to serious dispute. Most notably, both the Winemiller and the Jones affidavits, quoted in pertinent part above, contemplate a "10 year" time period for the purposes of discerning and identifying contacts with the forum state. If for no other reason, the temporal restriction of at least ten years is necessary, so as to allow the plaintiffs the opportunity to test the sufficiency of the defendants' attestations. The Court recognizes that the exercise of the utmost good faith will not permit the opportunity to review, copy and produce discovery spanning a ten-year time frame prior to the depositions on Monday. Nevertheless, the Court trusts that the parties make their best efforts to satisfy the defendants' requests for production as soon as possible, understanding that it may well occur after the depositions of the Arkansas Defendants on Monday.

*10 In light of the foregoing and considering that production may well post-date the depositions, the Court fully reserves the plaintiffs' right to redepose the Arkansas Defendants, should circumstances warrant.

*Fed.R.Civ.P. 34 Custody, Possession and Control*

As to Rule 34 possession, custody and control, defendants submit that they are not required to produce documents in the possession of their wives. Plaintiffs have the better argument regarding the production of documents that may only technically be in the possession of the defendants' respective wives. In this regard, Monroe's request for a copy of any separate property agreement between Jones, Winemiller and their respective spouses is not beyond the pale. Plaintiff points out that, Ms. Winemiller, as president, signed most of the balance sheets provided to the plaintiff to secure the loan. Additionally, both Joneses and Winemillers submitted Joint Balance Sheets, indicating the existence of either a "community of assets" or a "family partnership."

Rule 34(a) of the Federal Rules of Civil Procedure states that "[a]ny party may serve on any other party a request (1) to produce ... any designated documents ... which are in the possession, custody or control of the party upon whom the request is served."FRCP Rule 34(a). Federal courts have consistently held that documents are deemed to be within the "possession, custody or control" of a party for purposes of Rule 34 if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand or has the practical ability to obtain the documents from a non-party to the action.

Generally a "party is charged with knowledge of what its agents know or what is in records available to it."*See Poole v. Textron, Inc.* 192 F.R.D. 494, 501 (D.Md.).Rule 34 is broadly construed and documents within a party's control are subject to discovery, even if owned by a nonparty. *See Commerce and Industry Insurance Co. v. Grinnell Corp.,* 2001 WL 96377 * 3 (E.D.La.). The burden is on the party seeking discovery to make a showing that the other party has control over the material sought. When determining the sufficiency of control of material for purposes of Rule 34, the nature of the relationship between the party and the non-party

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 10

Not Reported in F.Supp.2d, 2004 WL 737463 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

is the key. *See Goh v. Baldor Electric Co.,* 1999 WL 20943 at * 2 (N.D.Tex.).

Typically what must be shown is a relationship, either because of some affiliation, employment or statute, such that a party is able to command release of certain documents by the non-party person or entity in actual possession. The applicable test is whether the litigant has the ability to obtain the documents on request to a related party, either as a matter of law or as a matter of practical fact.

The relationships at issue are husband/wife and, in the case of Jones, a family partnership. Certainly, if the evidence submitted regarding the parties' dealings leading up to the consummation of the loan demonstrate nothing else, the evidence submitted in support of the motion to compel argues decidedly in favor of the conclusion that Jones and Winemiller exert sufficient sway or control over their wives' assets and business interests. As to the corporation/shareholder relationship and insofar as the Louisiana corporations are concerned, plaintiffs highlight that La. R.S. 12:103D(1)(a) gives a shareholder the right to obtain documents from the corporation.

*Non-Privileged Documents in the Possession and Control of Defense Counsel*

*11 Mr. Hagan, Arkansas Defendants' counsel, submitted an affidavit in support of the Motion to Dismiss, purportedly made on personal knowledge and based upon business records, documents and information available and personally reviewed by him, all of which were maintained in the ordinary course of business. Plaintiffs contends that they are entitled, at the very least, to review the documents upon which Hagan's affidavit testimony is based. Moreover, plaintiff argue that, the fact that Hagan may be required to "search through three years of voluminous dead files," does not provide a legal basis to obstruct relevant jurisdictional discovery.

Non-privileged documents in Hagan's possession responsive to the plaintiffs' requests should be produced. Defendants do not specifically address the plaintiff's argument in this regard in their written submission, except under the rubric of alleged " undue burden." However, in oral argument, counsel for the Arkansas Defendants' argued convincingly that, as to documents retained by Hagan, the motion to compel is more appropriately directed to Bottle Rock and/or directly to Hagan. Without question, plaintiffs are entitled to review non-privileged documents upon which Hagan's affidavit testimony is based. However, for reasons previously stated, the Court finds the motion misdirected in this regard and DENIES the motion in part, subject to the plaintiffs' right to reurge same against the appropriate party or non-party.

*Attorney-Client Privilege*

Plaintiff notes that the Arkansas Defendants assert a blanket objection based upon the attorney-client privilege and that they failed to submit a detailed privilege log. However, since the motion to compel was filed and prior to motion hearing, the Arkansas Defendants have in fact produced a detailed privilege log. Accordingly, plaintiffs' claim of waiver due to the Arkansas Defendants' failure to provide a privilege log is moot and the motion to compel is DENIED IN PART, subject to the plaintiffs' right to re-urge their motion in the form of a motion for in *camera review* and to compel production of defendants' privilege log documents, if circumstances warrant.

*Retainer Agreements*

Generally speaking, attorney's retainer agreements are not privileged. The identity of Hagan's clients and the purposes for which he was retained is not privileged.[FN30] Additionally, information relating billing, contingency fee contracts, fee-splitting arrangements, hourly rates, hours spent by attorneys working on the litigation, and payment attorney's fees does not fall within either the attorney-client or the work product privilege.[FN31] Billing statements, phone logs, transmittal letters, fax cover sheets and/or records which simply reveal the amount of time spent, the amount billed and the type of free arrangement are fully subject to discovery and, similarly, the purpose for which an attorney was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 11
Not Reported in F.Supp.2d, 2004 WL 737463 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

retained and the steps taken by the attorney discharging his obligations are not privileged.[FN32] Accordingly,

> FN30. *See Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir.1999).
>
> FN31. *Southern Scrap Material Co. v. Fleming, et al*, 2003 W. 21474516 * 13 (E.D.La.) (Knowles, M. J.)(citing *In re Central Gulf Lines*, 2001 WL 30675 *2 (E.D.La.), *Tonti Properties v. The Sherwin-Williams Co.*, 2000 WL 506015 (E.D.La.), *C.J. Calamia Const. Co., Inc. v. Ardco/Traverse Lift Co., LLC*, 1998 WL 395130 * 2 (E.D.La.)(Clement, J.)).
>
> FN32. *Id.* at n. 40.

*12 IT IS ORDERED that the plaintiffs' Motion to Compel is GRANTED IN PART and DENIED IN PART, all as more specifically set forth above.

E.D.La.,2004.
Monroe's Estate v. Bottle Rock Power Corp.
Not Reported in F.Supp.2d, 2004 WL 737463 (E.D.La.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.