Illinois Computer Research, LLC v. Google Inc. Doc. 69



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS COMPUTER RESEARCH, LLC., | ) | |
| Plaintiff and Counterclaim Defendant | ) | |
| v. | ) | |
| | ) | Case No. 07 C 5081 |
| FISH & RICHARDSON P.C., et al., | ) | |
| | ) | Judge Rebecca R. Pallmeyer |
| Defendant, Counterclaimant and Third-Party Plaintiff, | ) | Mag. Judge Maria Valdez |
| | ) | |

**SCOTT HARRIS' (1) RESPONSE TO FISH'S MOTION TO COMPEL, AND (2) CROSS MOTION TO COMPEL DISCOVERY**

Third-party Defendant and Counterclaimant Scott Harris now submits his (1) Response to Fish's Motion to Compel, and (2) Cross Motion to Compel Discovery.[1]

Mr. Harris' Cross Motion to Compel Discovery relates to Fish's withheld documents concerning its investigation which cleared Mr. Harris of any wrongdoing. Specifically, in late 2006 and early 2007, Mr. Harris sued six companies for patent infringement. In March of 2007, Fish contended that one of those companies – Dell Computer – was a firm client and conducted an investigation into whether Mr. Harris had done anything wrong, an investigation in which Mr. Harris was a key participant. Fish outside counsel advised Fish that Mr. Harris had done nothing wrong, and Fish promptly relayed that advice to Mr. Harris. In this litigation, Fish is taking the exact opposite position, and refuses to produce the investigation documents on the ground of privilege, specifically, the "common interest privilege".

---

[1] Illinois Computer Research LLC joins in this response and cross motion to compel.

Dockets.Justia.com

Briefly stated, the common interest privilege should not apply because the parties were at odds at the time of the investigation. Moreover, and in any event, once the parties become adverse in subsequent litigation, any common interest privilege could no longer apply.

## I. BACKGROUND

### A. Fish's Accusations

Harris first addresses the hyperbole stated throughout Fish's motion and during the hearing on December 13, 2007:

1. ***"Harris was a principal at Fish."*** Fish and its counsel claim in every motion, pleading, letter and hearing that Mr. Harris was a "principal" of Fish. The truth is that Mr. Harris was an employee at Fish, nothing more. In fact Fish expressly mandated in writing that Harris be deemed a mere "employee":

> (e). Relationship of Employee and Corporation. The Employee and the Corporation understand that the Board of Directors, in accordance with Massachusetts General Laws Chapter 156A. As amended, shall manage the business affairs of the Corporation. ***The relationship between the Corporation and the Employee is that of an employer and employee***.

(Ex. B, Employment Agreement, p. 3; emphasis added). Moreover, Harris never participated in the management of the firm, and he never served on the Management Committee.

2. ***"Harris targeted firm clients for infringement claims".*** This mantra is a house of cards which cannot withstand factual or legal scrutiny. In the first place, infringement claims were asserted against infringers; no effort was made to "target" anybody. For example, the first lawsuit filed to enforce any patent in which Mr. Harris was the named inventor was filed by Mr. Harris and a third-party, Memory Control Enterprise ("MCE"), on December 20, 2006. (Ex. C, MCE Complaint No. 1). The

complaint alleged that three companies, Classified Ventures, Eastman Kodak and Move, infringed United States Patent No. 6,704,791 ("the '791 Patent"). A second patent infringement lawsuit was filed by Mr. Harris and MCE on March 12, 2007 (Ex. D, MCE Complaint No. 2). That complaint named Dell Computer, Panasonic of North America and General Motors as infringers. Of those six defendants, Fish claimed that one – Dell Computer – was a firm client. Mr. Harris did not believe that Dell was in fact a client, and could locate no evidence of a client relationship. (Ex. A, Declaration of Scott Harris at ¶ 9). The lawsuit against Google was filed on September 10, 2007, four days after Fish told Harris that he would be fired. (Id. at ¶ 11).

But beyond that, Fish's incessant accusations rest on an erroneous legal premise. Scott Harris' patents were his personal property, and there is absolutely no authority for the proposition that infringers were free to infringe Mr. Harris's patents simply because they were Fish clients. Nor could there be: conceptionally, Fish's claim is no different than the notion that the CEO of Google could pitch a tent in Mr. Harris' back yard simply because Google is a Fish client.[2]

---

[2] Fish has crudely transmogrified the common law "shop right" doctrine which provides that under some circumstances, ***an employer*** may be allowed to practice an employee's invention. National Development Co. v. Gray, 55 N.E.2d 783, 787 (Mass. Sup. Ct. 1944) ("The discovery of an invention by an employee… during the course of his employment through the use of the employer's equipment, materials and labor does not deprive the employee of his invention although the employer has a shop right in the invention which gives him a nonexclusive irrevocable license to use the invention."); Heywood-Wakefield Co. v. Small, 87 F.2d 716 (1st Cir. 1937) (Applying Massachusetts law; employer not entitled to shop right where employee worked on invention on his own time.) See also, Jamesbury Corp. v. Worcester Valve Co., 443 F.2d 205, 214 (1st Cir. 1971) (Applying Massachusetts law; absent agreement, an employee has no fiduciary duty "to turn over his ideas to his employers."). As discussed below, there is absolutely no evidence that Mr. Harris used firm resources in the prosecution of his patents. Moreover, Fish knew and authorized Mr. Harris' inventorship activities. But even if Fish could prove its entitlement to a shop right, Fish's clients would still have no right to infringe.

3. ***"Harris used confidential information."*** Fish counsel made this unequivocal representation during the hearing on December 13, 2007. It is demonstrably false. Harris never used any client information in the prosecution of his patents. Indeed, Harris never did any work for any of the entities which Fish has identified as clients, nor did he have access to their confidential information. (Ex. A, Scott Harris Declaration at ¶¶ 7-8).

4. ***"Harris used firm resources to prosecute his patents."*** This statement also is wrong. Harris prosecuted his patents on his own time, using his own resources. (Ex. A at ¶ 1). Moreover, at all times, Fish was aware of, and expressly authorized Harris' personal inventorship activities. Among other things: (1) when he first joined Fish, Scott Harris advised Fish's Ethics Director of his personal inventorship activities and was told that such activities were not a problem; (2) Scott Harris asked Fish's "Practice Systems" Director whether he should integrate his personal prosecutions into the firm's docket, and was advised that he didn't need to; (3) the wife of the Managing Director of Fish was a co-inventor on one of Mr. Harris' patents; and (4) Scott Harris' personal prosecutions were the subject of firm presentations and emails sent to attorneys throughout the firm. (Ex. A at ¶¶ 2-4). Other Fish attorneys likewise prosecuted their own patents while employed by Fish. (Ex. A at ¶¶ 5-6).

5. ***"Harris and the Niro firm are trolls."*** In both pleadings and the latest motion, Fish and its counsel accuse Mr. Harris and the Niro firm of being "patent trolls", which they claim is a pejorative term used to describe a company that enforces patents in an opportunistic manner where the patents have often not been used for some unspecified productive use. (See, for example, Fish Br. at 2, n. 2). Fish's counsel's resort to name-calling is particularly curious in light of its own representation of a patent

holding company called PA Advisors LLC, which sued Google for patent infringement in the Eastern District of Texas on November 2, 2007. (Ex. E).

**B. Fish's Invasion Of Attorney Client Privilege**

Fish has deliberately accessed password-protected email containing Mr. Harris attorney-client privileged communications, including Exhibit N to its motion (filed under seal). Fish is claiming to rely on a firm email policy. Mr. Harris has objected to Fish's search and review of emails which are clearly privileged on their face. This was a subject of Harris' request for expedited discovery, and Fish has refused to provide information regarding one of the requests. This topic is also the subject of Mr. Harris' separately-filed Motion for Protective Order.

**C. The Background For Harris' Cross Motion To Compel Discovery**

As Mr. Harris testified in his Declaration (Ex A):

> 9. In late 2006 and in early 2007, I and Memory Control Enterprise, filed two patent infringement lawsuits, naming Move, Classified Ventures, Eastman Kodak, General Motors, Panasonic and Dell Computer as defendants. In March of 2007, Fish contended that Dell was a firm client. That surprised me because I had seen no evidence that Dell was a firm client. My requests for confirmation of Dell's status as a firm client went unanswered.
>
> 10. Also at that time, Fish conducted an investigation into my inventorship activities. I participated in that investigation, providing all information requested by Fish. In May of 2007, Fish counsel advised Fish that I had done nothing wrong and that there was precedence for my activities. On May 4, 2007, Fish, through John Steele, Fish's Ethics and Conflicts Director, promptly relayed that advice to me.

Mr. Harris represented the investigation communications in its request for expedited discovery, but Fish refused to produce them. When pressed for a reason why the documents could be privileged if the advice was told to Harris, Fish finally

responded that it was withholding the documents under the "common interest doctrine".

> Finally, your repeated assertion that there was an "investigation" of Mr. Harris is unfounded. As you know, a client of the firm, Dell, complained about the fact that Mr. Harris had sued them, while he was a principal at Fish & Richardson. In connection with that issue, ***firm counsel gathered information and provided legal advice both to the firm and Mr. Harris.*** Objectively, they had a common interest in responding appropriately to that complaint. Without limitation, ***those communications are privileged based on the common interest doctrine.*** As previously noted, your client's public disclosure, through pleadings filed by your firm, of those privileged communications was a violation of legal and fiduciary duties.

(Exhibit F, D. Bradford 12/07/07 letter at p. 3; emphasis added).

## II. HARRIS' RESPONSE TO FISH'S MOTION TO COMPEL

### A. Letter Request No. 6

Conspicuously absent from Fish's motion is its counsel's December 7, 2007 letter, which addresses the purported dispute which is the focus of the motion. In that letter, Fish counsel stated:

> Your purported inability to identify Fish & Richardson's clients while Mr. Harris was at the firm is a telling admission. They were his clients when he was a principal at Fish & Richardson. Both you and Mr. Harris had an obligation to identify his clients, so a not to assert claims against them in violation of clear fiduciary and ethical obligations not to do so. In any event, ***the universe of companies that received communications asserting infringement of the Harris patents is much smaller than the universe of Fish & Richardson clients*** during Mr. Harris's tenure as a principal. ***Please identify the companies that received such communications and we will advise you as to which of them were Fish & Richardson's*** (and thus Mr. Harris's) clients while Mr. Harris was a principal at Fish & Richardson.

(Exhibit F; emphasis added). Mr. Vickrey's response to that letter states:

> Responding to your letter of December 7, we respectfully disagree with your claims, just as you presumably disagree with the claims of ICR and Scott Harris. It is not productive to keep arguing your case in letters to me (e.g. Mr. Harris was a "principal", etc.) Are you refusing to provide a contemporaneous list of Fish clients as of March of 2007? If so, on what basis? Do you contend that such a list is privileged? As you know, there is a dispute about whether Dell was in fact a Fish client. ***We already have produced all of the communications referenced in the first paragraph***

***of your letter***.

(Exhibit G; emphasis added). In other words, Fish counsel has everything it needs to figure out which of "the companies that received such communications" are firm clients – Harris counsel already has produced all of the notice letters. In light of that fact, once Fish counsel identifies which of the recipients of the letters are firm clients Harris counsel will promptly (within seven days of receipt of such an identification) produce a log of all documents created or received by Mr. Harris relating to those entities.

**B. Letter Request No. 5**

Turning to the Niro firm's representation agreements, Fish's insistence on their production is unreasonable. Such agreements do contain privileged communications. Harris is submitting separately one such representative agreement to the Court for an in camera inspection.

At a minimum, such agreements also contain sensitive financial information, and the wording of the agreements is the result of a great deal of effort over the years. Before they are turned over to the Niro firm's competitions, Fish should be required to articulate a valid basis for seeking them. Indeed, one can image the outrage and umbrage if Mr. Harris insisted on the production of Jenner & Block's bills to Fish.

An examination of the purported reason for the insistence on the production of the retention agreements confirms that Fish is engaging in harassment. According to Fish (Fish Br. at 12), it purportedly needs to see the actual agreements to determine "***when*** [the Niro firm] formed an attorney client relationship with Harris. If that relationship formed, as it appears, while Harris was still at Fish & Richardson…." (Fish Br. at 12). Fish is wrong on two accounts.

First, it is no secret that the Niro Firm formed an attorney-client relationship with

Mr. Harris while Mr. Harris was a Fish employee, and Mr. Harris will so stipulate[3]. The notion that Fish needs the actual representation agreements to establish that fact is fiction. Since March of 2007, Fish has had a copy of Mr. Harris' Complaint naming Dell as a defendant, and clearly stating that the Niro Firm was representing Mr. Harris. (Exhibit D).

Second, it is settled law that an attorney-client relationship can form without a written agreement. Indeed, Fish's argument has been expressly rejected by the Seventh Circuit: "A professional relationship is not dependent upon the payment of fees nor…upon the execution of a formal contract." Westinghouse Elec. Corp. v. Kerr-McGee Corp., 580 F.2d 1311, 1317 (7th. Cir. 1978). See also, Bridge Products, Inc. v. Quantum Chemical Corp., 1990 U.S. Dist. LEXIS 6019 at *11-12 (N.D. Ill 1990). (Even a "beauty contest" may create an attorney-client relationship).

### C. The Redacted Agreements

All agreements responsive to Fish's letter request No. 1 have been produced. And Fish has been advised that the redacted portions relate to the Niro firm's compensation; confidential information which is not relevant to any issue in the case. An unredacted version of such an agreement will be submitted to the Court for an in camera inspection.

## III. MR. HARRIS' CROSS MOTION TO COMPEL

Fish's disclosure of the investigation advice to Mr. Harris waived the privilege as to the investigation, and the withheld documents should be produced. "Voluntary disclosure of part of a privileged communication is a waiver as to the remainder of the privileged communication about the same subject." Hanguards, Inc. v. Johnson &

---

[3] He also will stipulate that the logged agreements are contingent fee agreements. In other words, the Niro firm would not be paid absent a recovery.

Johnson et al., 413 F. Supp. 926, 929 (N.D.Cal. 1976) . See also United States v. Hamilton, 19 F.3d 350, 353 (7th Cir. 1994) (holding that when a client voluntarily discloses some privileged communications to a third party, the privilege may, intentionally or not, be waived.); Powers v. Chicago Transit Authority, 890 F.2d 1355, 1359 (7th Cir. 1989) ("Any voluntary disclosure by the holder of the attorney-client privilege is inconsistent with the attorney-client confidential relationship and thus waives the privilege.").

Fish's justification for withholding the documents is the "common interest doctrine":

> Finally, your repeated assertion that there was an "investigation" of Mr. Harris is unfounded. As you know, a client of the firm, Dell, complained about the fact that Mr. Harris had sued them, while he was a principal at Fish & Richardson. In connection with that issue, firm counsel gathered information and provided legal advice both to the firm and Mr. Harris. Objectively, they had a common interest in responding appropriately to that complaint. Without limitation, ***those communications are privileged based on the common interest doctrine.*** As previously noted, your client's public disclosure, through pleadings filed by your firm, of those privileged communications was a violation of legal and fiduciary duties.

(Exhibit F at p. 3; emphasis added).

Fish's reliance on the "common interest doctrine" is inappropriate for two reasons. First, Fish was at odds with Mr. Harris at the time of the investigation, with differences of opinion as to whether Dell was even a client. In fact, Fish's log of the withheld documents completely belies its claim of "common interest". Exhibit H, filed under seal, describes 27 documents (entries 41-68) relating to the investigation. None of them were sent to Mr. Harris, and most of the entries state that the communication was "made in anticipation of litigation." Fish certainly wasn't anticipating litigation with its client. Instead, it was anticipating litigation with Mr. Harris until the investigation cleared him of any wrongdoing. See United States v. Sawyer, 878 F.Supp. 295, 297 (D.

Mass. 1995) ("Attorneys Skrine and Scipione met with the defendant not to promote a joint defense, but as part of an internal investigation to discover facts relevant to the defendant's expenditures. Nor did Sawyer meet with Hancock's in-house counsel to further his 'joint defense', but rather to fulfill his duties and obligations to report to his employer. The Court concludes that he parties' similar interests and Scipione's desire to pursue a 'team effort' are insufficient to show that Sawyer's communications were made during the course of a joint defense effort."); United States v. Weissman, 195 F.3d 96, 99-100 (2nd Cir. 1999) (Mere cooperation among the parties, absent the intent to participate in a joint strategy, is insufficient for the common interest doctrine); Remington Arms co. v. Liberty Mut. Ins. Co., 142 F.R.D. 408, 418 (D.Del 1992) ("The doctrine should not apply where 'the documents at issue were prepared in an atmosphere of uncertainty as to the scope of any identity of interest….'")

Second, even if there had been a common interest, that privilege no longer applies if the parties become adverse to each other in litigation. To quote the court in Dexia Credit Local v. Rogan, 231 F.R.D. 287, 295 (N.D. Ill. 2005) (M.J. Schnekier):

> An exception to the assertion of the common interest privilege exists when the participants in the common interest become adverse to each other in litigation *Dexia. 2004 U.S. Dist. LEXIS 25094, 2004 WL 3119026, at *4; Waste Management, 579 N.E.2d at 328.* ***Thus, if EMC were the plaintiff against the Management Companies in this lawsuit, there would be no question but that neither side could assert the common interest privilege*** in this case with respect to the documents on the Tatooles Firm's Privilege Log.

(Emphasis added).

A third ground compelling the production of the documents is the "at issue" waiver doctrine. An implied waiver or "at issue" waiver occurs "where a party voluntarily injects either a factual or legal issue into the case, the truthful resolution of which requires the examination of the confidential communications." Pyramid Controls, Inc. v.

Siemens Indus. Automations, Inc. 176 F.R.D. 269, 272 (N.D. Ill. 1997).

Here, Fish has asserted claims against ICR and Scott Harris, asserting that Mr. Harris engaged in legal misconduct by personally asserting a patent infringement claim against a firm client. Fish's claims are directly at odds with the investigation which cleared him of any misconduct. Having injected the issue into the case, it would be manifestly unfair for Fish to withhold the truth on privilege grounds. The absurdity of this position is highlighted by the fact that Fish claims Mr. Harris' attempt to defend himself against Fish's allegations of misconduct is itself misconduct: "Your client's public disclosure, through pleadings filed by your firm, of those privileged communications was a violation of legal and fiduciary duties".

Fish should be compelled to produce the documents (Items 41-68 on the log).

## IV. CONCLUSION

For the reasons stated above, Mr. Harris (and ICR) request the following relief on Fish's Motion to Compel:

(1) Regarding Letter Request No. 6: Mr. Bradford's letter of December 7 states that once "companies that received communications asserting infringement are identified "we will advise you as to which of them are Fish & Richardson's… clients." (Exhibit F). All such letters were produced to Fish prior to Mr. Bradford's letter. Once Fish identifies the clients, Harris will promptly (within seven days, unless the holidays intervene) provide a log.

(2) With respect to Letter Request No. 5: Harris requests that Fish's motion be denied. The actual agreements do contain confidential information, and the only reasons articulated by Fish for its purported need to see them have been satisfied.

(3) With respect to Letter Request No. 1: Harris requests that Fish's motion be denied. Fish was advised that the redacted information contains the confidential terms of the Niro firm's representation, information that is not relevant to any issue in the case.

As to his Cross Motion to Compel, Mr. Harris respectfully requests that Fish be

ordered to produce the investigation documents, specifically, Items 41-68 on its log.

Respectfully submitted,

/s/ Paul K. Vickrey

Raymond P. Niro
Paul K. Vickrey
David J. Sheikh
Richard B. Megley, Jr.
Karen L. Blouin
Niro, Scavone, Haller & Niro
181 West Madison, Suite 4600
Chicago, Illinois 60602-4515
(312) 236-0733
Fax: (312) 236-3137

Attorneys for Illinois Computer Research, LLC
and Scott C. Harris

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing **SCOTT HARRIS' (1) RESPONSE TO FISH'S MOTION TO COMPEL, AND (2) CROSS MOTION TO COMPEL DISCOVERY** was electronically filed with the Clerk of Court using CM/ECF system, which will send notification by electronic mail to the following:

David J. Bradford
Eric A. Sacks
Daniel J. Weiss
Terrence J. Truax
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611
(312) 222-9350

**Counsel for Fish & Richardson, P.C.**

on December 18, 2007.

/s/ Paul K. Vickrey