# Exhibit A

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ILLINOIS COMPUTER RESEARCH, LLC.,

Plaintiff and Counterclaim Defendant

v.

FISH & RICHARDSON P.C., ET AL.,

Defendant, Counterclaimant and
Third-Party Plaintiff,

Case No. 07 C 5081

Judge Rebecca R. Pallmeyer
Mag. Judge Maria Valdez

**DECLARATION OF SCOTT HARRIS**

I, Scott Harris, declare under oath and under penalty of perjury that the following facts are true:

1. I prosecuted my patents on my own time and at my personal expense. At all times, I met or exceeded Fish's billable hour goals for its attorneys.

2. At all times during my tenure at Fish, Fish attorneys -- including those responsible for firm management -- were aware of my personal inventorship activities. Indeed, at or about the time I joined Fish, I informed (now retired) Fish attorney Charles Winchester, then Fish's Ethics Chairman, that (1) I had made inventions, (2) I was currently prosecuting my own patent applications on those inventions before the PTO, and (3) I would continue to invent while associated with Fish. Mr. Winchester responded that the firm saw no problem

with that, and that it was not unusual for patent prosecution attorneys to seek their own patents; indeed, others at Fish had done so before and after I had.

3. Thereafter, I sought the advice of a Fish administrator, Judy Filamond, who then headed Fish's "Practice Systems" group. Ms. Filamond likewise advised me that she saw no problems with my personal inventorship activities, and saw no reason why my inventions should be integrated into Fish's patent prosecution docketing system.

4. My inventorship activities were open and well known within Fish. At no time did I conceal my inventorship activities from Fish. As an example, a co-inventor on one of my patents (U.S. Patent No. 6,664,896) is the wife of former Fish Managing Partner John Gartman. My personal prosecutions were the subject of firm presentations and emails sent to attorneys throughout the firm.

5. As was the practice at Fish, other attorneys employed at Fish likewise were inventors on their own patents. A well-known example is that of Tom Woolston, who prosecuted his own patents while at Fish Those very patents were the basis for Woolston's founding of MercExchange (as in eBay v. MercExchange, 126 S.Ct. 1837 (2006)), a company of which the Managing Partner of Fish's San Diego office, John Phillips, is a co-owner.

6. Other attorneys sought and filed their own patents while at Fish, including Tim Pham, who has since left Fish to work for Google.

7. I never performed any work for any of the entities which Fish asserts are clients in this case: Dell Computer, Google, Nokia, LG and Samsung. Nor did I have access to any confidential information of those entities.

8. At no time did I use any client information in the prosecution of my patents. To the contrary, I even assigned at least two of the patents on which I was only a co-inventor to Fish's clients precisely to avoid any contention that I personally benefited from client information.

9. In late 2006 and in early 2007, I and Memory Control Enterprise, LLC filed two patent infringement lawsuits, naming Move, Classified Ventures, Eastman Kodak, General Motors, Panasonic and Dell Computer as defendants. In March of 2007, Fish contended that Dell was a firm client. That surprised me because I had seen no evidence that Dell was a firm client. My requests for confirmation of Dell's status as a firm client went unanswered.

10. Also at that time, Fish conducted an investigation into my inventorship activities. I participated in that investigation, providing all information requested by Fish. In May of 2007, Fish counsel advised Fish that I had done nothing wrong and that there was precedence for my activities. On May 4, 2007, Fish, through John Steele, Fish's Ethics and Conflicts Director, promptly relayed that advice to me.

11. On September 6, 2007, Fish's Managing Director, Peter Devlin, told me in a telephone call that I was going to be fired. Specifically, he said: "You've got to go."

Dated: 12/17/07

Scott Harris