**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| **ILLINOIS COMPUTER RESEARCH, LLC,**<br>*Plaintiff and Counterclaim Defendant,*<br><br>*v.*<br><br>**GOOGLE, INC.,**<br>*Defendant,*<br><br>*and*<br><br>**FISH & RICHARDSON P.C.,**<br>*Defendant, Counterclaimant and Third-Party Plaintiff,*<br><br>*v.*<br><br>**SCOTT C. HARRIS,**<br>*Third-Party Defendant and Counterclaimant,*<br><br>*v.*<br><br>**FISH & RICHARDSON P.C.,**<br>*Defendant, Counterclaimant, Third-Party Plaintiff and Counterclaim Defendant.* | ) | No. 07 C 5081<br><br>**Submitted Under Seal**<br><br>Judge Rebecca R. Pallmeyer<br><br>Magistrate Judge Maria Valdez |

**FISH & RICHARDSON'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL AND MEMORANDUM OF LAW IN OPPOSITION TO HARRIS'S CROSS-MOTION TO COMPEL**

David J. Bradford
Terrence J. Truax
Eric A. Sacks
Daniel J. Weiss
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484

December 20, 2007

Dockets.Justia.com

Fish & Richardson respectfully submits this reply in support of its motion to compel and in opposition to the cross-motion to compel of Scott Harris, which ICR joins.

## Background

While he was at Fish & Richardson, Scott Harris worked with the Niro Firm to threaten and sue firm clients.

REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER

The Niro Firm has a contingency interest in those several pieces of litigation. (*See* Resp. and Cross-Mot. 8 n.3.)

REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER

REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER

Harris characterizes the discovery requests as an unjustified personal attack. But the facts are damning and cannot be swept away as "hyperbole" as Harris attempts in his brief. (Resp. and Cross-Mot. 2.) What he did -- and continues to do -- was flat wrong, a blatant breach of his fiduciary obligations.[3]

REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER

[3] Harris says he was only an "employee," suggesting he had no fiduciary duties. (Resp. and Cross-Mot. 2.) But employees in Harris's position owe fiduciary duties to their employer. *Chelsea Indus., Inc. v. Gaffney*, 389 Mass. 1, 11 (1983). Harris was a shareholder in Fish & Richardson, a Massachusetts professional corporation. Such shareholders are called "principals," the equivalent of law partners. Indeed, before Harris decided to contest this issue, ICR expressly alleged that Harris was a Fish & Richardson "partner." (ICR Am. Compl. ¶ 8.) Partners owe one another a fiduciary duty of 'the utmost good faith and loyalty.'" *Meehan v. Shaughnessy*, 404 Mass. 419, 433-34 (1989). And Fish & Richardson's being a "closely held professional corporation in the practice of law does not diminish those fiduciary duties." *Lampert, Hausley & Rodman, P.C. v. Gallant*, No. 031977BLS, 2005 WL 1009522, at *5 (Mass. Super. Apr. 4, 2005) (Ex. C, attached), *rev'd on other grounds*, 852 N.E.2d 136 (Mass. App.

REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER

Likewise, Harris cannot hide behind his unsupported assertions of attorney-client privilege, particularly when he has provided neither the foundation for invoking privilege nor a privilege log. It is not clear when or on what matters the Niro Firm has represented Harris.

REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER

Harris should be compelled to produce the documents at issue or provide a privilege log and the foundation for a claim of privilege as appropriate.[4]

---

Ct. 2006) (unpublished). Lawyers also owe fiduciary duties to their clients. *Duggan v. Gonsalves*, 838 N.E. 2d 614, 618 (Mass. App. Ct. 2005); *see also* Mass. R. Prof. C. Rule 1.7, *cmt.* 1. And a lawyer in a law firm owes fiduciary duties to clients of other lawyers in the law firm. See Mass. R. Prof. C. Rule 1.10, *cmt.* 6.

[4] Harris also tries to argue the merits of the ownership, firm resources, and confidential information issues. (Resp. and Cross-Mot. 2-4.) But those matters are irrelevant here. Harris cannot prevent discovery that is permitted under Rule 26 merely by trying to put the best spin on his case. At best for

## ARGUMENT

### I. Fish & Richardson's Motion to Compel Should Be Granted.

Fish & Richardson's motion seeks three categories of documents: the "Retention & Fee Agreements"; unredacted copies of certain documents; and the "Targeting of Clients Documents." (Mot. to Compel 1, 4-5.) Harris's response fails.

#### 1. The Retention & Fee Agreements.

Fish & Richardson's Motion to Compel showed that Harris and ICR were obligated to produce their Retention & Fee Agreements because those documents were not privileged. (Mot. to Compel 11-13.) Fish & Richardson also showed that one of the documents, a fee arrangement between the Niro Firm and MCE, had been disclosed to Harris and therefore could not be privileged. (Mot. to Compel 13 n.5.)

In response, Harris implicitly concedes that the documents are not privileged and ignores the specific document exchanged between the Niro Firm, MCE, and Harris. (*See* Resp. and Cross-Mot. 7-8.) Instead, Harris argues that Fish & Richardson's request is "unreasonable" and "harassment." (Resp. and Cross-Mot. 7.) He also makes several off-point arguments.

Harris argues that "Fish should be required to articulate a valid basis for seeking" the fee arrangements. (*Id.*) But the relevance of the Retention & Fee Agreements was raised at the

---

Harris, each of the merits issues he raises is subject to a substantial factual dispute requiring discovery. However, in light of Harris's assertions, the Court should know that his assertions about the merits are mistaken. Harris's employment contract, which he prefers to ignore, provides, among other terms relevant in the case, that Fish & Richardson owns the proceeds of all of Harris's legal work, including the work he did for himself, and for which he paid himself in the form of contingent interests in patent litigation. (Resp. and Cross-Mot. Ex. B §§ 4, 6, 9.) And Harris did, plainly, use Firm resources, including his own labor, staff, the firm's computer, and more, to obtain "his" patents. (Fish Countercl. ¶¶ 23-26.) REDACTED PURSUANT TO STIPULATED PROTECTIVE ORDER All of that misconduct means that Harris did not retain, and could not transfer, full rights in "his" patents. *See* Mass. Gen. Laws ch. 108A, §21(1); *see also Meehan v. Shaughnessy*, 404 Mass. 419, 446 (1989); *see also Affymetrix, Inc. v. Illumina, Inc.*, 446 F. Supp. 2d 292, 297 (D. Del. 2006). Harris's "shop right" cases are therefore not on point. (Resp. and Cross-Mot. 3 n.2.)

inception of this expedited discovery. (*See, e.g.*, Mot. to Expedite 2-3; Mot. to Compel 4.) At that time, Harris did not argue that the documents were irrelevant. When Fish & Richardson served its discovery requests asking for the fee agreements, (Mot. to Compel Ex. C ¶ 6), Harris responded by asserting that the documents were privileged (Mot. to Compel Ex. D ¶¶ 5, 6). He made no assertion that the fee arrangements were irrelevant. (*Id.*) Harris only makes that argument now because he knows his original "privilege" argument was unjustified.

REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER

The rest of Harris's arguments are irrelevant and illogical. He argues that the Niro Firm's fee arrangements are analogous to Jenner & Block's bills to Fish. (Resp. and Cross-Mot. 7.) Not close. There is no showing of even a tangential relevance of Jenner & Block's fee arrangement with Fish & Richardson, let alone its privileged invoices. Therefore, Jenner & Block's engagement letter with Fish & Richardson is entirely irrelevant. But, if the Jenner & Block letter becomes relevant, Fish & Richardson will produce it.

Next, Harris argues that "it is no secret that the Niro Firm formed an attorney-client relationship with Mr. Harris while Mr. Harris was a Fish employee, and Mr. Harris will so

stipulate." (Resp. and Cross-Mot. 7-8.) But that assertion does not disclose the actual date on which the attorney-client relationship purportedly began, a pertinent fact. Nor does it provide any foundation for the assertion of such a relationship. Harris should not be permitted to use a purported attorney-client relationship to invoke privileges without disclosing exactly when and for what purposes that relationship allegedly was formed.

Harris also argues that "an attorney-client relationship can form without a written agreement." (Resp. and Cross-Mot. 8.) This argument, like the one just before it, does not demonstrate when, or specify how, the Harris / Niro Firm attorney-client relationship purportedly began. At a minimum, Harris should specify the date the relationship was formed, how it was formed, disclose any documentary evidence that supposedly supports those assertions, and state the scope and terms of the retention.

In sum, Harris concedes that the fee agreements are not privileged. Fish & Richardson has explained how its discovery is reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1). Accordingly, Fish & Richardson is entitled to the discovery of the all of the Retention & Fee Agreements and related information.

**2. Unredacted Copies Of Materials Produced On December 4, 2007.**

The Motion to Compel showed that Harris and ICR redacted portions of the documents they produced without establishing a privilege or other justification. (Mot. to Compel 13-14.) In response, Harris and ICR concede that the redacted information is not privileged. (*See* Resp. and Cross-Mot. 8.) Accordingly, it must be produced.

Harris and ICR suggest, without any authority, that they may satisfy their discovery obligations by submitting unredacted versions of the documents to the Court. Ignoring Rule 26(b)'s "reasonably calculated" standard, they assert that the documents contain "confidential information which is not relevant." (Resp. and Cross-Mot. 8.) But they have not explained --

not even in general terms -- how the information is irrelevant.

REDACTED PURSUANT TO STIPULATED PROTECTIVE ORDER

(*See also* Mot. to Compel 13-14; Resp. and Cross-Mot. 8.) Harris has no right to selectively produce only portions of the documents and it should not be this Court's burden to privately evaluate how those redacted portions relate to the case.

**3. Targeting Of Clients Documents.**

Fish & Richardson's Motion to Compel showed that it was entitled to the discovery of the Targeting of Clients Documents for several reasons: (1) Harris has the burden of showing that *every* element of an asserted privilege must be established as to *every* document withheld, and a detailed privilege log must be provided, even if logging such documents would be burdensome (Mot. to Compel 7-8); (2) some of the documents requested were not exchanged with the Niro Firm and therefore could not be privileged (*id.* at 9-10); (3) Harris communicated over the Fish & Richardson e-mail system using a Fish & Richardson computer and therefore was subject to Fish & Richardson's e-mail and confidentiality policies and therefore had no reasonable expectation of privacy relative to his partners (*id.* at 10); (4) Harris had a fiduciary duty of disclosure (*id.*); and (5) Harris was prohibited from using his attorneys to further his breach of fiduciary duties (*id.* at 10-11).

Harris ignores all but one of Fish & Richardson's arguments. Harris has filed a motion for a protective order concerning Fish & Richardson's e-mail policy, but that motion is no excuse for failing to produce a privilege log. The motion should fail as separately presented and briefed to the Court.[5] Moreover, the motion also addresses only Fish & Richardson's argument

[5] When jurisdiction is based on a federal question, privilege claims are governed by federal rather than state law. *Reed v. Baxter,* 134 F.3d 351, 355 (6th Cir. 1998); *In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 217 (S.D.N.Y. 2001). Federal privilege law will apply in federal questions cases even if the challenged testimony is relevant to a pendent state law count. *Mem'l Hosp. for McHenry County v.*

concerning its e-mail and computer policies. (Mot. for Protective Order.) It does not address any of the other arguments raised by Fish & Richardson. Neither does Harris's Response to the Motion to Compel.

Harris says he has produced all non-privileged documents reflecting "communications [to clients] asserting infringement of the Harris patents" and will log "all documents created or received by Mr. Harris relating to those entities." (Resp. and Cross-Mot. 6-7.) But, as pointed out in the Motion to Compel, and conveniently ignored by Harris, the requested Targeting of Clients Documents includes communications that "relate to or refer to" targeting of Fish & Richardson's clients, not just the targeting letters alone. Specifically, Fish & Richardson requested:

> All documents created while Harris was at Fish & Richardson that relate or refer to the assertion or possible assertion of the Harris patents against Dell, Honda, LG, Google, or any other client of Fish & Richardson, including but not limited to communications with the Niro firm on those topics.

---

*Shadur*, 664 F.2d 1058, 1061 n.3 (7th Cir. 1981); *Hancock v. Hobbs*, 967 F.2d 462, 466-67 (11th Cir. 1992); *von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987). Indeed, "because this case involves claims under federal patent laws, the federal common law of privilege, as opposed to state law, governs." *Abbott Labs. v. Andrx Pharm.*, No. 05 C 1490, 2006 WL 2092377, at *3 (N. D. Ill. July 25, 2006) (Ex. E, attached). Generally, the law of the regional circuit governs with respect to non-patent issues, and Federal Circuit law governs with respect to issues of substantive patent law. *Id.* (applying the law of the Seventh Circuit to issue of whether privilege was waived by disclosure). Here, when ICR initially sued Fish & Richardson, it also sued Google, and claimed jurisdiction based federal question jurisdiction, declaratory judgment jurisdiction, and interpleader and supplemental jurisdiction. (ICR Am. Compl. ¶ 6.) Fish & Richardson counter-claimed, asserting jurisdiction under both 28 U.S.C. 1338(a) and diversity jurisdiction. (Countercl. ¶ 13.) Harris and ICR agree that this Court has jurisdiction under 28 U.S.C. 1338(a). (ICR Reply/Harris Answer ¶ 13.) Section 1338(a) expressly invokes this Court's original and exclusive federal jurisdiction "arising under any Act of Congress relating to patents . . . " 28 U.S.C. 1338(a). Accordingly, federal law governs and the leading case on the issue of whether Harris had an "expectation of privacy" is *Muick v. Glenayre Elec.*, 280 F.3d 741, 743 (7th Cir. 2002), cited to the Court in Fish & Richardson's preliminary response to Harris's motion for a protective order. All of the e-mail review has taken place in connection with and pending federal litigation filed pursuant to federal patent jurisdiction. As a consequence, the parties had a reasonable expectation that federal law would govern this issue. Moreover, even if Harris's knowledge is an issue under state law, we expect that discovery will demonstrate that Harris did have actual and/or constructive knowledge of the policies. For example, the e-mail and confidentiality policies published on the internal Fish & Richardson intranet site -- Fishnet -- and are available on a daily basis to all personnel. (Decl. of D. Whelan ¶ 5, Ex. F, attached.)

(Mot. to Compel 4.) Though Harris suggested that he has produced all non-privileged responsive documents, he has not done so – nor has he represented that he has done so. He has not provided *any* documents or privilege log for documents that "relate or refer to" the possible assertion of patents against Firm clients, other than direct communications to Firm clients.

Harris makes no response to the remainder of Fish & Richardson's arguments, conceding them in the course. A party waives arguments not presented in its brief. *Blakely v. Brach & Brock Confections, Inc.*, 181 F. Supp. 2d 943, 951 (N.D. Ill. 2002). REDACTED PURSUANT TO STIPULATED PROTECTIVE ORDER

(*Compare* Mot. to Compel 9-10.) Nor has Harris explained how he had a privilege not to produce documents that were subject to his fiduciary duty of disclosure to his partners at Fish & Richardson. (*Compare id.* at 10.)

And Harris has not addressed the public policy argument outlined in the *Blanchard* case cited by Fish & Richardson. (*Id.* at 10-11.) In *Blanchard* the court stated that the crime-fraud exception has been applied not only to "crimes" and "frauds" but also to instances of a lawyer's intentional tort or unethical behavior. *Blanchard v. EdgeMark Fin. Corp.*, 192 F.R.D. 233, 241 (N.D. Ill. 2000).

Under the Supreme Court's decision in *U.S. v. Zolin*, the crime-fraud exception is subject to a two-part analysis. First, the party seeking to compel production must show "a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." 491 U.S. 554, 572 (1989) (internal citation omitted). Once the "may reveal" standard of *Zolin* is satisfied, a court is to conduct an *in camera* hearing. At that point, both parties have a right to

present evidence and argument. *American Tobacco Co. v. State*, 697 So.2d 1249, 1255-56 (Fla. Dist. Ct. App. 1997).

Here, Fish & Richardson believes that it can satisfy the standards set out in *Blanchard*, *Zolin*, and *American Tobacco*. At this time, Fish & Richardson seeks, at a minimum, the production of a complete privilege log responsive to its discovery requests so that it can determine the specific communications potentially subject to the foregoing case law. Once those documents are identified, Fish & Richardson appropriately will seek production of documents given Harris's waiver, and consistent with *Blanchard*, *Zolin*, and *American Tobacco*.

Harris now suggests that he will be prepared to submit a privilege log once he is told the names of the Fish & Richardson clients that are among those he already has threatened or sued. (Resp. and Cross-Mot. 7.) But, having failed to establish the grounds for any privilege and having failed to contest dispositive arguments, Harris is not entitled to withhold documents.

Moreover, there are several problems with both Harris's asserted need for a client list and with the privilege log he proposes to prepare. First, Harris says he will log only those communications "created or received" by Harris. (Resp. and Cross-Mot. 7.) But, as noted above, Fish & Richardson's request is not limited to documents "created or received" by Harris. Any privilege log should include all responsive documents, including those "created or received" by those other than Harris, including individuals at the Shell Entities, the Niro Firm, and elsewhere.

Second, Harris's argument -- that Fish & Richardson's clients need to be identified for him -- is an effort to engage in a dangerous fishing expedition on behalf of the Niro firm and his other clients, such as ICR. As pointed out in the Motion to Compel, Harris already knows who

Fish & Richardson's clients were at the time he was with the firm, for several reasons. (Mot. to Compel 9.)

In all events, Fish & Richardson would be burdened and put at severe risk if it were required to produce a list all of its clients. By contrast, Harris would incur no burden by identifying the companies targeted for litigation on "his" patents (and Fish & Richardson would then identify which of them are clients). When the Niro Firm initially asserted a need for a client list, Fish & Richardson pointed out: "In any event, the universe of companies that received communications asserting infringement of the Harris patents is much smaller than the universe of Fish & Richardson clients during Mr. Harris's tenure as a principal." (Resp. and Cross-Mot. 6.) Furthermore, handing over a list of all of Fish & Richardson's clients to the Niro Firm would endanger the clients themselves. The fact of the Firm's representation may be confidential and privileged in certain instances. The risk is great that a list of Fish & Richardson's clients would be misused by the Niro Firm, a competitor of Fish & Richardson and frequent opponent of Fish & Richardson's clients. In contrast, the risk is small that Fish & Richardson could unfairly use a list of companies targeted by a partner while he was at Fish & Richardson.

Given Harris's failure to be forthcoming with a complete privilege log or disclose the names of other parties that have been considered, Fish & Richardson cannot determine at this time if there are other Firm clients that have been targeted -- perhaps those that have been discussed or identified but not yet actually threatened or sued -- in internal Niro Firm discussions, discussions between the Niro Firm and Harris, or otherwise. Fish & Richardson therefore cannot -- as Harris assumes -- just tell Harris the names of the targeted clients.

At a minimum, Harris, ICR, and the Niro Firm should be compelled to log every communication -- whether created by or received by Harris or not -- that relates to the threats

against and litigation against the following firm clients --

REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER

## II. Harris's Cross-Motion To Compel Should Be Denied.

Harris seeks to compel the production of documents that he characterizes as the "Investigation Documents," specifically documents numbered 41-68 on Fish & Richardson's Expedited Discovery Privilege Log ("Privileged Documents 41-68"). The communications in question followed the surreal revelation that Harris -- while a Fish & Richardson principal, or "partner" -- was a named plaintiff in a patent infringement suit brought by the Niro Firm against a Firm client, Dell Computer. He bases several arguments on the assertion that Fish & Richardson cannot have a privilege over the requested documents because Fish & Richardson communicated with Harris about the Dell Computer case during that period. In so doing, however, Harris obfuscates the nature of the documents he seeks and misstates Fish & Richardson's position.

Fish & Richardson has logged as privileged and work product two types of documents relating to its internal communications. First, it has logged documents reflecting communications with Harris. (Privilege Log Re: Expedited Request 1, Ex. G, attached.) Second, it has logged internal communications that were not shared with Harris. (Privilege Log Re: Expedited Request 3, Ex. H, attached.)

Though the bulk of his arguments are premised on the assertion that information was shared with him, Harris does not seek the production of the first set of documents. (Resp. and Cross-Mot. 11-12.) This apparently is the case because he has inappropriately taken those

documents and shared them with the Shell Entities, a violation of his fiduciary duties. As to these documents, Fish & Richardson expressly told counsel for Harris and ICR:

> Given that Mr. Harris was a participant in these communications and that he already has copies of many of them, we would be willing to discuss an appropriate procedure for both parties to use the documents in the litigation between Mr. Harris and Fish & Richardson. In fact, the documents are now evidence of Mr. Harris's breaches of his duty of loyalty. However, we are listing them on the privilege log at this time, to make clear our position that the documents are privileged and so as to avoid any suggestions that Mr. Harris had any right to waive that privilege, that Fish & Richardson has waived privilege, or that Fish & Richardson has waived any rights and claims arising out of Mr. Harris's prior wrongful disclosure of these communications.

(12/4/07 E. Sacks Ltr. ¶ 4, Ex. I, attached.) Under the common interest doctrine, those documents are rightfully privileged as to ICR, the other Shell Entities, and the rest of the world. *See, e.g., Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 273 (N.D. Ill. 2004); *see also Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc.*, 449 Mass. 609, 618 (2007); *OXY Resources Cal. LLC v. Super. Ct.*, 115 Cal. App. 4th 874, 887-88 (1st Dist. 2004). Harris had no right to waive this privilege without Fish & Richardson's consent. *See* Restatement (Third) Law Governing Lawyers § 76, cmt. g (2000). Even when parties to a common interest arrangement become adverse, their privileged communications remain privileged as to third parties. *Angell Invs. v. Purizer Corp.*, No. 01 C 6359, 2002 WL 1400543, at *1 (N.D. Ill. June 27, 2002) (Ex. J, attached). Accordingly, it was a breach of his fiduciary duty to share the communications outside Fish & Richardson.

Instead of seeking communications in which he participated, Harris seeks communications that were never provided to him, for proper confidentiality reasons. As to those documents, Privileged Documents 41-68, Fish & Richardson is a client entitled to assert its own privilege and the work product of its lawyers, including in-house counsel. Harris mistakenly

asserts that Fish & Richardson's justification for withholding Privileged Documents 41-68 is the common interest doctrine. (Cross-Mot. at 9.) But Fish & Richardson has properly withheld and logged those documents on the basis of the attorney-client privilege and the work-product doctrine. (*See* Privilege Log Re: Expedited Request 3, Ex. H, attached.) A party to a common interest doctrine has no obligation to share all of its otherwise privileged information; rather, the common interest exception "is limited to those documents that fall within that interest, and thus must be asserted on a document-by-document basis." *Dexia*, 231 F.R.D. at 273. Accordingly, none of Harris's "common interest" arguments applies to those communications.

Harris also argues that Fish & Richardson waived its attorney-client privileges under the "at issue" doctrine by putting "at issue" its "investigation." (Resp. and Cross-Mot. 10-11.) But the "at issue" doctrine applies only when a party puts its own communications at issue. *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, No. 00 C 1926, 2000 WL 1898518, at *7 (N.D. Ill. Dec. 20, 2000) (Ex. K, attached); *Darius v. City of Boston*, 433 Mass. 274, 280 (2001). One party (Harris) cannot cause a second party (Fish & Richardson) to waive by putting the second party's (Fish & Richardson's) communications at issue. *Lama v. Preskill*, 353 Ill. App. 3d 300, 310 (2d Dist. 2004) ("To allow such discovery would effectively swallow the privilege, rendering it useless even though the privilege holder never directly put the privileged information at issue in the case."); *accord Darius*, 433 Mass. at 280 (same). That is what Harris has done here.

REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER

REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER

Accordingly, the pleadings clearly demonstrate that it was ICR and Harris -- and not Fish & Richardson – that placed the communications at issue. That does not cause a waiver and hardly becomes the broad waiver Harris asserts. "At issue" waivers are only limited waivers. *Darius*, 433 Mass. at 283.

At bottom, Harris has not established any grounds for the production of Privileged Documents 41-68. None of those documents reflect communications between Fish & Richardson and Harris, and they are not subject to the waiver arguments asserted by Harris.

## CONCLUSION

For the foregoing reasons, the Court should grant Fish & Richardson's motion to compel in its entirety and deny the cross-motion to compel.

Dated: December 20, 2007

Respectfully submitted,

FISH & RICHARDSON P.C.

By: s/ David J. Bradford
dbradford@jenner.com
One of Its Attorneys

David J. Bradford, Esq.
Terrence J. Truax, Esq.
Eric A. Sacks, Esq.
Daniel J. Weiss, Esq.
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, IL 60611
Telephone No: 312 222-9350
Facsimile No: 312 527-0484