IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **ILLINOIS COMPUTER RESEARCH, LLC,**<br>*Plaintiff and Counterclaim Defendant,*<br><br>v.<br><br>**FISH & RICHARDSON P.C.,**<br>*Defendant, Counterclaimant, Third-Party Plaintiff, and Counterclaim Defendant,*<br><br>v.<br><br>**SCOTT C. HARRIS,**<br>*Third-Party Defendant and Counterclaimant.* | No. 07 C 5081<br><br>Judge Rebecca R. Pallmeyer<br><br>Magistrate Judge Maria Valdez<br><br>**Redacted Public Version** |

## FISH & RICHARDSON'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE AN AMENDED COUNTERCLAIM AND THIRD PARTY COMPLAINT

Fish & Richardson P.C. ("Fish & Richardson" or "F&R") submits this reply in support of its motion for leave to file an amended counterclaim and third-party complaint.

### Introduction

Harris's and ICR's opposition rests on a fundamental misconception. The question for this motion (and in this case generally) is not whether some hypothetical attorney who acts with the utmost regard for his fiduciary responsibilities is entitled to enforce personal property rights that affect his clients. The question is whether *this* attorney, Scott Harris, who, as pleaded in the deemed-true allegations of the complaint, committed multiple breaches of his contractual and fiduciary duties in the development and assertion of the claimed property rights at issue, may continue to assert or transfer those rights without any possible legal or equitable limitations.

Nowhere in their brief do Harris and ICR argue that there is no possible legal or equitable relief that would limit an attorney's assertion of property rights—here, the patents—when the

development and assertion of those rights was tainted with the type of misconduct pleaded in the complaint. With good reason—it would be breathtakingly novel to hold that, as a matter of law, F&R has no conceivable legal or equitable rights that would apply to these patents, the very fruit of Harris's breach of duties and the very weapons he wielded against F&R clients. But it is that precise conclusion that the Court would have to reach to find that F&R's amendment is "futile" under all the facts and circumstances pleaded in the complaint.

The Court should therefore reject Harris's and ICR's invitation to decide the complex and fact-bound issues of this case on the pleadings. Harris and ICR have tacitly admitted as much—they *answered* the very same claims as pleaded in F&R's initial papers and the parties have since moved beyond the pleadings and into discovery. F&R's amendment only adds supporting facts learned in discovery to those existing claims, and adds the additional "Shell Entities" as defendants to the same claims. No new claims or legal theories have been added. The addition of new supporting facts and newly identified interested parties certainly did not render these claims "futile." Indeed, as a matter of procedure, Harris's and ICR's opposition to an amendment that asserts no new claims or theories against *them* is questionable at best.

Procedure aside, F&R's proposed amendment adequately pleads its claims, the resolution of which will depend on facts and evidence now in the midst of ongoing discovery, not legal determinations in a factual vacuum. In its claim for declaratory relief (Count III) and in its claim for a constructive trust (Count IV), F&R has pleaded that, as a function of Harris's misconduct, F&R is entitled to legal or equitable relief that would restrict the assertion of the patents at issue, particularly against F&R clients. The allegations of the complaint amply support the imposition of such relief and, taking the allegations of the complaint as true, it is impossible to find that no such relief could *ever* apply.

2

In response, Harris and ICR set up a series of abstract and inapplicable principles—an employer does not generally own its employee's patents, a "shop right" is only a non-exclusive license, and "an attorney can enforce personal property rights against a client." But these pronouncements (several of which are incorrect) say nothing about the facts pleaded *here*, which allege that the very creation of the patents and the assertion of the patents against F&R clients was inextricably intertwined with serious misconduct. In stringing together their arguments and purported "undisputed facts" (as if this were summary judgment), Harris and ICR simply ignore those deemed-true allegations, which are the heart of F&R's claims. Having failed to address the key issue of Harris's misconduct, Harris and ICR cannot establish that F&R's claims warrant no relief as a matter of law. The Court should permit F&R's amendment.

## Argument

Courts should freely give leave to amend when justice so requires. FED. R. CIV. P. 15(a)(2); *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004). That standard is satisfied here.

F&R's proposed amended complaint differs in only two respects from its initial complaint. (A redline showing the differences is attached at Ex. A.) First, through expedited discovery, F&R has learned additional facts about Harris's deception and other inequitable conduct related to the patents at issue (the "Disputed Patents") and has added allegations concerning those facts to its existing claims. (*See, e.g.*, Am. Compl. ¶¶ 4, 52-62, 67-81.) In general, these new factual allegations concern Harris's effort to disguise his interests in lawsuits against F&R clients concerning the Disputed Patents, including by purporting to assign the Disputed Patents to shell companies substantially owned or controlled by Harris (the "Shell Entities"). (*E.g., id.* ¶¶ 4, 52, 57-62, 67-72.)

3

Second, F&R has added certain new Shell Entities as defendants to its existing claims for declaratory relief and for a constructive trust.

REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER

As these Shell Entities were part of Harris's scheme—they were created for the sole purpose of disguising his ongoing breach of duties—and as they now claim interests in the Disputed Patents, F&R has added them as defendants so that the Court may afford complete relief.

F&R's amended complaint therefore adds no new legal theory and no new counts, merely new *facts* supporting existing claims and newly identified *parties* as defendants, also for existing claims. The Court should allow the amendment. As demonstrated below, ICR's and Harris's opposition is procedurally improper (§ I); the amendment states valid claims (§ II); and ICR's and Harris's remaining scattershot arguments are unavailing (§ III).

## I. Harris's And ICR's Opposition Is Procedurally Improper.

The Court should first note the strange procedural context of Harris's and ICR's opposition. The question of the parties' competing claims for legal and equitable rights and relief in connection with the Disputed Patents is *already joined*, and has moved beyond the pleading stage. (*See* F&R Compl. Counts III & IV; Harris & ICR Ans. ¶¶ 68-76.) F&R and ICR have asserted claims for declaratory judgment on those issues. (Dkt. No. 16, Count III; Dkt No. 21, Count III.) Each party *answered* the opposing party's declaratory count, and ICR and Harris also answered F&R's claim for constructive trust. (Dkt. 28, 33.) All of those claims are now in discovery.

For ICR and Harris to turn around and now argue that the same claims are "futile" makes little sense. As noted, F&R has added no new counts and no new legal theory, merely additional

*facts* supporting its claims and additional parties to the same claims. Harris and ICR of course do not argue that the mere addition of factual allegations should be disallowed. And with respect to the additional parties, ICR and Harris have not even established that they have *standing* to argue that claims against the new Shell Entities should be disallowed. The "standing concern alone" makes it inappropriate in an opposition to a motion for leave to amend "to challenge whether [the] plaintiff stated a claim against the *new* defendants." *Ashcroft v. Dep't of Corr.*, 2007 WL 1989265, at *7 (W.D.N.Y. July 6, 2007) (emphasis added); *see also Cont'l Cas. Co. v. PPG Indus., Inc.*, 1987 WL 6601, at *2 (N.D. Ill. Feb. 6, 1987) (defendants "lack standing to move to dismiss co-defendants from [an] action"). ICR and Harris are improperly arguing about the rights of parties not even yet before the Court.

Moreover, because the parties' competing claims regarding the Disputed Patents are *already* pending before the Court and have moved into discovery (and will continue to go forward against Harris and ICR regardless of whether amendment is allowed), the new Shell Entities should be added for the simple reason that they are *interested parties*. In its currently pending request for declaratory relief, F&R seeks adjudication of its rights and interests in relation to *all* of the Disputed Patents. (F&R Compl. ¶¶ 68-76.) The addition of the new Shell Entities, the supposed owners or assignees of the same patents, is only logical, if not compelled under Rule 19, which requires joinder of each party that "claims an interest relating to the subject of the action." FED. R. CIV. P. 19(a)(1)(B).

Further, ICR and Harris have already injected the rights of the new Shell Entities into this litigation. Harris has asserted a tortious interference claim against F&R, alleging that he sold various patents to the Shell Entities, and that F&R "cast[] a cloud over, and interfer[ed] with the ownership of, the entirety of Mr. Harris's patent portfolio." (Harris Countercl. ¶ 46.) More

5

recently, Harris and ICR filed a motion asserting "parties have reduced their settlement offers or demanded indemnities from *Mr. Harris's assignees*," *i.e.*, the Shell Entities. (ICR/Harris Mot. to Proceed with Disc., Dkt. 103, ¶ 3) (emphasis added). For all practical purposes, the Shell Entities (and their counsel) are *already* in this litigation; F&R's amendment would only conform the pleadings to that fact.

## II. Fish & Richardson's Amendment States Valid Claims.

Harris's and ICR's opposition is also wrong on the merits. F&R's amendment states valid claims for declaratory relief (Count III) and for a constructive trust (Count IV). (F&R has not amended its other counts and Harris and ICR do not challenge them.)

A proposed amendment is not futile unless "it appears to be a *certainty* that plaintiff cannot state a claim." *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (emphasis added); *Peoples v. Sebring Capital Corp.*, 209 F.R.D. 428, 430 (N.D. Ill. 2002) (claim is futile only if it "could not withstand a Rule 12(b)(6) motion to dismiss"). Where a claim has more than one independent legal theory supporting it, the defendant must show that *each* basis is invalid in order to foreclose the claim. FED. R. CIV. P. 8(d)(2) (where a single count includes alternative statements, "the pleading is sufficient if any one of them is sufficient"); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1284 (3d ed. 2007) (a "pleading is not defective due to the insufficiency of one or more of the alternative allegations"); *Croixland Prop. Ltd. v. Corcoran,* 174 F.3d 213, 218 (D.C. Cir. 1999) ("a complaint may contain alternative theories [in a single count], and if one of the theories can survive a Rule 12(b)(6) motion, the district court cannot dismiss the complaint"); *Pabon v. Recko*, 122 F. Supp. 2d 311, 313 (D. Conn. 2000) (same rule, denying motion to dismiss). ICR and Harris do not even approach demonstrating "futility" under those standards.

F&R's Count III pleads broadly that, given Harris's misconduct with respect to developing and asserting the Disputed Patents, F&R is entitled to relief through a declaration that the Firm possesses legal, equitable, or other rights "inconsistent with and superior to any interest claimed" by Harris or the Shell Entities in their assertion of the Patents against F&R clients. (Am. Compl. ¶¶ 94-97.) Similarly, F&R's Count IV seeks a constructive trust applied to the Disputed Patents or the proceeds derived from their assertion or sale. (*Id.* ¶¶ 98-102.) To prevail on their opposition, Harris must demonstrate that F&R is entitled to no *conceivable* form of such relief, no matter the deemed-true allegations of Harris's misconduct. *E.g., Croixland*, 174 F.3d at 218. ICR and Harris can make no such demonstration. As shown below, F&R has alleged ample allegations supporting relief on equitable grounds (§ A) and legal grounds (§ B).

A. **F&R's Allegations Support Equitable Relief With Respect To The Patents.**

F&R has pleaded sufficient allegations to support equitable relief under both Counts III and IV. As Harris and ICR themselves admit, a patent is a mere property right, and it is well-settled that equitable relief, including relief that transfers ownership of property, imposes a constructive trust, or otherwise limits the assertion of legal rights, is an appropriate remedy for breach of fiduciary duty or similar inequitable conduct. Indeed, "when one breaches a fiduciary duty to a principal the appropriate remedy *is within the equitable discretion of the court.*" *Dvorak v. Mostardi-Platt Assocs.*, 1998 WL 485681, at *3 (N.D. Ill. Aug. 12, 1998) (emphasis added); *In re Edgewater Med. Ctr.*, 344 B.R. 864, 872 (N.D. Ill. 2006) ("courts have equitable discretion to fashion the appropriate remedy for a breach of fiduciary duty") (internal quotations omitted).

As pleaded in the allegations of the amended complaint, Harris breached his fiduciary duties to F&R both in his conduct related to the development of the Disputed Patents and in the

7

assertion of the Patents against F&R clients. (*E.g.*, Am. Compl. ¶¶ 1, 30-34, 88-93, 96, 100.) Harris developed the Disputed Patents with F&R resources and then sought to exploit the Patents to the detriment of the Firm and his fellow principals, including by targeting Firm clients for suit on the patents, agreeing to assist with suits against Firm clients, and misleading his colleagues who questioned him about those activities. (*E.g. id.* ¶¶ 4, 52-81, 90.) When discovered, Harris devised a scheme to hide all of these activities through the Shell Entities. (*E.g. id.* ¶¶ 4, 57-60.)

Those allegations amply support F&R's claims for equitable relief. For example, multiple courts have held that principles of fiduciary duty and equity can require parties like Harris to relinquish claimed ownership in patents. As one court explained, where an alleged "inventor is more than an employee and occupies a *special relationship of trust and confidence* to the business, courts under certain circumstances have held it *inequitable* for the individual to retain a title which more properly belongs to the company." *Kennedy v. Wright*, 676 F. Supp. 888, 892 (C.D. Ill. 1988) (ordering fiduciary-inventor to assign patent due to use of company resources) (emphasis added); *see also Grip Nut Co. v. Sharp*, 150 F.2d 192, 197 (7th Cir. 1945) (holding executive stood in fiduciary relationship to employer and thus held patents he developed as constructive trustee for company). Numerous other courts have similarly compelled the assignment of ownership in a patent based on fiduciary and equitable principles.[1] There is no basis to find that such relief is foreclosed on the pleadings in this case.

Likewise, F&R's detailed allegations of Harris's breaches of fiduciary duty support the imposition of a constructive trust. (*See* Am. Compl. ¶¶ 98-102.) A constructive trust over property gained through a breach of fiduciary duty is an elementary equitable remedy, applicable

---

[1] *See, e.g., In re Access Cardiosystems, Inc.*, 340 B.R. 127 (D. Mass. 2006); *In re Stonecraft LLC*, 322 B.R. 623 (S.D. Miss. 2005); *Great Lakes Press Corp. v. Froom*, 695 F. Supp. 1440 (W.D.N.Y. 1987); *N. Branch Prod., Inc. v. Fisher*, 131 U.S.P.Q. 135 (D.D.C. 1961).

"whenever facts are shown in which a person holding legal title to the property at issue cannot retain the beneficial interest therein without violating some established principle of equity." *Chicago Park Dist. v. Kenroy, Inc.*, 437 N.E.2d 783, 785 (Ill. App. Ct. 1982). The allegations of the complaint make out multiple breaches of fiduciary duty by Harris that justify a constructive trust, including: (i) Harris's misconduct in prosecuting and developing the Disputed Patents with misappropriated F&R resources; (ii) Harris's efforts to target firm clients with lawsuits on the Disputed Patents; and (iii) Harris's acts of deception against his fellow principals to hide his misconduct. (Am. Compl. ¶¶ 1, 4, 30-34, 52-81, 90). A constructive trust applicable to the Disputed Patents or the litigation proceeds from the Disputed Patents would be an appropriate remedy for any one of those breaches, and is not a futile claim.

F&R's allegations support multiple other forms of equitable relief, any of which would establish rights "inconsistent with and superior to" the interests asserted by Harris and his Shell Entities in suing F&R clients. (*Id.* ¶ 96.) For example, F&R asks the Court to imply a restrictive covenant that would preclude Harris or the Shell Entitles from suing or assisting in suits against F&R clients. (*E.g., id.*) Patent cases have recognized similar implied covenants or licenses arising from equitable principles, including "by [a patent holder's] acquiescence, by conduct, by equitable estoppel (estoppel in pais), or by legal estoppel." *Wang Labs., Inc. v. Mitsubishi Elec. Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997). As one court explained, the equitable doctrine of estoppel can restrict lawsuits on a patent by "focus[ing] on the patentee's conduct and operat[ing] to bar the patentee's claims." *Hynix Semiconductor, Inc. v. Rambus, Inc.*, 2006 WL 1867724, at *3 (N.D. Cal. July 6, 2006). Like much in equity, that form of relief is "not limited to a particular factual situation nor subject to hard and fast rules." *Id.* (internal quotations

omitted). Far from "frivolous," it would be entirely appropriate for this Court to exercise its equitable powers in the same manner to remedy the ongoing harm Harris has caused.

As to all of the foregoing, Harris and ICR say almost nothing at all. Instead, they focus almost exclusively on legal ownership of the Disputed Patents, contending that F&R is entitled to no relief because Harris and/or the Shell Entities actually own the patents. (*E.g.*, Opp. 3-5.) Harris and ICR are wrong about legal ownership (as shown in the next section), but in all events mere ownership of property has never immunized a wrongdoer who breaches his fiduciary duties from equitable relief affecting that very property. The entire purpose of a constructive trust, for example, is to deprive a party of ill-gotten assets *despite* the fact that he may "hold[] *legal title* to the property at issue." *Chicago Park Dist.*, 437 N.E.2d at 785 (emphasis added).

Harris and ICR also cite several cases regarding constructive trusts, but they misunderstand the law. A constructive trust is appropriate simply "where there is a fiduciary duty and a subsequent breach of that fiduciary duty." *In re Hayslett/Judy Oil, Inc.*, 2006 WL 148948, at *2 (N.D. Ill. Jan. 17, 2006). As shown, F&R has made allegations supporting those elements. (*E.g.*, Am. Compl. ¶¶ 30-34, 52-81, 88-93.) ICR's and Harris's reliance on inapposite cases where there was no deception or no fiduciary relationship is mistaken.[2]

ICR and Harris also quarrel with the allegations of the amended complaint, arguing "Fish knew of Harris's inventions" and "nothing was concealed." (Opp. at 13.) Of course, these bare assertions cannot defeat the well-pleaded allegations, which allege precisely the opposite. On those pleaded facts, there is no basis to find that F&R's request for equitable relief is futile.

---

[2] *U.S. v. Dubilier Condenser Corp.*, 289 U.S. 178, 196 (1933) (the employee-inventors "promptly disclosed their inventions" to the employer who "encouraged them to proceed in perfecting and applying the discoveries" in the workplace); *Chain O'Mines, Inc. v. United Gilpin Corp.*, 109 F.2d 617, 623 (7th Cir. 1940) ("All of these facts, however, seem to be more consistent with honesty and good faith than with fraud"); *Jacoby v. Shell Oil Co.*, 196 F.2d 855, 857 (7th Cir. 1952) ("The evidence does not disclose that [salesman] was plaintiff's agent or that a fiduciary relationship existed").

B.   **Fish & Richardson Has Alleged Valid Legal Interests In The Patents.**

F&R has also alleged detailed facts that, taken as true, establish valid legal interests in the Disputed Patents. While unnecessary to allow the amendment—because, as shown above, the pleadings amply support equitable relief on Counts III and IV—the allegations go further and also support F&R's legal ownership interests in the Disputed Patents.

When an employment agreement contains a present assignment of future interests in patents to an employer, legal title transfers by operation of law. *Affymetrix, Inc. v. Illumina, Inc.*, 446 F. Supp. 2d 292, 297 (D. Del. 2006). Any patent rights covered by the agreement automatically vest in the employer. *Imatec, Ltd. v. Apple Computer, Inc.*, 81 F. Supp. 2d 471, 482 (S.D.N.Y. 2000). Since legal title vests automatically in the employer, any "purported assignment to [a subsequent assignee] is a nullity." *FilmTec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1572 (Fed. Cir. 1991).

Here, Harris's contract with F&R assigns *all* the fruits of his work as a lawyer to the Firm. In his contract, Harris agreed to "devote his . . . *full business time*, best efforts and skill to his . . . employment with the [Firm]," agreed that "*all* income generated by [him] for his services as a lawyer and all activities related thereto . . . *shall belong to the [Firm]*," and agreed that "all fees *or other compensation* received on account of such services *shall belong* to the [Firm]." (Am. Compl. ¶¶ 25-26, 29.) Read together, those provisions establish that Harris expressly assigned any future benefits flowing from his work as a lawyer that Harris might otherwise receive to his firm, F&R, in the first instance.

The Disputed Patents represent exactly such benefits arising from Harris's work as a lawyer. As detailed in the amended complaint, Harris prosecuted and obtained the Disputed Patents through the misuse of F&R resources, including his own services as a lawyer. (*E.g., id.* ¶¶ 1, 30-34.) It took more than just an "invention" to obtain the Disputed Patents. The process

11

of successfully drafting a patent application and prosecuting it with the U.S. Patent and Trademark Office requires highly specialized *legal* skills, skills that lawyers like Harris typically provide in return for substantial fees. By using his own legal skills and services to obtain the Disputed Patents, Harris effectively converted his own legal efforts into compensation for himself in the form of the valuable Patents. (*E.g., id.*)

The story of the '252 Patent is but one illustration. As pleaded in detail in the amended complaint, Harris engaged in undisclosed and self-interested transactions with an F&R client that led to Harris accepting benefits under the '252 Patent in lieu of compensation that rightfully belonged to the Firm. (*Id.* ¶¶ 35-41.) Harris prosecuted the '252 Patent on behalf of himself and the Firm client without properly billing the client for those services. (*Id.*) Instead, Harris arranged for the client to pay him with proceeds arising on the '252 Patent through an exclusive licensing agreement. (*Id.* ¶¶ 37-38.) When the client failed to pay the $1 million that Harris demanded under this scheme, Harris accepted the return of the exclusive license instead of the payment. (*Id.* ¶¶ 39-41.) Harris thus accepted rights under the '252 Patent as compensation for legal services that he performed for an F&R client. Under the terms of his employment agreement, that compensation—the rights in the Patent—was expressly assigned to F&R. (*Id.*)

In contrast to F&R's equitable claims for relief, Harris and ICR actually address F&R's legal ownership claim. But what they say is unpersuasive. Harris was not a "general employee" who just happened to come up with "inventions" in his employment; he was a patent attorney who pledged that all of his legal services in prosecuting patents belonged to F&R. (*E.g., id.* ¶¶ 25, 26, 29.) Harris used those services for his own benefit and effectively paid himself for the services with the Disputed Patents. (*E.g., id.* ¶¶ 36-41.) None of Harris's cases have similar

facts.[3] And even accepting Harris's legal ownership arguments, F&R's amendment is not futile because it asserts legal *and* equitable rights with respect to the Patents, either of which support F&R's claims.

### III.  ICR's And Harris's Remaining Arguments Also Fail.

Harris and ICR make several additional arguments that can be rejected in short order.

#### A.  Section 261 Does Not Preclude Fish & Richardson's Claims.

Harris and ICR argue that because the Shell Entities have recorded their claimed interests in the Disputed Patents pursuant to 35 U.S.C. § 261, F&R can have no relief pertaining to the Patents. (Opp. at 8-9.) Harris and ICR are mistaken, for at least three reasons.

First, § 261 only protects *bona fide* purchasers without notice of any other claim. *E.g., Rhone Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323, 1327 (Fed. Cir. 2002). If a party has notice of facts suggesting a competing claim, § 261 provides no protection, even if the prior alleged interest was unrecorded. *E.g., Leighton Tech. LLC v. Oberthur Card Sys., S.A.*, 2007 WL 2230157, at *13 (July 11, 2007). Here, F&R has pleaded in detail facts establishing that the Shell Entities were not *bona fide* purchasers, but were *participants* in a scheme to hide Harris's wrongdoing, and may well be nothing more than alter egos of Harris himself. (*E.g.,* Am. Compl. ¶¶ 4, 52, 57-62, 66-72.) No *bona fide* purchaser rule can apply on these allegations.

Second, the mere fact that the Shell Entities recorded interests in the Disputed Patents does not mean that those interests are *valid*. Section 261 is only a recording statute and has no effect on the "*validity* of the rights purportedly transferred by an assignment." *TM Patents, L.P. v. IBM Corp.*, 121 F. Supp. 2d 349, 365 (S.D.N.Y. 2000) ("Clearly, § 261 does not grant an

---

[3] For example, in *Bank v. Unisys Corp.*, the employee refused to sign the contract at issue. 228 F.3d 1357, 1359-60 (Fed. Cir. 2000). In *Jamesbury Corp. v. Worcester Valve Co.*, the employee left his job before "inventing," that is, reducing his idea to tangible form. 443 F.2d 205, 214 (1st Cir. 1971). Moreover, in *Teets v. Chromalloy Gas Turbine Corp.*, the court held *for the employer* that a contract created an obligation to assign patent rights. 83 F.3d 403, 407 (Fed. Cir. 1996).

assignee any title better than the assignor had"). The amended complaint contains ample allegations demonstrating that any purported assignment by Harris to the Shell Entities was invalid from the very start. (*E.g.*, Am. Compl. ¶¶ 1, 4, 52, 57-62, 66-72.)

Third, § 261 does not apply where the rights at issue are not recordable. The statute provides for the recording of only an "assignment, grant or conveyance" of a patent. 35 U.S.C. § 261. Many interests fall outside of those three categories. For example, a covenant not to sue upon a patent—one form of relief F&R seeks here—is not a recordable interest under Section 261. *V-Formation, Inc. v. Benetton Group Spa*, 2006 WL 650374, at *7-8 (D. Colo. Mar. 10, 2006). Likewise, where interests in a patent are transferred by operation of law—just as F&R asserts here—there is "no document of assignment to record." *See TM Patents*, 121 F. Supp. 2d at 366 n.10. Section 261 thus does not bar F&R's claims.

**B.     The Amendment Will Not Cause Undue Delay Or Prejudice.**

Harris and ICR also mistakenly argue that the amendment will cause undue delay or prejudice, but this is obviously not the case. (*See* Opp. at 12-13.) F&R moved to amend and add new parties more than six weeks *before* the Court's March 31 deadline to do so. (Dec. 3 Ord., Dkt. 58.) Motions to amend are granted routinely where, as here, litigation is in the early stages. *E.g., Zurich Am. Ins. Co. v. Int'l Fid., Ins.*, Co., 204 F.R.D. 111, 113 (N.D. Ill. 2001).

**C.     Fish & Richardson Complied With The Court's Order.**

ICR and Harris also accuse F&R of violating the Court's order regarding Harris's emails. (Opp. at 11-12.) They are mistaken. F&R has not reviewed any Harris email since the Court's December 20 order.[4] The amendment paragraphs that ICR and Harris reference (¶¶ 47-51) are

---

[4] For the avoidance of any doubt, the Court's orders concerning email directed F&R to cease any *additional* review of Harris emails during the Court's consideration of Mr. Harris's claimed privilege objection, but expressly exempted "those messages *already seen* by Defendants." (Dec. 20 Ord. Dkt. 77.) The Court again made clear that F&R should not review any *new* emails, but could rely upon emails

based on the initial complaint, non-email documents that Harris has produced, or statements that Harris and his counsel have made in the course of this litigation. F&R has complied with the Court's orders.

### D. Harris's And ICR's Remaining Accusations Are Baseless.

As explained in F&R's opposition to Harris's recent motion regarding discovery (Dkt. No. 110), Harris's accusations that F&R is responsible for anonymous internet postings are absurd and should not further waste the parties' or the Court's resources.

### Conclusion

For the reasons set forth above and in F&R's initial Memorandum, F&R respectfully requests that this Court grant it leave to file its amended counterclaim and third-party complaint.

Dated: March 10, 2008              Respectfully submitted,

                                                               FISH & RICHARDSON P.C.

                                                               By:    s/ David J. Bradford
                                                                          One of its Attorneys

David J. Bradford
Terrence J. Truax
Eric A. Sacks
Daniel J. Weiss
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484

---

already reviewed, on December 21. (Dec. 21 Hr'g Tr. 72.) F&R has complied with those orders. In addition, Harris's argument that the emails are privileged has been thoroughly briefed and discredited. (*See* Dkt. No. 84.) His continued reliance on the *Jiang* decision, an inapt case that has been depublished by the California Supreme Court, fails for the reasons set out in that briefing.

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed with the Court by means of the Court's CM/ECF system, which will send notification of such filing to the following counsel at their email address on file with the Court:

Raymond P. Niro
Paul K. Vickrey
Richard B. Megley, Jr.
Karen L. Blouin
David J. Sheikh
Niro, Scavone, Haller & Niro
181 W. Madison, Suite 4600
Chicago, Illinois 60602

L. Steven Platt
Arnold and Kadjan
19 West Jackson Blvd., Suite 300
Chicago, IL 60604
(312) 236-0415

March 10, 2008.

                                                    s/David J. Bradford

JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, Illinois 60611
Telephone No: 312 222-9350
Facsimile No: 312 527-0484