IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **ILLINOIS COMPUTER RESEARCH, LLC,** ) <br> *Plaintiff and Counterclaim Defendant,* ) <br> ) <br> *v.* ) <br> ) <br> **FISH & RICHARDSON P.C.,** ) <br> *Defendant, Counterclaimant, Third-Party Plaintiff, and Counterclaim Defendant,* ) <br> ) <br> *v.* ) <br> ) <br> **SCOTT C. HARRIS,** ) <br> *Third-Party Defendant and Counterclaimant.* ) | No. 07 C 5081 <br><br> Judge Rebecca R. Pallmeyer <br><br> Magistrate Judge Maria Valdez <br><br> **Redacted Public Version** |

**FISH & RICHARDSON'S OPPOSITION TO HARRIS'S AND ICR'S CLAIM OF PRIVILEGE AS TO DOCUMENTS ALLEGEDLY PRODUCED INADVERTENTLY AND SUBMITTED UNDER SEAL IN OPEN COURT ON MARCH 31, 2008**

Despite admitting to this Court by letter dated April 7, 2008 that they waived any claimed privilege by sharing most of the "inadvertently produced" documents with a third-party, ICR and Mr. Harris continue to make unjustifiably broad, unsupportable assertions of privilege as to the remaining "inadvertently produced" documents submitted under seal in open Court on March 31, 2008. The assertion is untenable in light of Mr. Harris's and ICR's admission that the documents as to which privilege was waived all relate to the same subject matter (in fact, are drafts of the very same documents) as the documents as to which Mr. Harris and ICR continue to assert privilege.

It is well-settled that the attorney-client privilege is "strictly construed" because "the scope of discovery should be broad in order to aid in the search for truth." *Christman v. Brauvin Realty*, 185 F.R.D. 251, 255 (N.D. Ill. 1999). Apart from their waiver of privilege, ICR and Mr.

Harris have not met their burden to establish all essential elements of the attorney-client privilege as to each of the submitted documents.

## Argument

By letters dated March 26 and 27, 2008, Mr. Harris and ICR asserted that two categories of documents had been produced inadvertently: (i) an unredacted draft retention and fee agreement (the "Unredacted Draft Agreement") and (ii) certain notes Mr. Harris created while at Fish & Richardson relating to the value of the disputed patents, and prepared in the context of negotiating a price for the purported sales of those patents (the "Harris Notes"). Mr. Harris represented in the March 26 letter that all the notes were drafts of the same six documents. (Ex. A, 03/26/08 K. Blouin Ltr.) In response to the assertion of "inadvertent production," Jenner & Block disagreed with the assertion of privilege, but expressly stated that it would comply with the terms of the protective order, requiring return of the documents. Nevertheless, Mr. Harris and ICR, without a "meet and confer" or good faith basis, filed a sanctions motion against Jenner & Block after business hours on Friday, March 28, 2008. The sanctions motion recklessly alleged that Jenner & Block refused to return the disputed documents.

Jenner & Block spent that weekend preparing and filing on Sunday, March 30, an emergency response brief to correct ICR's and Mr. Harris's assertions. On Monday, March 31, in open Court, Mr. Harris and ICR withdrew their motion. Fish & Richardson spent considerable expense over the next week locating and destroying every one of the "inadvertently produced" documents and hard copies thereof, which had been sent to multiple attorneys in multiple Fish & Richardson offices for analysis.

Incredibly, a week later, by letter to this Court dated April 7, 2008, Mr. Harris acknowledged waiver of privilege as to nearly half of the Harris Notes (Harris 057-81),

conceding that the documents had been given to a third-party. However, in his April 7 letter to the Court, Mr. Harris and ICR continue to assert that the remaining Harris Notes (Harris 322-353) and the Unredacted Draft Agreement (Harris 197-206) still are privileged. That argument fails for numerous reasons.

I. **The Unredacted Draft Agreement And All Other Retention And Fee Agreements Are Not Privileged.**

Fish & Richardson demonstrated in its initial motion to compel and its renewed motion to compel that the attorney-client privilege does not protect the production of retention and fee agreements. (*See* Dkt. 62 & 106.) The case law, which has never been rebutted or even addressed by ICR or Mr. Harris in their numerous briefs and letters on this issue, solidly establishes this principle. *See, e.g., Christman*, 185 F.R.D. at 257 (ordering production of bill and payment information); *Salstone v. Gen. Felt Indus.*, 1986 WL 13738, at *4 (N.D. Ill. Dec. 4, 1986) (ordering production of fee and retainer agreements). Indeed, in this case the Court has already noted, "[i]n general, for example, in tort litigation we routinely find out what the plaintiff's lawyer is expecting to recover should he or she win." (12/21/07 Hr'g Tr. 35.)

Mr. Harris *never* has provided any reason to depart from the general rule that retention agreements are not privileged, or identified what provisions of the withheld documents supposedly contain confidential attorney-client information. Based on a review of the draft fee agreement when it was "inadvertently" produced, it is clear that it is not even arguably privileged. Mr. Harris had no reasonable basis for asserting privilege. (It is also apparent why he is desperate to keep these provisions secret.) Moreover, for the reasons discussed below on pages 8-10, even if the fee agreement documents were privileged, which they are not, Mr. Harris, as a principal and fiduciary, had a duty to inform Fish & Richardson of his relationship with the Niro firm, and cannot withhold documents delineating the nature and terms of that relationship

on grounds of privilege. Therefore, the Retention and Fee Agreements, including the Unredacted Draft Agreement, are not privileged, and should be produced in complete, unredacted form.

## II. The Harris Notes Should Be Produced.

The Harris Notes should be produced because Mr. Harris has waived privilege as to the subject matter of the notes by voluntarily producing admittedly similar documents (§ A); Mr. Harris has not established the essential elements of the attorney-client privilege (§ B); Mr. Harris had a fiduciary duty to disclose the notes (§ C); and Mr. Harris has asserted conflicting positions regarding the definition of legal services (§ D).

### A. Mr. Harris Has Waived Privilege By Producing Similar Documents.

Mr. Harris has waived the attorney-client privilege as to all of the Harris Notes by voluntarily producing nearly half of them. "[A] client can waive the privilege by producing similar documents in response to a discovery request." *Christman*, 185 F.R.D. at 255, 257 ("the objecting parties have waived their claim of privilege by producing documents similar" to the withheld documents). "Voluntary disclosure of privileged information about a matter waives the privilege as to all information on the same subject matter." *Fujisawa Pharm. Co. v. Kapoor*, 162 F.R.D. 539, 541 (N.D. Ill. 1995); *see also Nye v. Sage Prod.*, 98 F.R.D. 452, 453 (N.D. Ill. 1982) ("Production of some privileged documents waives privilege as to all documents of the same subject matter").

Mr. Harris acknowledged in his April 7 letter to the Court that he had produced to a third-party and thereby waived privilege over virtually half of the notes (Harris 057-81) regarding the value of the disputed patents which Mr. Harris initially asserted were privileged. (Ex. B, 04/07/08 Harris Ltr. at 1.) Mr. Harris has admitted that those voluntarily produced documents are similar to, and cover the exact same subject matter as, the Harris Notes that Mr. Harris

4

continues to withhold. In her March 26, 2008 letter asserting inadvertent production, counsel for Mr. Harris and ICR stated that *all* of the Harris Notes (including the very notes Mr. Harris now has voluntarily produced) are "drafts of documents contained in the privilege log, numbers 23-28." (Ex. A, 03/26/08 K. Blouin Ltr.) Therefore, it cannot be disputed that the notes Mr. Harris voluntarily produced are similar to and cover the same subject matter as the documents he continues to seek to withhold.

Mr. Harris should not be permitted to selectively waive privilege as to some of the documents, and continue to assert privilege as to other documents that admittedly are substantially similar and cover the exact same subject matter. All of the Harris Notes should be produced, as well as the documents Mr. Harris claims are final versions of those notes (listed in entry numbers 23-28).[1]

### B. Mr. Harris Has Not Established The Essential Elements Of The Attorney-Client Privilege.

The Harris Notes cannot be withheld on grounds of attorney-client privilege for the additional reason that Mr. Harris has failed to demonstrate that each required element of privilege applies. To assert the attorney-client privilege, a proponent must establish that a "communication" occurred "in confidence" in which the client sought legal advice "from a professional legal advisor in his capacity as such." *E.g., Allendale Mutual Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 137 (N.D. Ill. 1993); *Christman*, 185 F.R.D. at 257 (same). The proponent bears the burden of establishing "each element" of privilege on a "document by

---

[1] Given that Mr. Harris voluntarily has produced certain notes he asserts are drafts, at the very least he should be ordered to produce the final versions of those voluntarily produced drafts. In addition, the notes Mr. Harris voluntarily produced make numerous references to "attachments" of "Claim charts" (apparently targeting infringers) and similar materials. However, no attachments were produced. Mr. Harris has no grounds to withhold those attachments. Finally, although Mr. Harris originally asserted Harris 315-321 was produced inadvertently, his April 7 submission to the Court does not mention that document, let alone seek to establish that it is privileged, and thus it also should be produced immediately.

5

document" basis. *Christman*, 185 F.R.D. at 255. Moreover, "the attorney-client privilege does not protect documents whose descriptions are vague—and therefore insufficient to establish the privilege." *Id.* (granting motion to compel insufficiently described documents). It is a "serious defect" if "nowhere in any of their briefs is this court given enough information" to determine whether the documents are privileged. *Allendale*, 152 F.R.D. at 139 (ordering production of documents described in conclusory fashion in briefs and privilege log).

Mr. Harris does not even approach satisfying those elements. For example, it does not appear that the documents were communicated to *anyone* at all, let alone to legal counsel, or were intended to remain confidential, and thus Mr. Harris has not demonstrated the documents are privileged. As to each of the Harris Notes, Mr. Harris makes a boilerplate assertion in his April 7 letter to this Court:

> This document is a version of an analysis prepared by the client, Mr. Harris, at the request of and to be provided to the Niro firm for the purpose of providing legal advice as to the value of the patents and patent applications identified in the document, as well as the potential to license or sell the identified patents and patent applications. Mr. Harris *submitted one or more versions of the document* to his attorneys, and discussed the information contained in the document with his attorneys, with the understanding it was for the purpose of providing legal advice and was made in confidence.

This assertion does not suffice to establish a foundation for privilege.

First, there is no assertion that the documents were ever "communicated" to anyone at all, only that some "version" of the document was communicated. Mr. Harris and ICR have not produced or logged any cover letters or cover emails. *E.g., Allendale*, 152 F.R.D. at 139 (granting motion to compel: "no lawyer was a party to that communication"); *Christman*, 185 F.R.D. at 257 (ordering production of documents never transmitted to attorney).

Second, Mr. Harris has never identified, in either a privilege log, brief or letter, any particular lawyer at the Niro firm who was "to be provided" each document, or the date each

6

document was purportedly transmitted. That is insufficient to establish privilege. *E.g., Allendale*, 152 F.R.D. at 139 (ordering production where party "cannot even identify a lawyer who was involved in the communication"); *Christman*, 185 F.R.D. at 257 (document "which does not state to whom it is to or from, is too vague" to establish privilege).

Third, there is no assertion of *when* the document was created and no grounds for finding an attorney-client relationship between the Niro firm and Mr. Harris as to the patents discussed in the notes, as of the date the note was prepared. The fact that the notes appear to have been prepared prior to any sale of the patents is inconsistent with such a relationship.

Fourth, Mr. Harris, ICR and the Niro firm all represented previously that the Niro firm did *not* represent Mr. Harris when he purported to sell and assign the disputed patents. As set forth below, according to their own documents and pleadings, the Niro firm acted as counsel for *buyer entities*—ICR, MCE, etc.—and Mr. Harris was represented by "separate counsel." The Niro firm could not have been counsel to Mr. Harris in connection with that same sale.

REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER

(*E.g.*, Ex. C, Harris-ICR Contract at § 9.5, emphasis added.) Other assignment contracts contain the same language. (*E.g.*, Ex. D, Harris-Virginia Innovative Technology Contract at § 9.5; Ex. E, Harris-BarTex Research Contract at § 9.5; Ex. F, Harris-Innovative Biometric Technology Contract at § 9.5; Ex. G, Harris-Parker Innovative Technologies Contract at § 9.5; Ex. H, Harris-Innovative Patented Technology Contract at § 9.5.) Therefore, the very contracts agreed to by Mr. Harris and the shell entities expressly contradict the position Mr. Harris now asserts.

ICR's interrogatory answers lead to a similar conclusion. ICR expressly stated in its Interrogatory Responses that *it* was represented by the Niro firm in connection with its agreement to purportedly acquire certain Harris-related patents from Mr. Harris. (Ex. I, ICR I-Rog. Resp. No. 3.) If, as ICR has pleaded, the Niro firm was representing *ICR* as the buyer in the negotiations to acquire the patents, then the Niro firm could not have been representing the seller, Mr. Harris, in the same transaction, unless the entire transaction was a sham. Otherwise, the Niro firm would have placed itself in the ethically improper—and impossible—position of simultaneously seeking to maximize ICR's and Mr. Harris's opposite interests in a particular business transaction, REDACTED PURSUANT TO STIPULATED PROTECTIVE ORDER

Finally, as set forth more fully in Section D, these specific notes clearly relate to business negotiations, not legal advice.

Consequently, even if Mr. Harris transmitted these notes regarding the value of the patents to a specific lawyer at the Niro firm on a specific date – a foundation he has not established – they would not be privileged, because for purposes of the sale agreements, the Niro firm was acting as legal advisor to *buyers*, the shell entities, rather than the seller, Mr. Harris.

C. **Under The Fiduciary Duty Exception, Mr. Harris Cannot Assert The Documents Are Privileged.**

Because Mr. Harris was a principal and fiduciary of Fish & Richardson, the fiduciary duty exception to the attorney-client privilege additionally prevents Mr. Harris from withholding the retention agreements and his business notes from Fish & Richardson. Under the fiduciary duty exception to the attorney-client privilege, "a communication between an attorney and a client is not privileged from those to whom the client owes a fiduciary duty." *J.H. Chapman Group, Ltd. v. Chapman*, 1996 WL 238863, at *1 (N.D. Ill. May 2, 1996). The exception applies when there is a fiduciary relationship and "good cause" for overcoming the privilege. *Id.*

8

Fiduciary relationships, for purposes of the fiduciary exception, include "relationships such as between [. . .] lawyers and other lawyers, [. . .] general partners in a partnership and general partners and limited partners." *Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 84 (N.D.N.Y. 2003). Being a "closely held professional corporation in the practice of law does not diminish those fiduciary duties" owed by partners. *Lampert, Hausley & Rodman, P.C. v. Gallant*, 2005 WL 1009522, at *5 (Mass. Super. Apr. 4, 2005), *rev'd on other grounds*, 852 N.E.2d 136 (Mass. App. Ct. 2006). In addition, fiduciary duties include the "duty to make full and fair disclosure." *Peskin v. Deutsch*, 479 N.E.2d 1034, 1038 (Ill. App. Ct. 1985). And a partner may not act in his own self-interest at the expense of the partnership or other partners without full disclosure. *Blasberg v. Oxbow Power Corp.*, 934 F. Supp. 21, 27 (D. Mass. 1996). The notes which have been produced (which are drafts of the same documents as the notes which have not been produced) reflect that Mr. Harris was spending substantial time targeting Firm clients while at the Firm. Those produced notes contain vitally important information directly relating to Fish & Richardson's claims.

REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER

*Before* Mr. Harris committed substantial portions of his time to patent enforcement activities and *before* he began self-dealing with and preparing claims against Firm clients, he was obligated to make a full disclosure to Fish & Richardson. Mr. Harris now improperly seeks to use the attorney-client privilege to shield from Fish & Richardson the very actions and documents that he had a duty to disclose. He should not be permitted to do so.

9

The factors that may contribute to a finding of "good cause" include "whether the party seeking the information asserts a colorable claim, whether the information sought is not available elsewhere, whether the information sought is relevant to past or present actions, and whether the information sought may risk a revelation of trade secrets or other confidential information." *J.H. Chapman Group, Ltd.*, 1996 WL 238863, at *1. Though not a prerequisite, each of these factors is present here. *See In re Gen. Instrument Corp. Sec. Litig.*, 190 F.R.D. 527, 529-30 (N.D. Ill. 2000). Fish & Richardson asserts more than colorable claims for breach of fiduciary duty and breach of contract; indeed, Mr. Harris has not attempted to dismiss those claims against him. Evidence of the nature and extent of Mr. Harris's breaches is not available elsewhere; it appears that the Niro firm was Mr. Harris's primary vehicle for his disloyal, wrongful actions. The information sought is relevant to Mr. Harris's past activity while he was still at Fish & Richardson. And the information sought is not likely to reveal trade secrets or other confidential information (and any confidential information will be protected by the parties' stipulated protective order).

Therefore, the fiduciary exception applies to the Harris Notes and the Retention & Fee Agreements, and Mr. Harris cannot withhold them from Fish & Richardson.

### D. Mr. Harris Is Taking Inconsistent Positions Regarding "Legal Advice."

Mr. Harris has now taken unexplained, directly contradictory positions regarding what activities constitute legal services. The attorney-client privilege "does not apply to business advice"; documents may not be withheld if they "concern business advice, as opposed to legal advice." *See, e.g., Christman*, 185 F.R.D. at 255-56 (notes, draft purchase contracts, draft proxy statements, and similar documents not privileged). "[W]here documents or conversations are created pursuant to business matters, they must be disclosed." *Allendale*, 152 F.R.D. at 137; *see*

*also In re Brand Name Prescription Drug Antitrust Litig.*, 1995 WL 354268, at *3 (N.D. Ill. June 9, 1995) (documents drafted by attorneys relating to pricing and industry information had to be produced). And where a document contains both business and legal advice, the legal advice given to the client "must be the *predominant* element" in the communication—"the privilege will not apply where the legal advice is incidental to business advice." *Allendale*, 152 F.R.D. at 137 (emphasis added); *In re Brand Name*, 1995 WL 354268, at *2 (same).

To avoid that uniform authority, Mr. Harris now asserts the Harris Notes are protected legal advice, not business advice, but that position directly contradicts his contention that he did not breach his contractual obligations to Fish & Richardson. As the Court is well aware, Fish & Richardson has alleged that Mr. Harris breached numerous contractual and fiduciary obligations, including his contractual obligation to provide Fish & Richardson all income he generated for providing legal services. For example, Mr. Harris's agreement with Fish & Richardson provides, in part:

> [§ 6]   Accounting. *All income generated by the Employee for his services as a lawyer and all activities related thereto, such as writing of treatises and articles, shall belong to the [Firm]*, whether paid directly to the [Firm] or to the Employee.
> . . .
> [§ 9]   Practice Engagements. *All engagements by the Employee to render legal services* to clients and others, except as approved by the Board of Directors, *shall be engagements on behalf of the [Firm]* and *all fees or other compensation received on account of such services shall belong to the [Firm]*. The Employee shall not practice law, except on behalf of the [Firm], without the prior approval of the Board of Directors. All clients shall be clients of the [Firm] and all files and other documents and things relating to clients shall be property of the [Firm].

(Law Firm Agreement §§ 6, 9, emphasis added.) Although Mr. Harris concedes that he was contractually obligated to give Fish & Richardson all compensation he received for providing legal services, Mr. Harris has denied that any of his actions relating to the disputed patents, including negotiating a sale of the patent, prosecuting the patents, identifying and targeting

11

potential infringers, valuing the patents, and licensing and selling the patents, in any way constituted "legal services" or "services as a lawyer."

Now, however, for purposes of asserting the Harris Notes are privileged, Mr. Harris argues that many of those very same actions constituted *legal services* (and thus privileged legal advice) when they were performed by the Niro firm. According to Mr. Harris's submission to the Court, the Harris Notes are "analysis" and privileged because they were provided to the Niro firm so that Niro firm could provide "legal advice" regarding "the value of the patents" as well as "the potential to license or sell" the patents. (Ex. B, 04/07/08 Harris Ltr. at 2-3.) Mr. Harris's current position that such analysis and communications constitute legal advice, not business advice, is in direct contrast to Mr. Harris's position regarding the merits of Fish & Richardson's breach of contract claim. If the analysis in the Harris Notes relates to legal advice, then Mr. Harris's own preparation of claim charts and infringement analyses must constitute "legal services" in violation of the Fish & Richardson agreement. Mr. Harris should not be permitted to change his definition of "legal services" when it suits his purposes in this litigation.

Dated: April 9, 2008

Respectfully submitted,

FISH & RICHARDSON P.C.

By:   <u>s/ David J. Bradford</u>
       One of its Attorneys

David J. Bradford
Terrence J. Truax
Eric A. Sacks
Daniel J. Weiss
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed with the Court by means of the Court's CM/ECF system, which will send notification of such filing to the following counsel at their email address on file with the Court:

Raymond P. Niro
Paul K. Vickrey
Richard B. Megley, Jr.
Karen L. Blouin
David J. Sheikh
Niro, Scavone, Haller & Niro
181 W. Madison, Suite 4600
Chicago, Illinois 60602

L. Steven Platt
Arnold and Kadjan
19 West Jackson Blvd., Suite 300
Chicago, IL 60604
(312) 236-0415


April 9, 2008.

                                                s/David J. Bradford

                                                JENNER & BLOCK LLP
                                                330 North Wabash Avenue
                                                Chicago, Illinois 60611
                                                Telephone No: 312 222-9350
                                                Facsimile No: 312 527-0484