IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS COMPUTER RESEARCH, LLC., *Plaintiff and Counterclaim Defendant*, <br><br> v. <br><br> FISH & RICHARDSON P.C., *Defendant, Counterclaimant and Third-Party Plaintiff*, <br><br> v. <br><br> SCOTT C. HARRIS, *Third-Party Defendant and Counterclaimant*, <br><br> v. <br><br> FISH & RICHARDSON P.C., *Defendant, Counterclaimant, Third-Party Plaintiff and Counterclaim Defendant*. | Case No. 07 C 5081 <br><br> Honorable Rebecca R. Pallmeyer <br><br> Magistrate-Judge Maria Valdez |

**HARRIS AND ICR'S RESPONSE TO FISH AND RICHARDSON'S
OPPOSITION TO HARRIS' AND ICR'S CLAIM OF PRIVILEGE
AS TO DOCUMENTS ALLEGEDLY PRODUCED INADVERTENTLY AND
SUBMITTED UNDER SEAL IN OPEN COURT ON MARCH 31, 2008**

**A.   Introduction**

The documents identified in the April 7, 2008 letter to the Court are privileged because they meet the requirement for attorney client privilege. Fish fails to articulate an actual basis for the relevance of the unredacted retention and fee agreements. Fish has acquired any relevant information from other sources. The Harris Notes were given to a third party and do not relate to the documents on the privilege log.

### B. All of the Harris Notes Have Been Produced

ICR and Mr. Harris (collectively "Harris") have corrected the claim of privilege over "inadvertently produced" documents and have updated the privilege log to reflect the same. ICR's and Mr. Harris' inadvertently produced documents can be placed into three categories (1) an unredacted draft retention and fee agreement; (2) the documents referred to as the "Harris Notes"; and (3) Documents HARRIS 000326-353 now recorded on the privilege log as Privileged Documents 34 - 38.

Harris identified the "Harris Notes" and the Privileged Documents 34-38 as being inadvertently produced privileged documents in a letter to Fish dated March 26, 2008. (Exhibit A).

ICR and Harris have withdrawn their claim of privilege regarding what Fish refers to as the "Harris Notes." At the time ICR claimed privilege; it was believed that the Harris Notes were related to documents 23-28 on the privilege log. Upon further review, it was revealed that the Harris Notes were in fact produced to a third party and the assertion of their privilege was withdrawn. On April 7, 2008, ICR and Harris provided notice the Court and Fish counsel. On a phone call on April 11, 2008 between counsel for the parties it was clarified that the Harris Notes were not drafts of the items on the privilege log documents 23 - 28. Documents 23-28, which remain on the privilege log, did not originate from the "Harris Notes" documents as originally indicated and were prepared for the purpose of obtaining legal advice. There are no additional "Harris Notes" on the privilege log, draft or otherwise.

Documents 23-28 are privileged documents. They are iterations of a document created by Scott Harris and sent to, and discussed with the Niro firm.

As Fish has noted, within the body of the "Harris Notes" are references to claim charts. ICR and Harris produced claim charts on April 11 and reproduced them on April 15. Just as Fish continues to produce responsive documents, ICR and Harris will produce responsive documents if and when they are located.

**C.     The fiduciary duty exception does not apply**

The fiduciary duty exception applies when the party claiming the exception can generally show a fiduciary relationship and good cause for overcoming the attorney-client privilege. J.H. Chapman Group, Ltd. v. Chapman, 1996 WL 238863 at *1(N.D. Ill. May 2, 1996). Good cause is determined looking at factors: "whether the party seeking the information asserts a colorable claim, whether the information sought is not available elsewhere, whether the information sought is related to past or present actions, and whether the information sought may risk a revelation of trade secrets or other confidential information." Id.

Fish has not established that Mr. Harris is a fiduciary of the Fish firm. Mr. Harris is an employee, and nothing more. The employment agreement, which forms the basis for Fish's breach of contract claim, mandated that Harris be deemed a mere "employee":

> (e).    Relationship of Employee and Corporation. The Employee and the Corporation understand that the Board of Directors, in accordance with Massachusetts General Laws Chapter 156A as amended, shall manage the business affairs of the Corporation. ***The relationship between the Corporation and the Employee is that of an employer and employee***. (Docket No. 69, Ex. B, p. 3; emphasis added).

None of the cases cited by Fish definitively establish a fiduciary relationship between Fish and Harris. Henry v. Champlain Enters., Inc. simply cites examples of fiduciary relationships relevant to New York Partnership Law § 43. 212 F.R.D. 73, 84 (N.D.N.Y.

3

2003). Since New York Partnership Law is not applicable to Fish, a Massachusetts Professional Corporation, the cited examples do not establish a fiduciary duty between Fish and Harris. Likewise the fiduciary duty discussed in Peskin v. Deutsch applies Illinois' interpretation of the Uniform Partnership Act which is clearly not applicable to the instant facts. 479 N.E.2d 1034, 1037(Ill. App. Ct. 1985). Lampert, Hausler & Rodman, P.C. v. Gallant, referenced fiduciary duties in the context of dissolution of the firm and the fiduciary duties owed by the attorneys regarding the winding up of the firm. 2005 Mass. Super. LEXIS 118, at * 12-13 (Mass. Super. April 4, 2005). Finally, Blasberg v. Oxbow Power Corp. discussed duties in the context of a partnership. As cited in the employment agreement, Fish has been formed as a professional corporation, not a partnership. 934 F. Supp. 21, 26-7 (D. Mass. 1996).

Based on these deficiencies in establishing a fiduciary duty, Fish does not have good cause for overcoming the attorney-client privilege and cannot meet the factors required to show good cause. First, Fish does not have a colorable claim as they have asserted. In addition, the information Fish is seeking, the retention agreements and business notes have already been produced to Fish. The business notes encompass the Harris Notes which have been produced. The retention agreements have been produced in a redacted form. If the redacted portions of the retention and fee agreements were to be produced, confidential information would be revealed. Therefore, since Fish cannot meet the factors for good cause, the fiduciary duty exception does not apply.

If the Court determines that Mr. Harris had a fiduciary relationship with the attorneys at Fish, then it must also be true that the Fish attorneys are fiduciaries of Scott

4

Harris. Assuming the attorneys at Fish are fiduciaries of each other, as Fish suggests in their Opposition, the fiduciary duty exception would apply to not only Harris documents but also the documents on Fish's privilege log. Specifically, the Fish privilege log has multiple entries that indicate various Fish attorneys seeking legal advice from Firm counsel. Under the fiduciary duty exception these documents, as well as the opinion of outside counsel that is being withheld, must therefore be produced.

**D.  The Unredacted Draft Agreement And Other Retention And Fee Agreements Are Privileged and Any Relevant Portion of the Retention Agreement is Contained in the Already Produced Redacted Portion**

On March 27, 2008, Harris sent Fish a letter identifying the inadvertent production of an unredacted draft retention and fee agreement. (Docket No. 127, Exhibit B.) Mr. Bradford responded to the letter of March 27, 2008 by email stating the unredacted draft retention and fee agreement was "clearly not privileged" and suggested "Judge Pallmeyer resolve the privilege claim." (Docket No. 127, Ex. C). In a letter sent after the e-mail, Mr. Bradford asserted Fish's position to comply with the protective order for only a subset of the identified inadvertently produced documents. (Docket No. 128, Ex. A). The unredacted draft retention and fee agreement, HARRIS 000197-206 was noticeably missing from the list of documents for which Fish was providing compliance with the protective order.

Paragraph 24 of the protective order in this case is unambiguous: Fish is required to return the inadvertently produced document promptly. After Jenner & Block ("Jenner") affirmatively stated not once, but twice, that they did not intend to comply with the protective order and return the unredacted fee agreement, Harris pursued sanctions. In pursuing sanctions, Harris did not "recklessly allege[]" that Jenner refused to return the disputed documents, Jenner stated as such. At the time the

motion was filed, Jenner had indeed refused to return the unredacted draft retention and fee agreement in two separate communications

Fish represented to the Court on December 21, 2007 and again on March 4, 2008, that the fee agreements were required in order to determine the entities and parties with real economic interest. Fish initially represented in Court on March 4, 2008 it required the fee agreements in order to determine the precise amount of any recovery going to any party. (Hearing Transcript, 3/4/08 10). Fish requested information related to the Niro firm's financial stake in the Harris litigation. Harris has provided the redacted fee agreements that Fish maintained it required.

Despite having received the information it represented it required, Fish is attempting to receive the unredacted copies of the retention and fee agreements. There is no basis for this request. The redacted fee agreements provide that information and were provided to Fish. Now Fish is claiming it is entitled to the unredacted fee agreements.

What Fish has failed to specify, and cannot specify, is the relevance of the unredacted fee agreements. The unredacted fee agreements are not relevant to any request propounded by Fish. Not only are the unredacted fee agreements not relevant, portions of the unredacted draft retention and fee agreement represent privileged communication between the Niro firm and Scott Harris. Fish has also failed to identify how the redacted portion of the retention and fee agreement is relevant.

Communications between attorney and client are privileged: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the

client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." 8 Wigmore § 2292. United States v. Lawless, 709 F.2d 485, 487 (7th Cir. 1983). In order to apply the attorney-client privilege to fee information, the Seventh Circuit focuses on "whether the information would disclose confidential communications between the attorney and client." In Matter of, 727 F.2d 489, 495 (7th Cir. 1984). This court has already recognized that at least portions of a retention agreement can invoke the attorney client privilege: "I can imagine some portions of the fee agreement disclosing client confidences, depending on the way you draft your fee agreements." (Hearing Transcript March 4, 2008, 16). The redacted portions of the retention and fee agreements pertain to confidential attorney client communications and is privileged.

Fish can rely on the redacted fee agreements for the information it seeks, and also Scott C. Harris' Supplemental Response To Fish & Richardson's First Set of Interrogatories (No. 6) (hereafter "Supplemental Response") to Scott C. Harris that was provided to Fish on April 15, 2008. The Supplemental Response clearly delineates Mr. Harris' ownership interest, or lack thereof, in Memory Control Enterprise ("MCE"), BarTex Research LLC, Biometric Technology, LLC, Parker Innovative Technologies, LLC, Virginia Innovative Technologies, and Innovative Patented Technology, LLC. The supplemental response, the agreements with the aforementioned companies, the redacted retention and fee agreements have been provided to Fish with the information it has requested.

**E.     Conclusion**

Based on the production of the Harris Notes and redacted retention and fee agreements as well as the established privilege of the documents listed on the privilege log, Fish's opposition should fail.

Respectfully submitted,

/s/     Karen L. Blouin
Raymond P. Niro
Paul K. Vickrey
David J. Sheikh
Richard B. Megley, Jr.
Karen L. Blouin
Niro, Scavone, Haller & Niro
181 West Madison, Suite 4600
Chicago, Illinois 60602-4515
(312) 236-0733
Fax:  (312) 236-3137

Attorneys for Illinois Computer Research, LLC
and Scott C. Harris

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **Harris And ICR's Response To Fish And Richardson's Opposition To Harris' And ICR's Claim Of Privilege As To Documents Allegedly Produced Inadvertently And Submitted Under Seal In Open Court On March 31, 2008** was electronically filed with the Clerk of Court using CM/ECF system, which will send notification by electronic mail to the following:

>David J. Bradford - dbradford@jenner.com;;;
>Eric A. Sacks - esacks@jenner.com
>Daniel J. Weiss - dweiss@jenner.com
>Terrence J. Truax - ttruax@jenner.com
>Jenner & Block LLP
>330 N. Wabash Avenue
>Chicago, IL  60611
>(312) 222-9350
>
>**Counsel for Fish & Richardson, P.C.**

on April 17, 2008.

/s/  Karen L. Blouin