### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **ILLINOIS COMPUTER RESEARCH, LLC**, )<br>  *Plaintiff and Counterclaim Defendant*, )<br> )<br>           *v.* )<br> )<br>**FISH & RICHARDSON P.C.**, )<br>  *Defendant, Counterclaimant, Third-Party Plaintiff, and Counterclaim Defendant,* )<br> )<br>           *v.* )<br> )<br>**SCOTT C. HARRIS**, )<br>  *Third-Party Defendant and Counterclaimant.* ) | No. 07 C 5081<br><br>Judge Rebecca R. Pallmeyer<br><br>Magistrate Judge Maria Valdez |

### FISH & RICHARDSON'S REPLY TO
### MR. HARRIS'S AND ICR'S APRIL 17, 2008 REVISION OF PRIVILEGE
### CLAIMS AS TO DOCUMENTS ALLEGEDLY PRODUCED INADVERTENTLY

Without leave, on April 17, 2008, Mr. Harris and ICR filed a brief modifying their privilege claim and admitting they mischaracterized certain documents submitted *in camera*. Mr. Harris's latest filing further mischaracterizes the contents of the documents at issue, contradicts the previous representations of his counsel, and makes new and unpersuasive arguments. At the end of the day, Mr. Harris has failed in numerous briefs, letters, and privilege logs to meet his burden of establishing that the Harris Notes, the redactions in the Retention and Fee Agreements, and the Unredacted Draft Agreement, are privileged. The documents should be produced immediately.

**I.    The Retention And Fee Agreements Contain Highly Relevant Admissions And Plainly Are Not Privileged.**

Fish & Richardson repeatedly has demonstrated that the Unredacted Draft Agreement and the redactions in the other Retention and Fee Agreements contain highly relevant admissions that are not privileged. ICR and Mr. Harris have provided no reason to hold otherwise.

<u>First</u>, ICR's and Mr. Harris's argument that the Retention and Fee Agreements are not relevant is knowingly false. As the Court is well aware, Fish & Richardson has alleged that Mr. Harris breached many of his fiduciary and contractual obligations to the Firm, including his express contractual obligation to devote his "full business time" to Fish & Richardson and to seek Fish & Richardson's approval before accepting or performing any duties or assignments "which may impinge substantially" on his time or energy.[1] The Court's review of the Unredacted Draft Agreement and all other Retention and Fee Agreements submitted *in camera* will reveal that those documents contain non-privileged information that directly supports those allegations and speaks directly to whether Mr. Harris has litigation-related obligations and to whether he is obliged to commit a *substantial investment of his time* in this outside venture.

---

[1] Section 4 of the Law Firm Agreement provides in part:

> (a)    <u>Extent of Service</u>. The Employee covenants and agrees to devote his or her *full business time*, best efforts and skill to his or her employment with the [Firm], and to perform his or her services capably, faithfully and to the best of his or her ability. The Employee shall abide by all policies, guidelines and procedures of the [Firm].
>
> (b)    <u>Outside Activities</u>. The acceptance or performance by the Employee of offices, duties or assignments, other than the practice of law with the [Firm], *which may impinge substantially on time* or energy normally required for business of the [Firm] or that may be deemed by the Board of Directors to be detrimental to the best interests of the [Firm] . . . *must be approved in advance by the Board of Directors* . . . . The ownership, purchase or sale of equity or other interests in, or other business dealings with, or the participation in the business of clients of the [Firm], including, without limitation, participation as an officer, director, trustee, manager or employee, by the Employee may be further limited and may be subject to prior approval of the Board of Directors . . . .

(Law Firm Agreement § 4(a), (b), emphasis added.)

Those provisions are directly relevant to Fish & Richardson's claims and contradict Mr. Harris's characterization of the redactions.[2] In fact, by mischaracterizing the content of these documents in a public pleading, Mr. Harris has opened the door and waived privilege as to their substance.

Second, ICR and Mr. Harris again fail to establish that the Retention and Fee Agreements are privileged. Indeed, the case relied upon by Mr. Harris and ICR *supports* Fish & Richardson's position, as it states, "[t]he general rule is well established that information regarding a client's fees is not protected by the attorney-client privilege because payment of fees is not a confidential communication between the attorney and client." *In re Matter of Witnesses*, 729 F.2d 489, 491 (7th Cir. 1983) (cited in Harris/ICR Resp. at 7). According to ICR's and Mr. Harris's own authority, retention agreements are privileged only in "exceptional circumstances" and "exceptional cases." *Id*. Mr. Harris has not demonstrated that sufficiently "exceptional" circumstances exist here to establish privilege. Indeed, Mr. Harris does not even attempt to point the Court to specific provisions, sections or paragraph numbers of the documents that supposedly contain privileged information, or even generally describe the categories of information he seeks to protect. Instead, Mr. Harris and ICR merely state, without any support or explanation, that the Retention and Fee Agreements "pertain to confidential attorney client communications and is [sic] privileged." (Harris/ICR Resp. at 7.) That is insufficient because, as Fish & Richardson already has noted, it is a "serious defect" if "nowhere in any of their briefs is this court given enough information" to determine whether the documents are privileged. *Allendale Mutual Ins.*

---

[2] Similarly, although ICR and Mr. Harris argue that the redacted versions of the Retention and Fee Agreements contain all information relating to the economic terms of the parties' agreements, as established in Fish & Richardson's Opposition, comparison of the Unredacted Draft Agreement produced *in camera* to the Court to one of the redacted agreements produced to both the Court and Fish & Richardson will demonstrate that ICR's and Harris's position is inaccurate—the unredacted documents not produced to Fish & Richardson contain additional economic information, including the definition of "recoveries" as well as an admission that the parties viewed their relationship as unique.

*Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 139 (N.D. Ill. 1993) (must produce documents described in conclusory fashion in briefs and privilege log).

**II.     Harris And ICR Have Changed Their Story, But Still Have Laid No Foundation For Privilege As To The Harris Notes.**

Mr. Harris's new attempt to withhold the Harris Notes is remarkable both for its sudden and complete contradiction of his counsel's previous representations, upon which they based a sanctions motion, and for his failure to address Fish & Richardson's many arguments supporting production of all of the Harris Notes.

When he asserted "inadvertent production," Mr. Harris stated that *all* of the Harris Notes were "drafts of documents contained in the privilege log, numbers 23-28." (03/26/08 K. Blouin Ltr., attached as Ex. A. to F&R Opp.) Later, Mr. Harris acknowledged that he waived privilege over half of those notes by producing them to a third-party. (04/07/08 Harris Ltr., attached as Ex. B to F&R Opp.) Based on those unambiguous representations, Fish & Richardson established in its Opposition brief that <u>all</u> of the Harris Notes should be produced because Mr. Harris has waived privilege as to the subject matter of the notes by voluntarily producing admittedly similar documents. (F&R Opp. at 4-5.)

In response, Mr. Harris does not provide contrary legal authority—instead, he changes his story. Mr. Harris now suddenly contends that the documents he disclosed to a third-party, and later produced to Fish & Richardson, are <u>not</u> drafts of the documents that he still seeks to withhold. Tellingly, Mr. Harris asserted this new contention only *after* Fish & Richardson established his subject matter waiver. In fact, his counsel expressly represented the exact <u>opposite</u> in its letter asserting "inadvertent production" and did not change that position in two subsequent submissions to the Court. Now, however, when it is beneficial for him to do so, Mr. Harris reverses his position. Such opportunistic flip-flopping should not be permitted.

4

In any event, even if the Court were to credit Mr. Harris's dubious new assertion that the voluntarily produced documents are not drafts of the withheld documents, subject matter waiver would still apply, because the doctrine of subject matter waiver applies much more broadly than just to "drafts" of voluntarily produced documents. Parties waive the privilege "by producing *similar* documents." *E.g., Christman v. Brauvin Realty*, 185 F.R.D. 251, 257 (N.D. Ill. 1999) ("the objecting parties have waived their claim of privilege by producing documents similar" to the withheld documents) (emphasis added). Here, there is no dispute that all of the documents at issue reflect efforts to value the disputed patents and identify purported infringers in order to assist in Mr. Harris's purported sales of the disputed patents. Thus, all the documents relate to a reasonably limited subject matter, and are sufficiently similar to hold that Mr. Harris has waived privilege as to all of the Harris Notes by voluntarily producing some of them.

In addition, even absent the issue of subject matter waiver, the Harris Notes should be produced because Fish & Richardson has demonstrated that Mr. Harris has not established the essential elements of the attorney-client privilege:

- First, because Mr. Harris has not produced or logged any cover letters, emails, or faxes, there is no evidence that the documents were ever "communicated" to anyone at all.

- Second, Mr. Harris's repeated failure to identify the particular lawyer at the Niro firm who supposedly received the documents defeats his assertion of privilege. *Allendale*, 152 F.R.D. at 139 (no privilege where party "cannot even identify a lawyer who was involved in the communication"); *Christman*, 185 F.R.D. at 257 (no privilege where document "does not state to whom it is to or from").

- Third, as demonstrated in Fish & Richardson's Opposition brief: (i) ICR expressly stated in its Interrogatory Responses that *it* was represented by the Niro firm in connection with its agreement to purportedly acquire certain Harris-related patents from Mr. Harris; and (ii) in the ICR-Harris patent assignment agreement, like all of Mr. Harris's assignment agreements, the contracting parties expressly represent that they were independently represented by counsel *other than* the Niro firm. If ICR's pleadings and those contractual representations are true, then either the Niro firm was not representing Mr. Harris during the patents sales—in which case the Harris Notes cannot be privileged—or the patent assignment agreements

- **Fourth**, if Mr. Harris is now arguing that the documents are privileged because the Niro firm's actions, such as negotiating, prosecuting the patents, identifying and targeting alleged infringers, valuing the patents, and licensing and selling the patents, are protected as legal activities, then Mr. Harris should be prohibited from arguing in the future that those same actions, when performed by Mr. Harris (including his work to create the Harris Notes), did not constitute "legal services" that belonged to Fish & Richardson under the express terms of Mr. Harris's contract with the Firm.

were a sham and the contract provisions were false, because the same attorney(s) simultaneously represented both the purported seller, Mr. Harris, and the purported buyers, the shell entities, in the same transaction.

In response to these arguments, Mr. Harris says . . . *nothing*. Mr. Harris does not show how the documents were ever transmitted, identify the lawyer who supposedly received the documents, explain how the Niro firm could represent both the buyer and the seller of a patent in the same transaction, or justify his contradictory positions regarding the definition of "legal services." Mr. Harris's complete inability to formulate *any* response to these arguments is telling, and the documents should be produced immediately.

## III. Mr. Harris Is A Fiduciary, And The Fiduciary Duty Exception Applies.

Even if Mr. Harris could establish the elements of privilege regarding the Harris Notes and the Unredacted Draft Agreement, that privilege would not extend to Fish & Richardson. As shown in Fish & Richardson's Opposition, the fiduciary exception prevents Mr. Harris from withholding the documents from Fish & Richardson. (F&R Opp. at 8-10.) Mr. Harris and ICR make two arguments in response. Both fail.

First, Mr. Harris and ICR ignore the law, the facts and common sense by asserting that Mr. Harris was merely an employee of Fish & Richardson with no fiduciary duties. (Harris/ICR Resp. at 3.) In Massachusetts, "[i]t is well-settled that partners owe each other a fiduciary duty of 'the utmost good faith and loyalty.'" *Meehan v. Shaughnessy*, 535 N.E.2d 1255, 1263 (Mass. 1989). Further, in Massachusetts, "[b]ecause of the fundamental resemblance of the close

6

corporation to the partnership [. . .] stockholders in the close corporation owe one another substantially the same fiduciary duty [. . .] that partners owe to one another." *Wartski v. Bedford*, 926 F.2d 11, 13 (1st Cir. 1991); *see also Lampert, Hausley & Rodman, P.C. v. Gallant*, 2005 WL 1009522, at *5 (Mass. Super. Apr. 4, 2005), *rev'd on other grounds*, 852 N.E.2d 136 (Mass. App. Ct. 2006) (being a "closely held professional corporation in the practice of law does not diminish those fiduciary duties" owed by partners).[3] Fish & Richardson is a closely held professional corporation in the practice of law. Because he was a shareholder in a close corporation, Mr. Harris owed fiduciary duties his firm.

Mr. Harris's assertions that he was a "mere employee" are incorrect. For more than a decade, Mr. Harris used the term "principal" to describe himself, such as in his writings and in his biographical information. And Mr. Harris was one of the "principal stockholders" with the most shares of principal stock. He also benefited from a sizable income, tied to the profits of the firm. Mr. Harris should not be surprised that the title of "principal" in a law firm came with duties, not just dollars.

Second, Mr. Harris asserts that there is no good cause for overcoming the purported attorney-client privilege. Though they are not a prerequisite, Fish & Richardson has established that all four factors that may be considered to determine good cause exist here. (F&R Opp. at 9-10.) Mr. Harris disproves none. As to the *first* factor, Mr. Harris states in a conclusory fashion: "Fish does not have a colorable claim." (Harris/ICR Resp. at 4.) However, he makes no attempt to disprove Fish & Richardson's claims for breach of contract and breach of fiduciary duty to which the documents relate. To date, neither he nor ICR have moved to dismiss any of Fish & Richardson's claims. As to the *second* factor, whether the information sought is available

---

[3] Mr. Harris implies that shareholders owe fiduciary duties during winding up, but not during the relationship. (Harris/ICR Resp. at 4.) It would be an absurd result if shareholders owed each other a duty of loyalty while parting ways, but not while working together.

7

elsewhere, Mr. Harris's argument is incomprehensible. He argues that "the business notes encompass the Harris Notes which have been produced" and that the "retention agreements have been produced in a redacted form." (*Id*.) As explained above, however, the withheld documents contain concrete evidence of Mr. Harris's misconduct. Mr. Harris does not even address the *third* factor, that the information sought is relevant to Mr. Harris's past actions. As to the *fourth* factor, Mr. Harris is again unpersuasive and conclusory, asserting "confidential information would be revealed." (*Id*.) However, Mr. Harris does not explain what type of confidential information would be revealed or why the stipulated protective order would not protect it.

## IV. Harris And ICR Provide Additional Evidence Their Motion For Sanctions Caused Fish & Richardson To Incur Needless Expense.

Weeks after withdrawing their March 28, 2008 sanctions motion,[4] Mr. Harris and ICR now admit facts demonstrating the motion was filed in bad faith or recklessly, their representations as to the basis for the privilege claim as to many documents were false, many of the documents identified as drafts of documents on the privilege log were not as represented, and many of the documents were not even privileged because any privilege was waived. Nonetheless, they seek to justify the withdrawn sanctions motion. But Mr. Harris's and ICR's latest brief only further establishes that their motion for sanctions against Jenner & Block was baseless and was brought either recklessly or in bad faith.

Apart from its falsity about the documents, the sanctions motion was also false in alleging (as the recent filing again asserts) that Jenner & Block refused to return the documents. ICR and Mr. Harris can point to no statement by Jenner & Block that it would not return the

---

[4] As the Court is well aware, after business hours on Friday evening, March 28, Mr. Harris and ICR moved for sanctions against Jenner & Block, falsely alleging that Jenner & Block refused to comply with the protective order and return documents asserted to be produced inadvertently. Jenner & Block filed an emergency brief over the weekend to correct Mr. Harris's and ICR's misstatements. In response, Mr. Harris and ICR withdrew their sanctions motion the following Monday morning.

documents (they cannot, because none exists) or a meet and confer where Jenner & Block refused to return the documents (they cannot, because none exists).  In fact, as reflected in the record, Jenner & Block specifically and promptly stated that it would comply with the Protective Order regarding return of inadvertent production.

Apart from the reckless sanctions allegations, Mr. Harris and ICR could have resolved the issue by a simple telephone call, rather than the bludgeon of a sanctions motion.  Indeed, the very letter from Fish & Richardson's counsel that Mr. Harris and ICR now rely upon expressly requested an opportunity to meet and confer.  One would expect that Mr. Harris and ICR would have been eager to speak to Fish & Richardson's counsel before filing a sanctions motion, given that *only four days earlier*, this Court had denied Mr. Harris's and ICR's motion to compel deposition locations due to their failure to meet and confer with Fish & Richardson.  Fish & Richardson has refrained from seeking costs in an effort to promote professionalism.

Dated: April 18, 2008

Respectfully submitted,

FISH & RICHARDSON P.C.

By:   s/ David J. Bradford
      One of its Attorneys

David J. Bradford
Terrence J. Truax
Eric A. Sacks
Daniel J. Weiss
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed with the Court by means of the Court's CM/ECF system, which will send notification of such filing to the following counsel at their email address on file with the Court:

Raymond P. Niro
Paul K. Vickrey
Richard B. Megley, Jr.
Karen L. Blouin
David J. Sheikh
Niro, Scavone, Haller & Niro
181 W. Madison, Suite 4600
Chicago, Illinois  60602

L. Steven Platt
Arnold and Kadjan
19 West Jackson Blvd., Suite 300
Chicago, IL 60604
(312) 236-0415


April 18, 2008.

                s/David J. Bradford

                JENNER & BLOCK LLP
                330 North Wabash Avenue
                Chicago, Illinois  60611
                Telephone No:  312 222-9350
                Facsimile No:  312 527-0484