# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **ILLINOIS COMPUTER RESEARCH, LLC,** ) | |
| *Plaintiff and Counterclaim Defendant,* ) | |
| ) | No. 07 C 5081 |
| *v.* ) | |
| ) | Judge Rebecca R. Pallmeyer |
| **FISH & RICHARDSON P.C.,** ) | |
| *Defendant, Counterclaimant, Third-Party Plaintiff, and Counterclaim Defendant,* ) | Magistrate Judge Maria Valdez |
| ) | **Redacted Public Version** |
| *v.* ) | |
| ) | |
| **SCOTT C. HARRIS,** *et al.,* ) | |
| *Third-Party Defendants.* ) | |

## FISH & RICHARDSON'S OPPOSITION TO
## MR. HARRIS'S AND ICR'S MOTION TO COMPEL DOCUMENTS

Mr. Harris's and ICR's motion to compel production of 28 documents listed on Fish & Richardson's expedited discovery privilege log misstates the law and the facts of this case, and is moot as to most of the documents at issue. Fish & Richardson is prepared to produce all the disputed documents, with limited redactions discussed below,[1] subject only to a judicial determination that (i) production is not a waiver of any applicable privilege and (ii) consistent with the Court's prior rulings, the documents will be produced to Mr. Harris <u>only</u>, and held privileged from the rest of the world, including the other third-party defendants in this litigation and their counsel.[2]

---

[1] Fish & Richardson will submit the redactions *in camera*.

[2] Fish & Richardson also is withdrawing its assertions of privilege over four documents listed on its privilege log because, after further review, it appears they do not contain attorney work product or privileged attorney-client communications. A list of the documents on Fish & Richardson's expedited discovery privilege log that it will produce is provided in Exhibit A.

The redactions on documents that Fish & Richardson is otherwise willing to produce (entries 42, 46, 55-64, 66 and 68)[3] are three redactions of legal advice related

REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER

The redactions are squarely protected by the attorney-client privilege and attorney work product doctrine. First, numerous courts recognize that "in-firm" attorney-client privilege is an analog to "in-house" attorney client privilege. Therefore, communications between the Firm and its "in-house" counsel are privileged. Second, from the very beginning

REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER

The materials created in preparation for that litigation are protected attorney work product, and are privileged in subsequent litigation against Mr. Harris and the shell entities.

## Background

A brief background is necessary to put Mr. Harris's and ICR's motion in context.

**Period One: March 14, 2007 – May 31, 2007.** Period One is the only time period at issue in Mr. Harris's and ICR's motion to compel. On March 14, 2007, Fish & Richardson learned that Mr. Harris, along with Memory Control Enterprise, was a named plaintiff in a lawsuit filed against the Firm's client, Dell. (Ex. B, 03/14/07 S. Harris email.)

REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER

(Ex. C, J. Steele Dep. 42.) John Steele, the Firm's "Special Counsel," responsible for providing legal services to the Firm, immediately began investigating the matter and providing legal advice to the Firm; he was assisted by Katherine Lutton, an attorney at the Firm.

---

[3] The same redacted statement appears in multiple documents because the documents are "email chains" that often repeat the same emails (and thus the same redacted statement) as are found in other email chains. Two redactions, documents 42 and 64, redact an entire email in an email chain; the other redactions are limited portions of otherwise produced emails.

2

Because of the representations Mr. Harris made to Fish & Richardson at that time, it appeared that Mr. Harris had common interests with the Firm in resolving the ethical, legal, and client-relations issues created by the lawsuit. REDACTED PURSUANT TO STIPULATED PROTECTIVE ORDER Therefore, Mr. Steele communicated with both Mr. Harris and the Firm pursuant to the joint interest doctrine on their ethical obligations and related issues. (*Id.* at 114-15.) During this time, Mr. Steele also continued to provide other, unrelated legal services to the Firm, including advising Fish & Richardson on its policies and other matters.

In early May, Mr. Harris told Fish & Richardson: REDACTED PURSUANT TO STIPULATED PROTECTIVE ORDER

(Ex. D, 05/03/07 S. Harris email.) Mr. Harris also represented that he would transfer all right, title, and interest in all the other patents, would retain no contingent interest in the patents or any recoveries on them, and would effectively ensure that a lawsuit against a Firm client on those patents was a singular episode that would not occur again in the future.

Given Mr. Harris's representations, the Firm believed the matter had been largely resolved. (J. Steele Dep. 252.) Although Mr. Steele continued to serve as the Firm's official "in-house counsel" and provided the Firm with legal advice about unrelated matters, including legal advice about Firm policies, communications related to the patents at issue largely abated.

**Period Two: August 31, 2007 – Present.** This time period is not at issue in this motion, but is discussed herein to emphasize that the "joint interest" doctrine, which applies to communications with Mr. Harris during Period One, ceased to apply after August 31, 2007. On that date, Fish & Richardson learned that another one of its clients, Google, recently had received a letter from the Niro firm on behalf of Mr. Harris and ICR, threatening to sue Google for

3

infringement of Harris-related patents. (J. Steele Dep. at 96-97; Ex. E, 08/29/07 Ltr. from Niro to Google.) That letter was a clear signal that Mr. Harris's representations to the Firm in May 2007 were false. From August 31 forward, therefore, no common interest existed with Mr. Harris. Mr. Harris is not moving to produce documents from this time period, and Fish & Richardson claims no joint interest privilege for this period.

**The Court's Prior Rulings.** On December 21, 2007, the Court ordered Fish & Richardson to produce, to Mr. Harris only, certain logged and otherwise privileged communications with Harris. (Dkt. 80.) The Court made clear that production would be limited *to Mr. Harris only* and not to the shell entities or anyone else. (Ex. F, 12/21/07 Hr'g Tr. at 57.) Fish & Richardson then produced (to Mr. Harris only) communications between Mr. Harris and the Firm. (Ex. G, 02/12/08 T. Truax Ltr.) *Fish & Richardson transmitted the documents in a sealed envelope and, citing the hearing transcript, stated that the production was "limited to Mr. Harris and not the other entities" and that if the Niro firm elected to review the documents while serving as ICR's counsel, it did so at its own risk. (Id.)*

**The Present Motion.** Mr. Harris and ICR now move to compel production of 28 documents on Fish & Richardson's expedited discovery privilege log (entry nos. 41-68). All of those documents were created in the March-May 2007 time period. Most of those documents - while not direct communications with Mr. Harris - discuss communications with Mr. Harris or advice given to Mr. Harris. Fish & Richardson is willing to produce all such documents, subject to the referenced conditions. It seeks to withhold or redact only REDACTED PURSUANT TO STIPULATED PROTECTIVE ORDER [4]

---

[4] As Fish & Richardson has informed Mr. Harris and the shell entities, Fish & Richardson, just like the other parties, is still in the process of collecting and producing documents, and therefore has not yet amended its expedited discovery privilege log to account for all privileged documents collected during the normal discovery period. The expedited discovery privilege log does not yet contain some of the

4

## Argument

The "in-firm" attorney-client privilege protects from production many of the documents at issue. Similarly, many of the documents at issue are protected attorney work product

REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER

Nevertheless, subject to the redactions, Fish & Richardson has produced or will produce all documents created before August 31, 2007 that reflect or refer to conversations with Mr. Harris, based on two reasonable conditions: (i) a judicial determination that the production is not a waiver of any applicable privilege, and (ii) a ruling that the documents may be produced to Mr. Harris only, and are privileged with respect to other parties and their counsel.

### I. The Documents At Issue Are Privileged Attorney-Client Communications.

The documents at issue are protected by the attorney-client privilege for the reasons provided in § A. Nevertheless, as explained in § B, even though privileged, Fish & Richardson will produce many of the documents to Mr. Harris subject to the Court's prior rulings.

#### A. The Documents At Issue Are Privileged Communications Between The Firm And Its In-House Counsel.

The redactions are privileged attorney-client communications. The elements of the attorney-client privilege are: "1) Where legal advice of any kind is sought 2) from a professional legal adviser in his capacity as such, 3) the communications relating to that purpose, 4) made in confidence 5) by the client, 6) are at his instance permanently protected 7) from disclosure by himself or by the legal adviser, 8) except that the protection be waived." *In re Application for Judicial Assistance*, 244 F.R.D. 434, 439 (N.D. Ill. 2007). ICR and Mr. Harris do not dispute

---

categories of privileged documents, including documents created after Fish & Richardson received notice of the Google letter. Fish & Richardson has suggested that this motion is premature for that reason, but Mr. Harris and ICR have chosen to go forward.

that the documents at issue were made in "confidence" for the purpose of seeking "legal advice." They assert only that the documents should be produced because no attorney-client relationship was formed between the Firm and its in-house counsel. That argument fails.

"It is *undisputed* that an attorney-client relationship can exist within a law firm." *Lama Holding Co., v. Shearman Sterling*, 1991 WL 115052, at *1 (S.D.N.Y. June 17, 1991) (emphasis added, cited in Harris/ICR Mot. at 9). As ICR's and Harris's cases explain, it is well-settled that the attorney-client privilege applies to communications between a corporation and its in-house corporate counsel, and "[n]o principled reason appears for denying a comparable attorney-client privilege" to law firms. *Hertzog v. The Prudential Ins. Co.*, 850 F. Supp. 255 (S.D.N.Y. 1994) (cited in Harris/ICR Mot. at 9).

A law firm's "in-house counsel" includes not only the attorney who holds the formal or official title of "in-house counsel" or "special counsel" but also attorneys acting as the functional equivalent of in-house counsel for a particular matter. *E.g., Lama*, 1991 WL 115052 (privilege applies where attorney in firm's litigation department conferred on behalf of the firm with attorneys in firm's corporate department). Indeed, the Ninth Circuit Court of Appeals squarely has dealt with this issue, holding that the in-firm attorney client privilege applies to attorneys in a law firm who perform an internal investigation of another lawyer in the firm. *U.S. v. Rowe*, 96 F.3d 1294 (9th Cir. 1996). In *Rowe*, the senior partner at a law firm learned of the possibility that another partner was mishandling client funds, and assigned two associates within the firm to investigate. *Id.* at 1295. Later, a grand jury investigating the lawyer's conduct subpoenaed the associates to inquire about their conversations with the firm's senior partner. *Id.* at 1295-96. The Ninth Circuit held that those communications were privileged. *Id.* at 1296. According to

the Court, once the associates were assigned to perform services on behalf of the firm, "[t]hey were, effectively, in-house counsel." *Id.*

As ICR and Mr. Harris are well-aware, Mr. Steele officially holds the title of "Special Counsel" to Fish & Richardson. (J. Steele Dep. 8.) Mr. Steele's position specifically requires him to provide legal advice and legal services to the Firm. In fact, apart from any pro bono work that Mr. Steele provides to clients outside of Fish & Richardson, Fish & Richardson is Mr. Steele's only client. Apart from his work for the Firm, and his pro bono work, Mr. Steele works on no other matters and represents no other clients. Mr. Steele is not a principal like Mr. Harris was—his compensation is not tied to the Firm's profits. He does not record his time, and his time is not billed to any clients. (*Id.* at 32.) In short, Mr. Steele has consistently served as Fish & Richardson's in-house counsel, and has a well-established attorney-client relationship with the Firm. Therefore, communications between Mr. Steele and the Firm are privileged.

Finally, Mr. Harris and ICR are not arguing (and could not argue) that Fish & Richardson has not formed an attorney-client relationship with outside counsel, the law firm of Howard Rice. All communications between outside counsel and Fish & Richardson are privileged from the rest of the world. Nevertheless, as explained below, Fish & Richardson is willing to produce (to Harris only) communications regarding advice from its outside counsel that was eventually relayed to Mr. Harris.

REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER

Because the redacted advice is not admissible and not likely to lead to

7

admissible evidence, it should not be subject to discovery for reasons of relevancy as well as privilege.

### B.   Fish & Richardson Will Produce Certain Documents To Mr. Harris.

Fish & Richardson acknowledges that for the period from approximately March 14, 2007 to May 31, 2007, and based upon representations Mr. Harris made at that time, the Firm communicated with Mr. Harris pursuant to a perceived joint interest. Fish & Richardson therefore will produce (to Mr. Harris only) all otherwise privileged documents created before August 31, 2007 that summarize or recount communications with Mr. Harris and all legal advice (including legal advice from outside counsel) that was eventually provided to Mr. Harris; however, two restrictions should apply to these privileged communications:

First, during the parties' May 2, 2008 hearing regarding Mr. Harris's production of certain documents, the Court ruled that production of the Harris documents to Fish & Richardson pursuant to a Court order will not be deemed a waiver of any applicable privilege. Similarly, the Court should rule that Fish & Richardson's production of the privileged documents at issue to Mr. Harris is not a waiver of any applicable privilege.

Second, the Court has already ruled that communications between Fish & Richardson and Mr. Harris should be produced to Mr. Harris only, and should remain privileged from, and may not be shared with, the rest of the world, including the shell entities. (12/21/07 Hr'g Tr. at 57.) (Similarly, the Court ruled during the parties' May 2, 2008 hearing that, while Mr. Harris must produce certain documents to *Fish & Richardson*, those same documents should be considered privileged from, and may not be shared with, anyone other than Fish & Richardson.)

The Court's prior ruling was well-supported because, under the common interest doctrine, the documents are rightfully privileged as to ICR, the other shell entities, and anyone

8

else. *See, e.g., Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 273 (N.D. Ill. 2004); *Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc.*, 870 N.E.2d 1105, 1113 (Mass. 2007); *OXY Res. Cal. LLC v. Super. Ct.*, 9 Cal. Rptr. 3d 621, 633 (Cal. Ct. App. 2004). Mr. Harris may not waive this privilege without Fish & Richardson's consent. *See* Restatement (Third) Law Governing Lawyers § 76, cmt. g (2000). Even though Mr. Harris and the Firm are now adverse, their prior privileged communications remain privileged as to third parties. *Angell Invs. v. Purizer Corp.*, 2002 WL 1400543, at *1 (N.D. Ill. June 27, 2002). Therefore, the documents Fish & Richardson is willing to produce should be produced to Mr. Harris only.

Fish & Richardson acknowledges that the Niro firm's joint representation of Mr. Harris (who may receive certain documents) and the shell entities (who may not) creates a significant representation issue—but that issue is not of Fish & Richardson's making, and it should not be prejudiced as a consequence. Neither Mr. Harris nor the Niro firm is entitled to provide Fish & Richardson's confidential information to a supposedly separate entity like the shell entities, and as a consequence, the information should not be disclosed to the Niro firm while it serves in that dual capacity.

One solution to this issue would be for Mr. Harris to stipulate that the shell entities are his alter egos, given that: **REDACTED PURSUANT TO STIPULATED PROTECTIVE ORDER**

Another solution would be for the Niro firm to resign from jointly representing the shell entities. *See, e.g., Coburn v. DaimlerChrysler Servs.*, 289 F. Supp. 2d 960, 964 (N.D. Ill. 2003). In *Coburn*, Judge Castillo disqualified an attorney and his law firm from representing a class of consumers against an automobile finance company because the lawyer was representing the secretary of the assistant general counsel of the defendant in

related litigation against the defendant. *Id.* The Court presumed that the attorney had learned confidential information regarding the defendant through the legal secretary, and thus held that the lawyer, and his entire firm, could not represent the class of consumers. *Id.* at 966-67. That same reasoning applies here, if Mr. Harris insists on production of the otherwise privileged communications, unless Mr. Harris stipulates that the shell entities are his alter egos.

However the representation issue is resolved, there is no basis to permit the disclosure of otherwise confidential joint interest communications to third-parties (or their counsel) who were not privy to those communications or to the attorney-client relationship.

## II. The Work Product Doctrine Protects Many Of The Documents At Issue.

The redactions also are protected attorney work product. The attorney work product doctrine shields from discovery (1) documents or tangible things, (2) prepared by or for a party or a party's representative, and (3) prepared in anticipation of litigation or for trial. *E.g., Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 613-14 (N.D. Ill. 2000). To overcome this protection, the moving party must demonstrate both a substantial need for the materials, and that it cannot obtain a substantial equivalent of the information without undue hardship. *Id.* at 614. In this case, it cannot be disputed that the documents are protected attorney work product.

### A. The Documents At Issue Were Prepared In Anticipation Of Litigation.

As explained above, when it learned in March 2007 that Mr. Harris had sued a Firm client, REDACTED PURSUANT TO STIPULATED PROTECTIVE ORDER Documents are protected by the attorney work product doctrine if they were created "because of the prospect of litigation or because some articulable claim is likely to lead to litigation." *Breneisen v. Motorola, Inc.*, 2003 WL 21530440, at *4 (N.D. Ill. July 2,

2003); *see also Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 768 (7th Cir. 2006) ("provided the prospect of litigation was not remote (and it was not), the fact that the case hadn't begun and might never be brought did not disqualify [the documents] from the shelter of the work-product doctrine"); *In re Sealed Case*, 146 F.3d 881, 885-86 (D.C. Cir. 1998) (documents created to protect client from future litigation but "prior to the emergence of specific claims" protected).[5] In this case, as Mr. Harris acknowledges, Fish & Richardson's in-house counsel has testified that the Firm

**REDACTED PURSUANT TO STIPULATED PROTECTIVE ORDER**

ICR and Mr. Harris ignore the law when they argue that Mr. Harris is entitled to the documents because the Firm allegedly was not contemplating litigation *against Mr. Harris* at that time. (Mot. at 3-4.) The Supreme Court has noted in dicta that "the literal language of [Rule 26(b)(5)] protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation." *FTC v. Grolier, Inc.*, 462 U.S. 19, 25 (1983) (emphasis added). Courts in this district have extended work product protection to subsequent litigation involving *other* parties and expressly have rejected the argument that work product protection is limited to documents "created for use against the party seeking their production." *E.g., Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 237 F.R.D 176, 182 (N.D. Ill.

---

[5] Mr. Harris and ICR cite in passing *Allen v. Chicago Transit Auth.*, 198 F.R.D. 495, 498 (N.D. Ill. 2001) for the proposition that "documents prepared after an internal complaint" are not protected as attorney work product unless there is a "showing that litigation always ensues and . . . the particular litigation was anticipated." (Mot. at 4-5.) However, *Allen* involved a blanket work product assertion for all internal investigative reports of discrimination prepared by a public agency, despite the admitted fact that many such claims were "routinely" resolved without litigation. *Allen*, 198 F.R.D. at 501. *Allen* merely held that, under those facts, work product protection would not be extended to *all* such documents without *any* showing of "objective facts" indicating that litigation was anticipated for specific claims. *Id.* Here, Fish & Richardson is not a public agency that "routinely" receives complaints relating to its employees.

**REDACTED PURSUANT TO STIPULATED PROTECTIVE ORDER**

2006) (attorney "opinion letters" prepared for pending or threatened litigation protected in other litigation as well).

REDACTED PURSUANT TO STIPULATED PROTECTIVE ORDER

(Mot. at 4.) Accordingly, the protection of the attorney work product created in anticipation of that litigation extends to the subsequent (and very much related) litigation against Mr. Harris himself.

### B. Mr. Harris and ICR Have Not Established "Substantial Need" and "Undue Hardship."

Mr. Harris and ICR cannot overcome the work product protection in this case because they fail to establish that they have a "substantial need" for the information and cannot obtain the substantial equivalent without "undue hardship." Courts in this district have made clear that the burden to show substantial need is a difficult one, satisfied "only in rare situations, such as those involving witness availability." *E.g., Breneisen*, 2003 WL 21530440 at *5. The protection for "opinion" work product is "nearly absolute," and "fact" work product is protected unless the party seeking discovery is able to show "that it would be exceedingly difficult to obtain the information any other way." *Caremark*, 195 F.R.D. at 616 (denying discovery of internal investigation documents).

In this case, Mr. Harris and ICR appear to argue that the protected attorney work product is "crucial" because it will somehow cast light on *other* communications—purported advice given by Mr. Steele to Mr. Harris—about whose "actual content" the parties "completely disagree." (Mot. at 5.) However, Fish & Richardson already has agreed to produce to Mr. Harris all communications involving Mr. Harris directly or relating to communications with Mr. Harris that were created before August 31, 2007. Mr. Harris therefore will have the information he seeks without the need to further invade the Firm's confidential attorney work product.

## III. Mr. Harris's And ICR's Remaining Arguments Fail Or Are Moot.

Mr. Harris's and ICR's remaining arguments can be quickly discarded.

First, Mr. Harris's reliance upon *Koen* and *Bank Brussels* is misplaced. Those opinions hold that, in certain circumstances, law firms cannot withhold documents from "current clients" on the basis of in-firm attorney client privilege. Because those cases address only whether a firm can withhold in-firm communications from "current clients," they are inapplicable to the facts here. Mr. Harris plainly is not a client of Fish & Richardson, and has never argued that he is. In any event, Fish & Richardson has agreed to produce to Mr. Harris all communications with Mr. Harris or documents that summarize communications with Mr. Harris created before August 31, 2007. That will provide the information Mr. Harris seeks.

Second, Mr. Harris's argument that Fish & Richardson waived privilege over all communications with outside counsel while Mr. Harris was a principal at the Firm relating to Mr. Harris's misconduct is moot. Because the legal advice related to Mr. Harris was communicated to Mr. Harris, Fish & Richardson has agreed that it will produce to Mr. Harris only the legal advice from outside counsel before August 31, 2007 that addresses Mr. Harris.

Third, Mr. Harris's argument that Fish & Richardson has a "fiduciary duty" to disclose privileged information is unsupported and moot. Mr. Harris's duty of disclosure to the Firm was based upon his express contractual obligations of disclosure and his fiduciary obligations as a principal of the Firm. That is not a two-way street. Mr. Harris does not provide any reason or authority to hold that the Firm has a similar duty of disclosure to Mr. Harris. In fact, "a corporation has a legitimate expectation that a person who leaves the control group no longer will be privy to privileged information." *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 277 (N.D. Ill. 2004) (holding corporation could assert privilege against former member of control

group, notwithstanding member's authorship of documents at issue). In any event, the Court's ruling that Mr. Harris must produce all communications between he and his counsel that relate to the patents or the shell entities was based on Mr. Harris's assertion that he fulfilled his fiduciary duties by disclosing all such information to the Firm already. Similarly, Fish & Richardson will produce (to Mr. Harris) communications between its in-house counsel and Mr. Harris, and all otherwise privileged documents created before August 31, 2007 that were communicated to Mr. Harris or that summarize communications with him. Thus, Mr. Harris's argument is moot.

## Conclusion

This Court should deny Mr. Harris's Motion to Compel and hold the redactions are protected as privileged and work product. It should enter an Order authorizing Fish & Richardson to produce any otherwise privileged communications to and from Mr. Harris (and documents referring to the same) prior to August 31, 2007, based upon an express judicial determination that this production will not constitute a waiver of privilege and that the production will be limited to Mr. Harris only. This Court should require counsel for Mr. Harris to advise the Court as to an acceptable means of ensuring that the other parties do not receive access to this information, as a condition of counsel receiving access to these documents.

Dated: May 12, 2008

Respectfully submitted,

FISH & RICHARDSON P.C.

By:   s/ David J. Bradford
      One of its Attorneys

David J. Bradford
Terrence J. Truax
Eric A. Sacks
Daniel J. Weiss
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed with the Court by means of the Court's CM/ECF system, which will send notification of such filing to the following counsel at their email address on file with the Court:

Raymond P. Niro
Paul K. Vickrey
Richard B. Megley, Jr.
Karen L. Blouin
David J. Sheikh
Niro, Scavone, Haller & Niro
181 W. Madison, Suite 4600
Chicago, Illinois 60602

L. Steven Platt
Arnold and Kadjan
19 West Jackson Blvd., Suite 300
Chicago, IL 60604
(312) 236-0415

May 12, 2008.

                s/David J. Bradford

                JENNER & BLOCK LLP
                330 North Wabash Avenue
                Chicago, Illinois 60611
                Telephone No: 312 222-9350
                Facsimile No: 312 527-0484