IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS COMPUTER RESEARCH, LLC,<br>    *Plaintiff and Counterclaim Defendant*,<br><br>v.<br><br>FISH & RICHARDSON P.C.,<br>    *Defendant, Counterclaimant, Third-Party Plaintiff and Counterclaim Defendant,*<br><br>v.<br><br>SCOTT C. HARRIS, MEMORY CONTROL ENTERPRISE, LLC, BARTEX RESEARCH, LLC, INNOVATIVE BIOMETRIC TECHNOLOGY, LLC, PARKER INNOVATIVE TECHNOLOGIES, LLC, VIRGINIA INNOVATIVE TECHNOLOGY, LLC, INNOVATIVE PATENTED TECHNOLOGY, LLC AND ANY JOHN DOE SHELL ENTITIES,<br>    *Third-Party Defendants.* | Civil Action No.  07 C 5081<br><br>Honorable Rebecca R. Pallmeyer<br><br>Magistrate-Judge Maria Valdez |

## SCOTT HARRIS' AND ICR'S REPLY
## IN SUPPORT OF ITS MOTION TO COMPEL DOCUMENTS

### I.    INTRODUCTION

Fish effectively admits that almost all of its "privilege" claims were ill-taken by its belated agreement to produce most of the logged documents requested in Mr. Harris and ICR's motion to compel—an agreement made only after Harris and ICR filed the instant motion. In its opposition brief, Fish agreed to: 1) withdraw any assertion of privilege over four (4) logged documents[1] ; 2) produce ten (10) logged documents[2] to Harris only; and 3) produce fourteen (14) logged documents to Harris only subject to

---

[1] Log entries 45, 48, 49, 67

[2] Log entries 41, 43, 44, 47, 50-54, 65

substantial redactions[3]. However, Fish's self-serving conditional agreement to produce the logged documents is impractical. As a condition of its offer to produce these documents, Fish asks the Court to permit the following redactions: 1) all advice related to Dell; and 2) all "remedial advice related to its policies." There is no basis for the Court to permit such redactions, because the redacted material is neither attorney work product nor privileged attorney-client communications. The conditions proposed by Fish are unacceptable to Mr. Harris and ICR. Fish attempts to define the scope of its production of the requested documents to preclude the Court from ruling on this motion and in an effort to continue to conceal relevant non-privileged information from Mr. Harris and ICR. Since Fish has offered to produce many of the logged documents in unredacted form, the following privilege arguments relate to the documents which Fish seeks to produce in redacted form.

## II. FISH'S PROPOSED CONDITIONAL PRODUCTION IS NOT WORKABLE

### A. Production to Mr. Harris Only Is No Production At All

With the exception of the four documents for which all claims of privilege have been withdrawn, Fish asserts that it will produce the remaining wrongly withheld documents only to Harris. This is improper. Permitting production of the documents at issue to Mr. Harris only, effectively deprives Mr. Harris of his right to counsel. Mr. Harris, like all litigants, has the right to counsel of his choosing. Whiting Corp. v. White Machinery Corp., 567 F.2d 713 (7th Cir. 1977) (recognizing a clients right to retain counsel of its free choice and denying defendants motion to disqualify based on a common representation); Corti v. Fleisher; 417 N.E.2d 764 (Ill. App. Ct. 1981) ("A client is always entitled to be represented by counsel of his own choosing"). Accordingly,

---
[3] Log entries 42, 46, 55-64, 66, 68

2

Fish's proposed condition is impractical and imposing such a condition on Fish's production would substantially prejudice Mr. Harris. Fish implies a conflict—based on the common representation of Mr. Harris and the other entities by the Niro firm—where none exists. Mr. Harris, ICR and the remaining third-party defendants were all informed of the common representation by the Niro firm. None of these parties have complained or requested to have the Niro firm removed from such representation. The parties have the right to agree to common representation. Whiting Corp., 567 F.2d. at 716. Fish may not unilaterally impose conditions on its production of non-privileged material. Fish should be required to produce the logged documents without limitations so that Harris and ICR as well as the Court may have access to all relevant discovery.

As discussed above this condition would clearly prejudice Mr. Harris and ICR but it would also prejudice the additional third-party defendants. The Niro firm only represented Mr. Harris and ICR at the time of the Court's prior ruling on December 21, 2007 in which it limited production of documents to Harris only. The Niro firm complied with the Court's prior ruling limiting production to Mr. Harris only, but the situation presented here is distinct. Since the Court's prior ruling, Fish amended its counterclaim and third party complaint, thereby dragging the additional entities into this lawsuit by naming them as third-party defendants. The purported basis upon which Fish elected to include the third party entities is the very same dealings and contested communications between Fish and Harris related to the sale of the Harris patents. Fish now attempts to blindfold these entities and preclude them from seeing the very communications which culminated in the sale of Harris patents to them. This condition is impractical and unfair to the third-party defendants; the information is not privileged.

### B. The Common Interest Doctrine Does Not Shield The Documents From Production To Third Parties

Fish's reliance on the "common interest doctrine" to support the position that the logged documents should remain privileged as to ICR and the other third party entities is inappropriate. See United States v. Weissman, 195 F.3d 96, 99-100 (2nd Cir. 1999) (Mere cooperation among the parties, absent the intent to participate in a joint strategy, is insufficient for the common interest doctrine); See United States v. Sawyer, 878 F.Supp. 295, 297 (D. Mass. 1995) ("Attorneys Skrine and Scipione met with the defendant not to promote a joint defense, but as part of an internal investigation to discover facts relevant to the defendant's expenditures. Nor did Sawyer meet with Hancock's in-house counsel to further his 'joint defense', but rather to fulfill his duties and obligations to report to his employer. The Court concludes that the parties' similar interests and Scipione's desire to pursue a 'team effort' are insufficient to show that Sawyer's communications were made during the course of a joint defense effort."); Remington Arms Co. v. Liberty Mut. Ins. Co., 142 F.R.D. 408, 418 (D. Del 1992) ("The doctrine should not apply where 'the documents at issue were prepared in an atmosphere of uncertainty as to the scope of any identity of interest….'"). There was no intent on the part of Mr. Harris to participate in a joint strategy with Fish. There is no basis for the "common interest" doctrine to safeguard these non-privileged relevant communications from third parties.

Further, even if the Court determines there was a common interest, the privilege does not apply if the parties become adverse to each other in litigation. As stated by the court in Dexia Credit Local v. Rogan, 231 F.R.D. 287, 295 (N.D. Ill. 2005) (M.J. Schnekier):

4

> An exception to the assertion of the common interest privilege exists when the participants in the common interest become adverse to each other in litigation *Dexia.* 2004 U.S. Dist. LEXIS 25094, 2004 WL 3119026, at *4; *Waste Management,* 579 N.E.2d at 328. **Thus, if EMC were the plaintiff against the Management Companies in this lawsuit, there would be no question but that neither side could assert the common interest privilege** in this case with respect to the documents on the Tatooles Firm's Privilege Log.

(Emphasis added). Fish and Harris are clearly adverse to each other in this litigation. Accordingly, the "common interest doctrine" does shield preclude the logged documents from discovery.

### C. There is No Basis to Permit Redactions Related to Dell

The communications related to Dell are not privileged. In its opposition brief, Fish tried to create the appearance of conflict based on the Niro firm's common representation of Harris, ICR and the third party entities. Yet, Fish failed to recognize or even address its own clear conflict in Steele's representation of Harris and Fish, as well as his representation of himself. Courts have recognized that a law firm's ability to invoke an in-firm privilege is limited. See, e.g., <u>Koen Book Distribs.</u> v. <u>Powel, Trachtman, Logan, Carrle, Bowman & Lombardo, P.C.</u>, 212 F.R.D. 283, 286 (E.D. Pa. 2002) (denying a law firm's claim of privilege regarding communications made during the firms internal investigation of its potential liability toward a current client because it created a conflict of interest since the firm was simultaneously representing itself and its client).

During the Spring of 2007 (the time period in which all of the logged documents were created), Steele admitted he was representing both Harris and Fish. (Motion to Compel, Ex. C, 4/23/08 Rough Tr. Steele Dep., p. 113-14). Steele even testified that he was engaged in the representation of Harris as an individual attorney who had

5

requested his legal advice and services.  Id.  Critically, Steele also represented Harris, as a partner in the firm.  Further, Steele was representing Fish as its self-described "firm counsel" and contends that he was providing "confidential" legal advice regarding Harris to the other attorneys at Fish.  Thus, Steele was not only representing two adverse "clients" but as a member of the firm himself, he was simultaneously representing his own interests as well as his "clients" (i.e., Harris and Fish).  Consequently, Steele's representations involved multiple direct conflicts of interest.  Certainly, Steele's representation of Harris and Fish were directly at odds and clearly created a conflicts of interest.  Accordingly, similar to the cases which have denied the in-firm privilege based on the law firms representation of a current client, Harris was for all practical purposes a current client.  Thus, Fish's claims of privilege should not be permitted on that basis alone and the logged communications should be produced.

### D. There is No Basis to Permit Redactions Related To "Remedial Advice Related To Its Policies"

Fish alleges Harris committed material breaches of the Fish's law firm agreement and his fiduciary duties by among other things transferring his rights in the '252 patent. (Fish Am. Complaint at ¶ 85, 90).  Fish contends that Harris breached multiple clearly defined and established provisions of the firm agreement.  Amazingly, Fish's opposition brief then freely admits that the firm's policies needed "remedying." (Fish Opp., p.3). Now Fish seeks to conceal by way of redaction all information related to the alleged legal advice it obtained regarding "clarifying the Firm policies" under the guise that such information is privileged and not discoverable under Rule 407.  Like its claim of privilege related to Dell, there is no privilege protecting disclosure of such remedial advice related to firm policies.  If anything, as an alleged principal in the Firm, such information related

6

to firm policies would have been available to Harris and therefore any claim of privilege as to Harris is waived. The logged documents are not privileged.

Fish also tries to shield this information from discovery based on relevancy. Courts have held that subsequent remedial measures are not generally admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design or a need for a warning or instruction. See Fed.R.Evid. 407. Fish relies on Pastor in arguing that the legal advice it obtained regarding the firm's policies is inadmissible because it concerned "subsequent remedial measures." Pastor v. State Farm Mut. Auto Ins. Co., 48 F. 3d 1042, 1045 (7th Cir. 2007). Yet, Pastor is inapposite here. In Pastor, the Seventh Circuit upheld the district court's denial of plaintiff insured's Fed. R. Civ. P. 23 motion to certify a class of insureds in an action to recover amounts allegedly owed under an insurance policy. Pastor has nothing to do with privileged communications. The court in Pastor refused to permit the plaintiff to rely on a revision of the clause at issue in the insurance contract to argue the correctness of her interpretation of the original clause under Fed. R. Evid. 407.

The same reasoning does not apply here. Federal Rule of Evidence 407, typically at issue in products liability cases, forecloses admissibility of evidence of subsequent remedial measures (i.e. warning labels) to prevent an inference that the product at issue was unsafe before the remedial measure. See, e.g., Chlopek v. Fed. Ins. Co., 499 F. 3d 692, 700 (7th Cir. 2007). This is not a products liability case; there is no danger here to the public for a defective consumer product to which safety features might not be added.

Additionally, courts recognize exceptions to Rule 407. The Seventh Circuit held that: "This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or **impeachment**." Flaminio v. Honda Motor Co., 733 F.2d 463, 568 (7th Cir. 1984); Petree v. Victor Fluid Power, Inc., 887 F.2d 34, 38 (3d Cir. 1989) (recognizing subsequent remedial measures may sometimes be offered for purposes of impeachment). The Eighth Circuit also recognizes exceptions to Rule 407 for evidence of remedial action when the policy goal of encouraging remediation would not necessarily be furthered by exclusion of such evidence. O'Dell v. Hercules, 904 F.2d 1194, 1197 (8th Cir. 1990).

At a minimum, Harris asserts that that several exceptions to Rule 407 apply here. First, there is no fear of physical harm being caused to others here and the policy goal of encouraging remediation would not be furthered here. Second, evidence of Fish's subsequent "remedying" of its policies should be admissible for impeachment purposes. Fish contends that its law firm agreement was clear and that Harris breached established provisions of the agreement. Incredibly, Fish then asserts its policies needed "remedying." Fish relies on Rule 407 to support the position that its admitted "remedying" of firm policies should be precluded from discovery as not relevant. This argument is unconvincing.

Moreover, and important to note for purposes of this motion, discovery is not limited to admissible evidence. "Relevant information need not be admissible at the trial as long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); Oppenheimer Fund, Inc. v. Sanders,

437 U.S. 340, 350-52 (1978); CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 995-96 (7th Cir. 2002). Thus, the logged documents are relevant and admissible.

## III. THE REDACTIONS ARE NOT PROTECTED BY WORK PRODUCT IMMUNITY

### A. The Documents Sought Are Subject To The "At Issue" Exception

Courts have recognized an exception to the work product doctrine in cases where an attorney's "mental impressions and opinions are directly at issue." In re Sunrise Sec. Litig., 130 F.R.D. 560, 566 (E.D.Pa.1989) (quoting Reavis v. Metro. Property and Liability Ins. Co., 117 F.R.D. 160, 164 (S.D.Cal.1987); see Coleco Indus. v. Universal City Studios, 110 F.R.D. 688, 690 (S.D.N.Y.1986); 4 J. Moore, Federal Practice ¶ 26.64[3.-2] (1987). Documents fall within the "at issue" exception to work product protection if they contain information "directly at issue, and the need for [their] production is compelling." In re Sunrise Sec. Litig., 130 F.R.D. at 568 (quoting Bird v. Penn Central Co., 61 F.R.D. 43, 47 (E.D.Pa.1973)). "Compelling need" exists whenever information is within the exclusive control of the party from whom discovery is sought, regardless of whether the information might also be obtained from that party through depositions, interrogatories or document production. 130 F.R.D at 569 (stating "a party is not required to prove that information cannot be discovered by any method other than document production to establish 'compelling need'").

In this case, the mental impressions of both "in-firm" attorney John Steele as well as outside counsel Sean Selegue are directly at issue. Fish asserts claims for breach of fiduciary duties and breach of the Law Firm Agreement against Harris. And Harris contends Steele told him he had been cleared by outside counsel (e.g., Selegue). Whether Dell was in fact a Client of Fish at the time is contested by the parties and the

advice regarding the lawsuit against Dell is directly relevant to Fish's claim of breach of fiduciary duty. Moreover, whether Fish had any claim to ownership of the Harris patents and whether Harris's actions in selling and enforcing his patents was contrary to the law in any way are directly relevant here as well. Fish has exclusive control over this information. Indeed, there is a compelling need for the redacted documents.

### B. The Documents Were Not Created In Anticipation Of Litigation With Mr. Harris and/or ICR

Fish admits that it was not anticipating litigation with Mr. Harris. (Motion to Compel, Ex. C, Steele Dep. Rough Tr., p. 41, 45-46). Instead, in substituting invective for reasoning, Fish assumes what it has failed to prove and asserts that it anticipated litigation with "the victims of Mr. Harris's misconduct." (Fish Opp. at p. 2). While courts are split on this issue, some courts have recognized that the work product doctrine applies only to materials prepared in anticipation of the case at hand. See e.g., In re Grand Jury Proceedings, 73 F.R.D. 647, 653 (M.D. Fla. 1977); Midland Inv. Co. v. Van Alstyne, Noel & Co., 59 F.R.D. 134, 138 (S.D.N.Y. 1973)(discussing whether documents prepared in anticipation of litigation in one action were shielded from discovery in a subsequent action and stating "there has been no decisive resolution of this problem"). At least one rationale behind precluding work product immunity of material prepared in anticipation of a prior litigation, the In re Grand Jury Proceedings court held "the only effect of sustaining the conditional privilege now would be to thwart and frustrate the grand jury's investigative task." 73 F.R.D. at 653 (denying work product protection for material that was prepared for a prior case). While none of the cases involved a situation in which a law firm like Fish, which specializes in

litigation, was a party to the lawsuit – these cases recognize that work product immunity may be limited to materials prepared in anticipation of this litigation.

Additionally, if, as Fish asserts, all communications prepared in anticipation of litigation with anyone are shielded from discovery under the work product doctrine, on the theory that they were prepared in anticipation of litigation with a non-party to the lawsuit, then a law firm defendant would always be able to shield its communications from discovery because virtually every communications created by a litigation law firm is created in anticipation of litigation with someone.

Fish's reliance on FTC v. Grolier Inc., 462 U.S. 19 (1983) is misplaced. In Grolier, the Supreme Court held that the government, when faced with a Freedom of Information Act (FOIA) request, may rely on the Exemption 5, 5 U.S.C. § 552(b)(5) of the FOIA, to exempt attorney work product from mandatory disclosure even when the litigation for which the requested documents were generated has been terminated. FTC, 462 U.S. at 28. The Supreme Court's specifically limited its holding to the context of the FOIA. Since the FOIA is not at issue herein, FTC is not controlling. Moreover, the other case relied by Fish is factually distinct from the case at bar. See Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc., 23 7 F.R.D. 17 (N.D. Ill. 2006) (finding work product immunity protected attorney opinion letters prepared because of pending or threatened litigation in a securities fraud class action). While Courts recognize that there are circumstances in which work product does not need to be prepared in anticipation of the litigation at hand. However, the facts here demonstrate that, like In re Grand Jury Proceedings, permitting work product immunity here would only frustrate Harris and ICR's investigative process.

As this Court recognized in Allen, under certain situations documents prepared in response to an internal complaint may not qualify as work product. Allen v. Chicago Transit Auth., 198 F.R.D. 495, 498 (N.D. Ill. 2001). Although Allen involved a blanket work product assertion for internal investigative reports prepared by a public agency, this Court stated that "[o]nly by strictly construing the elements of work product, can the doctrine's original intent be best served." Id. at 500. Fish has the burden to prove the elements of work product immunity apply to shield the requested documents from discovery. Fish has failed to satisfy its burden.

### C. There Is A Substantial Need For The Logged Documents

Because the requested documents were not prepared in anticipation of the case at bar, the documents are not protected by work product immunity and there is no need for Mr. Harris and ICR to establish substantial need. However, even if the Court finds work product immunity applies here, the documents should still be compelled based on the substantial need for these documents. Here, Fish has asserted claims against ICR and Scott Harris, asserting that Mr. Harris engaged in legal misconduct by personally asserting a patent infringement claim against a firm client. Fish's claims are directly at odds with the investigation which cleared him of any misconduct. Having injected the issue into the case, it would be manifestly unfair for Fish to withhold the information on privilege grounds.

### IV. THE LOGGED DOCUMENTS ARE NOT PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE

Fish now affectively acknowledges that the logged documents are not privileged. Fish may not continue to abuse the privilege by continuing to conceal relevant non-

privileged information by way of its proposed redactions. The logged documents should be produced without limitation.

### A. <u>Waived Privilege</u>

Fish waived all privilege with regarding advice sought by outside counsel—not just communications made prior to August 31, 2007 which addresses Harris—when it revealed the contents of the advice to Mr. Harris. John Steele admitted that he conveyed the legal advice obtained from the outside counsel to Harris:

> Q. BY MR. VICKREY: Okay. And so it's fair to say that even though Mr. Selegue [outside counsel] didn't send you his advice in writing, he conveyed that advice in writing to attorneys at Fish, correct?
>
> THE WITNESS: I believe I relayed to attorneys at Fish what Sean Selegue said.
>
> Q. BY MR. VICKREY: And is that advice the same advice that you conveyed to Mr. Harris?.
>
> THE WITNESS: I believe it is substantially the same.

(Motion to Compel, Ex. C, 4/23/08 Rough Tr. Steele Dep., p.39) (objections omitted). Despite Steele's clear admission that he relayed the same advice from its outside counsel to Mr. Harris that he relayed to the attorneys at Fish, it now seeks to limit the scope of the waiver. Fish fails to recognize that when the attorney-client privilege is waived, it may be waived as to all other documents covering the same subject matter. Accordingly, Fish must produce to Mr. Harris all documents that relate to the advice it received from its outside counsel—Sean Selegue—including advice to Dell.

Furthermore, Fish also waived its communications with Steele. Mr. Harris was an employee of Fish and thus he was permitted to see such communications even if he did not actually review these communications. Such communications were not kept

13

confidential – neither Steele nor Fish took steps at the time to make them confidential or to purposefully shield them from Harris. Indeed, Steele even admitted that the communications were never meant to be kept from Harris. (Motion to Compel, Ex. C., 4/23/08 Rough Tr. Steele Dep., p. 189-190). Further, as stated herein, as a partner of the Fish firm, the policies of the firm were clearly something that was not meant to be kept confidential from Harris.

### B. Fish Failed To Prove The Redactions Are Protected By Attorney-Client Privilege

Fish has failed to establish the in-firm privilege applies here. Some courts have recognized that an attorney-client relationship can exist within a law firm, but only under some limited circumstances not present here. See, e.g., Lama Holding Co. v. Shearman & Sterling, 1991 U.S. Dist. Lexis 7987 (S.D.N.Y 1991); Hertzog, Calamari & Gleason v. Prudential Ins. Co. of Am., 850 F. Supp. 255 (S.D.N.Y. 1994); United States v. Rowe, 96 F.3d 1294 (9th Cir. 1996). The facts of this case are clearly distinct from the cases recognizing an in-firm privilege. Here, Fish used Steele, its own in-house attorney, to provide legal advice to the attorney under investigation while it was relying on Steele to provide legal advice related to the same alleged misconduct to it. Accordingly, ICR and Harris should not be precluded from discovering these communications.

Additionally, Fish mischaracterizes Mr. Harris and ICR's position by asserting that they do not dispute that documents at issue were made in "confidence" for the purpose of seeking "legal advice." How could these communications have been made in confidence when Steele admitted that he was sharing the information with both Harris and Fish attorneys? Fish's argument is fatally flawed. The purpose of the attorney-

client privilege is to encourage full disclosure between the client and its attorney. This purpose will not be advanced by protecting communications between Fish attorneys who are clearly attempting to conceal relevant non-privileged information, merely because the parties to the communication are lawyers.

## V.  CONCLUSION

For the foregoing reasons, Mr. Harris and ICR respectfully submit that the Court should enter an order compelling Fish to produce unredacted copies of all 28 documents logged on its privilege log. In the alternative, Mr. Harris and ICR request an in camera inspection of all logged documents by the Court.

Respectfully submitted,

/s/ Laura A. Kenneally
Raymond P. Niro
Richard B. Megley, Jr.
David J. Sheikh
Richard B. Megley, Jr.
Laura A. Kenneally
Niro, Scavone, Haller & Niro
181 West Madison, Suite 4600
Chicago, Illinois 60602-4515
(312) 236-0733
Fax:  (312) 236-3137

Attorneys for Illinois Computer Research, LLC
and Scott C. Harris

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing **SCOTT HARRIS'AND ICR'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL DOCUMENTS** was electronically filed with the Clerk of Court on May 19, 2008 using CM/ECF system, which will send notification by electronic mail to the following:

> David J. Bradford - dbradford@jenner.com
> Eric A. Sacks - esacks@jenner.com
> Daniel J. Weiss - dweiss@jenner.com
> Terrence J. Truax - ttruax@jenner.com
> Jenner & Block LLP
> 330 N. Wabash Avenue
> Chicago, IL 60611
> (312) 222-9350
> **Counsel for Fish & Richardson, P.C.**

/s/ Laura A. Kenneally