IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **ILLINOIS COMPUTER RESEARCH, LLC,** )<br>*Plaintiff and Counterclaim Defendant,* )<br>)<br>v. )<br>)<br>**FISH & RICHARDSON P.C.,** )<br>*Defendant, Counterclaimant, Third-Party Plaintiff, and Counterclaim Defendant,* )<br>)<br>v. )<br>)<br>**SCOTT C. HARRIS**, *et al.*, )<br>*Third-Party Defendants.* ) | No. 07 C 5081<br><br>Judge Rebecca R. Pallmeyer<br><br>Magistrate Judge Maria Valdez<br><br>**Redacted Public Version** |

### FISH & RICHARDSON'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS MR. HARRIS'S AND THE SHELL ENTITIES' COUNTERCLAIMS

The Court previously dismissed the tortious interference claims of Mr. Harris and Illinois Computer Research, LLC ("ICR") because they did not identify any assertion of ownership interests in Harris-related patents by Fish & Richardson to third-parties that occurred *before* ICR raised the issue of ownership in this litigation on October 5, 2007. Now Mr. Harris and several shell entities seek to expand the claims against Fish & Richardson. But, they still fail to make a specific allegation that Fish & Richardson asserted ownership to third-parties outside of litigation. Indeed, they expressly and repeatedly allege that Fish & Richardson's ownership claims were "created" by its litigation counsel in the fall of 2007. Thus, they not only fail to plead facts sufficient to state a claim, but also affirmatively plead themselves out of court.

Mr. Harris and the shell entities allege slander of title, tortious interference with economic advantage, and tortious interference with contract (the "interference claims"), fraud

and negligent misrepresentation (the "fraud claims"), and promissory estoppel. All of those claims fail as a matter of law, and should be dismissed.

The "interference claims." The "interference claims" all are based on Fish & Richardson's assertion of ownership interests in the disputed patents. But those ownership claims are privileged litigation conduct and, in any event, objectively reasonable.

The "fraud claims." The "fraud claims" are based on Fish & Richardson's alleged failure to disclose to Mr. Harris its interests in the disputed patents in May of 2007, by not recording liens or otherwise telling Mr. Harris that the Firm had an interest in the patents. Mr. Harris and the shell entities cite no affirmative misrepresentation and instead rely on a "duty to speak". But Mr. Harris and the shell entities can cite no authority for the proposition that a party has an affirmative duty to disclose its interests in patents.

The promissory estoppel claim. Mr. Harris asserts a novel promissory estoppel claim—that he promised Fish & Richardson he would sell all the patents to third-parties as a condition of keeping his job, and that Fish & Richardson is thereby estopped from contesting his authority to deliver clear title to the patents to third-parties. But there is no allegation that Fish & Richardson made a promise—let alone that it breached one. And Mr. Harris did not sell the patents to third-parties. To the contrary, his own pleading asserts that he sold most of the patents to MCE, the shell entity he admits he owned.

**Background**

The Court's Prior Rulings. On May 2, 2008, the Court dismissed Mr. Harris's and ICR's tortious interference claims. (Dkt. 158.) The purported "interfering conduct" that was the basis of Mr. Harris's and ICR's claims was Fish & Richardson's assertion of ownership and other rights in the disputed patents. (*See, e.g.* 05/02/08 Hr'g Tr. at 29-33.) The Court dismissed the

claims because there was no allegation that Fish & Richardson asserted its interests in the patents to prospective licensees (or other third-parties) before the present litigation arose. (*See id.*)

The Court noted that ICR's October 5, 2007 complaint (which formally brought Fish & Richardson into this litigation) "present[ed] to the world this claim" and interjected it into the public domain. (*Id.* at 29-30.) There was no allegation that Fish & Richardson had made any claims of ownership unrelated to this litigation. (*Id.*) The Court explained:

> As I understand the argument, the claim of ownership interest, to the extent that Fish & Richardson's claim to ownership interests compromises Mr. Harris's and ICR's and perhaps other entities' rights, that claim isn't actionable because it was made in litigation and no other place prior to it having been made in litigation. . . . And, Mr. Niro, you're saying that's not true, but I haven't heard what evidence you've got that it isn't true other than the fact that there were text messages or there were conversations between Fish & Richardson agents and these clients. That by itself doesn't resolve the question for me.

(*Id.* at 28-29.) Therefore, the Court dismissed Mr. Harris's and ICR's tortious interference claims without prejudice. (*Id.* at 33.)

The Amended Complaint.[1] Mr. Harris and the shell entities have now filed an amended complaint. (Dkt. 162, "Am. Compl.") Mr. Harris alleges that he began commercially exploiting the disputed patents in April 2006 through one of the shell entities, Memory Control Enterprise ("MCE"). (*Id.* ¶ 7.) Mr. Harris now admits that, as part of his patent activities, he "identified various Fish clients" as litigation targets. (*Id.* ¶ 14.)

On March 12, 2007,

REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER

Mr. Harris agreed "to sell his entire patent portfolio as Fish demanded." (*Id.* ¶ 13.) Mr. Harris alleges that he then sold the patents to MCE. (*Id.* ¶ 11.) Mr.

---

[1] Fish & Richardson disputes many of the facts alleged in the amended complaint. But, consistent with Federal Rule 12(b)(6), Fish & Richardson treats them as true, solely for purposes of this motion.

3

Harris now alleges that he had purchased MCE in December 2006.[2] (*Id.* ¶ 9.) Thus, Mr. Harris now admits that he only sold the patents to himself. (*Id.*)

From May to the end of August 2007, the Firm believed that the matter had been resolved. (*Id.* ¶ 20.) Mr. Harris and the shell entities allege that throughout that time Fish & Richardson did not assert an ownership interest in the patents. (*E.g., id.* ¶ 19.) Fish & Richardson allegedly did not raise the issue with Mr. Harris until September 2007. (*Id.*)

Mr. Harris and the shell entities allege that, in September 2007, after the litigation period began, Fish & Richardson retained Jenner & Block and "the Jenner Firm created the ownership claim." (*Id.* ¶ 23.). Mr. Harris and the shell entities allege that "[a]t no time before hiring the Jenner Firm did Fish tell Harris it owned his patents. At no time before hiring the Jenner Firm did it write Harris making such a claim." (*Id.* ¶ 19.) And they allege Fish & Richardson's ownership claims "were created by the Jenner Firm," were "orchestrated by the Jenner Firm," and were "directed by the Jenner Firm." (*Id.* ¶¶ 2, 25, 30.)

Mr. Harris and the shell entities assert that Fish & Richardson "deliberately failed to record any such ownership right or to give the public notice of any such right." (*Id.* ¶ 4.) They allege that Fish & Richardson "formally announce[d] its belief that it had an ownership interest in the Harris patents" only after ICR sued Google and after "the Jenner Firm created the ownership claim." (*Id.* ¶ 23.) After Jenner & Block became involved, Fish & Richardson

---

[2] For this motion, Fish & Richardson accepts Mr. Harris's allegation that he disclosed his ownership interest in MCE to Fish & Richardson in May 2007. (Am. Compl. ¶ 16.) In truth, however, that allegation is unfounded, knowingly false, and made in bad faith.

**REDACTED PURSUANT TO STIPULATED PROTECTIVE ORDER**

allegedly "communicated" with its clients "about the employment of Scott Harris" and the fact that Mr. Harris and the shell entities "had asserted claims for infringement against such clients." (*Id.* ¶ 26.) "On information and belief," Fish & Richardson "assured" its clients that the Harris claims "would be resolved because of Harris [sic] employment by Fish and the rights Fish perceived it had as a result of such employment." (*Id.* ¶ 27.)

Conspicuously absent from the amended complaint is any specific allegation of an assertion of ownership rights to a third-party that allegedly interfered with a sale or license of the patents to that third-party.

## **Argument**

A claim must contain "enough *facts* to state a claim to relief that is *plausible on its face*." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (emphasis added). Where a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.* at 1974. Additionally, "if a plaintiff does plead particulars, and they show that he has no claim, then he is out of luck—he has pleaded himself out of court." *Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994); *see also BSE v. IBM*, 2005 WL 1766374, at *1 (N.D. Ill. July 20, 2005). In this case, Mr. Harris and his paper entities have not alleged enough facts to state a claim, and when they attempt to do so, they plead themselves out of court.

The Court should dismiss (a) the slander of title, tortious interference with economic advantage, and tortious interference with contract claims (the "interference claims", § I, below); (b) the fraud and negligent misrepresentation claims (the "fraud claims", § II); and (c) the promissory estoppel claim (§ III).

## I. The "Interference Claims" Fail.

The Court already has dismissed Mr. Harris's and ICR's tortious interference claims once because Mr. Harris and ICR could not identify any interfering conduct by Fish & Richardson that occurred *before* and outside of this litigation. Mr. Harris and the shell entities now return with new purported claims, but the same factual void. Their "interference claims"—styled as slander and false claim to title (Count I), interference with contract (Count IV), and interference with economic advantage (Count V)—fail for the same reasons as before.

### A. The Litigation Privilege Bars The "Interference Claims."

As a matter of law, the litigation privilege covers all of the "interference claims" that Mr. Harris and the shell entities assert. That privilege provides complete immunity, regardless of "knowledge of [a] statement's falsity" or a party's motives. *Atkinson v. Affronti*, 861 N.E.2d 251, 256 (Ill. Ct. App. 2006); *Scheib v. Grant*, 22 F.3d 149, 156 (7th Cir. 1994) ("This absolute privilege is afforded even when malice is *assumed* to have motivated the attorney"). The Court already has recognized that the privilege precludes liability for tortious interference with economic advantage if the alleged "interference" pertains to potential or pending litigation. (*See, e.g.* 05/02/08 Hr'g Tr. at 29-33.) It also applies to the other alleged torts, including slander of title and tortious interference with contract. *Caplan v. Int'l Fidelity, Ins.*, 902 F. Supp. 170, 174-75 (N.D. Ill. 1995) (dismissing slander of title claim); *Rosenthal v. Irell & Manella*, 135 Cal. App. 3d 121 (Cal. App. Ct. 1982) (dismissing inducement of breach of contract claim).

Here, again, the complaint demonstrates that the litigation privilege applies. Mr. Harris and the shell entities allege that Fish & Richardson's assertion of ownership interests "interfered" with their business expectations. The same conduct is at issue, whether it be asserted as slander of title or either type of tortious interference. When the Court dismissed Mr.

Harris's and ICR's previous interference claims, it relied on the fact that there was no allegation that Fish & Richardson asserted ownership *before* this litigation. The Court ruled that Mr. Harris and the shell entities could amend their complaint, if they could cure that fatal deficiency.

The amended complaint does not fix the original problem. Remarkably, it does the exact *opposite*, repeatedly alleging that Fish & Richardson never asserted an ownership interest in the patents until *after* it hired Jenner & Block for this litigation. Harris and the shell entities allege:

- Fish & Richardson's ownership claims "were created by the **Jenner Firm**";
- "At no time before hiring the **Jenner Firm** did Fish tell Harris it owned his patents. At no time before hiring the **Jenner Firm** did it write Harris making such a claim";
- "[T]he **Jenner Firm** created the ownership claim";
- Fish & Richardson's ownership claim was "orchestrated by the **Jenner Firm**"; and
- Fish & Richardson's ownership claim was "directed by the **Jenner Firm**."

(*See* Am. Compl. ¶¶ 2, 19, 23, 25, 30, emphasis added.)

Based upon those allegations, Mr. Harris and the shell entities have pleaded themselves out of court. By repeatedly alleging that Fish & Richardson's ownership claims "were *created* by the Jenner Firm" in September 2007, Mr. Harris and the shell entities are alleging that Fish & Richardson's assertion of ownership and other interests in the patents came about *only during the course of litigation*. If Fish & Richardson's ownership claims were "created" by its outside counsel in the context of litigation, then Fish & Richardson could not have asserted its ownership claims—and thus could not have "interfered"—*before* litigation.

In addition to affirmatively pleading themselves out of court, Mr. Harris and the shell entities fail to identify any pre-litigation interference. During the parties' May 2, 2008 hearing on Fish & Richardson's motion for judgment on the pleadings, the Court noted that Mr. Harris's counsel disagreed that Fish & Richardson's ownership interests were made only in the course of litigation, and were not otherwise directed to third-parties, finding: "I haven't heard what

7

evidence you've got [of pre-litigation interference] other than the fact that there were text messages or there were conversations between Fish & Richardson agents and these clients. *That by itself doesn't resolve the question for me.*" (05/02/08 Hr'g Tr. at 29, emphasis added.) Despite that clear instruction, the amended complaint contains the very same omissions.

Mr. Harris and the shell entities allege that *after* Jenner & Block became involved, Fish & Richardson "communicated" with certain of its clients "about the employment of Scott Harris" and the fact that Mr. Harris and the shell entities "had asserted claims for infringement against such clients." (Am. Compl. ¶ 26.) They plead "on information and belief" that Fish & Richardson "assured" its clients that the Harris claims "would be resolved because of Harris [sic] employment by Fish and the rights Fish perceived it had as a result of such employment." (*Id.* ¶ 27.) But those allegations do not say that Fish & Richardson asserted any ownership rights in the disputed patents or otherwise "interfered". Instead, the allegations state only that the Firm informed its clients that it had a dispute with one of its principals. Mr. Harris and the shell entities do not even allege that those communications pre-dated October 5, 2008 when Mr. Harris and ICR interjected the issue into the public domain.

**REDACTED PURSUANT TO STIPULATED PROTECTIVE ORDER**

REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER

Thus the communication admittedly related to litigation and is the type of communication between a law firm and its client that this Court has already found insufficient to state a claim. ("[T]he fact that there were text messages or there were conversations between Fish & Richardson agents and these clients . . . by itself doesn't resolve the question for me"; 05/02/08 Hr'g Tr. at 29.) *See also Citylink Group, Ltd. v. Hyatt Corp.*, 729 N.E.2d 869, 877 (Ill. App. Ct. 2000) (third-party must have been "contemplating" business relations with plaintiff).

In another self-contradiction, Mr. Harris and the shell entities also make allegations about Fish & Richardson's in-house counsel, John Steele, saying that Mr. Steele's testimony raises a question about third-parties being told, pre-litigation, of ownership claims by Fish & Richardson. Those also are insufficient. Rather than alleging what Fish & Richardson supposedly said to any third-party, the amended complaint makes an allegation about Mr. Steele's deposition testimony. (Am. Compl. ¶ 18) It inaccurately alleges that Mr. Steele testified at his deposition that Fish & Richardson "told *either* Harris *or* third parties it had an ownership interest in patents in the April-May 2007 time period." (*Id.*, emphasis added.) Based upon that mischaracterization of Mr. Steele's testimony, Mr. Harris and the shell entities speculate: "Since Harris was not told . . . it is apparent Fish did make ownership claims to third-parties like Dell." (*Id.*) The allegation fails for three reasons.

First, REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER Second, the allegation fails to allege an actual interfering communication— REDACTED PURSUANT TO
STIPULATED PROTECTIVE
ORDER

9

(an allegation that would be inconsistent with the multiple allegations that Jenner & Block invented the ownership claim). Third, even if reciting the Steele testimony could be construed as alleging the underlying conduct, the transcript demonstrates that Mr. Steele never testified as Mr. Harris and the shell entities allege. In fact, Mr. Steele testified to the opposite.[3] He expressly testified that in March, April, and May of 2007, Fish & Richardson did *not* tell Harris *or any other prospective purchaser* that it owned the disputed patents. (Ex. 1, J. Steele Dep. 145-46.) He also testified that he was not aware of any writing prior to Fish & Richardson's complaint in which Fish & Richardson told Mr. Harris or a third-party that it had ownership interests in the patents. (*Id.* at 152.) And Mr. Steele testified REDACTED PURSUANT TO STIPULATED PROTECTIVE ORDER Therefore, the incorporation of Mr. Steele's testimony not only fails to support the claims, but actually confirms that they should be dismissed

### B. Fish & Richardson's Ownership Assertions Are Not Objectively Baseless.

Mr. Harris and the shell entities' slander of title claim also fails because Fish & Richardson's ownership claims are not objectively baseless, meaning that the Firm has not acted with "malice". Slander of title requires "a false or malicious publication, oral or written, of words which disparage [the plaintiff's] title to property, resulting in special damages." *Ringier Am. Inc. v. Enviro-Technics, Ltd.*, 673 N.E.2d 444, 446 (Ill. App. Ct. 1996). If the defendant "has reasonable grounds to believe that he has title or a claim to the property he has not acted with malice." *Whildin v. Kovacs*, 403 N.E.2d 694, 695 (Ill. App. Ct. 1980) (dismissing slander of title claim).

Here, as a matter of law, Fish & Richardson has objectively reasonable grounds to assert ownership and other interests in the patents:

---

[3] The Court may consider Mr. Steele's deposition transcript because documents "attach[ed] to a motion to dismiss are considered part of the pleadings, if they are referred to in plaintiff's complaint and are central to her claim." *Venture Assoc. Corp. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993).

- Mr. Harris's contract with Fish & Richardson assigns *all* the fruits of his work as a lawyer to the Firm. (Ex. 2, Fish & Richardson Am. Compl. ¶¶ 24-29, 82-87.) When an agreement contains a present assignment of future interests in patents to an employer, legal title transfers by operation of law. *Affymetrix, Inc. v. Illumina, Inc.*, 446 F. Supp. 2d 292, 295-97 (D. Del. 2006); *Imatec, Ltd. v. Apple Computer, Inc.*, 81 F. Supp. 2d 471, 481 (S.D.N.Y. 2000). By using his legal skills to obtain the patents, Harris converted his own legal efforts into compensation for himself in the form of the patents, compensation that belongs to the Firm.

- Principles of fiduciary duty and equity require parties like Mr. Harris to relinquish claimed ownership in patents. *Kennedy v. Wright*, 676 F. Supp. 888, 892 (C.D. Ill. 1988) (where an "inventor is more than an employee and occupies a special relationship of trust and confidence to the business, courts under certain circumstances have held it inequitable for the individual to retain a title which more properly belongs to the company"); *Grip Nut Co. v. Sharp*, 150 F.2d 192, 197 (7th Cir. 1945) (holding executive stood in fiduciary relationship to employer and thus held patents he developed as constructive trustee for company).[4]

- Mr. Harris's admitted conduct of targeting Firm clients, suing Firm clients, and agreeing to sell his patents to third-parties but then selling the patents to a company he owns, give rise to an objectively reasonable claim of breach of fiduciary duty that supports the imposition of a constructive trust. *See Chicago Park Dist. v. Kenroy, Inc.*, 437 N.E.2d 783, 785 (Ill. App. Ct. 1982) (applicable "whenever facts are shown in which a person holding legal title to the property at issue cannot retain the beneficial interest therein without violating some established principle of equity").

- Mr. Harris's allegations also provide a reasonable basis for Fish & Richardson's request for a restrictive covenant precluding Harris or the shell entities from suing or assisting in suits against Firm clients. *See Hynix Semiconductor, Inc. v. Rambus, Inc.*, 2006 WL 1867724, at *3 (N.D. Cal. July 6, 2006) (holding the equitable doctrine of estoppel can restrict lawsuits on a patent by "focus[ing] on the patentee's conduct and operat[ing] to bar the patentee's claims").

Thus, Harris's and the shell entities' slander of title claim fails for this reason as well.

## II. The "Fraud Claims" Fail As A Matter Of Law.

Mr. Harris's and the shell entities' fraud and negligent misrepresentation claims—based on alleged "omissions"—fail because (i) there is no duty of disclosure, and (ii) they plead that Fish & Richardson did not learn of the omitted fact—its ownership claims—until the fall of 2007, long after the alleged "omission" occurred.

---

[4] *See also In re Access Cardiosystems, Inc.*, 340 B.R. 127, 151 (Bankr. D. Mass. 2006); *In re Stonecraft LLC*, 322 B.R. 623, 631 (Bankr. S.D. Miss. 2005); *Great Lakes Press Corp. v. Froom*, 695 F. Supp. 1440, 1447 (W.D.N.Y. 1987); *N. Branch Prod., Inc. v. Fisher*, 131 U.S.P.Q. 135, 137 (D.D.C. 1961).

11

A.  **Mr. Harris And The Shell Entities Fail To State A Claim For Fraud.**

Mr. Harris's and the shell entities' fraud claims are based on a purported omission, not a fraudulent representation.[5] To plead fraud by omission, the plaintiff must allege that the defendant "concealed" a known material fact when the defendant "was under a duty to disclose that fact." *Karpowicz v. G.M. Corp.*, 1997 WL 413929, at *8 (N.D. Ill. Jul. 18, 1997). According to Mr. Harris and the shell entities, in the spring of 2007, Fish & Richardson failed to disclose to Mr. Harris and the shell entities that it had any ownership interests in the disputed patents. (Am. Compl. ¶¶ 34, 39.) Their claims fail as a matter of law.

First, the amended complaint fails to allege facts establishing that Fish & Richardson had a duty to speak. Where a plaintiff fails to adequately allege that the defendant had a duty to disclose material facts, the complaint fails to state a claim for fraud by omission. *See Karpowicz*, 1997 WL 413929, at *8. In the absence of a fiduciary relationship, there is no duty to speak. *Ill. Non-Profit Risk Mgmt. Ass'n v. Human Serv. Center of S. Metro-East*, 884 N.E.2d 700, 710 (Ill. Ct. App. 2008). Here, Fish & Richardson had no relationship at all with the shell entities, let alone a fiduciary relationship. Nor did it owe Mr. Harris a fiduciary duty. As in all law firms, a principal owes a fiduciary duty to the firm and its clients, but the firm itself does not owe a fiduciary duty to its members. *See Howe v. Bank for Int'l Settlements*, 194 F. Supp. 2d 6, 28-29 (D. Mass. 2002) (under Massachusetts law corporation does not owe fiduciary duty to shareholder).

Without an established fiduciary relationship, Mr. Harris and the shell entities assume a duty to speak by alleging that Fish & Richardson "deliberately failed to record" liens on the patents under 35 U.S.C. § 261. (Am. Compl. ¶ 39.) But a duty to speak cannot be premised on

---

[5] No specific affirmative misrepresentation is alleged. Therefore, any such claim would have to be dismissed for failure to plead with particularity. *See* Fed. R. Civ. Pro. 9(b).

that section. The statute merely *permits* the recording of an "assignment, grant or conveyance" of a patent. 35 U.S.C. § 261. It is an optional tool that may be used by some patent holders. No recording statute, including Section 261, *requires* claimants to record their interests. Moreover, the option to record under Section 261 was not even available to Fish & Richardson, because Fish & Richardson's legal and equitable interests in the patents fall outside of the categories permitted by Section 261 (assignment, grant, conveyance) and are not recordable.[6]

Second, Mr. Harris and the shell entities plead themselves out of court by repeatedly alleging that Fish & Richardson's ownership claims were first "created" in the fall of 2007. (Am. Compl. ¶¶ 2, 25, 30.) Fish & Richardson could not have disclosed its ownership claims in the spring of 2007 if they allegedly were not "created" until the fall of 2007. Thus, Mr. Harris and the shell entities plead facts negating an element of fraud—that the party making the misstatement knew of the material fact omitted.

### B. Mr. Harris Fails To State A Claim For Negligent Misrepresentation.

The elements for negligent misrepresentation are the same as the elements of fraud, with two exceptions: one, the required mental state is negligence instead of knowing, and two, the plaintiff "must also allege that the defendant owes a duty to the plaintiff to communicate accurate information." *Neptuno Treuhand-Und Verwaltungsgesellschaft mbH v. Arbor*, 692 N.E.2d 812, 818 (Ill. App. Ct. 1998). Mr. Harris's claim for negligent misrepresentation therefore fails for the same reasons his claim for fraud fails.

In addition, liability for negligent misrepresentation is limited to situations where the defendant "is in the business of supplying information for the guidance of others in their business

---

[6] Where interests in a patent are transferred by operation of law (as in an employment agreement), there is "no document of assignment to record." *See TM Patents, L.P. v. IBM Corp.*, 121 F. Supp. 2d 349, 366 n.10 (S.D.N.Y. 2000). A covenant not to sue is not a recordable interest under Section 261. *V-Formation, Inc. v. Benetton Group Spa*, 2006 WL 650374, at *7-8 (D. Colo. Mar. 10, 2006).

13

transactions, the defendant provided information that constituted a misrepresentation, and the defendant supplied the information for guidance in the plaintiff's business dealings." *Browning v. Eckland Consultants, Inc.*, 2004 WL 2687961, at *5 (Ill. App. Ct. Aug. 13, 2004). Here, Mr. Harris was a principal of Fish & Richardson, not a client. Mr. Harris does not (and could not) allege that he hired Fish & Richardson to provide him with guidance about Fish & Richardson's potential adverse claims.

### III. Mr. Harris Fails To State A Claim For Promissory Estoppel.

Promissory estoppel requires a "clear and unambiguous" promise, reasonable and foreseeable reliance, and injury. *Nahas v. City of Mountain View*, 2005 WL 2739303, at *5 (N.D. Cal. Oct. 24, 2005). Mr. Harris alleges that Fish & Richardson instructed Harris to "sell his patents quickly at less than their market value, if necessary, as a condition of keeping his job." (Am. Compl. ¶ 54, emphasis added.) He alleges that promissory estoppel precludes Fish & Richardson from contending that Mr. Harris could not sell his patents to "third-parties" without providing Firm clients with "perpetual, paid-up royalty free licenses." (*Id.* ¶ 56.) Mr. Harris's claim fails as a matter of law for at least two reasons.

First, Mr. Harris does not allege a clear and unambiguous promise that was breached. For example, in *Nahas*, plaintiffs were told by the defendant, the city, that they could operate their business with no restrictions on hours of operation or the age of its patrons. *Nahas*, 2005 WL 2739303, at *6. Later, after neighbors complained, the city imposed age and hour restrictions, and the plaintiffs brought suit for promissory estoppel. *Id.* at 2. The court dismissed the claim because "the Plaintiffs do not allege that the city expressly promised that Plaintiffs could operate the [business] *without any restrictions* in the future regardless of problems experienced by neighbors." *Id.* (emphasis added). That same analysis applies here.

14

Mr. Harris alleges that Fish & Richardson implicitly promised Harris that if he sold his patents to third-parties, he would "keep[] his job." (Am. Compl. ¶ 54.) However, Mr. Harris's claim does not assert that the Firm is estopped from terminating Mr. Harris (indeed, he admits he resigned). Instead, he alleges that the Firm "is estopped to now demand ownership or unreasonable conditions on [patent] sales it both permitted and requested." (*Id.* ¶ 57.) But the complaint lacks any allegation that Fish & Richardson promised Mr. Harris that there were no restrictions on the patent sales, or that it would not later claim an interest in the patents, whether based on later discovered facts or otherwise. Thus, there is no allegation of a promise by Fish & Richardson that was allegedly breached.

Second, Mr. Harris's own allegations assert that he did not perform his own alleged promise. According to Mr. Harris, Fish & Richardson demanded that he "sell his interest in the patents to *third parties*." (*Id.* ¶ 11, emphasis added.) But Mr. Harris expressly alleges that he sold many of the patents to MCE, *the company he owned.* (*Id.* ¶¶ 9, 11.) Therefore, Mr. Harris's own allegations plead him out of court on this claim.

## Conclusion

For the foregoing reasons, Counts I, II, III, IV, V, VI and VII should be dismissed.

Dated: May 27, 2008

Respectfully submitted,

FISH & RICHARDSON P.C.

David J. Bradford
Terrence J. Truax
Eric A. Sacks
Daniel J. Weiss
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350

By: s/ David J. Bradford
One of its Attorneys

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed with the Court by means of the Court's CM/ECF system, which will send notification of such filing to the following counsel at their email address on file with the Court:

Raymond P. Niro
Paul K. Vickrey
Richard B. Megley, Jr.
Laura A. Kenneally
David J. Sheikh
Niro, Scavone, Haller & Niro
181 W. Madison, Suite 4600
Chicago, Illinois 60602

L. Steven Platt
Arnold and Kadjan
19 West Jackson Blvd., Suite 300
Chicago, IL 60604
(312) 236-0415

May 27, 2008.

                 s/David J. Bradford

                 JENNER & BLOCK LLP
                 330 North Wabash Avenue
                 Chicago, Illinois 60611
                 Telephone No: 312 222-9350
                 Facsimile No: 312 527-0484