MB
FILED
MAY 23, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **ILLINOIS COMPUTER RESEARCH, LLC**, )<br>*Plaintiff and Counterclaim Defendant,* )<br>)<br>*v.* )<br>)<br>**FISH & RICHARDSON P.C.**, )<br>*Defendant, Counterclaimant, Third-Party Plaintiff, and Counterclaim Defendant,* )<br>)<br>*v.* )<br>)<br>**SCOTT C. HARRIS, *et al.*,** )<br>*Third-Party Defendants.* ) | No. 07 C 5081<br><br>Judge Rebecca R. Pallmeyer<br><br>Magistrate Judge Maria Valdez |

### FISH & RICHARDSON'S SUR-REPLY TO MR. HARRIS'S AND ICR'S <u>REPLY IN SUPPORT OF THEIR MOTION TO COMPEL DOCUMENTS</u>

Mr. Harris's and ICR's reply in support of their motion to compel makes several new arguments and mischaracterizes the law in doing so.

First, the common interest doctrine is applicable here and precludes disclosure of the documents to any party other than Mr. Harris. Second, the right to choose one's counsel does not override Fish & Richardson's right to protect privileged and confidential information. Third, Federal Rule of Evidence 407 is not limited to product liability cases. Fourth, contrary to Mr. Harris's and ICR's assertions, the work product doctrine protects documents prepared in anticipation of litigation from production in *any* litigation, not just the litigation that was anticipated when the documents were first prepared.

## I. The Common Interest Doctrine Protects Certain Documents From Disclosure To All Parties Except Harris.

Mr. Harris and ICR miss the mark when arguing that the common interest doctrine (1) does not apply here absent a joint defense agreement and (2) does not apply because Fish & Richardson and Mr. Harris are now adverse to each other in litigation.

First, Mr. Harris and ICR incorrectly characterize the law in this circuit on the common interest doctrine, and instead cite cases from other circuits to support the proposition that a joint defense agreement is a prerequisite for asserting the common interest doctrine. The law in this circuit allows the use of the common interest doctrine to protect materials when two or more people consult an attorney about a "mutual concern" and "*is not limited to parties who are perfectly aligned on the same side of a single litigation*." Dexia Credit Local v. Rogan, 231 F.R.D. 268, 273 (N.D. Ill. 2004) (emphasis added). This protection therefore applies here, where both Fish and Richardson and Mr. Harris consulted Mr. Steele about a mutual concern regarding Harris's actions in regards to certain Firm clients.

Second, while Mr. Harris and ICR are correct that the protection is destroyed when the parties become adverse to each other in litigation, as this Court has already ruled, this exception only applies as between the two parties and the parties must continue to maintain those confidences with respect to *third-parties*. See Angell Invs., L.L.C. v. Purizer Corp., 2002 WL 1400543, at *1 (N.D. Ill. June 27, 2002) (when parties joined by the common interest doctrine subsequently become adverse to each other in litigation, "they still retain a reasonable expectation of confidentiality as to third parties"). Consequently, neither Harris nor Fish & Richardson can disclose information protected by the common interest doctrine to third parties such as the shell entities.

## II. Harris's Right To Counsel Does Not Override Fish & Richardson's Right To Protect Privileged And Confidential Information.

Mr. Harris contends that his right to counsel of his choosing trumps Fish & Richardson's right to protect confidential information. Mr. Harris attempts to support this contention by citing Corti v. Fleischer, 417 N.E.2d 764 (Ill. App. Ct. 1981) and Whiting Corp. v. White Machinery Corp., 567 F.2d 713 (7th Cir. 1977). Those cases do not support Mr. Harris's contention. Corti is inapposite as it deals with the ability of lawyers to trade clients without a client's permission. 417 N.E.2d at 769-770. Whiting, while discussing the right to choose an attorney of ones choosing, ultimately does place limitations on the ability of a law firm to represent a client in certain circumstances. 567 F.2d at 715-16.

In fact, the case law on this topic recognizes that there is a delicate balance between a party's right to counsel of its choosing and the right of a party to protect confidential information. See Coburn v. DaimlerChrysler Servs. N. Am., L.L.C., 289 F. Supp. 2d 960 (N.D. Ill. 2003) (balancing the privacy of the attorney client relationship with the prerogative of a party to proceed with counsel of its choice and ultimately finding that the party's right to protect confidential information prevailed). And this balance favors a party's right to protect confidential information when the representation choice raises concerns of fairness or ethical issues. Here, the prejudice to Fish & Richardson from sharing its confidential attorney-client advice with the Niro firm's other "clients" in this matter -- ICR, MCE, and the other shell entities -- would be acute. As this Court knows, those entities are currently adverse to Firm clients in pending litigation. Additionally, based on Mr. Harris's infringement analyses, those entities are likely to sue other Fish & Richardson clients in the future. For a law firm's own confidential attorney-client communications to be used against a client of the firm, to whom the firm is not

otherwise adverse, would raise severe ethical issues. It would cast a shadow on the legal profession.

ICR, MCE, and the other parties that are suing clients of Fish & Richardson have no right to Fish & Richardson's privileged communications with the Firm's own counsel. The fact that Mr. Harris was a party to those communications while at the firm may entitle him to the information -- but it does not entitle him to share it with any third parties, let alone those who are suing clients of the firm. And the risks associated with this potential disclosure are real and immediate. Fish & Richardson has learned that within the last week, two of the shell entities represented by the Niro firm and which are now parties to this litigation in Chicago -- Innovative Patented Technology, LLC ("IPT") and BarTex Research, LLC ("BarTex") -- have filed motions for leave to amend in actions in Florida and Texas seeking to add Fish & Richardson as defendants in those actions. See Innovative Patented Technology, LLC v. Samsung, No. 9:07cv81148 (S.D. Fla.), Dkt. Entry 26; BarTex Research LLC v. FedEx, No. 6:07cv385 (E.D. Tex.), Dkt. Entry 37. The claims for which IPT and BarTex are seeking leave to add against Fish & Richardson involve claims of ownership that are mirror images of the claims Fish & Richardson filed first in this Court. Mr. Harris's ability to select counsel cannot be used as a thinly disguised sword to force the sharing of Fish & Richardson's privileged information with these various third parties in cases where Mr. Harris is not even a party.

Disclosure of this information to ICR and MCE and the other shell entities would be comparable to Fish & Richardson disclosing privileged communications between Mr. Niro and Mr. Harris -- made on Mr. Harris's Fish & Richardson email account -- to Google, Samsung, Nokia, Dell, Amazon and the other clients who have been sued based on the disputed patents. As this Court has prohibited Fish & Richardson from disclosing privileged Niro-Harris advice to

4

its clients, Mr. Harris should be prohibited from disclosing Fish & Richardson's privileged communications to parties adverse to Fish & Richardson clients. ICR and the shell entities knew or should have known that this ethical problem would arise when they retained the Niro firm to represent them. Clearly they knew that Mr. Harris had learned confidential information in his capacity as a Fish & Richardson partner and that it would create ethical issues if that information could be used adversely to Fish & Richardson clients. Nonetheless, the "representation" issue can be solved in several ways, other than at the expense of divulging Fish & Richardson's confidential information to parties who are suing firm clients.

First, Mr. Harris could decline his right to receive this information; or

Second, the shell entities could stipulate that they are alter egos of Mr. Harris (it is their contention that they are *bona fide* and independent entities that makes it inappropriate for them to simply step into Mr. Harris's shoes in obtaining information as to which Fish & Richardson has a confidentiality interest); or

Third, the shell entities or Mr. Harris could retain separate counsel. Independent of this issue, there is a specter of impropriety and a basis for disqualification of the Niro firm based upon this joint representation. It is difficult to understand how Mr. Harris, who has continuing duties of loyalty to his former clients, can assist third parties in suing his former clients based on claims that he identified while still at Fish & Richardson. In the interests of keeping this case on track, Fish & Richardson has not filed a disqualification motion (but reserve all rights to do so), nonetheless, a substitution of counsel would serve to eliminate a disturbing ethical issue.

**III. The Documents At Issue Are Inadmissible And Unlikely To Lead To Admissible Evidence Under FRE 407.**

Mr. Harris and ICR inaccurately contend that FRE 407 is inapplicable unless there is a need to promote safety improvements. They attempt to support this proposition by citing

5

Chlopek v. Federal Insurance Co., 499 F.3d 692 (7th Cir. 2007), Flamino v. Honda Motor Co., 733 F.2d 463 (7th Cir. 1984), Petree v. Victor Fluid Power, Inc., 887 F.2d 34 (3d Cir. 1989), and O'Dell v. Hercules, Inc., 904 F.2d 1194 (8th Cir. 1990). However, those cases merely support the proposition that FRE 407 *may* be used in situations to promote safety improvements -- they do not limit the use of the rule to that context. E.g. Chlopek, 499 F.3d 692 (applying FRE 407 in a products liability action).

Courts often apply FRE 407 in situations where safety concerns are not at issue. In addition to Pastor v. State Farm Mutual Automobile Insurance Co. cited in Fish & Richardson's opposition brief, many other cases apply FRE 407 in situations where there is no need to promote remedial safety measures. See, e.g., Hickman v. GEM Ins. Co., 299 F.3d 1208 (10th Cir. 2002) (applying FRE 407 to changes in insurance policies); Stahl v. Bd. of Comm'rs of the Unified Gov't. of Wyandote County/Kansas, 244 F. Supp. 2d 1181 (D. Kan. 2003) (applying FRE 407 to changes in employer's job requirements); Krouner v. Am. Heritage Fund, Inc., 899 F. Supp. 142 (S.D.N.Y. 1995) (applying FRE 407 to changes in registration statements and prospectuses). FRE 407 unmistakably protects the changes made to Fish & Richardson's policies as evidence of subsequent remedial measures.

Moreover, although Mr. Harris's and ICR's assertion that evidence of subsequent remedial measures may be used to impeach a party is correct, the case law cited in support of this proposition clearly shows that this impeachment use is limited in nature and not available here. See Flamino v. Honda Motor Co., 733 F.2d at 468 (cited in Harris Reply Br. at 8). In Flamino, the plaintiff in a products liability action wished to use evidence of subsequent remedial repairs to impeach the defendant's assertion that it used due care. Id. The court rejected the use of the subsequent remedial measure in this manner, stating that if this type of use was considered

impeachment use, that "the exception would swallow the rule." Id. The court explained that this evidence would only serve as impeachment evidence if the defendant had claimed that it would never repair the product in the manner in which it did. Id.

Likewise, Fish & Richardson did not assert that it would never clarify or improve its policies. Consequently, it is improper for Mr. Harris and ICR to attempt to use evidence of legal advice related to clarifying the policies as impeachment.

## IV. The Work Product Doctrine Properly Protects Fish & Richardson Documents Prepared In Anticipation of Any Litigation.

Mr. Harris argues that the work product doctrine does not apply because the redacted advice was not made in anticipation of *this* particular litigation, but rather in anticipation of a potential litigation with firm clients involving the same underlying misconduct. In support of this proposition, Mr. Harris cites two cases from the 1970s: one which is specific to grand jury investigations, In re Grand Jury Proceedings, 73 F.R.D. 647 (M.D. Fla. 1977), and one which *did allow the use of the work product doctrine in a subsequent litigation*, Midland Investment Co. v. Van Alstyne, Noel & Co., 59 F.R.D. 134 (S.D.N.Y. 1973). Neither of those cases supports Mr. Harris's and ICR's argument.

The modern majority view on the applicability of the work product doctrine is that the work product doctrine protects materials prepared in anticipation of litigation from production in *any* litigation, not just the litigation that was anticipated when the documents were first prepared. See FTC v. Grolier, Inc., 462 U.S. 19, 25 (1983); Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc., 237 F.R.D. 176, 182 (N.D. Ill. 2006) (cited in Fish & Richardson's Opp'n Br. at 11).

## Conclusion

This Court should deny Mr. Harris's and ICR's Motion To Compel and hold that the redactions are protected as privileged and work product. It should enter an Order authorizing

7

Fish & Richardson to produce any otherwise privileged communications to and from Mr. Harris (and the documents referring to same) prior to August 31, 2007, based on an express judicial determination that this production will not constitute a waiver of privilege and that the production will be limited to Mr. Harris only. This Court should require counsel for Mr. Harris to advise the Court as to an acceptable means of ensuring that the other parties do not receive access to this information, as a condition of counsel receiving access to these documents.

May 22, 2008

Respectfully submitted,

FISH & RICHARDSON P.C.

By:    s/ David J. Bradford
     One of its Attorneys

     David J. Bradford
     Terrence J. Truax
     Eric A. Sacks
     Daniel J. Weiss
     JENNER & BLOCK LLP
     330 N. Wabash Avenue
     Chicago, IL 60611
     Telephone: 312 222-9350
     Facsimile: 312 527-0484

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed with the Court by means of the Court's CM/ECF system, which will send notification of such filing to the following counsel at their email address on file with the Court:

Raymond P. Niro
Paul K. Vickrey
Richard B. Megley, Jr.
Laura A. Kennally
David J. Sheikh
Niro, Scavone, Haller & Niro
181 W. Madison, Suite 4600
Chicago, Illinois 60602

L. Steven Platt
Arnold and Kadjan
19 West Jackson Blvd., Suite 300
Chicago, IL 60604
(312) 236-0415

May 22, 2008.

                                                  s/David J. Bradford

                                                  JENNER & BLOCK LLP
                                                  330 North Wabash Avenue
                                                  Chicago, Illinois 60611
                                                  Telephone No: 312 222-9350
                                                  Facsimile No: 312 527-0484