IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS COMPUTER RESEARCH, LLC.,<br>    *Plaintiff and Counterclaim Defendant*,<br><br>v.<br><br>FISH & RICHARDSON P.C.,<br>    *Defendant, Counterclaimant, Third-Party*<br>    *Plaintiff and Counterclaim Defendant,*<br><br>v.<br><br>SCOTT C. HARRIS, MEMORY CONTROL<br>ENTERPRISE, LLC, BARTEX RESEARCH, LLC,<br>INNOVATIVE BIOMETRIC TECHNOLOGY, LLC,<br>PARKER INNOVATIVE TECHNOLOGIES, LLC,<br>VIRGINIA INNOVATIVE TECHNOLOGY, LLC,<br>INNOVATIVE PATENTED TECHNOLOGY, LLC<br>AND ANY JOHN DOE SHELL ENTITIES,<br>    *Third-Party Defendants.* | Civil Action No. 07 C 5081<br><br>Honorable Rebecca R. Pallmeyer<br><br>Magistrate-Judge Maria Valdez |

**MEMORANDUM IN SUPPORT OF ICR'S MOTION TO STRIKE OR,
IN THE ALTERNATIVE, TO REQUIRE FISH TO RE-FILE ALL SUCH
PLEADINGS WITHOUT REFERENCE TO PEJORATIVE TERMS**

Pleadings that contain improper, scandalous or impertinent material should be stricken. Federal Rule of Civil Procedure 12(f). In documents filed with this Court, a law firm that should know better has repeatedly used the pejorative terms "shell entities" or "paper entities" in referring to third-party defendants that Fish & Richardson ("Fish") itself has brought into this case. "Shell entity" is a pejorative term that connotes shallowness, a sham company without substance – something created for an improper or illegal purpose – not a legitimate business. See, e.g., United States v. Ross, 77 F.3d 1525, 1535 (7th

Cir. 1996) (characterizing a fraudulent corporation created solely to evade bankruptcy rules and to commit mail and wire fraud as a "shell corporation").

Yet, the truth is that, in this instance, five of the six corporations which Fish has attacked as "shell entities" are owned by a business lawyer, J. Beauregard Parker, who is a distinguished member of the New York and Florida Bars. His father was General Counsel of a Fortune 500 company; his mother is a prominent family attorney from New York that heads her own law firm. Another of the so-called "shell entities" is operated by a business woman-entrepreneur who was a business executive for numerous companies and has licensed and sold patents for millions of dollars. All corporate formalities were scrupulously observed for each of the third-party defendants.

Each of the third-party defendant companies was properly formed; each own significant patents. Some have already made millions in royalties. And as the saying goes about glass houses, to call them shell entities is demeaning, discourteous and unprofessional, especially when the people throwing the stones have frequently represented clients with unsavory backgrounds (see, Tucker, J.C., <u>Trial and Error: The Education of a Courtroom Lawyer</u> at 158-59, 199, 337 (2003)). Indeed, Fish itself has repeatedly become embroiled in conflicts of interest over attempts to represent clients who were adverse to other Fish clients – one of the key pieces of alleged "misbehavior" for which Fish has attacked Scott Harris. See, e.g., <u>Teradyne, Inc.</u> v. <u>Hewlett-Packard Co.</u>, 1991 U.S. Dist. LEXIS 8363, *14 (N.D. Ca. 1991) (disqualifying Fish from continuing to represent a client whose interests were adverse to those of another Fish client; noting that

disqualification was necessary to prevent "the stratagem of "withdraw[ing] from the less favored representation before a disqualification motion is filed in order to be able to enjoy the less restrictive former-client conduct rules."); Smith & Nephew, Inc. v. Ethicon, Inc., 98 F.Supp.2d 106, 110 (D. Mass. 2000) (characterizing Fish's argument against disqualification as "nonsensical").

Indeed, notwithstanding Fish's piously and frequently professed concern for "legal ethics" and its attacks on Scott Harris for his attempts to protect his own patents from infringement and his alleged "concealment" of his activities, Fish itself has not hesitated to resort to astonishingly deceptive conduct when it wanted to subvert professional standards prohibiting contact with parties known to be represented by counsel. Thus, for example, in Microsoft Corp. v. Alcatel Business Systems, 2007 U.S. Dist. LEXIS 93048 (D. Del. 2007), Fish (representing Microsoft) purchased an Alcatel communication system that was the subject of the patent infringement lawsuit Fish had brought against Microsoft. One of the technicians who installed the system, Mr. Lin, was an Alcatel employee – but he was nevertheless "directed to and, in fact, did provide training on the administration, use and configuration of the Alcatel System to two F&R lawyers; indeed, these lawyers engaged Mr. Lin in ongoing conversations where they questioned him about the administration, use and configuration of the Alcatel System." Id. at *2-*3. The court held that Fish had violated Model Rule 4.2 by knowingly contacting a party who was represented by counsel and sanctioned it by prohibiting Fish from using its expert or the two lawyers who were involved in the litigation, as well as prohibiting Fish from making any use of

the wrongfully-obtained information.  Id. at *4-*5.  These escapades, in fact, are unpleasantly reminiscent of Fish's rifling through Scott Harris's e-mails without permission in this case and its subversion of the attorney-client relationship between Scott Harris and John Steele.

To show why pejorative labels like "shell entities" matter, we have taken below just two paragraphs from Fish's memorandum supporting its motion to dismiss, substituted "third-party defendants" for "shell entities," "serial infringers" for "Fish clients" and "the snooping, greedy law firm riddled with conflicts of interest" for "Fish" -- substitutions that have more factual basis, to judge by the Fish debacles cited above, than demeaning the third-party defendants here as "shell entities."  The results highlight the amazing shift in impression that can be created with derogatory labels -- it's the magic of words. First, for the Fish version:

> Mr. Harris and the shell entities have now filed an amended complaint.  (Dkt. 162, "Am. Compl.")  Mr. Harris alleges that he began commercially exploiting the disputed patents in April 2006 through one of the shell entities, Memory Control Enterprise ("MCE").  (*Id.* ¶ 7.)  Mr. Harris now admits that, as part of his activities, he "identified various Fish clients" as litigation targets. (*Id.* ¶ 14).

> On March 12, 2007, MCE and Mr. Harris in his personal capacity sued  Dell, a Fish & Richardson client.  (*Id.* ¶ 10.)  "Based upon an inquiry from Dell," Fish & Richardson requested that Mr. Harris remove himself from the Dell litigation "and sell his interest in the patents to third parties."  (*Id.* ¶ 11.)  Mr. Harris agreed "to sell his entire patent portfolio as Fish demanded." (*Id.* ¶ 13).  Mr. Harris alleges that he then sold the patents to MCE.  (*Id.* ¶ 11).  Mr. Harris now alleges that he had purchased MCE in December 2006.  (*Id.* ¶ 9).  Thus, Mr. Harris now admits that he only sold the patents to himself.  (*Id.*).

(Fish & Richardson's Memorandum in Support of Its Motion to Dismiss Mr.

Harris's and the Shell Entities' Counterclaims, pp. 3-4; footnote omitted). Now for

the revised version with "serial infringers" for "Fish clients":

> Mr. Harris and the third-party defendants have now filed an amended complaint. (Dkt. 162, "Am. Compl.") Mr. Harris alleges that he began commercially exploiting the disputed patents in April 2006 through one of the third-party defendants, Memory Control Enterprise ("MCE"). (*Id.* ¶ 7.) Mr. Harris now admits that, as part of his activities, he "identified various serial infringers" as litigation targets. (*Id.* ¶ 14).

> On March 12, 2007, MCE and Mr. Harris in his personal capacity sued [a serial infringer]. (*Id.* ¶ 10.) "Based upon an inquiry from [a serial infringer]," Fish & Richardson requested that Mr. Harris remove himself from the [serial infringer's] litigation "and sell his interest in the patents to third parties." (*Id.* ¶ 11.) Mr. Harris agreed "to sell his entire patent portfolio as Fish demanded." (*Id.* ¶ 13). Mr. Harris alleges that he then sold the patents to MCE. (*Id.* ¶ 11). Mr. Harris now alleges that he had purchased MCE in December 2006. (*Id.* ¶ 9). Thus, Mr. Harris now admits that he only sold the patents to himself. (*Id.*).

And now, this is what happens substituting "snooping, greedy law firm riddled

with conflicts of interest" for "Fish"; it really gets outrageous:

> Mr. Harris and the third-party defendants have now filed an amended complaint. (Dkt. 162, "Am. Compl.") Mr. Harris alleges that he began commercially exploiting the disputed patents in April 2006 through one of the third-party defendants, Memory Control Enterprise ("MCE"). (*Id.* ¶ 7.) Mr. Harris now admits that, as part of his activities, he "identified various [known] serial infringers" as litigation targets. (*Id.* ¶ 14).

> On March 12, 2007, MCE and Mr. Harris in his personal capacity sued [a serial infringer]. (*Id.* ¶ 10.) "Based upon an inquiry from [a serial infringer]," the snooping, greedy law firm riddled with conflicts of interest requested that Mr. Harris remove himself from the [serial infringer" litigation "and sell his interest in the patents to third parties." (*Id.* ¶ 11.) Mr. Harris agreed "to sell his entire patent portfolio as the snooping, greedy law firm riddled with conflicts of interest [demanded]." (*Id.* ¶ 13). Mr. Harris alleges that he then sold the patents to MCE. (*Id.* ¶ 11). Mr. Harris now alleges that he had purchased MCE in December 2006. (*Id.* ¶ 9). Thus, Mr. Harris

now admits that he only sold the patents to himself.  (*Id.*).

Although this litigation may be hotly contested, it should be prepared and tried professionally without name-calling.  The deliberate use of demeaning terms like "shell entities," instead of the actual names of the companies involved is improper.  It is clearly intended to create an unfavorable impression about the third-party defendants that is utterly unsupported by any evidence whatever, thus, unfairly prejudicing the third-party defendants and Scott Harris.  leadings which make such attempts should be stricken under Fed.R.Civ.P. 12(f).  "Allegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice."  <u>Talbot</u> v. <u>Robert Matthews Distributing Co.</u>, 961 F.2d 654, 664 (7th Cir. 1992).  In <u>Talbot</u>, the Seventh Circuit held that it was proper to strike allegations that various defendants caused a salmonella outbreak because the allegations were "devoid of any factual basis" other than a rumor spread by a Jewel employee.  <u>Id.</u> at 665.  Importantly, the mere assertion in a prior pleading that the defendants caused a salmonella outbreak "does not establish a factual basis for the plaintiffs' assertion that the defendants caused the contamination."  <u>Id.</u>  All Fish offers in this case is just such an assertion in a series of pleadings – no evidence whatever.  The prejudicial pleadings concerning "shell entities" should be stricken, with leave to re-file them without invective.  Subpoenas on third parties with whom the third-party defendants do business (see an example attached as Exhibit A) should, likewise, be stricken, since they deliberately and intentionally place these parties in an unfavorable light.

The simple solution to all this is to stop it.  Fish and its counsel should be directed to immediately stop using pejorative terms in reference to the third-party defendants it brought into this lawsuit, and all pleadings making such reference should be stricken.

Respectfully submitted,

/s/  Raymond P. Niro
Raymond P. Niro
Paul K. Vickrey
Laura A. Kenneally
Niro, Scavone, Haller & Niro
181 West Madison, Suite 4600
Chicago, Illinois 60602-4635
(312) 236-0733
Fax:  (312) 236-3137

Attorneys for Illinois Computer
Research, LLC and Scott C. Harris

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **MEMORANDUM IN SUPPORT OF ICR'S MOTION TO STRIKE OR, IN THE ALTERNATIVE, TO REQUIRE FISH TO RE-FILE ALL SUCH PLEADINGS WITHOUT REFERENCE TO PEJORATIVE TERMS** was electronically filed with the Clerk of Court using CM/ECF system, which will send notification by electronic mail to the following:

>David J. Bradford - dbradford@jenner.com;;;
>Eric A. Sacks - esacks@jenner.com
>Daniel J. Weiss - dweiss@jenner.com
>Terrence J. Truax - ttruax@jenner.com
>Jenner & Block LLP
>330 N. Wabash Avenue
>Chicago, IL 60611
>(312) 222-9350
>**Counsel for Fish & Richardson, P.C.**

on June 2, 2008.

/s/ Raymond P. Niro