IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS COMPUTER RESEARCH, LLC.,<br>    *Plaintiff and Counterclaim Defendant*,<br><br>v.<br><br>FISH & RICHARDSON P.C.,<br>    *Defendant, Counterclaimant, Third-Party*<br>    *Plaintiff and Counterclaim Defendant,*<br><br>v.<br><br>SCOTT C. HARRIS, MEMORY CONTROL<br>ENTERPRISE, LLC, BARTEX RESEARCH, LLC,<br>INNOVATIVE BIOMETRIC TECHNOLOGY, LLC,<br>PARKER INNOVATIVE TECHNOLOGIES, LLC,<br>VIRGINIA INNOVATIVE TECHNOLOGY, LLC,<br>INNOVATIVE PATENTED TECHNOLOGY, LLC<br>AND ANY JOHN DOE SHELL ENTITIES,<br>    *Third-Party Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Civil Action No.  07 C 5081<br><br>Honorable Rebecca R. Pallmeyer<br><br>Magistrate-Judge Maria Valdez<br><br>**REDACTED PUBLIC VERSION** |

### SCOTT HARRIS'S, ICR'S AND THIRD-PARTY DEFENDANTS'
### JOINT MOTION TO COMPEL BASIC DISCOVERY FROM FISH

The facts supporting this motion reflect yet another example of a continuing theme in this litigation -- take but don't give, demand discovery but don't produce anything in response. Fish's actions have again forced Harris and the lawful owners of his patents to seek assistance from the Court to obtain relevant non-privileged basic discovery in this case.

In a nutshell, Fish has not made a good-faith effort to respond to these discovery requests, despite getting repeated extensions to do so. Even a cursory review of Fish's responses shows that fact.

On February 12, 2008, Fish filed and served its amended counterclaim and third-party complaint alleging claims of breach of contract and breach of fiduciary duties against Scott Harris, as well as equitable claims for declaratory judgment and constructive trust against ICR, Scott Harris and six third-party defendants, who Fish elected to add to this case. Seeking to test the factual support for Fish's baseless

claims, Mr. Harris and ICR served Interrogatories and their First Set of Requests For the Production of Documents on December 12, 2007. On February 12, 2008, Fish responded to ICR and Scott Harris's discovery by objecting to nearly all the requests and refusing to produce most of the requested documents. (See, Fish's responses to Harris and ICR's First Set of Requests For the Production of Documents, Ex. A). In response, counsel for Harris and ICR wrote to counsel for Fish inquiring about Fish's refusal to respond and demanding responsive discovery responses.

Fish's inadequate discovery responses were among the issues raised between the parties during a meet-and-confer held on May 22, 2008. Even after the meet-and-confer (in which counsel for Harris and ICR offered to limit the terms of some of the disputed discovery requests), Fish's letter of May 23, 2008 confirmed that Fish would not compromise on these issues, stating Fish "stands on its objections" on the topics highlighted herein (5/23/08 Letter from E. Sacks to P. Vickrey, Ex B).

On April 21, 2008, Fish served voluminous interrogatories and document requests on each of the six third-party defendants (that Fish brought into this lawsuit). In response, answers were timely served and documents timely produced by the third-party defendants. Between April 24-28, 2008, the six third-party defendants then individually served their own interrogatories and requests for the production of documents. After obtaining multiple extensions of time to serve meaningful responses to the discovery requests served by the third-party defendants, Fish again served grossly deficient responses and again refused to produce or substantively respond to most of the document requests. See Exs. C, D, E, F, G, H.

Fish's responses demonstrate wholesale failures related to at least six broad categories of documents: (1) Fish's interpretation of the terms/conditions of the form employment contract under which it is suing Harris for breach of contract; (2) the specific ethical and/or fiduciary violations Fish claims Harris and/or the third-party defendants breached; (3) prior course of dealing with attorneys/employees who engaged in "outside activities;" (4) knowledge by Fish of Mr. Harris's patents and the procurement by other Fish lawyers of their own patents; (5) Fish's ownership claims and

notice and the recording of such claims and (6) Fish's own internal procedures and policies and how they are applied to other Fish lawyers.

Pursuant to Local Rule 37.2, on May 22, 2008 counsel for ICR, Scott Harris and the six third-party defendants, conferred with counsel for Fish, regarding Fish's deficient responses to the discovery served by ICR and Scott Harris. The parties were unable to reach an accord regarding Fish's insufficient responses to Harris and ICR's document requests.

On June 18, 2008, counsel for ICR, Scott Harris and the six third-party defendants again conferred, this time regarding Fish's deficient responses to the discovery served by the third-party defendants. Despite a good faith effort to resolve the dispute, the parties were unable to resolve many of the issues which have resulted in the filing of this motion. During the June 18, 2008 meet and confer, the parties agreed that Fish would: (1) supplement Interrogatory No. 8 served by BarTex; (2) produce documents responsive to the MCE's document request No. 10; and (3) supplement responses to PIT interrogatories 5, 6, 7, 8 and 9, by providing complete, non-evasive responses by no later than June 27, 2008.

The parties had a second hour-long meet and confer on June 19, 2008, in which the parties agreed that Fish would: (1) supplement its response to VIT interrogatory No. 10; (2) supplement its responses to the first portion of IPT interrogatory No. 1, as well as interrogatory Nos. 2, and 10; (3) supplement its response to IBT interrogatory No. 3, by providing a complete, non-evasive responses by no later than June 27, 2008.

Accordingly, based on the conferences held on June 18th and 19th, the parties are at issue on those matters addressed in this motion.

## I.   THE RESPONSES TO THE THIRD-PARTY DEFENDANTS' INTERROGATORIES ARE GROSSLY DEFICIENT

Nearly all of the Fish responses to the third-party defendants' interrogatories are deficient. Most are evasive; some are deliberately misleading. Examples follow:

### A.   Interrogatories Served By BarTex

BarTex Interrogatories 1, 2 and 3 ask straight-forward questions that can be easily answered by Fish if it simply sent a global email to its lawyers asking for the

information sought. BarTex Interrogatory 1 seeks information as to when, where and under what circumstances "any Fish lawyer learned that Scott Harris was an inventor." BarTex Interrogatory 2 seeks information concerning when, where and under what circumstances "any Fish lawyer learned that Scott Harris filed a patent application in his own name for his own invention." BarTex Interrogatory 3 seeks the same information concerning any Fish lawyer learning that Scott Harris had been issued a patent on one of his inventions. The responses given are completely evasive, saying lawyers at Fish ███████████████████████████████████████████████ or that some attorney at Fish ██████████████████████████████████████████████████ or that some attorney at Fish ████████████████████████████████████████████████ ████████████████████████████

Interestingly, Fish had absolutely no difficulty sending global emails to its attorneys mocking the Niro firm and Mr. Niro personally, ███████████████████ ███████████████████ (July 21, 2004 email from K. Glitzenstein, Ex. J), ███████████ ████████████████████████████████████████████████████████████ ████████████████████████████████ (September 23, 2003 email from F. Scherkenbach, Ex. K). As Frank Scherkenbach, one of the lead Fish lawyers, put it: ██████████████ ████████████████████████████████████████████████████████████ ████████████████████████████ (September 23, 2003 email from F. Scherkenbach, Ex. K). Other global emails talked about ██████████████████████████████████ (December 22, 2006 email from M. Kane, Ex. L) █████████████████████████████████ ████████████████████████████████████████████████████ (September 24, 2003 email from G. Madera, Ex. M). The demeaning ████████████████ reference was allegedly made to be sure that Fish could get work from a particular client. These emails were sent to every lawyer in the Fish law firm. So how can Fish honestly claim it's impossible to find out which of its lawyers knew that Scott Harris was an inventor, which knew that he had filed patent applications or which knew that he had obtained patents on his inventions. One global email, like those Fish sends so frequently attacking Mr. Niro and his law firm, would easily get the discovery information sought.

Fish claims that it can't identify persons who saw the two plaques in Scott Harris's office that identified him as an inventor. (BarTex Interrogatory 9). How difficult is it for Fish to find out that information through a simple, global email? A reasonable investigation could provide such information.

Fish also refuses to identify when it recorded a lien or when it claimed an ownership interest in the patents (BarTex Interrogatories 6-7).

## B. Interrogatories Served by MCE

MCE Interrogatories 1 and 2 also ask straight-forward questions asking Fish to identify "*each* United States and foreign patent" that Fish contends that it owns and "all agreements concerning the sale, assignment, transfer or acquisition" of each patent identified in Interrogatory No. 1 (emphasis added). Fish's responses unilaterally limit these interrogatories to inquiries related only to the Harris patents and are incomplete even as to the Harris patents (failing to identify the date/circumstances which ownership of each was allegedly acquired). Fish clearly knows what patents, if any, that it owns, yet it refuses to provide such information. In response to MCE Interrogatory No. 4, Fish claims it has never considered the identities of potential infringers; magnitude of potential infringing sales; and/or scope of the Harris patents, in determining *value*; enforceability; and/or ability to license or sell such patents. Fish's response is inappropriately limited to the Harris patents.

Additionally, Fish has also failed to identify even one instance, let alone "each instance," in which it prepared documents of the type prepared by Scott Harris in identifying infringers, magnitude of infringement "in connection with the sale or licensing of *any* patent." (MCE Interrogatory No. 4).

Despite the fact that Fish previously testified that it had attorneys who obtained patents in their own name, Fish entirely refuses to respond to MCE Interrogatory No. 6 seeking identity of "attorneys-employees of Fish that: (i)created an invention; (ii)had a patent issue in which ownership was retained by someone other than Fish."

Fish's response to MCE Interrogatory No. 9 seeking "whether Fish has ever claimed on behalf of itself or its clients that someone attempted to intimidate a witness by making claims of inequitable conduct" is evasive and inappropriately limited to Harris.

Interestingly, Fish's response also fails to mention a recent patent infringement suit in which Fish itself claimed "witness intimidation." See <u>Massachussetts Inst. Of Technology</u> v. <u>ImClone Systems, Inc.</u> 490 F. Supp.2d 119 (D. Mass. 2007). Fish again unilaterally limits its response to MCE Interrogatory No. 10, stating "Fish & Richardson is not aware of any such investigation," yet it fails to respond to the interrogatory question which asks whether "Fish **or any attorney or agent** on its behalf has retained investigators or third parties to seek information about any of the third-party defendants…" This is incomplete and non-responsive as to the part of the interrogatory inquiring about "any attorney or agent."

### C.   Requests For Production Of Documents Served by MCE

Fish's responses to MCE's requests for the production of documents are likewise inadequate. Fish outright refuses to produce a single responsive document related to the following requests: "any Fish attorney who owned or operated any business outside of Fish or obtained any patent in his name" (MCE Request No. 4); Compensation Fish, Fish lawyers or the Jenner may receive related to "matters at issue in this case" or "exploitation, sale, licensing or enforcement of any patent covering an invention of a Fish lawyer" (MCE Request No. 14); compensation any person paid to a Fish lawyer related to "any business owned or operated by a Fish lawyer" or "the exploitation, sale, licensing or enforcement of any patent covering any invention of a Fish lawyer" (MCE Request No. 16); all agreements between Fish and any attorney that represented it in this litigation (MCE Request No. 20) and/or agreements between Fish and Jenner (MCE Request No. 21). Additionally, regarding Request No. 6, Fish says it "will be prepared to discuss producing documents in response to a reasonably limited request." The parties have not been able to agree on a "reasonably limited request."

### D.   Interrogatories Served By PIT

PIT's Interrogatory No. 1 seeks the "factual basis (in narrative form) for each claim made against PIT." Fish responded: "The factual bases for those claims are detailed in Fish & Richardson's Amended Counterclaim." PIT refuses to respond or identify even one, let alone every Fish lawyer in response to Interrogatory No. 3, providing: "Identify each Fish lawyer that was involved in or committed an alleged

ethical breach, violated any ethical rules or committed any alleged breach of hire or her fiduciary duties to Fish or to a client..."  Fish also completely fails to respond to Interrogatory No. 4: "state whether any Fish lawyer was terminated, forced to resign or discharged for filing patent applications on any of his or her inventions while employed by Fish…"  Fish's response to Interrogatory No. 10 is incomplete and neither describes any complaints, each client made to Fish as a result of anything PIT and the other alleged "shell entity did" nor states that none exist.

### E.     Interrogatories Served by VIT

Fish's responses to the interrogatories served by VIT, continues the pattern of evasive and incomplete responses which unilaterally limit the scope of the Interrogatories to pertaining only to Scott Harris.  By way of example, Fish provides incomplete responses to the following:  interrogatory "Indentify **any** personal business interest held by a Fish lawyer;" Interrogatory 2 "Identify **each** instance in which a Fish lawyer was dismissed or discharged for any illegal or unethical act;" Interrogatory 6 "Identify **each** Fish lawyer who used Fish offices, staff or personnel for personal matters;" and Interrogatory 8 "state whether **any** Fish lawyer has brought a claim of any kind against a Fish client."  Yet Fish provides responses regarding Scott Harris only. This is inappropriate.

Interestingly, and despite Fish's refusal to provide such information, VIT is aware that Fish had knowledge of additional responsive information that is not included in its responses. See Moreno declaration at ¶4, 5 ("The problem of some attorneys working excessively on personal outside business matters during normal working hours prompted a memo in early 2005 to all paralegals directing them to work with attorneys only on firm, not personal matters. I understood the memo and its requirement to be directed at two lawyers of the firm (I believe Chris Marchese and Shekar Vyas) and to attorney John Schnurer who shared a secretary (Angela Mueller) with the two lawyers and was involved in his own personal real estate matters."). Similarly, Moreno's declaration further highlights Fish's blatant failure to provide information responsive to Interrogatory 6, stating that "At no time did I observe Mr. Harris, ***unlike other attorneys at the firm***, using firm resources for personal or private business matters" (emphasis

added).

Fish further refuses to provide **any** response whatsoever to other straight-forward interrogatories: "whether Fish ever charged a Fish lawyer with breach of fiduciary duty" (Interrogatory 3); "identify each Fish lawyer involved in an act of professional negligence…" (Interrogatory No. 4); "identify each lawsuit or claim brought against fish in the past six years..." (Interrogatory No. 11).

Additionally, Fish fails to respond to the question asked in Interrogatory 7. Fish stated "Mr. Phillips and Mr. Woolston were not involved in any lawsuits or actions adverse to a client of the Firm" in response to VIT's interrogatory not stating: "describe the timing and circumstances of Fish lawyers Phillips' and Woolston's involvement in Merc Exchange, including all patents obtained and any monies received from licensing or enforcement of Merc Exchange patents…" Fish's response is entirely non-responsive.

### F. <u>Interrogatories Served by IPT</u>

The evasive responses continue with IPT. Fish even refuses to provide an answer to the following simple clear-cut questions: "does Fish have a policy limiting or regulating the use of Firm resources for personal matters." (IPT Interrogatory No. 1); "whether Fish had a policy of discharging employees who were charged or found to engage in" certain misconduct (IPT Interrogatory No. 3); and "was Fish made aware that Harris had established or was in the process of establishing a company that would receive the proceeds of any monies derived from the commercial exploitation, licensing or enforcement of his patents" (IPT Interrogatory No. 9)

Fish also incompletely answers Interrogatory No. 8 inquiring "whether Fish ever accessed and/or read any Fish lawyers fr.com emails, other than those accessed and read from Fish … *what the circumstances were*, the *name of each such Fish lawyer*..." Fish responded ███████████████████████████ ███████████████████████████████ IPT seeks a complete response including the names of those six principles.

Fish's responses to IPT's Interrogatory No. 11 is incomplete. Fish fails to identify "when such license, threat or enforcement took place, who the fish client was, the

patent(s) involved and how Fish was in anyway damaged.." (IPT Interrogatory No. 11).

Fish's response to IPT Interrogatory No. 12 is also evasive and does not answer the question in the interrogatory. Interrogatory 12 asks "Did anyone at Fish(including Steele or Lutton) and/or anyone at Jenner say to Scott Harris or his counsel(in words or substance): (a) that he might be charged with inequitable conduct, (b)that things could get messy….." ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

### G. Interrogatories Served By IBT

Fish's response to IBT's interrogatory No. 2 refers to its description of the breaches of fiduciary duties described in its response to IPT's interrogatory 10, yet as stated above in relation to IPT's response to Interrogatory No. 10, Fish failed to even identify, let alone "describe in detail" the alleged fiduciary duty breached by any third-party defendant. Additionally, Fish fails to provide "when, where and how" it gave notice to IBT or any other third-party defendant. (IBT Interrogatory No. 5).

Fish's response to IBT Interrogatory 6 providing: "State when, where and under what circumstances Fish and/or Jenner viewed Scott Harris' files on either his office computer or the Fish server…." is non-responsive and evasive. Fish responded "To the extent materials on Mr. Harris's work computer or the Fish & Richardson email server were not sent to the Niro firm, the interrogatory is further irrelevant.." (IBT Intterrogatory No. 6). Further, in response to the simple question "identify each instance where Fish authorized a Fish lawyer to operate a side business while employed by Fish and/or each instance where a Fish lawyer was permitted to use Firm resources to prepare or file his or her own patent applications.." (IBT Interrogatory No. 7). Fish responded "Fish & Richardson's employment agreement speaks for itself."

Fish's response to Interrogatory 8 provides "state whether Dell, Google or any other Fish client _**requested**_ _**that Fish have Harris and/or any third-party defendant**_ _**drop its suit**_ against them…" (emphasis added). ████████████████████████████

(emphasis added). Fish's carefully crafted answer was designed to evade responding to this simple interrogatory.

**H.    Documents Requests Served By ICR And Harris (1-55)**

By way of further example, Fish's responses to the discovery served by ICR and Mr. Harris are non-responsive. Fish has indicated in their letter of May 23, 2008, that even after a meet and confer on these issues, the parties are at an impasse and will not produce documents responsive to any of the following:

- Request Nos. 7-8, Fish states it is still working to produce documents regarding "the number of hours charged by Fish employees, present or former for work performed on the Harris patents or Harris Patent Applications." Fish has not produced such documentation, which is easy information for Fish to obtain and produce.
- Request No. 10, Fish objects to producing "non-policy documents relating to Fish employees personal use of office equipment and the tracking of associated charges, including not limited to copiers, personal computers, and postage equipment.
- Request No. 13, Fish objects to producing documents related to "names of any present or former Fish employee who has used the Fish office equipment for personal use…"
- Request No. 21, Fish states it will only produce documents related to Mr. Harris. Fish's response unilaterally limits this request which seeks "all documents relating to Fish's investigation or inquiry into any employee's non-firm business activity."
- Request No. 22, Fish refuses to produce documents related to the "side business" files maintained by Steele which Steele testified exist.
- Request No. 27, Fish refuses to produce documents related "to any side business of any attorney employed at Fish"
- Request No.31, Fish refuses to produce "communications between Fish and any attorney representing Fish and Google, Inc. concerning any Harris Patent or Harris Patent Application and/or the subject matter of this lawsuit.
- Request No. 36, Fish blatantly refuses to any documents responsive to its request for "any and all documents reflecting Fish's authorization of Mr. Philips' ownership interest in MercExchange.".
- Request No. 37, Fish also refuses to produce a single document relating to John Phillips' disclosure to Fish of his relationship with MercExchange.
- Request No. 38, Fish again refuses to produce a single document sufficient to identify any work conducted by a Fish employee under any agreement entered into between Phillips and MercExchange.

- Request No. 39, Fish also refuses to produce a single document sufficient to show the extent of John Phillips' use of firm resources in connection with MercExchange.
- Request No. 40, Fish refuses to produce a single document sufficient to show the extent of every Fish attorney's use of firm resources on outside business or personal matters.
- Request No. 42, Fish refuses to produce any agreement between Charles Heiken and Bose.
- Request No. 43, Fish also refuses to produce a single document relating to Fish's authorization of Mr. Heiken entering into any agreement with Bose.
- Request No. 44, Fish further refuses to produce any document sufficient to identify work conducted by Fish Employee relating in any way to any agreement between Heiken and Bose.
- Request No. 45, Fish again refuses to produce any documents related to any real estate deals or agreements involving John Schnurer (either as a party or any attorney for the party) and any money received by Mr. Schnurer as a result of any such real estate deals.
- Request No. 46, Fish refuses to produce a single document relating to Fish's authorization of Mr. Schnurer entering any real estate deals or agreements.
- Request No. 47, Fish also refuses to produce a single document sufficient to identify work conducted by a Fish employee that relates to any real estate agreement with Schnurer.
- Request No. 48, Fish again refuses to produce a single document sufficient to identify any business dealings with Steve Stodghill that does not directly relate to his providing legal services to a client of Fish.
- Request No. 49, Fish also refuses to produce documents sufficient to identify any legal services or agreements involving Steve Stodghill (either as a party or as an attorney for the party) and/or any money received by Mr. Stodghill as a result of any legal services.
- Request No. 50, Fish further refuses to produce a single document relating to Fish's authorization of Mr. Stodghill entering into any legal services or agreements.

Fish cannot be permitted to evade discovery by refusing to produce relevant documents.

## II.     THE DISCOVERY SOUGHT BY ICR, HARRIS AND THIRD PARTY DEFNDANTS IS CLEARLY RELEVANT TO <u>THE CLAIMS AND DEFENSES ASSERTED IN THIS MATTER</u>

Relevancy for discovery purposes is a broader concept than relevancy at the time of trial.  Fed. R. Civ. P. 26(b)(1) ("Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of

admissible evidence."). Specifically, Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party…."

In the context of a motion to compel discovery, the moving party bears the initial burden of proving that the information sought is relevant. U.S. v. Lake County Bd of Com'rs, 2006 U.S. Dist. LEXIS 22793, at *1 (N.D. Ind. Apr. 7, 2006) (quoting Alexander v. Federal Bureau of Investigation, 186 F.R.D. 154, 159 (D.D.C. 1999)). "If the discovery appears relevant, the party objecting to the discovery request bears the burden of showing why that request is improper." Trading Technologies Intern., Inc. v. eSpeed, Inc., 2005 U.S. Dist. LEXIS 10686, at *1 (N.D. Ill. Apr. 28, 2005) (internal citation omitted); West v. Miller, 2006 U.S. Dist. LEXIS 56243, 6-7 (N.D. Ill. Aug. 11, 2006). As more fully set forth below, the discovery requested herein is clearly relevant to both the claims and defenses asserted in this litigation. Accordingly, it is Fish's burden to demonstrate that such discovery is somehow not relevant—something it cannot do under these circumstances.

### A.     The Basic Discovery Sought Is Relevant to Fish's Breach of Contract Claim

Fish's amended counterclaim and third party complaint alleges Scott Harris breached numerous sections of the form employment Agreement, including paragraphs 4(a)-(c), 8 and 9. (Fish's form employment agreement, ¶4, 8, and 9, Ex. N). By Fish's own admission, it drafted the form employment agreement. Thus, Fish's interpretation and construction of the very provisions that it drafted are directly relevant to its claim for breach of contract.

For an employee of Fish to breach the paragraphs of the form employment agreement referenced above, it would require at least in part, a situation and/or circumstances which the Board of Directors has deemed to be a breach. Yet, despite Fish having sued Harris for breach of the form employment agreement, Fish refuses to produce documents related to even a single situation in which the Board has granted and/or denied approval in the context of any of the above referenced paragraphs.

Harris is entitled to the requested information because it is directly relevant to

Fish's enforcement or non-enforcement of the form employment agreement. ICR, Harris and the third-party defendants merely seek basic discovery related to the Board's prior course of conduct and the consequences imposed by Fish for prior violations of the form employment agreement.

Under principles of contract interpretation, Harris is entitled to discovery of evidence of Fish's interpretation of the provisions of the contract which it admits that it drafted. A court may look to the contracting parties' own conduct in order to determine their understanding of the agreement if any exist. See <u>Marathon Plastics, Inc.</u> v. <u>International Ins. Co</u>., 161 Ill. App. 3d 452, 514 N.2d 479, 486 (Ill. App. Ct. 4th Dist. 1987) (evidence of parties' interpretation of their contract may be seen in their contemporaneous and subsequent acts or conduct), appeal denied, 522 N.E.2d 1246 (1988); <u>Hodgman, Inc.</u> v. <u>Feld</u>, 447 N.E.2d 450 (2d Dist. 1983) (same); <u>National Diamond Syndicate</u> v. <u>United Parcel Service</u>, 897 F. 2d 253, 261-262 (7th Cir. Ill. 1990). Accordingly, Mr. Harris and the third parties are entitled to discovery related to Fish's form employment agreement which Fish drafted and previous breaches of such by other employees/attorneys at Fish until such time as the Court finds that no ambiguity exists.

## III.   <u>CONCLUSION</u>

Harris, ICR and the third-party defendants is being deprived of some of the most relevant discovery in this matter, discovery directly relevant to the claims and defenses in this matter. Harris and ICR first requested this information over five months ago. Harris and ICR attempted to limit some of the requests in a good faith effort to avoid the need for intervention from the Court. Yet, Fish has clearly stated it is unwillingly to comprise and the parties are at an impasse on these issues. Harris, ICR and the third-party defendants respectfully request that this Court enter an order compelling Fish to produce responses to the discovery served by ICR, Mr. Harris and the other third parties, including responses to:

1) Interrogatory Nos. 1, 2, 3, 4, 5, 6, 7, and 9 served by BarTex

2) Interrogatory Nos. 1, 2, 4, 6, 8, and 9 served by MCE

3) Requests For Production of Documents Served by MCE, including 4, 6, 14, 16, 20, 21.

4) Interrogatory Nos.1, 3, 4 served by PIT

13

5) Interrogatory Nos. 1, 2, 3, 4, 6, 7, 8 and 11 served by VIT

6) Interrogatory Nos. 1, 3, 8, 9, 11 and 12 served IPT

7) Interrogatory Nos. 2, 5, 6, 7 and 8 served IBT

8) Requests For Documents Nos. 7,8, 10, 13, 21, 22, 27, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50 served by Mr. Harris and ICR

Respectfully submitted,

/s/ Laura Kenneally
Raymond P. Niro
Paul K. Vickrey
David J. Sheikh
Richard B. Megley, Jr.
Laura Kenneally
Niro, Scavone, Haller & Niro
181 W. Madison, Suite 4600
Chicago, Illinois 60602-4515
(312) 236-0733
Fax: (312)236-3137
**Attorneys for Illinois Computer Research, LLC and Scott C. Harris**.

## <u>CERTIFICATION OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing **SCOTT HARRIS'S, ICR'S AND THIRD-PARTY DEFENDANTS' JOINT MOTION TO COMPEL BASIC DISCOVERY FROM FISH** was electronically filed with the Clerk of Court using CM/ECF system. In addition, the undersigned is serving the following attorneys by electronic mail:

> David J. Bradford
> Eric A. Sacks
> Daniel J. Weiss
> Terrence J. Truax
> Jenner & Block LLP
> 330 N. Wabash Avenue
> Chicago, IL 60611
> (312) 222-9350
>
> Counsel for Fish & Richardson, P.C.

on June 19, 2008.

/s/ Laura Kenneally