# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **ILLINOIS COMPUTER RESEARCH, LLC,** )<br>　*Plaintiff and Counterclaim Defendant,* )<br>)<br>　　　　　*v.* )<br>)<br>**FISH & RICHARDSON P.C.**, )<br>　*Defendant, Counterclaimant, Third-* )<br>　*Party Plaintiff, and Counterclaim* )<br>　*Defendant,* )<br>)<br>　　　　　*v.* )<br>)<br>**SCOTT C. HARRIS** *et al.*, )<br>　*Third-Party Defendants.* ) | No. 07 C 5081<br><br>Judge Rebecca R. Pallmeyer<br><br>Magistrate Judge Maria Valdez |

### FISH & RICHARDSON'S REPLY IN SUPPORT OF ITS MOTION
### TO COMPEL COMPLIANCE WITH THE COURT'S MAY 2, 2008 ORDER

Mr. Harris's response to Fish & Richardson's Motion To Compel Compliance With The Court's May 2, 2008 Order:

- fails to explain Mr. Harris's refusal to comply with the Court's Order;

- describes the withheld documents in a manner that completely contradicts how Mr. Harris's counsel described those very same documents on Mr. Harris's privilege log;

- makes no attempt to explain those stark contradictions; and

- publishes materials that are completely irrelevant to this case, in a transparent attempt to harass Fish & Richardson and deflect attention away from Mr. Harris's refusal to comply with the Court's Order.

Mr. Harris should be compelled to comply with the Court's Order and produce all of the withheld documents, the irrelevant materials produced by Mr. Harris should be stricken from the record, and Fish & Richardson should be awarded its fees and costs incurred in seeking enforcement of the Court's May 2 Order.

## I.     Mr. Harris Should Be Compelled To Comply With The Court's Order.

Mr. Harris has provided no justification for his refusal to comply with the Court's May 2 Order.

First, as demonstrated in Fish & Richardson's Motion to Compel Compliance With The Court's Order, on May 2, 2008, the Court held that Mr. Harris can withhold and submit *in camera* only his communications with the Niro firm that specifically are "concerning potential disputes between himself and Fish & Richardson." (May 2, 2008 Ord., Dkt. 158.) Mr. Harris must produce all other communications with the Niro firm, and *the Court plainly and unequivocally ordered Mr. Harris to produce **all** documents on his privilege log*. (05/02/08 Hr'ing Tran. at 93-94.) Each of the documents Mr. Harris refuses to produce are listed on that privilege log. Tellingly, Mr. Harris's response brief does not even address the fact that the Court expressly ordered Mr. Harris to produce every document on his privilege log. Instead, Mr. Harris implicitly acknowledges that his June 17, 2008 letter to the Court seeking to withhold seven documents from the privilege log—more than *six weeks after* the Court ordered those documents be produced—was in fact a procedurally inappropriate motion for reconsideration.

There is no basis for the Court to reconsider its express order for Mr. Harris to produce all documents on his privilege log. As the Court recognized during the May 2 hearing, all of the documents on the privilege log relate to Mr. Harris's attempts to target Firm clients and enforce the patents—one of the very categories of documents the Court ruled must be produced. Therefore, the Court's express order to produce all of the documents listed on Mr. Harris's privilege log was well reasoned, and Mr. Harris provides no grounds for reconsideration.

Second, Mr. Harris's tardy attempt to justify withholding the documents by suddenly arguing, for the first time, that the withheld documents relate to communications with the Niro firm about potential claims against Fish & Richardson fails. Mr. Harris's new, self-serving

2

descriptions of the withheld documents in his response brief are dramatically different than how Mr. Harris described those very same documents on his privilege log. More problematic, Mr. Harris does not even acknowledge the contradictions, let alone attempt to explain them. The table below demonstrates the differences between the description Mr. Harris provided to the Court and Fish & Richardson on his privilege log (column 5) and Mr. Harris's new, and unexplained description of those same documents in his response brief (column 6):

| Privilege Log Entry | Date | From | To | Description In Harris's Privilege Log | New Description In Harris's Response Brief |
|---|---|---|---|---|---|
| 6 | 5/29/07 | Scott Harris | Ray Niro | "Email regarding Harris patents (Reference to Dell)" | "email in which Mr. Harris reports to his lawyers on the status of his dealings with Fish" |
| 12 | 9/13/07 | Ray Niro | Scott Harris, Rich Megley | "Email regarding Google" | "email regarding retention of employment counsel to deal with Fish" |
| 13 | 9/11/07 | Ray Niro | Scott Harris, Rich Megley, Steve Platt | "Email regarding Google" | "email to an employment law specialist regarding Mr. Harris's termination by Fish" |
| 16 | 5/11/07 | Scott Harris | Ray Niro | "Email regarding Dell" | "email regarding discussions with John Steele and a confidential memo for counsel" |
| 19 | 9/1/07 | Scott Harris | Ray Niro, Rich Megley | "Email regarding Google" | "email regarding threats made by Fish" |
| 20 | 9/3/07 | Scott Harris | Ray Niro, Rich Megley | "Email regarding Dell" | "email regarding communications with Fish just before Mr. Harris's termination" |
| 22 | 5/11/07 | Scott Harris | Ray Niro | "Memorandum regarding Dell" | "email reporting to counsel on the status of Mr. Harris's dealings with Fish" |

3

For example, document 12, once described as "Email regarding Google" is suddenly, without explanation, now described as "email regarding retention of employment counsel to deal with Fish." Document 16, once described as an "Email regarding Google," that contained no attachments, is now described as an "email regarding discussions with [Fish & Richardson's in-house counsel] John Steele" which now supposedly contains, as an attachment, "a confidential memo for counsel" regarding some unnamed subject. These dramatic changes in the description of the improperly withheld documents, and the complete failure to explain the changes, raise serious questions about Mr. Harris's representations throughout this litigation. Mr. Harris should not be permitted to so abruptly and completely change his representations, especially when there is no attempt to explain the contradictions.

<u>Third</u>, the new document descriptions Mr. Harris now provides do not establish that the documents are privileged. Importantly, not one of the new descriptions states that the withheld email is a request for legal advice concerning Mr. Harris's litigation with Fish & Richardson. For example, the new description for document 6 is a May 29, 2007 "email in which Mr. Harris reports to his lawyers on the status of his dealings with Fish." There is no indication in the email that Mr. Harris is seeking legal advice regarding a potential lawsuit against Fish & Richardson. Nor could Mr. Harris make such an assertion. Mr. Harris alleges in his amended complaint that in May 2007 there was no dispute between Mr. Harris and Fish & Richardson regarding the patents, and thus Mr. Harris cannot now allege that he anticipated litigation with the Firm during that time. (Harris Am. Compl., Dkt. 162, ¶¶19-20.) Moreover, although Mr. Harris's discussions with Fish & Richardson are privileged as to the rest of the world, they are not privileged as to Fish & Richardson, and Mr. Harris therefore cannot withhold from Fish & Richardson an email that merely summarizes those discussions.

## II. Mr. Harris Has Interjected Irrelevant And Inadvertently Produced Materials In An Attempt To Mislead The Court.

In a transparent attempt to direct attention away from his unexplained refusal to comply with the Court's Order, Mr. Harris interjected into his response brief irrelevant materials that were inadvertently provided to the Niro firm.

In response to this Court's May 2, 2008 Order, an outside vendor was used to collect from Fish & Richardson's email server all of Mr. Harris's communications with members of the Niro firm. (*E.g.*, 05/02/08 Hr'ing Tran. at 90.) Per this Court's Order, the documents were to be culled from the server and transmitted directly to the Niro firm—*without review by Fish & Richardson or its counsel.* The Niro firm was then to produce all of these documents to Fish & Richardson, unless they claimed privilege related to the defense of this case—in which event they were to be submitted *in camera* to this Court.

In collecting documents from the server, it now appears that the vendor employed an incorrect protocol. As a result, the vendor collected and provided to the Niro firm internal Fish & Richardson documents that had never before been sent to the Niro firm. These documents were extracted from the server by the vendor because the term "Niro" appeared in them. On their face, these documents concerned totally unrelated cases and circumstances, including other cases in which the Niro firm was an adverse party. These included extraneous comments by Fish & Richardson attorneys, many from several years ago, that plainly were intended as internal confidential communications. One, for example, is a 2003 email that contained one individual's commentary on the Federal Judicial Center—plainly irrelevant to any arguable issue in this case. Many of these unrelated and inadvertently produced documents contain privileged communications—related to other clients of Fish & Richardson—which again are utterly irrelevant to any issues in this litigation.

Upon review of the materials from the outside vendor, Mr. Harris's counsel did not notify Fish & Richardson of the error (again, Fish & Richardson was not allowed to review what the vendor sent to Mr. Harris's counsel). The error should have been apparent because the file from the vendor was to include only documents sent by Mr. Harris to the Niro firm, or Mr. Harris's other counsel, Ms. Lasry, or vice-versa. These documents, on their face, were not sent to or from the Niro firm or Ms. Lasry. However, rather than returning or destroying those documents, and even though they have nothing to do with the privilege log issue that is the subject of this motion, Mr. Harris's counsel instead rushed to publish them in this case by gratuitously attaching them to Mr. Harris's response brief and to a concurrently filed Motion to Compel. This misuse of the documents is a transparent attempt to publicly reveal Fish & Richardson's confidential internal communications.

Fish & Richardson has invoked the inadvertent production provisions of the Protective Order, pursuant to which all the documents supplied by the vendor should be immediately destroyed. Fish & Richardson is working with the outside vendor to correct the error so that a complete set of materials comporting with the May 2 Order can be expeditiously processed and forwarded to Mr. Harris and his counsel by the vendor. The excerpts and exhibits in Mr. Harris's response brief and Motion to Compel that reference these inadvertently produced documents should be stricken. Those filings should be withdrawn and re-filed without the inadvertently produced material.

### III. The Court Should Award Fish & Richardson Its Costs In Seeking To Enforce The Court's May 2 Order.

Even if Mr. Harris had a good faith basis for withholding the documents on his privilege log and asking the Court to reconsider its May 2 Order—and he does not—Mr. Harris should have raised this issue with the Court immediately. Instead, Mr. Harris waited until more than six

weeks after the Court's ruling, and only raised the issue because Fish & Richardson's counsel noticed that Mr. Harris unilaterally had decided to ignore the Court's Order and not produce all the documents on his privilege log. Then, when Mr. Harris finally raised the issue with the Court, he did so in the procedurally inappropriate form of a letter, failing to notify the Court that Mr. Harris was, in reality, moving the Court for reconsideration of its prior ruling.

Fish & Richardson respectfully submits that in this instance, the Court should award Fish & Richardson its fees and costs incurred in bringing this Motion To Compel Compliance With The Court's May 2 Order, and in any related proceedings.


June 20, 2008                                         Respectfully submitted,
                                                      FISH & RICHARDSON P.C.

                                                      By:    s/ David J. Bradford
David J. Bradford                                            One of its Attorneys
Terrence J. Truax
Eric A. Sacks
Daniel J. Weiss
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484

**CERTIFICATE OF SERVICE**

  I certify that a copy of the foregoing was filed with the Court by means of the Court's CM/ECF system, which will send notification of such filing to the following counsel at their email address on file with the Court:

 Raymond P. Niro
 Paul K. Vickrey
 Richard B. Megley, Jr.
 Laura A. Kenneally
 David J. Sheikh
 Niro, Scavone, Haller & Niro
 181 W. Madison, Suite 4600
 Chicago, Illinois 60602


June 20, 2008

                s/David J. Bradford

                JENNER & BLOCK LLP
                330 North Wabash Avenue
                Chicago, Illinois 60611
                Telephone No: 312 222-9350
                Facsimile No: 312 527-0484